# EXHIBIT A

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

**ORDER (A) APPROVING CERTAIN BIDDING PROCEDURES AND
THE FORM AND MANNER OF NOTICE THEREOF, (B) SCHEDULING AN
AUCTION AND A HEARING ON THE APPROVAL OF THE SALE OF ALL OR
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (C) ESTABLISHING
CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND APPROVING
MANNER OF NOTICE THEREOF, AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the entry of an order (this "**Order**") (i) approving certain bidding procedures attached hereto as Exhibit 1 (the "**Bidding Procedures**") for the sale of certain of the Debtors' assets (the "**Sale**") and the form and manner of notice thereof substantially in the form attached hereto as Exhibit 2 (the "**Sale Notice**"), (ii) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Bidding Procedures, (iii) scheduling an Auction and a Sale Hearing in connection with the Sale, and (iv) establishing certain assumption and assignment procedures and approving manner of notice thereof substantially in the form attached hereto as Exhibit 3

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the proposed undersigned counsel for the Debtors.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion or the Bidding Procedures, as applicable.

(the "**Assumption and Assignment Notice**,"); the Court having reviewed the Motion and conducted a hearing to consider the relief requested therein regarding the Bidding Procedures and related matters (the "**Bidding Procedures Hearing**"); and the Court having considered the statements of counsel, the First Day Declaration and any other declarations submitted in support of the Motion, and the evidence presented at the Bidding Procedures Hearing; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.    The Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014.  Venue of the Chapter 11 Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The Debtors have offered good and sufficient reasons for, and the best interest of their estates will be served by, the Court granting the Motion to the extent provided in this Order, including (i) approving the Bidding Procedures, attached hereto as Exhibit 1, and form and manner of notice thereof substantially in the form of the Sale Notice, attached hereto as Exhibit 2, (ii) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder and

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  All findings of fact and conclusions of law announced by the Court at the Bidding Procedures Hearing are hereby incorporated herein to the extent not inconsistent herewith.

approving the Bid Protections in accordance with the Bidding Procedures, (iii) scheduling an Auction and a Sale Hearing in connection with the Sale, and (iv) establishing certain assumption and assignment procedures and approving manner of notice thereof substantially in the form of the Assumption and Assignment Notice, attached hereto as <u>Exhibit 3</u>.

C.     Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required except as set forth herein with respect to the Auction and the Sale Hearing.  Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D.     In accordance with Local Rule 6004-1, the Debtors have properly filed and noticed the Motion.  The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to prevent immediate and irreparable harm to the Debtors and their estates.

E.     The proposed Sale Notice, Stalking Horse Supplement, and the Assumption and Assignment Notice, as set forth in the Motion and this Order, are appropriate, sufficient, and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Stalking Horse APA, the Sale Hearing, the Bidding Procedures, and the assumption and assignment of the Assumed Contracts, and no other or further notice shall be required for the Sale or the assumption and assignment of the Assumed Contracts.

F.     The process for filing the Stalking Horse Supplement and the granting of any Bid Protections is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of:  (i) the identification of the Stalking Horse Bidder (and if the Stalking

Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) a description of the Assets proposed to be sold under the Stalking Horse Bid, (iii) the amount of the Stalking Horse Bid and what portion (if any) is cash; (iv) whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (v) any proposed Bid Protections; (vi) the Stalking Horse APA; and (vii) the Stalking Horse Objection Deadline (as defined below).

G.      The Bidding Procedures are fair, reasonable, and appropriate under the circumstances, and are reasonably designed to maximize the value to be achieved for the Assets.

H.      The Assumption and Assignment Procedures provided for herein and the Assumption and Assignment Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures and the Assumption and Assignment Notice have been tailored to provide an adequate opportunity for all counterparties to assert any objections to the assumption and assignment of Assumed Contracts and related Cure Costs.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent provided herein.

2.      The Bidding Procedures, attached as <u>Exhibit 1</u> to this Order, are hereby approved in their entirety, incorporated by reference as if fully set forth herein, and shall govern all Bids and Bid proceedings relating to the Assets. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3.      The Debtors will file and serve a proposed Sale Order on or before **4:00 p.m. (prevailing Eastern Time) on October 4, 2024**. Objections to approval of the Sale (with the exception of objections related solely to the conduct of the Auction, identity of the Successful

Bidder, and ability of the Successful Bidder to provide adequate assurance of future performance, which must be received by a different deadline), must be in writing, state the basis of such objection with specificity, and be filed with this Court and served on or before **4:00 p.m. (prevailing Eastern Time) on October 30, 2024** (the "**Sale Objection Deadline**") on the following parties (collectively, the "**Notice Parties**"):

(a)     proposed counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com), Sean T. Greecher (sgreecher@ycst.com), and Allison S. Mielke (amielke@ycst.com);

(b)     counsel to the Prepetition Agent and the DIP Agent, (a) Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, Illinois 60661, Attn: Peter P. Knight (peter.knight@katten.com) and Allison E. Yager (allison.yager@katten.com), and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Curtis S. Miller (cmiller@morrisnichols.com);

(c)     the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov); and

(d)     counsel to any statutory committee appointed in this Chapter 11 Cases.

4.     All objections to the entry of this Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

### A.    Designation of Stalking Horse Bidder

5.     The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, to (i) designate a Stalking Horse Bidder, (ii) enter into a Stalking Horse APA in accordance with the Bidding Procedures, and (iii) agree to any bid protections (the "**Bid Protections**") subject to further Court approval, in each case at any time prior to the Auction and in accordance with this Order and the Bidding Procedures annexed hereto.

6.      In the event that the Debtors designate a Stalking Horse Bidder and enter into the Stalking Horse APA on or prior to September 20, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "**Stalking Horse Supplement Deadline**"), the Debtors shall file a supplement to the Motion (the "**Stalking Horse Supplement**") seeking approval of the same, with no less than three (3) business days' notice of the objection deadline (the "**Stalking Horse Objection Deadline**") to the U.S. Trustee, the Consultation Parties, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases (the "**Stalking Horse Notice Parties**") with no further notice being required, provided that the Stalking Horse Supplement (i) sets forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) describes the Assets proposed to be sold under the Stalking Horse Bid; (iii) sets forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (iv) states whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (v) specifies any proposed Bid Protections; (vi) attaches the Stalking Horse APA, including all exhibits, schedules or attachments thereto; and (vii) sets forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections.  The Stalking Horse Supplement shall also include any evidence the Debtors would like the Court to consider in connection with any request to approve any breakup fee and/or expense reimbursement and/or any other Bid Protections as an administrative expense under section 503(b) of the Bankruptcy Code.

