**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - o

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | |
| BLINK HOLDINGS, INC., *et al.*,[1] | : | Case No. 24-11686 (JKS) |
| | : | |
| | : | Re: D.I. 16, 74 & 75 |
| Debtors. | : | **Hearing Date: Sept. 10, 2024 at 1:00 p.m.** |
| | : | **Obj. Deadline: Sept. 3, 2024 at 4:00 p.m.** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - o

**OBJECTION OF THE UNITED STATES TRUSTEE TO**
**(1) DEBTORS' MOTION FOR APPROVAL OF INSIDER BONUS PLAN;**
**AND (2) DEBTORS' ACCOMPANYING MOTION TO SEAL**

Andrew R. Vara, United States Trustee for Region 3 (the "U.S. Trustee"), through

his undersigned counsel, objects to (1) *Debtors' Motion for an Order (I) Approving (A) Key*

*Employee Incentive Plan, and (B) Key Employee Retention Plan; and (II) Granting Related*

*Relief* [D.I. 16 & 75] (the "KERP/KEIP Motion") and (2) *Debtors' Motion for an Order (I)*

*Authorizing the Debtors to Redact Certain Confidential Information in Connection with the*

*Debtors' (A) Key Employee Incentive Plan, and (B) Key Employee Retention Plan; and (II)*

*Granting Related Relief* [D.I. 74] (the "Seal Motion") and, in support of his objection,

respectfully states as follows:

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the proposed undersigned counsel for the Debtors.

## PRELIMINARY STATEMENT

1.      The Court should deny the KERP/KEIP Motion because paying Fixed Payment bonuses to four insiders is retentive (and prohibited by Section 503(c)(1) of the Bankruptcy Code), and because the Debtors have not carried their burden of showing that the Upside Payments to two insiders are adequately incentivizing.

2.      The U.S. Trustee takes no position on the non-insider KERP bonuses proposed in the KERP/KEIP Motion.

3.      The U.S. Trustee objects to the Seal Motion because it seeks to seal the names, titles, and salaries of four insiders of the Debtors.  The Court should not seal that information because the Debtors will need to disclose it in item 4 of their statement of financial affairs.

## JURISDICTION & STANDING

4.      Pursuant to (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve the KERP/KEIP Motion, the Seal Motion, and this objection.

5.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6.      The U.S. Trustee has standing to be heard on the KERP/KEIP Motion and Seal Motion pursuant to 11 U.S.C. § 307.

## FACTUAL AND PROCEDURAL HISTORY

7.     On August 12, 2024, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court.

8.     The Debtors own and operate 94 fitness centers in the United States. *Declaration of Steven Shenker, Chief Restructuring Officer of the Debtors, In Support of Chapter 11 Petitions and First Day Motions* [D.I. 2] ¶ 15.

9.     On August 16, 2024, the Debtors filed a motion seeking approval of bid procedures for a sale of all or substantially all of their assets.  D.I. 81.  The bid procedures motion was filed without a stalking horse bid in place.  The bid procedures hearing is scheduled for September 10.

10.    On August 23, 2024, the U.S. Trustee appointed an official committee of unsecured creditors.  D.I. 109.

11.    On August 12, 2024, the Debtors filed the KERP/KEIP Motion under seal. On August 15, 2024, the Debtors filed a redacted version of the KERP/KEIP Motion.

12.    Through the KERP/KEIP Motion, the Debtors propose to pay four insiders two bonuses.  *See* D.I. 17 ¶ 24 & D.I. 75 Ex. B n.1.  First, two insiders could receive an Upside Payment.  *See* D.I. 17 ¶ 24.  The Upside Payment would be "tied to the total enterprise value of a successful bid.  The Upside Payment may be earned only if the total enterprise value of a successful bid is at least $75,000,000, and either (a) the successful purchaser of the Company[']s assets in a Sale is a party other than a first-priority secured lender of the Company; or (b) the successful bid for the Company[']s assets in the Sale is an overbid submitted by one or more Lender(s)[.]"  KERP/KEIP Mot. Ex. B n.1.

13.     The Debtors have stipulated that they owe not less than $159,262,642 in secured prepetition debt.  D.I. 63 ¶ E(i)(b).  Thus, the Upside Payment could be payable if the Debtors' assets are sold for less than half the value of the prepetition secured debt.

14.     Second, all four of the insiders would receive Fixed Payments.  *See* D.I. 17 ¶¶ 21 & 24.  The Fixed Payment "is earned only upon the closing of a Sale, to each KEIP Participant based on such KEIP Participant's annual salary and target bonus, as reflected on Exhibit B."  KERP/KEIP Mot. ¶ 23.

