**Exhibit A**

Page 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE
Case No. 11-12590 (MFW)
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In the Matter of:

EVERGREEN SOLAR, INC.

 Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

United States Bankruptcy Court
824 N. Market Street
5th Floor
Wilmington, Delaware

September 6, 2011
11:30 a.m.

B E F O R E:
HON. MARY F. WALRATH
U.S. BANKRUPTCY JUDGE

ECR OPERATOR: MICHAEL MILLER

Case 24-12596-MFW    Doc 1391    Filed 09/06/24    Page 42 of 92
EVERGREEN SOLAR, INC.

Page 42

1  be automatic, with respect to an avoidance action against the
2  Secured Creditors themselves.  I don't know if there is one,
3  Your Honor, we're -- we just got here.  But do think it is
4  inappropriate for the Secured Creditors to say if the Committee
5  finds an avoidance action and succeeds, and is able to obtain
6  money from the secureds because of the avoidance action, we get
7  it back anyway.  I just don't think that's right and I don't
8  think it's appropriate for them to ask for, and we would ask
9  that you not approve it.
10      I realize that in order for this Debtor to access cash
11  collateral, it needs either the consent of the Secured
12  Creditors or it needs Your Honor's determination that the rest
13  of the Cash collateral order provides them with adequate
14  protection.  If the Secured Creditors will not consent, we
15  would ask that you enter such a modified order and find that
16  where money is being spent on liquidation that has been
17  structured by and with the Secured Creditors to enhance their
18  own value, that that in and of itself is adequate protection
19  and they don't deserve these other bells and whistles that they
20  are asking for which are in the nature of making sure that the
21  Committee has no ability to do its job.
22      I understand the Secured Creditors are not eager to agree
23  to a budget over and above what they have already put on the
24  table for the Committee.  But Your Honor, this case is being
25  run for them, and when a case is being run for Secured

Case 24-12596-MFW Doc 1791 Filed 09/06/24 Page 43 of 92
EVERGREEN SOLAR, INC.

Page 43

1  Creditors, I think they should pay the piper, and that is not
2  enough for the Committee to do its job.  There is a major asset
3  of this estate which needs to be sold which the Debtors have
4  repeatedly denigrated in their filings with this Court and
5  which the Secured Creditors don't have a lien on, and we need
6  to be able to function to make sure that it is in fact sold in
7  a way that provides value to unsecured creditors.
8          I'm happy to answer questions.
9          THE COURT:  Well, let me hear from the Lenders.
10         MR. STAMER:  Thank you again, Your Honor.  Your Honor
11 we heard the commentary and the questions that the Court posed
12 to the parties in connection with the original proposed cash
13 collateral order, and we believe we made -- in the first -- in
14 the first instance, we believe that the diminution of the value
15 of our collateral over the next 13 weeks will be far in excess
16 of the actual cash spent.  Nevertheless, we – again, we
17 understand the concerns that have been articulated by the
18 Court, by the Creditors Committee, and in order to move the
19 process along, we have agreed to push that issue off.  So when
20 I say that, our proposed cash collateral order, and what the
21 Debtor is requesting, is that we be given valid liens and
22 superpriority claims to the extent of diminution in value, and
23 we reserve the right -- and you don't – the Court does not make
24 a determination as to what diminution in value is today, but we
25 reserve the right in the future potentially before the bid

Case 24-12596-MFW Doc 1789 Filed 09/06/24 Page 43 of 92
Case 11-12590-MFW Doc 1731 Filed 09/16/11 Page 44 of 92
EVERGREEN SOLAR, INC.

Page 44

1  deadline to get an adjudication by the Court.  In addition,

2  Your Honor, we are sympathetic to the issue associated with the

3  need for the Committee to do its work and over -- or with great

4  reluctance, the members of the Supporting Noteholders agreed to

5  increase the amount of money that is set aside for the

6  Committee to do their work.

7       Your Honor, the Committee can't have it both ways.  Either

8  there are huge unencumbered assets that we are looking to

9  deprive them of, or there are none and we need to pay them in

10 order to find some value.  They can't have it both ways.  Your

11 Honor, this is - this is a liquidation.  It's a liquidation

12 that hopefully will be successful, will be orderly, will

13 preserve jobs, and will -- and there will be a successful

14 conclusion here.  But Your Honor, what we want is, we want --

15 we want appropriate protections for the use of our cash

16 collateral and we do not want in advance of agreeing to fund

17 tens of millions of dollars to allow this to move towards an

18 orderly process, to be exposed whether it is under 506(c), 552,

19 or for that matter, under 363(k).  Your Honor, either we have

20 valid liens or we don't.  If we don't have valid liens, we

21 can't credit bid.  If we don't have valid liens, then we don't

22 have diminution in value claims that will soak up these alleged

23 valuable unencumbered assets.

