**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BLINK HOLDINGS, INC., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 24-11686 (JKS)<br><br>(Jointly Administered)<br><br>Ref. Docket Nos. 81 & 172 |

**DECLARATION OF ANDREW SWIFT IN SUPPORT OF THE
DEBTORS' MOTION FOR ENTRY OF ORDERS (I) (A) APPROVING
CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE
THEREOF, (B) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL
OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS,
(C) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES
AND APPROVING MANNER OF NOTICE THEREOF, AND (D) GRANTING
RELATED RELIEF; AND (II) (A) AUTHORIZING AND APPROVING THE
DEBTORS' ENTRY INTO AN ASSET PURCHASE AGREEMENT,
(B) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL
OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES,
(C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE
ASSUMED CONTRACTS, AND (D) GRANTING RELATED RELIEF**

I, Andrew Swift, hereby declare as follows under penalty of perjury:

1.　　I am a managing director at Moelis & Company LLC ("**Moelis**"), which maintains its principal office at 399 Park Avenue, 4th Floor, New York, New York 10022. Moelis is the proposed investment banker to the above-captioned debtors and debtors in possession (collectively, the "**Debtors**").

2.　　I submit this declaration ("**Declaration**") on behalf of the Debtors in support of the *Debtors' Motion for Entry of Orders (I) (A) Approving Certain Bidding*

---

[1]　The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the proposed undersigned counsel for the Debtors.

*Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (D) Granting Related Relief; and (II) (A) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [Docket No. 81] (the "**Bidding Procedures Motion**").[2]

3. Unless otherwise stated herein, all statements set forth in this Declaration are based upon (i) my and Moelis's experiences in other similar chapter 11 cases; (ii) Moelis's analyses regarding the proposed bidding procedures in these and other chapter 11 cases; (iii) discussions with certain other professionals at Moelis and with the Debtors' other advisors; and/or (vi) my opinions based upon my experience and knowledge.

4. I am over the age of eighteen (18) and authorized to submit this Declaration on behalf of the Debtors. I am not being specifically compensated for this testimony other than through payments received by Moelis, as a proposed professional to be retained by the Debtors. If called upon to testify, I could and would testify as to the facts set forth herein.

5. Prior to the Petition Date, the Debtors engaged Moelis as investment banker to market all or substantially all of the Debtors' assets (the "**Assets**") and otherwise explore potential transactions to maximize value for all stakeholders. This marketing process is well underway, and Moelis is in ongoing communications with numerous parties, including potential

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Bidding Procedures Motion or the *Declaration of Steven Shenker, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 2], as applicable.

bidders who have provided the Debtors with preliminary indications of interest to acquire some or all of the Assets.

6.     As further explained below, based on my experience in other chapter 11 cases, current market conditions, the Debtors' circumstances, and the preliminary indications of interest to acquire some or all of the Assets, I believe the marketing and Sale process described in the Bidding Procedures are appropriate to facilitate the Debtors efforts to maximize the value of the Assets for all stakeholders.

## BACKGROUND AND QUALIFICATIONS

7.     Moelis has advised companies, creditors, investors, and financial sponsors across various industries on a range of in-court and out-of-court restructurings, financings, and other transactions, in traditional and distressed situations. Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including, among others: *In re Express, Inc., et al.,* No. Case No. 24-10831 (KBO) (Bankr. D. Del. June 5, 2024); *In re Diamond Sports Grp., LLC, et al.,* No. 23-90116 (CML) (Bankr. S.D. Tex. May 8, 2023); *In re Invitae Corp., et al.,* No 24-11362 (MBK) (Bankr. NJ, April 23, 2023); *In re Party City Holdco Inc., et al.* No. 23-90005 (DRJ) (Bankr. S.D. Tex. Feb. 21, 2023); *In re Genesis Global Holdco, LLC, et al.,* No. 23-10063 (SHL) (Bankr. S.D. NY., Feb. 17, 2023); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re TPC Grp. Inc.*, No. 22-10493 (CTG) (Bankr. D. Del. June 30, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Brazos Elec. Power*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. Mar. 1, 2021); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Jan. 31, 2021); *In re Mallinkrodt plc, No. 20-12522* (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re Energy Alloys Holdings, LLC,* No. 20-12088; (MFW) (Bankr. D. Del. Nov. 23, 2020); *In re Internap Tech.*

3

*Sols. Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); and *In re Rentpath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020).[3]

8. I received a Bachelor of Arts degree from the University of Michigan. I currently hold the Series 79 and Series 63 securities licenses.