7.      If the Stalking Horse Bidder and the Stalking Horse APA are designated after the occurrence of the Stalking Horse Supplement Deadline, but prior to the Auction, the Debtors reserve the right to file a motion with the Court seeking approval, on an expedited basis,

of the Stalking Horse Bidder and Stalking Horse APA, subject to consultation with the Consultation Parties prior to the filing of any proposed motion.

8.      Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "**Stalking Horse Objection**") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court and served on the Stalking Horse Notice Parties within three (3) business days after the service of the Stalking Horse Supplement.

9.      If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid on or before September 25, 2024 (but in no event fewer than three (3) business days after the service of the Stalking Horse Supplement).  If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtors are authorized submit to the Court an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse APA (the "**Stalking Horse Approval Order**"), which may be entered by the Court without a hearing, including with respect to any Bid Protections set forth in the Stalking Horse Supplement. For the avoidance of doubt, no determination is made in this Order regarding the authorization of any Bid Protections.

10.     Upon entry of an order approving the Stalking Horse Bidder and the Bid Protections, the Debtors' obligations to pay the Bid Protections shall constitute, pursuant to section 503(b) of the Bankruptcy Code, an administrative expense claim against the Debtors' bankruptcy estates.  For the avoidance of doubt, this Order does not grant the Bid Protections superpriority

expense treatment pursuant to sections 364(c)(1) or 507(b) of the Bankruptcy Code, but the Debtors reserve their rights to do so by filing a separate motion with the Court.

**B.      The Bidding Procedures, Auction, and Sale Hearing**

11.      The deadline for submitting a Qualified Bid shall be **October 21, 2024 at 4:00 p.m. (prevailing Eastern Time)**, unless extended by the Debtors pursuant to the Bidding Procedures (the "**Bid Deadline**").

12.      For the purposes of the Bidding Procedures: (a) any designated Stalking Horse Bidder will be considered a Qualified Bidder, and any Stalking Horse APA will be considered a Qualified Bid; (b) a Credit Bid submitted under section 363(k) or any other applicable provision of the Bankruptcy Code will be considered a Qualified Bid and any bidder that submits a Credit Bid will be considered a Qualified Bidder; and (c) in determining whether the Potential Bidders constitute Qualified Bidders, the Debtors may consider a combination of bids for the Assets.

13.      All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Assets.

14.      If no Qualified Bid other than any Stalking Horse Bid is submitted on or before the Bid Deadline, the Debtors will not hold an Auction and will request at the Sale Hearing that this Court approve the Stalking Horse APA.

15.      If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct the Auction.  The Auction will take place on **October 28, 2024, starting at 10:00 a.m. (prevailing Eastern Time)** at the offices of Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022.  Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the

Consultation Parties, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction.

16.     Each Qualified Bidder participating at the Auction will be required to confirm in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

17.     Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best Bid for the Assets or subsets thereof.  As soon as possible following the Auction, but no later than twenty four (24) hours after conclusion of the Auction, the Debtors shall file a notice on this Court's docket identifying the Successful Bidder(s) for the Assets (or subset thereof) and any applicable Next-Highest Bidder(s) (the "**Notice of Successful Bidder**").

18.     Objections related solely to conduct of the Auction, the identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder (other than a Stalking Horse Bidder) must be in writing, state the basis of such objection with specificity, and be filed with this Court and served so as to be received by the Notice Parties on or before **October 30, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "**Auction Objection Deadline**").

19.     The Court shall convene the Sale Hearing on **November 6, 2024 at [___:___] (prevailing Eastern Time)** or as soon thereafter as counsel and interested parties may be heard, at which time the Court will consider approval of the Sale to the Successful Bidder(s) or Next-Highest Bidder(s) and the entry of the Sale Order.  At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder(s) or Next-Highest Bidder(s).  Subject to consultation with the Consultation Parties, the Debtors may adjourn the

Sale Hearing from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing or in notice or agenda filed with the Court. The Debtors shall file a form of Sale Order no later than fourteen (14) calendar days before the Sale Hearing.

### C.    Assumption and Assignment Procedures

20.    On or before September 16, 2024, the Debtors will file an Assumption and Assignment Notice, substantially in the form attached as <u>Exhibit 3</u> to this Order, which shall include a schedule of cure obligations (the "**Cure Schedule**") for the Assumed Contracts, and shall serve such Assumption and Assignment Notice on each of the non-Debtor parties listed therein by first class mail and/or email on the date the Assumption and Assignment Notice is filed with the Court. The Cure Schedule will include a description of each Assumed Contract potentially to be assumed and assigned by a potential buyer and the amount, if any, the Debtors believe is necessary to cure, or compensate the non-Debtor parties for, any monetary defaults under such agreements pursuant to section 365 of the Bankruptcy Code (the "**Cure Costs**").

21.    Objections to (a) the Cure Costs set forth in the Cure Schedule or (b) the assumption and assignment of any Assumed Contracts identified in the Cure Schedule must be in writing, state the basis of such objection with specificity, be filed with the Court, and be served on the Notice Parties no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days from the date of service of the Assumption and Assignment Notice. Any such objections shall set forth a specific default by the Debtors in any Assumed Contracts and claim a specific monetary amount that differs from the amount (if any) specified by the Debtors in the Cure Schedules, and attach any applicable documentation in support of such amount.

22.    To the extent the Debtors, at any time after service of the Cure Schedule (i) identify additional Assumed Contracts to be assumed and assigned to the Stalking Horse Bidder

or other Successful Bidder (the "**Additional Assumed Contracts**"); and/or (ii) modify the previously stated Cure Costs associated with any Assumed Contracts, the Debtors shall promptly file with this Court and serve by first-class mail or email, as applicable, a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such Additional Assumed Contracts and their counsel of record, if any.  Counterparties to Additional Assumed Contracts or that otherwise receive a Supplemental Assumption Notice shall have until 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after the service of the Supplemental Assumption Notice to file a Cure Objection (as defined below).