15.     The Fixed Payment to insiders is substantially similar to the proposed retention payments to non-insiders.  KERP/KEIP Mot. ¶ 18 ("The KERP provides for a fixed retention payment to be made at the closing of the Sale, or shortly thereafter, to each KERP Participant based on such KERP Participant's annual salary and annual target bonus, as reflected on Exhibit B.").

16.     The U.S. Trustee takes no position on the proposed KERP payments to non-insiders.

17.     Through the Seal Motion, the Debtors seek to seal information contained in Exhibit B to the KERP/KEIP Motion, including the names, titles, and salaries of the four participating insiders.

## ARGUMENT

18.     The Debtors have not established that the Upside Payments are adequately incentivizing, or that the Fixed Payments to insiders are incentivizing at all.

19.     Section 503(c) of title 11 of the United States Code (the "Bankruptcy Code") provides in relevant part:

> (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—

(A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

(B) the services provided by the person are essential to the survival of the business; and

(C) either—

(i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

(ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

[ . . . ]

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c).

20.    Section 503(c) restricts debtors from making retention or severance payments to insiders unless the applicable requirements of Section 503(c) have been satisfied.

*See, e.g.*, *In re Foothills Tex., Inc.*, 408 B.R. 573, 577 (Bankr. D. Del. 2009).  Congress added

Section 503(c) to the Bankruptcy Code in 2005 to "eradicate the notion that executives were

entitled to bonuses simply for staying with the Company through the bankruptcy process."  *In re*

*Global Home Prods., LLC,* 369 B.R. 778, 784 (Bankr. D. Del. 2007); *see In re Residential Cap.,*

*LLC*, 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012) ("*ResCap*").  It is widely acknowledged that

Section 503(c) was added to the Bankruptcy Code in response to perceived abuses of the

bankruptcy process by executives of large companies who lined their own pockets at the expense

of employees and retirees.  *See In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 800 (Bankr. D.

Del. 2007).

21.    Courts should examine bonus plans in light of the practice Congress

sought to eradicate and determine if proposed metrics are "designed to motivate insiders to rise

to a challenge or merely report to work."  *In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313

(Bankr. S.D.N.Y. 2012).  An incentive plan "should incentivize employees for their post-petition

efforts, not compensate them for the work they did before the bankruptcy filing."  *ResCap*, 478

B.R. at 161.

22.    The proponent of a bonus plan has the burden of showing that the plan is

not a retention plan governed by Section 503(c)(1).  *See In re Hawker Beechcraft, Inc.*, 479 B.R.

at 313 (citing *In re Mesa Air Grp., Inc.*, 10-10018 (MG) 2010 WL 3810899 at *3 (Bankr.

S.D.N.Y. Sept. 24, 2010)).  To show that a bonus plan falls under Section 503(c)(3), a debtor

must establish by a preponderance of the evidence that the bonus plan is primarily incentivizing,

not retentive.  *See ResCap*, 478 B.R. at 170 *and Nellson*, 369 B.R. at 802.  To be incentivizing, a

bonus plan should be tied to significant goals that are difficult to achieve.  *See, e.g., In re*

*Hawker Beechcraft, Inc.*, 479 B.R. at 313-15 (court rejected proposed bonus plan where lowest

levels of proposed metrics were "well within reach," including sales-price metric that was

"hardly challenging"); *ResCap*, 478 B.R. at 171-72 (court rejected proposed bonus plan where

participants had to remain employed by debtors to receive payment, and additional challenging

performance metrics were lacking); *In re Dana Corp.*, 358 B.R. 567, 583 (Bankr. S.D.N.Y.

2006) (court approved long-term incentive plan where benchmarks were "difficult targets to

reach and [were] clearly not 'lay-ups'").  The proponent must show that the bonus plan is a

performance-based "pay for value" plan, not a "pay to stay" plan.  *See ResCap*, 478 B.R. at 170

(citing *In re Global Home Products, LLC*, 369 B.R. at 783).  Section 503(c) "requires more than

increased responsibilities to justify increased pay for insiders." *Id.* at 168.

      23.    Section 503(c)(3) prohibits the allowance or payment of "transfers or

obligations that are outside the ordinary course of business and not justified by the facts and

circumstances of the case, including transfers made to, or obligations incurred for the benefit of,

officers, managers, or consultants hired after the date of the filing of the petition."  11 U.S.C. §

503(c)(3).  Under Section 503(c)(3), "even if a good business reason can be articulated for a

transaction, the court must still determine that the proposed transfer or obligation is justified in

the case before it.  . . . [W]hen a transaction is proposed between a debtor and its insiders, the

court cannot simply rely on the debtor's business judgment to ensure creditors and the debtor's

estate are being properly cared for."  *In re Pilgrim's Pride Corp.*, 401 B.R. 229, 237 (Bankr.