24      This is a simple company.  It's one Debtor that burns cash

25 that is trying to develop a product, and we have negotiated

Case 24-12596-MFW Doc 1791 Filed 09/06/24 Page 45 of 92
EVERGREEN SOLAR, INC.

Page 45

1  what we think is an appropriate arrangement balancing the
2  company's fiduciary duties to move this forward.  And Your
3  Honor, that is what is embodied in the cash collateral order
4  with the modifications that we have put on the record.  We
5  would support the Debtor's motion for approval of the cash
6  collateral order as proposed, as modified by our comments here
7  today.
8          And Your Honor, I'm happy to answer any other questions
9  the Court has if it would be helpful.
10              THE COURT:  Well, let me ask the question to the
11 extent that my general thought is on Committee professionals to
12 agree to the amounts that the parties may agree among
13 themselves.  But to the extent that I find that the Committee
14 is entitled to more than their bucket, I have often found it
15 appropriate to take from the bucket designated for the Debtors
16 professionals so that administrative professionals all receive
17 the same percentage of their fees.
18              MR. STAMER:  Your Honor, and I'm not coming down
19 either way on this.  From our perspective, we have agreed to
20 fund a certain budget, both with respect to the prosecution of
21 the case, and with respect to if the Debtor decides to propose
22 a plan, we have set aside a certain amount of money, and again,
23 if they propose a plan, they need to pay administrative claims
24 in full.  But Your Honor, from our perspective, we have not
25 agreed and will not support a plan that takes more money out of

Case 24-12596-MFW Doc 1791 Filed 09/06/24 Page 46 of 92
EVERGREEN SOLAR, INC.

Page 46

1  the Lender's pocket, whether it comes - wherever it comes from

2  otherwise, whether it's from unencumbered assets if there

3  really are really are unencumbered assets, or if there's

4  carryover from other budgeted items that are not used, but from

5  our perspective, we cut our deal, and the deal provides for

6  funding at a set amount over a period of time, and we will live

7  by that deal.

8             THE COURT:  All right.  Well, I think you're saying

9  the same thing I am.  You don't care whether it goes to the

10 Committee or the Debtors as long as it's not over that "X"

11 dollars.

12       Does the Committee want to be heard on that?

13            MR. MAYER:  Yes, Your Honor.  I should have submitted

14 this in my - clearer in my statement.  We would be fine being

15 included in the general pot, and that was something we were

16 actually prepared to suggest, that it's all one pot for all the

17 professionals and we will all take our chances.

18            THE COURT:  Okay.  All right. With respect to the

19 credit bidding, to the extent that Lenders have a legitimate

20 secure claim, I am going to allow them to credit bid under

21 363(k).  I think that it is not unusual to give the permission

22 right up front, notwithstanding the equities of the case that

23 is in 363(k), and I would approve that.

24       With respect to the issue of the Lenders getting any

25 proceeds of an avoidance action against themselves, I think in

Case 24-12596-MFW Doc 1391 Filed 09/06/24 Page 47 of 92
Case 11-12590-MFW Doc 1789 Filed 09/06/14 Page 48 of 92
EVERGREEN SOLAR, INC.

Page 47

1  one respect the Committee is correct.  To the extent the

2  avoidance action is successful, I would be finding that there

3  is no appropriate lien, I assume, and that the lien is being

4  avoided, or at least to that extent, and I don't think they

5  would be entitled to adequate protection for that.  So it's

6  somewhat circular, but I don't know that we need to change the

7  language because I think that if they win the avoidance action

8  against the Lenders, there's nothing to fight over.

9            UNIDENTIFIED SPEAKER:  Your Honor, may we just have a

10  moment?

11            MR. STAMER:  Your Honor, can I speak to that just

12  briefly?

13            THE COURT:  Yeah.

14            MR. STAMER:  I'm not sure it's necessarily binary, so

15  you have an -- first of all, I don't think there's any

16  avoidance actions against the Lenders, this may be academic.

17  However, from the Lenders' perspective, to the extent that

18  there is a valid lien and there is a diminution in value as it

19  relates to -- and Your Honor would find that we have a

20  replacement lien -- it would -- the replacement lien and the

21  superpriority claim would relate to all unencumbered assets

22  whatever they were.  This provision would not be designed to

23  insulate the Secured Lenders from anything.  It would --

24  regardless of the source of the money, whether it's the Secured

25  Lenders, whether it's a trade creditor, or whatever it is, if

Case 24-12596-MFW Doc 1789 Filed 09/06/24 Page 49 of 92
EVERGREEN SOLAR, INC.