## THE MARKETING PROCESS

9. Since Moelis was retained in May 2024, Moelis has worked closely with the Debtors and their other professional advisors to become knowledgeable about the Debtors' business, finances, and operations. I have participated directly in discussions, due diligence, and negotiations with potential bidders. In doing so, I have been working closely with the Debtors' management, legal counsel, and other advisors.

10. Prior to the Petition Date, Moelis assisted the Debtors in evaluating potential sources of additional debt financing and commenced a marketing process for a sale of the Assets. As part of this process, the Debtors and Moelis engaged a targeted group of potential bidders and held several diligence meetings in July and August 2024, which led to the receipt of several indications of interest with potential bidders.

11. While the Debtors received significant interest, the Debtors, in consultation with Moelis, determined it was not feasible to transact quickly enough with any of these parties to avoid commencement of the Chapter 11 Cases.

12. Since the Petition Date, Moelis has reached out to over 160 strategic and financial parties regarding the potential sale of the Assets. Of these, 44 have executed non-

---

[3] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Declaration. Copies of these orders are available upon request of the Debtors' proposed counsel.

disclosure agreements and have been provided access to a data room established and populated with various materials to assist potential bidders in evaluating a possible transaction.

## BIDDING PROCEDURES TIMELINE

13. Under the proposed Bidding Procedures, the Debtors are allowing parties approximately 70 days following the Petition Date to conduct diligence and submit a Bid. Further, the Debtors intend to hold an auction approximately 77 days following the Petition Date and have requested that a Sale Hearing be held on November 6, 2024 in an effort to enable prompt approval and prompt closing of any proposed sale. In my opinion, this process should be sufficient when viewed in the context of the Debtors' extensive marketing process. In light of the prepetition and postpetition marketing process, I do not currently believe that a longer in-court process than that set forth in the proposed Bidding Procedures will be necessary nor the most effective use of the Debtors' limited resources.

14. Further, time is of the essence for the Debtors, who I believe cannot afford a longer process than the one contemplated by the Bidding Procedures. I believe that any delay in consummation of a sale jeopardizes the Debtors' ability to prosecute the Chapter 11 Cases and operate their businesses in an efficient manner for the benefit of all creditors, particularly because the Debtors have limited access to postpetition financing. While time is of the essence, I believe that the Bidding Procedures balance the Debtors' need to efficiently consummate a sale of the Assets while providing adequate notice to parties in interest of the Debtors' postpetition marketing process for obtaining bids.

15. Accordingly, it is my opinion that the Bidding Procedures are in the best interests of the Debtors' estates and creditors, as they have been structured to establish a uniform process in which interested bidders can participate in a competitive Auction, and to facilitate one

or more value-maximizing sales of the Assets on a timeline that I believe balances the need for a swift transaction given liquidity constraints with a timeline designed to help ensure maximum participation.

## A SOUND BUSINESS PURPOSE EXISTS FOR THE BIDDING PROCEDURES

16. As set forth in the Bidding Procedures Motion, the Debtors are seeking approval of the Bidding Procedures to establish a clear and transparent process for the solicitation, receipt, and evaluation of Bids on a Court-approved timeline that should allow the Debtors to timely consummate a sale or disposition, and/or reorganization, of the Debtors and their Assets.

17. I have reviewed the Bidding Procedures. Generally speaking, the Bidding Procedures establish, among other things:

   a. a robust due diligence process for potential bidders;

   b. the deadlines and requirements for submitting competing bids and the method and criteria by which such competing bids will be deemed to be "Qualified Bids" sufficient to trigger the Auction, including the terms and conditions that must be satisfied and the deadline that must be met by any bidder to be considered a "Qualified Bidder" and to participate in the Auction;

   c. the Debtors' authority to designate one or more Stalking Horse Bidders, and, subject to Court approval, to seek Bid Protections for such Stalking Horse Bids;

   d. the manner in which Qualified Bids will be evaluated by the Debtors;

   e. the conditions for holding the Auction and procedures for the Auction, if any; and

   f. various other matters relating to the sales and marketing process generally, including the designation of the Next-Highest Bid.