23.    Unless a non-Debtor party to an Assumed Contract has timely and properly filed and served an objection to the assumption and assignment of its Assumed Contract (a "**Cure Objection**"), such non-Debtor counterparty shall (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assumed Contract, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; (ii) be deemed to have consented to the assumption and assignment to the Successful Bidder of such Assumed Contract; and (iii) be forever barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, the Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Contract or that there is any objection or defense to the assumption and assignment of such Assumed Contract.  In addition, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-Debtor parties to the Assumed Contracts for all purposes in the Chapter 11 Cases and will constitute a final determination of the total Cure Costs required to be paid by the Debtors in connection with the assumption and assignment of the Assumed Contracts.

24.     Where a non-Debtor counterparty to an Assumed Contract timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount (the "**Disputed Cure Amount**"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amount, the Cure Amount shall be as agreed between the parties, or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection, including payment of cure (if any), will be heard at the Sale Hearing or such other date as the parties determine.

**D.    Notice Procedures**

25.     The form of the Sale Notice and the Assumption and Assignment Notice annexed hereto are hereby approved and appropriate and sufficient for all purposes and no other or further notice shall be required.  No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale.

26.     As soon as reasonably practicable after entry of this Order, the Debtors shall cause the Sale Notice to be served upon the following:  (i) the U.S. Trustee; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel to any official committee appointed in the Chapter 11 Cases, if any (the "**Committee**"); (iv) the United States Department of Justice; (v) all state attorneys' general and consumer protection agencies in jurisdictions in which the Assets are located; (vi) counsel to the Prepetition Agent and DIP Agent; (vii) counsel to Equinox Holdings, Inc.; (viii) all parties who are known by the Debtors to assert liens against the Assets, if any; (ix) all non-Debtor parties to the Assumed Contracts; (x) any party known or reasonably believed to have expressed an interest in acquiring some or all or substantially all of the Debtors' assets within six (6) months prior to the Petition Date, which service may be sent electronically if a mailing address for any such parties is unknown; (xi) all non-Debtor parties to Assumed Contracts; and (xii) all parties who, as of the filing of this Motion,

have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

27.     In addition, the Debtors shall publish the Sale Notice once in the national edition of The New York Times, or similar nationally circulated publication, as soon as practicable after entry of this Order and post the Stalking Horse Supplement, if applicable, the Sale Notice, and this Order on the website of the Debtors' claims and noticing agent: https://dm.epiq11.com/BlinkFitness.  Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008 and is reasonably calculated to provide notice to any affected party, including any Potential Bidder(s), and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

28.     Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

29.     All parties (whether or not Qualified Bidders) that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Process, the Auction and/or the Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

30.     In the event there is any conflict between this Order and the Bidding Procedures, the terms and conditions of this Order shall control and govern in all respects.

31.     The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied, modified, or waived.

32.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7052 or 9014, this Order shall be immediately effective and enforceable upon its entry.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

## Exhibit 1

**The Bidding Procedures**

## BIDDING PROCEDURES

On August 12, 2024, the Debtors commenced chapter 11 cases (collectively, the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Set forth below are the bidding procedures (the "**Bidding Procedures**")[1] to be used with respect to the sale or disposition (the "**Sale**") of the Assets (as defined below) of the Debtors.

**Any party interested in bidding on the Assets should contact the Debtors' investment banker, Moelis & Company, LLC, Attn: Andrew Swift (andrew.swift@moelis.com) and Jeremy Burke (jeremy.burke@moelis.com).**

### *Summary of Key Sale Process Dates*

| Date | Deadline/Event |
|------|----------------|
| September 10, 2024 at 1:00 p.m. (ET) | Bidding Procedures Hearing |
| September 16, 2024 | Deadline for Debtor to file the Assumption and Assignment Notice and Cure Schedule |
| September 20, 2024 at 4:00 p.m. (ET) | Stalking Horse Supplement Deadline |
| September 30, 2024 at 4:00 p.m. (ET) | Deadline to object to the Debtors' proposed assumption and assignment of the Assumed Contracts and related Cure Costs |
| October 14, 2024 at 4:00 p.m. (ET) | Deadline to object to the Sale[2] of the Assets |
| October 21, 2024 at 4:00 p.m. (ET) | Bid Deadline |
| October 22, 2024 at 4:00 p.m. (ET) | Deadline for Debtors to notify Potential Bidders of whether their Bids are Qualified Bids |
| October 28, 2024 at 10:00 a.m. (ET) | Auction (if necessary) |

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Debtors' *Motion for Entry of Orders (I)(A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of all or Substantially all of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (D) Granting Related Relief; and (II)(A) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement; and (B) Authorizing the Sale of All Or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* (the "**Motion**").

[2]  This objection deadline applies to all objections to the Motion and the Sale of the Assets to a Successful Bidder, with the exception of objections related solely to conduct of the Auction, the identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder.

| October 28, 2024 at 11:59 p.m. (ET) | Deadline to file and serve Notice of Successful Bidder |
| October 30, 2024 at 4:00 p.m. (ET) | Deadline to object to (i) conduct of the Auction, (ii) the proposed Sale to the Successful Bidder, and (iii) ability of the Successful Bidder to provide adequate assurance of future performance, or the proposed form of adequate assurance of future performance |
| November 6, 2024 at [●] (ET) | Sale Hearing |
| November 27, 2024 | Closing |

### I. Description of the Assets to Be Sold

The Debtors are seeking to sell all or substantially all of their assets, including but not limited to the equipment, intellectual property, unexpired leases, contract rights, and other assets related to or necessary to operate the business currently operated by the Debtors (the "**Assets**"), in each case free and clear of all liens, claims, and encumbrances thereon. Potential bidders are encouraged to submit bids for all of the Assets or any subset thereof.

The Sale of the Assets shall be subject to a competitive Bidding Process (as defined below) as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") pursuant to sections 105, 363, and 365 of title 11 of the Bankruptcy Code, rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"). The Debtors may consider bids for the Assets (or any portion thereof) in a single bid from a single bidder, or in multiple bids from multiple bidders.