N.D. Tex. 2009); *but see In re FirstEnergy Solutions Corp.*, 591 B.R. 688, 695 (Bankr. N.D.

Ohio 2018) (observing that most bankruptcy courts view "facts and circumstances" test under

Section 503(c)(3) as equal to business judgment test under Section 363(b)).

      24.    When analyzing Section 503(c)(3), courts may consider whether:

(1) The plan is reasonably designed to achieve the desired results;

        (2) The plan's cost is reasonable in the context of the debtor's assets, liabilities and earning potential;

        (3) The plan has a fair and reasonable scope, applies to all employees, or discriminates unfairly;

        (4) The plan is consistent with industry standards;

        (5) The diligence efforts that went into developing the plan were reasonable; and

        (6) The debtor received independent counsel when developing the plan.

*See Dana*, 358 B.R. at 576-77.

        25.    The Debtors have not shown that the Upside Payments to two insiders are adequately incentivizing.  The Upside Payments could be payable if the Debtors' assets sell for $75 million.  *See* KERP/KEIP Mot. Ex. B n.1.  That is less than half of the pre-petition secured debt that the Debtors are stipulating to, and would just clear the expected DIP loan ($73,500,000, of which $21,000,000 would be new money).  D.I. 13 ¶ 18.  Nor is there assurance that a $75 million sale would leave the estates administratively solvent: the proposed final DIP loan (including roll-up) would be $73,500,000 (of which $21,000,000 is expected to be new money), and the DIP budget projects almost $80 million in disbursements versus $50 million in receipts. *See* D.I. 63 Ex. B.  Further, the line item for fees owed under 28 U.S.C. § 1930(a)(6) may be significantly understated in the DIP budget.[2]  Any insider bonuses should not contribute to any administrative insolvency, nor impair the Debtors' ability to pay all fees owed under 28 U.S.C. § 1930(a)(6).

---

[2] The DIP budget shows two $250,000 amounts for quarterly fees.  Presumably this is for one Debtor reaching the maximum quarterly fee in two quarters.  It is unclear if this $500,000 line item covers quarterly fees for the other 137 Debtors.  It appears 94 of the Debtors who own and/or operate a fitness center will each report its own disbursements and owe its own quarterly fee.  Thus, the amount of quarterly fees owed in these cases could be significantly higher than what is budgeted.  The U.S. Trustee fully and expressly reserves all of his rights, objections, arguments, and remedies regarding quarterly fees in the Debtors' cases.

26.    The Fixed Payments to four insiders are retentive and prohibited by Section 503(c)(1).  There is no significant apparent difference between the Fixed Payments to insiders and the Fixed Payments to non-insiders (which the Debtors concede are retentive).  *Compare* KERP/KEIP Mot. ¶ 18 *with* KERP/KEIP Mot. ¶ 23.  The Fixed Payments simply pay the four insiders for staying with the Debtors through a sale.  Whatever those insiders' sale-related responsibilities are, Section 503(c) "requires more than increased responsibilities to justify increased pay for insiders."  *ResCap*, 478 B.R. at 168.  There is no qualifying performance benchmark that the four insiders must meet to receive the Fixed Payments.  The Court should deny the Fixed Payments to insiders.

27.    The Court should deny the Seal Motion unless the Debtors file the insider participants' names, titles, and salaries unredacted.  That information must be disclosed in item 4 of the Statement of Financial Affairs.  Information that is publicly disclosed elsewhere on the docket should not be sealed in the KERP/KEIP Motion.  *See Togut v. Deutsche Bank AG, Cayman Islands Branch (In re Anthracite Cap., Inc.)*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) ("the Court has no authority to seal public documents or information derived from public documents.").  "There is a strong presumption in favor of public access to bankruptcy proceedings and records.  During a chapter 11 reorganization, a debtor's affairs are an open book and the debtor operates in a fishbowl."  *In re Alterra Healthcare Corp.*, 353 B.R. 66, 73 (Bankr. D. Del. 2006) (citations omitted).

## CONCLUSION

28.    The U.S. Trustee reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be

required and to assert such other grounds as may become apparent upon further factual

discovery.

WHEREFORE, the U.S. Trustee requests that this Court (i) deny the KERP/KEIP Motion

unless (a) the Debtors establish the Upside Payments are adequately incentivizing and (b) the

Fixed Payments to insiders are removed; (ii) deny the Seal Motion unless the insiders' names,

titles and salaries are disclosed; and (iii) grant such other relief as the Court deems fair and just.

Dated: September 3, 2024
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

By: */s/ Benjamin Hackman*
Benjamin A. Hackman
Trial Attorney
Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
benjamin.a.hackman@usdoj.gov