Page 48

1  at the end of the case, we have a valid lien that has
2  deteriorated in value and we are entitled to a superpriority
3  claim or a lien, it attaches to unencumbered assets without
4  limitations.
5       So our concern is, by somehow carving this out of our
6  adequate protection package, you put a bullseye on the Secured
7  Creditors because --
8            THE COURT:  Well, what do you mean a bullseye?
9            MR. STAMER:  Well, if the -- if there is a claim to
10 be asserted that is not subject as carved out of our adequate
11 protection lien, even if it's a valid adequate protection lien
12 related to something else, that this would be a pocket of value
13 for unsecured creditors just by virtue of the fact that it's
14 assertable against certain of the secured parties.
15           THE COURT:  But if it is asserted against certain of
16 the secured parties, it reduces your secured position.
17           MR. STAMER:  Your Honor, if that's the claim, you're
18 exactly right.  So we can -- you know, hypothetically --
19           THE COURT:  And thereby would reduce your diminution
20 claim, your adequate protection claim.
21           MR. STAMER:  It would, Your Honor.  The point is to
22 the extent there is a remaining diminution claim and adequate
23 protection claim -- Let's say there was a million dollars that
24 went to the Secured Creditors that they wanted to take back,
25 and we had a $10 million court-authorized adequate protection

Case 24-12536-JKS Doc 189 Filed 09/06/24 Page 49 of 92
EVERGREEN SOLAR, INC.

Page 49

1  lien and claim.  The fact that there is a million dollars that
2  came back should not exempt our adequate protection claim from
3  glomming on to that because it's unencumbered value that we
4  have clearly -- that we clearly need to compensated for the
5  diminution.
6              THE COURT:  Positing that the avoidance action is not
7  for all of your liens.
8              MR. STAMER:  That's exactly right.  Your Honor, if we
9  have no liens, this is a long-winded conversation about
10 nothing.
11             THE COURT:  Right.  Yeah.  I think they're right.  To
12 the extent that it's a partial avoidance and there's still some
13 adequate protection due them, I see no reason why they can't
14 get it from an avoidance action against themselves or against
15 anybody else, if that's the only value.  But I think in prior
16 orders I have held that the avoidance -- the adequate
17 protection would be paid from other assets first rather than
18 from the avoidance actions, which lenders are usually not
19 opposed to since avoidance actions usually are the last things
20 collected.
21             MR. STAMER:  Generally averse to marshaling in
22 general, but if you're talking about last as opposed to not --
23 not at all --
24             THE COURT:  Let's make it last.
25             MR. STAMER:  Okay.  Thank you, Judge.

Case 24-12536-JKS Doc 189 Filed 09/06/24 Page 50 of 92
EVERGREEN SOLAR, INC.

Page 50

1         MR. MAYER: Thank you, Your Honor. Actually, I'm --
2   perhaps having worked on this case fewer months than Mr. Stamer
3   -- not as articulate. My only concern is that this provision
4   does not end up eliminating the meaningfulness of relief that
5   we find and it may very well be as Your Honor points out, that
6   if the relief is partial, then it is what it is and they are
7   entitled to get paid their diminution. My concern is that I've
8   missed something and I win, and then it turns out that I didn't
9   win because there's something in this order that says, ha ha,
10  it doesn't make any difference that you won, you have to give
11  it back anyway. I think the colloquy here establishes that's
12  not the intent of the provision, and so long as that's not the
13  intent of the provision, I don't think we will have a problem.
14        THE COURT: Well, I think it's clear if you win
15  everything, they don't get paid even if it says they have an
16  adequate protection lien, it's only if they have a valid lien.
17        MR. MAYER: We will abide what we find and it may end
18  up being that this is not a material element of the case in any
19  event.
20        THE COURT: All right. I think that resolves, then,
21  the cash collateral.
22        MR. SILVERMAN: One last point, Your Honor --
23        THE COURT: Yes.
24        MR. SILVERMAN: -- on a subject that is important and
25  -- With respect to the carve out, it is important to make clear

Case 24-11686-JKS Doc 189 Filed 09/06/24 Page 12 of 12
EVERGREEN SOLAR, INC.

Page 51

1  to the Court that the budget for the professional fees, for the
2  Debtors' fees here is not a generous one, it encompasses
3  investment bankers, lawyers, all kinds of professionals.  As is
4  typically the case, the work done by the Debtors is the lion's
5  share of the case as opposed to the Committee, and to the
6  extent that there is an unfettered amount of litigation that is
7  brought by a committee using up that budget, that would be an
8  inequity --
9           THE COURT:  Well, you can oppose their standing, you
10 can object to their fees.
11          MR. SILVERMAN:  Okay.  Your Honor, I wanted to make
12 this clear on the record, that we cannot just accede to
13 whatever fees and whatever claims that they bring and we have
14 to be quite vigilant about that.  And we also would ask that
15 the Court have -- keep in mind equitable allocations to the
16 extent there is any inroads into the Debtors fee cap for the
17 Committee.
18          THE COURT:  Well, I won't allow any fees that are not
19 appropriate, so --
20          MR. SILVERMAN:  Thank you, Your Honor.
21          THE COURT:  But I do stand on my pro rata for all
22 administrative professionals.
23          MR. SILVERMAN:  Thank you.
24          THE COURT:  All right.  I assume the parties will
25 mark up a cash collateral order then and get it to me under