18. The Bidding Procedures propose the following key dates and deadlines:

| Date | Deadline/Event |
|---|---|
| September 10, 2024 at 1:00 p.m. (ET) | Bidding Procedures Hearing |
| September 16, 2024 | Deadline for Debtors to file the Assumption and Assignment Notice and Cure Schedule |
| September 20, 2024 at 4:00 p.m. (ET) | Stalking Horse Supplement Deadline |
| September 30, 2024 at 4:00 p.m. (ET) | Deadline to object to the Debtors' proposed Cure Costs |
| October 14, 2024 at 4:00 p.m. (ET) | Deadline to object to the Sale[4] of the Assets |
| October 21, 2024 at 4:00 p.m. (ET) | Bid Deadline |
| October 22, 2024 at 4:00 p.m. (ET) | Deadline for Debtors to notify Potential Bidders of whether their Bids are Qualified Bids |
| October 28, 2024 at 10:00 a.m. (ET) | Auction (if necessary) |
| October 28, 2024 at 11:59 p.m. (ET) | Deadline to file and serve Notice of Successful Bidder |
| November 1, 2024 at 4:00 p.m. (ET) | Deadline to object to (i) conduct of the Auction; (ii) the proposed Sale to the Successful Bidder; (iii) the form of the sale agreement (to the extent terms differ from those set forth in the agreement of a Stalking Horse Bidder); and (iv) ability of the Successful Bidder to provide adequate assurance of future performance, or the proposed form of adequate assurance of future performance |
| November 6, 2024 at 11:00 a.m. (ET) | Sale Hearing |
| November 27, 2024 | Closing |

19. Based on my experience, I believe that the Bidding Procedures are designed to seek to maximize the value available for the Assets under the circumstances by facilitating a fair and competitive bidding process where potential bidders are encouraged to participate and

---

[4] This objection deadline applies to all objections to this Motion and the Sale of the Assets to a Successful Bidder, with the exception of objections related solely to conduct of the Auction, identity of the Successful Bidder(s), the form of sale agreement (to the extent the terms differ from those set forth in the agreement of a Stalking Horse Bidder), and adequate assurance of future performance by the Successful Bidder(s).

7

submit competing bids within the specified time frame.  As described in the Motion, the proposed Bid Deadline requires bids for the purchase of the Assets to be delivered no later than 70 days after the Petition Date.  The Bid Deadline thus provides parties with approximately 10 weeks to obtain information and formulate and submit timely and informed competing bids to purchase some or all of the Assets.

20. Given the active process for the Assets that is already well underway, the publicity surrounding the Chapter 11 Cases, the costs attendant to an extended marketing process, and the process timeline proposed by the Debtors, it is my view, based on my experience and in light of the circumstances, that the proposed postpetition sales and marketing process set forth in the Bidding Procedures is reasonable and appropriate under the circumstances.  The Bidding Procedures seek to balance the Debtors' interests in consummating a sale transaction on a reasonable timeline while simultaneously preserving the opportunity to attract the highest or otherwise best offer available under the circumstances.  At the Auction, as set forth in the proposed Bidding Procedures, the Debtors will have an opportunity to consider all competing offers and to select the offers that they deem to be the highest or otherwise best offer for the Assets under the circumstances.

## **CONCLUSION**

21. As described herein, it is my belief that the proposed Bidding Procedures are generally consistent with sales and marketing timelines in similar situations for businesses of similar size and complexity, and the terms and conditions of the proposed Bidding Procedures, taken as a whole, are fair and reasonable.  Also, I believe that the terms of the proposed Bidding Procedures should encourage bidding for the Debtors' assets and should allow for an efficient marketing and sales process.  Accordingly, I respectfully submit that the terms of the proposed

Bidding Procedures are necessary, reasonable, and appropriate under the circumstances of these Chapter 11 Cases.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: September 6, 2024

*/s/ Andrew Swift*
Andrew Swift
Managing Director
Moelis & Company LLC