### II.   Confidentiality Agreement

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must enter into (unless previously entered into) with the Debtors, on or before the Bid Deadline (as defined below), a confidentiality agreement in form and substance reasonably satisfactory to the Debtors (the "**Confidentiality Agreement**"). Further, to participate in the diligence process and receive access to due diligence information, a party must submit to the Debtors, or their advisors, sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine that the interested party (i) has the financial wherewithal to consummate the applicable Sale and (ii) intends to access the Data Room (as defined below) for a purpose consistent with these Bidding Procedures. Each person or entity that enters into the Confidentiality Agreement with the Debtors in contemplation of participating in the Sale process on or before the Bid Deadline is hereinafter referred to as a "**Potential Bidder**."

After a Potential Bidder (as defined below) enters into a Confidentiality Agreement with the Debtors and demonstrates the financial wherewithal to potentially consummate a sale

transaction, the Debtors shall deliver or make available (unless previously delivered or made available) to each Potential Bidder certain designated information (including, if applicable, financial data) with respect to the Assets.

### III.      Determination by the Debtors

As appropriate throughout the Bidding Process (as defined below), the Debtors will consult with counsel to any statutory committee appointed in the Chapter 11 Cases, if any, (each a "**Committee**"), the Prepetition Agent and DIP Agent and their counsel, and any other party that the Debtors deem appropriate (collectively, the "**Consultation Parties**") and shall (a) coordinate with Potential Bidders regarding the conduct of their respective due diligence, (b) evaluate bids from Potential Bidders on any subset of the Assets or all of the Assets, (c) following consultation with the Consultation Parties, negotiate any bid made to acquire any or all of the Assets, and (d) following consultation with the Consultation Parties, make such other determinations as are provided in these Bidding Procedures (collectively, the "**Bidding Process**"); provided that the Debtors shall not consult with a Consultation Party (or its advisors) that is actively participating[3] in the Bidding Process.

### IV.      Due Diligence

The Debtors have established a confidential electronic data room concerning the Assets (the "**Data Room**") and will grant each Potential Bidder or Consultation Party, as applicable, access to such Data Room.  Up to and including the Bid Deadline (as defined below) (such period, the "**Diligence Period**"), the Debtors shall afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances.  The Debtors will provide a form asset purchase agreement for the sale of the Assets (the "**Form APA**") and will grant each Potential Bidder or Consultation, as applicable, access to such in the Data Room.  The Debtors may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders and/or Consultation Parties, as applicable.  If any such due diligence material is prepared by the Debtors in written form and has not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide access to such materials to (a) all Potential Bidders, and (b) all Consultation Parties.  Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who is not a Potential Bidder who does not otherwise comply with the participation requirements set forth above.  Moreover, the Debtors shall be entitled to restrict any Potential Bidder's access to information if the Debtors determine, in their business judgment, that providing a Potential Bidder with access to the Data Room, or any information contained therein, would harm the Sale process or compromise or otherwise impair the Debtors' business or the value of the Assets.

---

[3] "Actively participating" in the Bidding Process shall mean the party has submitted an asset purchase agreement to acquire the Assets.

## V.    <u>Stalking Horse Designation</u>

The Debtors may, at any time prior to the Auction, in consultation with the Consultation Parties, designate a stalking horse bidder (the "**Stalking Horse Bidder**"), whose Qualified Bid (as defined below) shall serve as the stalking horse bid (the "**Stalking Horse Bid**"), and any asset purchase agreement memorializing the proposed transaction set forth in the Stalking Horse Bid (the "**Stalking Horse APA**"), including any bid protections (the "**Bid Protections**") will be binding on the Stalking Horse Bidder and set the floor for all Qualified Bids, subject to higher or otherwise better offers at the Auction. If the Stalking Horse Bid is not selected as the Successful Bid, the Stalking Horse Bid shall serve as the Next-Highest Bidder (as defined below). Notwithstanding any of the foregoing, the Debtors are not obligated to select a Stalking Horse Bidder and may proceed to the Auction without one.

In the event that the Debtors designate a Stalking Horse Bidder and enter into the Stalking Horse APA on or prior to September 20, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "**Stalking Horse Supplement Deadline**"), the Debtors shall file a supplement to the Motion (the "**Stalking Horse Supplement**") seeking approval of the same, with no less than three (3) business days' notice of the objection deadline (the "**Stalking Horse Objection Deadline**") to the Office of the United States Trustee for the District of Delaware, the Consultation Parties, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases (the "**Stalking Horse Notice Parties**") with no further notice being required, provided that the Stalking Horse Supplement (a) sets forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) describes the Assets proposed to be sold  under the Stalking Horse Bid; (c) sets forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (d) states whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (e) specifies any proposed Bid Protections; (f) attaches the Stalking Horse APA; and (g) sets forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections. The Stalking Horse Supplement shall also include any evidence the Debtors would like the Court to consider in connection with any request to approve any breakup fee and/or expense reimbursement and/or any other Bid Protections as an administrative expense under section 503(b) of the Bankruptcy Code.

In the event the Debtors designate a Stalking Horse Bidder after the occurrence of the Stalking Horse Supplement Deadline, but prior to the Auction, the Debtors may seek Court approval on an expedited basis of the Stalking Horse Bidder and Stalking Horse APA, including the Bid Protections, and reserve their rights to file such a motion at any time after the Stalking Horse Supplement Deadline and prior to the Auction. Prior to the filing of any such proposed motion, the Debtors will consult with the Consultation Parties with respect to the designation of the Stalking Horse Bidder and Stalking Horse APA.

Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "**Stalking Horse Objection**") shall (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Stalking Horse Notice Parties within three (3) business days after the service of the Stalking Horse Supplement.

If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid on or before September 25, 2024 (but in no event fewer than three (3) business days after the service of the Stalking Horse Supplement). If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtors are authorized to submit to the Court an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse APA (the "**Stalking Horse Approval Order**"), which may be entered by the Court without a hearing, including with respect to any Bid Protections set forth in the Stalking Horse Supplement.

## VI.    Bid Deadline

A Potential Bidder that desires to make a Bid shall deliver written copies of its Bid (as defined below) in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) format to the following: (a) the Debtors, Attn: Steven Shenker (sshenker@pppllc.com) and Scott Canna (scanna@pppllc.com); (b) the Debtors' investment banker, Moelis & Company, LLC, Attn: Andrew Swift (andrew.swift@moelis.com) and Jeremy Burke (jeremy.burke@moelis.com); and (c) Young Conaway Stargatt & Taylor, LLP, Attn: Michael Nestor (mnestor@ycst.com), Sean Greecher (sgreecher@ycst.com), and Allison Mielke (amielke@ycst.com), **by no later than October 21, 2024 at 12:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"). As soon as reasonably practicable following the Bid Deadline, the Debtors will provide to the Consultation Parties copies of all Qualified Bids (with such distribution permissible by electronic means).

## VII.    Bid Requirements[4]

All bids (each hereinafter, a "**Bid**") must comply with the following requirements (collectively, the "**Bid Requirements**"):

(a)    be accompanied by a letter or email:

    (i)    fully disclosing the identity of the Potential Bidder and providing the contact information of the specific person(s) whom the Debtors or their advisors should contact (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale) in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder;

    (ii)    setting forth the purchase price to be paid by such Potential Bidder and forms of consideration the Potential Bidder intends to use to pay such purchase price;

---

[4]    The Debtors will also consider proposals to acquire any and all of the Assets through a plan of reorganization. Should any such proposal be received prior to the Bid Deadline that the Debtors, in consultation with the Consultation Parties, concludes is in the best interest of the estates and stakeholders, then the Debtors reserve the right to postpone the Auction and proceed toward the confirmation of a plan.

(iii)    stating with specificity the Assets (including the specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale;

(iv)    providing, other than as may be exclusively applicable to the Stalking Horse Bidder, if designated, that the Bid is not subject to any bidding, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement, and including an express waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets; provided that, in the event a Stalking Horse Bidder is designated, all bids (either viewed individually or in the aggregate) must provide consideration to the Debtors of at least the sum of (i) the Stalking Horse Bid, (ii) Bid Protections; (iii) and a reasonable minimum overbid amount equal to or greater than $500,000 or such other amount determined by the Debtors in consultation with the Consultation Parties (the "**Incremental Overbid**") over the Starting Bid or Leading Bid (as defined below);

(v)    agreeing that the Potential Bidder's offer is binding, unconditional, and irrevocable until two (2) business days after the closing of the Sale;

(vi)    containing a commitment to close the contemplated transaction(s) by a Closing Date (as defined below) of no later than November 27, 2024;

(vii)    providing that such Bid is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence;

(viii)    containing an acknowledgment that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the Assets, has relied solely upon its own independent review and investigation and/or inspection of any documents and any other information in making the Bid;

(ix)    setting forth (i) a statement or evidence that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings, and (ii) any regulatory and third-party approval required for the Potential Bidder to close the contemplated transactions, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Potential Bidder's Purchase Agreement, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); provided that a Potential Bidder agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain Potential Bidder's

regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable; <u>provided</u>, <u>further</u> that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; and

(x)      providing that the Potential Bidder agrees to serve as a backup bidder (the "**Next-Highest Bidder**") if the Potential Bidder's Qualified Bid (as defined below) is the next highest or best bid after the Successful Bid (as defined below) (the "**Next-Highest Bid**") with respect to the relevant Assets through the Closing Date;

(b)      be accompanied by (i) an executed purchase agreement in form and substance reasonably satisfactory to the Debtors (a "**Qualified Bid Purchase Agreement**"), and (ii) a redline of the executed Qualified Bid Purchase Agreement compared to the Stalking Horse APA, or, if none, the Form APA, to reflect any proposed amendments and modifications to the Stalking Horse APA or the Form APA, as applicable, and the schedules and exhibits thereto;

(c)      be accompanied by adequate assurance of future performance information (the "**Adequate Assurance Information**"), which may include (i) information about the Potential Bidder's financial condition, such as federal tax returns for two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, and (iv) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include. By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale and the Consultation Parties if the Debtors determine such bid to be a Qualified Bid (as defined below); and

(d)      be accompanied by (i) a deposit made by wire transfer to the Debtors, in the amount of ten percent (10%) of the cash consideration of the Bid, which funds will be deposited, prior to the Bid Deadline, into an escrow account to be identified and established by the Debtors (a "**Good Faith Deposit**"), and (ii) written evidence, documented to the Debtors' satisfaction, that demonstrates the Potential Bidder has available cash, a commitment for financing if selected as the Successful Bidder (as defined below) with respect to the relevant Assets (<u>provided</u>, <u>however</u>, that the closing shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that any such funding or other financing commitments are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided further that such commitments may have covenants and conditions acceptable to the Debtors). The Debtors reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their sole discretion after consulting with the Consultation Parties. Notwithstanding the foregoing, any party submitting a Credit Bid shall not be required to provide a Good Faith Deposit.

The Debtors, in consultation with those Consultation Parties that have not submitted a Bid, will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above.  A bid received from a Potential Bidder for any portion of the Assets that is determined by the Debtors, in consultation with the Consultation Parties, to meet the above requirements will be considered a "**Qualified Bid**" and each Potential Bidder that submits such a Qualified Bid will be considered a "**Qualified Bidder**."  For the avoidance of doubt, any (i) Stalking Horse Bid or (ii) credit bid submitted under section 363(k) or any other applicable provision of the Bankruptcy Code (a "**Credit Bid**") will be deemed a Qualified Bid and each of the Stalking Horse Bidder and any bidder that submits a Credit Bid will be deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder.  To the extent applicable, the Debtors shall inform the Stalking Horse Bidder of the Qualified Bids received and shall provide copies of the Qualified Bid(s) to Qualified Bidders prior to the commencement of the Auction.

A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors deem pertinent in their reasonable business judgment, including, among others, (a) the amount of the Qualified Bid; (b) the risks and timing associated with consummating the transactions(s) with the Qualified Bidder; (c) any excluded assets or executory contacts and leases; and (d) any other factors that the Debtors, in consultation with the Consultation Parties, may reasonably deem relevant.

The Debtors, in their business judgment and in consultation with the Consultation Parties, reserve the right to reject any Bid if such Bid, among other things:

(a)     requires any indemnification of the Potential Bidder in any Qualified Bid Purchase Agreement submitted as part of the Bid;

(b)     is not received by the Bid Deadline;

(c)     does not comport with the Bid Requirements;

(d)     is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; or

(e)     does not, in the Debtors' determination (after consultation with the Consultation Parties), include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors' estates or the Auction.

Any Bid rejected pursuant to the foregoing shall not be deemed to be a Qualified Bid; provided that the Debtors have the right to work with the parties to any rejected Bid to cure any such defects.  If any Bid is so rejected and not cured, the Debtors shall cause the Good Faith Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to it as soon as reasonably practicable, but no later than five (5) business days after the Bid Deadline.

The Debtors may, in consultation with the Consultation Parties, among other things, (y) extend such Bid Deadline with respect to the subject Assets and postpone the Auction, or (z) cancel the Auction and terminate the proposed Sale for the subject Assets.

### VIII.    No Qualified Bids

If no Qualified Bids other than a Stalking Horse Bid are received by the Bid Deadline, then the Debtors, after consultation with the Consultation Parties, may cancel the Auction, and may decide, in the Debtors' reasonable business judgment, to designate the Stalking Horse Bid as the Successful Bid, and pursue entry of the Sale Order approving the Sale of the Debtors' Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA.

### IX.    Auction

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders are eligible to participate at the Auction (as defined below).  The Consultation Parties shall be permitted to attend the Auction.  In addition, any creditor of the Debtors or party the Debtors deem appropriate may observe the Auction; provided, however, that creditors who are not Qualified Bidders shall provide three (3) business days' written notice to counsel to the Debtors of their intent to attend the Auction; provided, further, that the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders shall be allowed to observe the Auction regardless of whether they are participating and without providing such written notice; and provided, further, that the Debtors reserve the right to retract their permission at any point during the Auction if such creditor party who is not a Qualified Bidder does not act in good faith and in orderly fashion during the Auction. For the avoidance of doubt, only Qualified Bidders will be entitled to make any Bids at the Auction. At least one (1) day prior to the start of the Auction, each Qualified Bidder must inform the Debtors in writing whether it intends to participate in the Auction.  If the Debtors receives only one Qualified Bid with regard to any particular Assets (or all of the Assets), (a) the Debtors shall not hold an Auction with respect to such Assets; (b) the Qualified Bid, as applicable, will be deemed the Successful Bid with respect to such Assets; and (c) the Qualified Bidder will be named the Successful Bidder with respect to such Assets.  At any point and at their sole discretion, the Debtors shall have the right to remove any Assets from the Auction.

If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct an auction (the "**Auction**") with respect to such Assets and shall determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for purposes of constituting the opening bid at the Auction for the relevant Assets (the "**Starting Bid(s)**").  The Starting Bid(s) will be communicated to Qualified Bidders prior to the commencement of the Auction.  The determination of which Qualified Bid constitutes the Starting Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors (in consultation with the Consultation Parties) reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things, the following: (i) the amount and nature of the consideration, including any obligations to be assumed; (ii) the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such bid; (iii) the number, type and nature of any changes to the Stalking Horse APA, as applicable, requested by each Qualified Bidder; (iv) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtors of such modifications or delay; (v) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; (vi) the net benefit to the Debtors' estates

(including after taking account of the Bid Protections); (vii) the tax consequences of such Qualified Bid; and (viii) the impact on employees and members and the proposed treatment of employee and member obligations.

The Auction, if required, will be conducted on October 28, 2024, starting at 10:00 a.m. (prevailing Eastern Time) at the offices of Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022. Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders, any of the creditors having provided notice of their intent to attend as described above, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction. Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

Bidding at the Auction for the Assets (or subset thereof) that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid (defined below) is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid (a "**Subsequent Bid**") and (ii) the Debtors reasonably determine, in consultation with the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each Subsequent Bid at the Auction shall provide net value to the estates in an amount equal to or greater than $500,000 or such other amount determined by the Debtors in consultation with the Consultation Parties ("**Incremental Overbid**") over the Starting Bid or the Leading Bid (as defined below). After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest or otherwise best offer for the subject Assets (the "**Leading Bid**"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures as set forth below. In any Subsequent Bid by the Stalking Horse Bidder, if designated, the amount of the Bid Protections shall be included in the calculation of such Bid.

The Debtors may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids) for conducting the Auction or otherwise modify these Bidding Procedures, including by providing for different procedural rules for different portions or categories of Assets; provided that such rules (i) are not materially inconsistent with these Bidding Procedures, the Bankruptcy Code, or applicable orders of the Bankruptcy Court, and (ii) are disclosed to each Qualified Bidder during the Auction. The bidding at the Auction shall be transcribed and the Debtors shall maintain a transcript of all Bids made and announced at the Auction.

Immediately prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, will, for the Assets (or subset thereof) that were subject to the Auction: (a) determine, consistent with the Bidding Procedures, which bid constitutes the highest or otherwise best bid (the "**Successful Bid**"); and (b) notify all Qualified Bidders at the Auction for

the subject Assets, prior to its conclusion, of the name of the maker of the Successful Bid (the "**Successful Bidder**") with respect to the subject Assets, and the amount and other material terms of the Successful Bid. The Debtors may, in consultation with the Consultation Parties, designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close with respect to the subject Assets in the event that the Successful Bidder does not close the Sale; provided that the Stalking Horse Bid shall only constitute the Next-Highest Bid, and the Stalking Horse Bidder shall only constitute the Next-Highest Bidder, in each case, if the Stalking Horse Bidder agrees to such treatment in its sole and absolute discretion at the Auction. Unless the Bankruptcy Court orders otherwise upon application by the Debtors, the Debtors shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

As soon as practicable following the conclusion of the Auction, the Debtors shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for the Assets (or subset thereof) and any applicable Next-Highest Bidder(s) (the "**Notice of Successful Bidder**"). Objections related solely to the conduct of the Auction, the identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder (other than a Stalking Horse Bidder) must be in writing, state the basis of such objection with specificity, and be filed with the Court and served so as to be received by the Notice Parties on or before October 30, 2024 at 4:00 p.m. (ET).

All bidders at the Auction will be deemed to have consented to the core jurisdiction and constitutional authority of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and all agreements entered into in connection with any proposed sale transaction.

## X.    <u>Acceptance of Qualified Bids</u>

The Debtors may reject at any time, before entry of an order of the Bankruptcy Court approving the Sale, any Bid that, in the Debtors' business judgment, upon consultation with the Consultation Parties, is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures; or (iii) contrary to the best interests of the Debtors' and their estates.

The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such Bid. The Debtors will be deemed to have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.

## XI.    <u>No Fees for Potential Bidders or Qualified Bidders</u>

Potential Bidders or Qualified Bidders, other than a Stalking Horse Bidder, if applicable, shall not be allowed any bidding protections or fees as a precondition to, or in consideration of, presenting any bid or participating in the Bidding Process reflected herein.

### XII.    Sale Hearing

Each Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Qualified Bid of such Qualified Bidder) shall be subject to approval by the Bankruptcy Court.  The hearing to approve a Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Qualified Bid of such Qualified Bidder) shall take place on November 6, 2024, at [●] (prevailing Eastern Time) (the "**Sale Hearing**").  The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties, from time to time without further notice to other creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Chapter 11 Cases.

### XIII.    Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in escrow, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court.  The Debtors shall retain any Good Faith Deposit submitted by each Successful Bidder.  At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided.  The Good Faith Deposits of any Next-Highest Bidder shall be retained until three (3) business days after the applicable closing date (the "**Closing Date**").  The Good Faith Deposits of any other Qualified Bidders will be returned as soon as reasonably practicable, but no later than ten (10) business days following the Auction.

If a Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the applicable Qualified Bid Purchase Agreement (as such agreement may be amended or modified at the Auction) or any other form of purchase agreement reasonably satisfactory to the Debtors, the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

### XIV.    Reservation of Rights and Modifications

Notwithstanding any of the foregoing, the Debtors, in consultation with the Consultation Parties, reserve the right to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction at or prior to the Auction, and/or adjourn the Sale Hearing.  Further, the DIP Lenders and Prepetition Lenders (or the DIP Agent or Prepetition Agent, on their respective behalf) are not waiving, and expressly reserve their rights pursuant to the DIP Order and otherwise, including, without limitation, with respect to their liens on their

collateral, including in the event the Sale process does not result in an Acceptable Sale (as defined in the DIP Order), and to submit a Credit Bid at any time during the Sale process.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bidding Procedures; provided, however, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) if such Consultation Party is actively participating in the Bidding Process.

### XV.    Next-Highest Bidder

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to such date as specified in the applicable purchase agreement (or such date as may be extended by the Debtors), the Debtors, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the Assets (or subset thereof), the Next-Highest Bidder will be deemed to be the Successful Bidder for such Assets, and the Debtors will be authorized, but not directed, to close the Sale to the Next-Highest Bidder subject to the terms of the Next-Highest Bid as approved by further order of the Bankruptcy Court.

**Exhibit 2**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |

<u>**NOTICE OF AUCTION AND SALE HEARING**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On August 12, 2024, the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2.      On August 16, 2024, the Debtors filed a motion (the "**Bidding Procedures and Sale Motion**"), pursuant to sections 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), seeking entry of an order (the "**Bidding Procedures Order**") (a) scheduling an auction (the "**Auction**") for the sale of the Debtors' assets (the "**Assets**") and a hearing to approve the sale of the Assets (the "**Sale Hearing**"); (b) approving procedures (the "**Bidding Procedures**")[2] for submitting competing bids for the Assets; (c) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Bid Procedures; (d) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Purchase Agreement, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures; (e) approving the form and manner of the notice of the Auction and the Sale Hearing; and (f) establishing procedures for the assumption and assignment of the Assumed Contracts (as defined in the Bidding Procedures Order) to any purchaser(s) of the Assets and approving manner of notice thereof (the "**Assumption and Assignment Notice**").

---

[1]      The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354.  The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036.  Due to the large number of debtors in these chapter 11 cases, which the Debtors have requested be jointly administered, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the proposed undersigned counsel for the Debtors.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.

3.      On [___], 2024, the Bankruptcy Court entered the Bidding Procedures Order. Pursuant to the Bidding Procedures Order, if at least two (2) Qualified Bids with regard to any particular Assets (as defined in the Bidding Procedures Order) are received by the Bid Deadline (as defined below), the Debtors will conduct the Auction.  The Auction shall be held on October 28, 2024, starting at 10:00 a.m. (prevailing Eastern Time) or such other time as the Debtors, shall designate and notify to all Qualified Bidders.  Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction. Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than October 21, 2024**, at 12:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**") may bid at the Auction.  Any party that wishes to take part in this process and submit a Bid (as defined in the Bidding Procedures) for any portion of the Assets must submit their competing Bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.      The Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder(s) at the Auction, free and clear of all liens, claims and encumbrances, will be held before the Honorable J. Kate Stickles, United States Bankruptcy Judge, 824 North Market Street, Wilmington, Delaware 19801 on **November 6, 2024, at [●] (prevailing Eastern Time)**, or at such other time thereafter as counsel may be heard.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Bankruptcy Court or by the filing of a notice with the Bankruptcy Court.

5.      Objections to approval of the Sale (with the exception of objections related solely to the conduct of the Auction, identity of the Successful Bidder, and ability of the Successful Bidder to provide adequate assurance of future performance, which must be received by a different deadline), must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and served before **4:00 p.m. (prevailing Eastern Time) on October 14, 2024** (the "**Sale Objection Deadline**") by the following parties (collectively, the "**Notice Parties**"):

(a) proposed counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com), Sean T. Greecher (sgreecher@ycst.com), and Allison S. Mielke (amielke@ycst.com);

(b) counsel to the Prepetition Agent and the DIP Agent, (a) Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, Illinois 60661, Attn: Peter P. Knight (peter.knight@katten.com) and Allison E. Yager (allison.yager@katten.com), and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Curtis S. Miller (cmiller@morrisnichols.com);

(c) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov); and

(d) counsel to any statutory committee appointed in this Chapter 11 Cases.

6. Objections related solely to conduct of the Auction, identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder (other than a Stalking Horse Bidder) must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and served **on or before** October 30, 2024 **(prevailing Eastern Time)** (the "**Auction Objection Deadline**") by the Notice Parties.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

7. This Sale Notice is subject to the fuller terms and conditions of the Bidding Procedures and Sale Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict. In addition, copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order and this Notice are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801 and are available on the Debtors' claims and noticing agent's website free of charge at https://dm.epiq11.com/BlinkFitness.

Dated: Wilmington, Delaware  
    [●], 2024

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/* _____  
Michael R. Nestor (No. 3526)  
Sean T. Greecher (No. 4484)  
Allison S. Mielke (No. 5934)  
Timothy R. Powell (No. 6894)  
Rebecca L. Lamb (No. 7223)  
Benjamin C. Carver (No. 7176)  
Rodney Square  
1000 North King Street  
Wilmington, Delaware 19801  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253  
Email: mnestor@ycst.com  
      sgreecher@ycst.com  
      amielke@ycst.com  
      tpowell@ycst.com  
      rlamb@ycst.com  
      bcarver@ycst.com  

*Proposed Counsel to the Debtors*  
*and Debtors in Possession*

## **EXHIBIT 3**

**Assumption and Assignment Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-_____ (___) |
| Debtors. | (Jointly Administered) |

**NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On August 12, 2024, the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") filed a motion seeking approval of the Bidding Procedures for the sale of certain of the Debtors' assets (the "**Assets**") and approval of the sale such Assets (the "**Bidding Procedures and Sale Motion**") to the highest or best qualified bidder (the "**Successful Bidder**"). The Debtors have sought the approval of the Bankruptcy Court (as defined below) of the proposed Bidding Procedures and the form of this notice at a hearing held on September 10, 2024. The Debtors have further requested that a hearing to approve the sale of the Assets (the "**Sale Hearing**") for November 6, 2024 at [__:__] (prevailing Eastern Time) in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2.      Pursuant to the Bidding Procedures and Sale Motion, the Debtors may potentially assume and assign to the Successful Bidder one or more of those executory contracts and unexpired leases listed on <u>Schedule A</u> annexed hereto (collectively, the "**Potentially Assigned Agreements**" and each, a "**Potentially Assigned Agreement**"), pursuant to section 365 of the Bankruptcy Code.

3.      The Debtors have indicated on <u>Schedule A</u> annexed hereto the cure amounts, if any, that the Debtors believe must be paid to cure any prepetition defaults and pay all amounts accrued under the Potentially Assigned Agreements (in each instance, the "**Cure Amount**").

4.      Any party seeking to object to the validity of the Cure Amount as determined by the Debtors or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Potentially Assigned Agreements in order for such

---

[1]     The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, which the Debtors have requested be jointly administered, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the proposed undersigned counsel for the Debtors.

contract or lease to be assumed and assigned, must file an objection (the "**Assumption/Assignment Objection**") that (a) is in writing, (b) sets forth the specific monetary amount the objector asserts to be due, and the specific types of the alleged defaults, pecuniary losses, accrued amounts and conditions to assignment and the support therefor, (c) attaches any applicable documentation in support of such claimed amount, (d) is filed with the Clerk of the Bankruptcy Court and (e) is served on the following (collectively, the "**Notice Parties**") by no later than **4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days after the service of this Assumption and Assignment Notice** (the "**Assumption/Assignment Objection Deadline**"):

(i)     proposed counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com), Sean T. Greecher (sgreecher@ycst.com), and Allison S. Mielke (amielke@ycst.com);

(ii)    counsel to the Prepetition Agent and the DIP Agent, (a) Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, Illinois 60661, Attn: Peter P. Knight (peter.knight@katten.com) and Allison E. Yager (allison.yager@katten.com), and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Curtis S. Miller (cmiller@morrisnichols.com);

(iii)   the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov); and

(iv)    counsel to any statutory committee appointed in this Chapter 11 Cases .

5.      The Debtors shall file a notice identifying the Successful Bidder with the Bankruptcy Court and serve such notice upon parties in interest by October 28, 2024 at 11:59 p.m. (prevailing Eastern Time).  The deadline for objecting to the assignment of the Potentially Assigned Agreements to such Successful Bidder on the basis of adequate assurance of future performance ("**Adequate Assurance Objections**") shall be October 30, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "**Adequate Assurance Objection Deadline**").

6.      Unless an Assumption/Assignment Objection is timely and properly filed and served before the Assumption/Assignment Objection Deadline or an Adequate Assurance Objection is timely raised before the Adequate Assurance Objection Deadline, the non-debtor party to a Potentially Assigned Agreement shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Potentially Assigned Agreement, and the Debtors and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount; (ii) be deemed to have consented to any assumption and assignment to the Successful Bidder(s) of such Potentially Assigned Agreement; and (iii) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied

under such Potentially Assigned Agreement or that there is any objection or defense to the assumption and assignment of such Potentially Assigned Agreement.

7.      Where a non-debtor counterparty to a Potentially Assigned Agreement timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount, (the "**Disputed Cure Amount**"), then (y) the cure amount shall be as agreed between the parties or (z) to the extent the parties are unable to consensually resolve the dispute, then the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount will be determined at the Sale Hearing, or at such other date and time as may be fixed by the Bankruptcy Court.  All other objections to the proposed assumption and assignment of a Potentially Assigned Agreement will likewise be heard at the Sale Hearing, unless adjourned by agreement of the parties.

8.      An Assumption/Assignment Objection shall not constitute an objection to the relief generally requested in the Bidding Procedures and Sale Motion.  Parties wishing to otherwise object to the relief requested in the Sale Motion must file and serve a separate objection, stating with particularity such party's grounds for objection, on each of the Notice Parties listed above no later than **fourteen (14) calendar days after service of the Assumption and Assignment Notice at 4:00 p.m. (prevailing Eastern Time)**.

9.      If you agree with the Cure Amount indicated on <u>Schedule A</u>, and otherwise do not object to the Debtors' assignment of your lease or contract, you need not take any further action.

10.     The Debtors' decision to assume and assign the Potentially Assigned Agreements is subject to Bankruptcy Court approval and consummation of the sale of the Assets.

**Inclusion of any document on the list of Potentially Assigned Agreements shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder(s) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are being expressly reserved.**

*[Signature Page Follows]*

Dated: Wilmington, Delaware
      [●], 2024

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/*_____

Michael R. Nestor (No. 3526)
Sean T. Greecher (No. 4484)
Allison S. Mielke (No. 5934)
Timothy R. Powell (No. 6894)
Rebecca L. Lamb (No. 7223)
Benjamin C. Carver (No. 7176)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
        sgreecher@ycst.com
        amielke@ycst.com
        tpowell@ycst.com
        rlamb@ycst.com
        bcarver@ycst.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**Schedule A**

**LEASES**

| Landlord Name / Address | Address of Subject Property | Cure Amount |
|---|---|---|

**EXECUTORY CONTRACTS**

| Counterparty Name / Address | Description of Contract | Cure Amount |
|---|---|---|