# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. 81 |

**ORDER (A) APPROVING CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF, (B) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (C) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND APPROVING MANNER OF NOTICE THEREOF, AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the entry of an order (this "**Order**") (i) approving certain bidding procedures attached hereto as Exhibit 1 (the "**Bidding Procedures**") for the sale of certain of the Debtors' assets (the "**Sale**") and the form and manner of notice thereof substantially in the form attached hereto as Exhibit 2 (the "**Sale Notice**"), (ii) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Bidding Procedures, (iii) scheduling an Auction and a Sale Hearing in connection with the Sale, and (iv) establishing certain assumption and assignment procedures and approving manner of notice thereof substantially in the form attached hereto as Exhibit 3

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion or the Bidding Procedures, as applicable.

(the "**Assumption and Assignment Notice**,"); the Court having reviewed the Motion and the *Declaration of Andrew Swift in Support of the Motion* [Docket No. 174]; and the Court having considered the statements of counsel, the First Day Declaration and any other declarations submitted in support of the Motion; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.  The Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014.  Venue of the Chapter 11 Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The Debtors have offered good and sufficient reasons for, and the best interest of their estates will be served by, the Court granting the Motion to the extent provided in this Order, including (i) approving the Bidding Procedures, attached hereto as Exhibit 1, and form and manner of notice thereof substantially in the form of the Sale Notice, attached hereto as Exhibit 2, (ii) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder in accordance with the Bidding Procedures, (iii) scheduling an Auction and a Sale Hearing in connection with the Sale, and (iv) establishing certain assumption and assignment procedures and

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

approving manner of notice thereof substantially in the form of the Assumption and Assignment Notice, attached hereto as <u>Exhibit 3</u>.

C.  Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required except as set forth herein with respect to the Auction and the Sale Hearing. Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D.  In accordance with Local Rule 6004-1, the Debtors have properly filed and noticed the Motion. The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to prevent immediate and irreparable harm to the Debtors and their estates.

E.  The proposed Sale Notice, Stalking Horse Supplement, and the Assumption and Assignment Notice, as set forth in the Motion and this Order, are appropriate, sufficient, and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Stalking Horse APA, the Sale Hearing, the Bidding Procedures, and the assumption and assignment of the Assumed Contracts, and no other or further notice shall be required for the Sale or the assumption and assignment of the Assumed Contracts.

F.  The process for filing the Stalking Horse Supplement and the granting of any Bid Protections is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (i) the identification of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) a description of the Assets proposed to be sold under the Stalking Horse Bid, (iii) the

amount of the Stalking Horse Bid and what portion (if any) is cash; (iv) whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (v) any proposed Bid Protections; (vi) the Stalking Horse APA; (vii) the Stalking Horse Objection Deadline (as defined below); and (viii) the Stalking Horse Approval Order (as defined below).

    G.  The Bidding Procedures are fair, reasonable, and appropriate under the circumstances, and are reasonably designed to maximize the value to be achieved for the Assets.

    H.  The Assumption and Assignment Procedures provided for herein and the Assumption and Assignment Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures and the Assumption and Assignment Notice have been tailored to provide an adequate opportunity for all counterparties to assert any objections to the assumption and assignment of Assumed Contracts and related Cure Costs.

    **NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

    1.  The Motion is GRANTED to the extent provided herein.

    2.  The Bidding Procedures, attached as <u>Exhibit 1</u> to this Order, are hereby approved in their entirety, incorporated by reference as if fully set forth herein, and shall govern all Bids and Bid proceedings relating to the Assets. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

    3.  The Debtors will file and serve a proposed form of Sale Order on or before **4:00 p.m. (prevailing Eastern Time) on October 4, 2024**. Objections to approval of the Sale (with the exception of objections related solely to the conduct of the Auction, identity of the Successful Bidder, the form of the sale agreement (to the extent terms differ from those set forth in the agreement of a Stalking Horse Bidder), and ability of the Successful Bidder to provide

adequate assurance of future performance, which must be received by a different deadline), must be in writing, state the basis of such objection with specificity, and be filed with this Court and served on or before **4:00 p.m. (prevailing Eastern Time) on October 14, 2024** (the "**Sale Objection Deadline**") on the following parties (collectively, the "**Notice Parties**"):

(a) counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com), Sean T. Greecher (sgreecher@ycst.com), and Allison S. Mielke (amielke@ycst.com);

(b) counsel to the Prepetition Agent and the DIP Agent, (a) Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, Illinois 60661, Attn: Peter P. Knight (peter.knight@katten.com) and Allison E. Yager (allison.yager@katten.com), and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Curtis S. Miller (cmiller@morrisnichols.com);

(c) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov); and

(d) proposed counsel to the Official Committee of Unsecured Creditors (the "**Committee**"), (a) Kelley Drye & Warren LLP, 175 Greenwich Street, New York, New York 10007, Attn: Eric R. Wilson (ewilson@kelleydrye.com) and Kristin S. Elliott (kelliott@kelleydrye.com), and (b) Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attn: Eric J. Monzo (emonzo@morrisjames.com) and Brya Keilson (bkeilson@morrisjames.com).

4. All objections to the entry of this Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

### A. Designation of Stalking Horse Bidder

5. The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, to (i) designate a Stalking Horse Bidder, (ii) enter into a Stalking Horse APA in accordance with the Bidding Procedures, and (iii) agree to any bid protections (the "**Bid Protections**") subject to further Court

approval, in each case at any time prior to the Auction and in accordance with this Order and the Bidding Procedures annexed hereto.

6.  In the event that the Debtors designate a Stalking Horse Bidder and enter into the Stalking Horse APA on or prior to September 20, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "**Stalking Horse Supplement Deadline**"), the Debtors shall file a supplement to the Motion (the "**Stalking Horse Supplement**") seeking approval of the same, with no less than three (3) business days' notice of the objection deadline (the "**Stalking Horse Objection Deadline**") to the U.S. Trustee, the Consultation Parties, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases (the "**Stalking Horse Notice Parties**") with no further notice being required, provided that the Stalking Horse Supplement (i) sets forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) describes the Assets proposed to be sold under the Stalking Horse Bid; (iii) sets forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (iv) states whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (v) specifies any proposed Bid Protections; (vi) attaches the Stalking Horse APA, including all exhibits, schedules or attachments thereto; and (vii) sets forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections. The Stalking Horse Supplement shall also include any evidence the Debtors would like the Court to consider in connection with any request to approve any breakup fee and/or expense reimbursement and/or any other Bid Protections as an administrative expense under section 503(b) of the Bankruptcy Code.

7.  If the Stalking Horse Bidder and the Stalking Horse APA are designated after the occurrence of the Stalking Horse Supplement Deadline, but prior to the Auction, the

Debtors reserve the right to file a motion with the Court seeking approval, on an expedited basis, of the Stalking Horse Bidder and Stalking Horse APA, subject to consultation with the Consultation Parties prior to the filing of any proposed motion. The Stalking Horse Supplement or motion, as applicable, shall set forth the reasons the Debtors believe any Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code. For the avoidance of doubt, nothing in this Order is shifting the Debtors' burden of proof that the Bid Protections are actually necessary to preserve the value of the estates pursuant to section 503(b) of the Bankruptcy Code. Nothing in this Order shall be deemed to award any Bid Protections (i) related to a credit bid or (ii) in favor of an insider or affiliate of the Debtors.

8. Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "**Stalking Horse Objection**") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court and served on the Stalking Horse Notice Parties within three (3) business days after the service of the Stalking Horse Supplement.

9. If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid on or before September 25, 2024 (but in no event fewer than three (3) business days after the service of the Stalking Horse Supplement). If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtors are authorized submit to the Court an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse APA (the "**Stalking Horse Approval Order**"), which may be entered by the Court without a hearing, including with respect to any Bid Protections set forth in the Stalking Horse Supplement;

*provided*, however, that the Debtors shall have provided a copy of the Stalking Horse Approval Order to the Committee no less than two (2) business days prior to filing such certification of counsel. For the avoidance of doubt, no determination is made in this Order regarding the authorization of any Bid Protections.

10. Upon entry of an order approving the Stalking Horse Bidder and the Bid Protections, the Debtors' obligations to pay the Bid Protections shall constitute, pursuant to section 503(b) of the Bankruptcy Code, an administrative expense claim against the Debtors' bankruptcy estates. For the avoidance of doubt, this Order does not grant the Bid Protections superpriority expense treatment pursuant to sections 364(c)(1) or 507(b) of the Bankruptcy Code, but the Debtors reserve their rights to do so by filing a separate motion with the Court. Any claim for Bid Protections shall be subject in all respects to the Carve-Out (as defined in the DIP Orders).

### B. The Bidding Procedures, Auction, and Sale Hearing

11. The deadline for submitting a Qualified Bid shall be **October 21, 2024 at 4:00 p.m. (prevailing Eastern Time)**, unless extended by the Debtors pursuant to the Bidding Procedures (the "**Bid Deadline**").

12. For the purposes of the Bidding Procedures: (a) upon entry of the Stalking Horse Approval Order, any designated Stalking Horse Bidder will be considered a Qualified Bidder, and any Stalking Horse APA will be considered a Qualified Bid; (b) a Credit Bid submitted under section 363(k) or any other applicable provision of the Bankruptcy Code will be considered a Qualified Bid and any bidder that submits a Credit Bid will be considered a Qualified Bidder, subject in all respects to applicable provisions of the DIP Orders; and (c) in determining whether the Potential Bidders constitute Qualified Bidders, the Debtors may consider a combination of bids for the Assets.

13. All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Assets.

14. If no Qualified Bid other than any Stalking Horse Bid is submitted on or before the Bid Deadline, the Debtors will not hold an Auction, will file and serve a notice of cancellation of the Auction, and will request at the Sale Hearing that this Court approve the Stalking Horse APA.

15. If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct the Auction. The Auction will take place on **October 28, 2024, starting at 10:00 a.m. (prevailing Eastern Time)** at the offices of Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022. Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction.

16. Each Qualified Bidder participating at the Auction will be required to confirm in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

17. Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best Bid for the Assets or subsets thereof. As soon as possible following the Auction, but no later than twenty-four (24) hours after conclusion of the Auction, the Debtors shall file a notice on this Court's docket identifying the Successful Bidder(s) for the Assets (or subset thereof) and the Next-Highest

Bidder(s) (the "**Notice of Successful Bidder**") and shall serve the Notice of Successful Bidder on parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

18. Objections related solely to conduct of the Auction, the identity of the Successful Bidder, the form of the sale agreement (to the extent terms differ from those set forth in the agreement of a Stalking Horse Bidder) and adequate assurance of future performance by the Successful Bidder must be in writing, state the basis of such objection with specificity, and be filed with this Court and served so as to be received by the Notice Parties on or before **November 1, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "**Auction Objection Deadline**").

19. The Court shall convene the Sale Hearing on **November 6, 2024 at 11:00 a.m. (prevailing Eastern Time)** or as soon thereafter as counsel and interested parties may be heard, at which time the Court will consider approval of the Sale to the Successful Bidder(s) and the entry of the Sale Order. At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder(s). At the Sale Hearing, the Debtors will seek approval of their selection of the Next-Highest Bidder as the next highest and best bid, but approval of assumption and assignment of any contract or leases to the Next-Highest Bidder shall not be considered or approved at the Sale Hearing, nor shall affected landlords or counterparties be required to object to the Next-Highest Bidder prior to the filing and service of the notice of intent to proceed with Next-Highest Bid. Subject to consultation with the Consultation Parties, the Debtors may adjourn the Sale Hearing from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing or in notice or agenda filed with the Court.

### C. Assumption and Assignment Procedures

20. On or before September 16, 2024, the Debtors will file an Assumption and Assignment Notice, substantially in the form attached as <u>Exhibit 3</u> to this Order, which shall include a schedule of cure obligations (the "**Cure Schedule**") for the Assumed Contracts, and shall serve such Assumption and Assignment Notice on each of the non-Debtor parties listed therein, and their counsel of record, if known, by first class mail at the notice address in the lease or contract and email, if known, on the date the Assumption and Assignment Notice is filed with the Court.  The Cure Schedule will include a description of each Assumed Contract potentially to be assumed and assigned by a potential buyer and the liquidated amount as of the Petition Date, if any, the Debtors believe is necessary to cure, or compensate the non-Debtor parties for, any prepetition monetary defaults under such agreements pursuant to section 365 of the Bankruptcy Code (the "**Cure Costs**"). Any counterparty to an Assumed Contract shall, upon request to the Debtors' counsel, be provided with Adequate Assurance Information relevant to the affected counterparties as soon as practicable after it is received by the Debtors.  Any party requesting such Adequate Assurance Information shall have (a) with respect to any Stalking Horse Bidder, the later of the Sale Objection Deadline and the date that is seven (7) days after receipt of the Stalking Horse Bidder's Adequate Assurance Information, or (b) with respect to any other Bidder, the Auction Objection Deadline, to object on the basis of any Adequate Assurance Information that is provided.  Any counterparty that receives any Adequate Assurance Information with respect to the Stalking Horse Bidder or any other Qualified Bidder shall review such information on a confidential basis and shall not disclose such information to any party.  Such counterparty may not use or disclose, except to representatives, attorneys, advisors and financing sources ("**Representatives**"), any confidential Adequate Assurance Information for any purpose other than: (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of

11

the Bankruptcy Code has been provided; and (b) in support of any Adequate Assurance Objection by such counterparty. Any Representative receiving Adequate Assurance Information shall be notified of and shall be deemed to be bound by the restrictions set forth in this Order. If any non-Debtor counterparty files an objection to the Sale that references Adequate Assurance Information in any way, such counterparty shall be permitted to file such objection and information under seal without having to seek an order of the Court to seal such information.

21. Objections to the Cure Costs (a "**Cure Objection**") set forth in the Cure Schedule must be in writing, filed with the Court, and be served on the Notice Parties no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days from the date of service of the Assumption and Assignment Notice. Any such objections shall claim a specific monetary amount that differs from the amount (if any) specified by the Debtors in the Cure Schedules, and attach any applicable documentation in support of such amount that will be made available to the applicable Notice Parties; *provided*, however, that objecting parties are (i) not required to attach documentation that is voluminous (they may attach a summary), and (ii) may redact confidential information from any public filing.

22. To the extent the Debtors, at any time after service of the Cure Schedule (i) identify additional Assumed Contracts to be assumed and assigned to the Stalking Horse Bidder or other Successful Bidder (the "**Additional Assumed Contracts**"); and/or (ii) modify the previously stated Cure Costs associated with any Assumed Contracts (a "**Modified Cure Contract**"), the Debtors shall promptly file with this Court and serve by first-class mail and email (if known), as applicable, a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such Additional Assumed Contracts and Modified Cure Contracts and their respective counsel of record, if any. If any Additional Assumed

12

Contracts are listed on a Supplemental Assumption Notice that is filed and served less than fourteen (14) days prior to the Sale Hearing, the Sale Hearing will proceed solely as a status conference with respect to the assumption and assignment of such Additional Assumed Contracts. Counterparties to Additional Assumed Contracts or Modified Cure Contracts shall have until 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after the service of the Supplemental Assumption Notice to file a Cure Objection (as defined below).

23. Unless a non-Debtor party to an Assumed Contract has timely and properly filed and served a Cure Objection or to the sufficiency of Adequate Assurance Information provided in accordance with this Order, such non-Debtor counterparty shall (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assumed Contract, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; (ii) be deemed to have consented to the assumption and assignment to the Successful Bidder of such Assumed Contract; and (iii) be forever barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, the Successful Bidder or their respective property that any additional prepetition amounts are due or other prepetition defaults exist, that conditions to assignment must be satisfied under such Assumed Contract or that there is any objection or defense to the assumption and assignment of such Assumed Contract. In addition, the Cure Costs set forth in the Cure Schedule shall constitute a final determination of the total Cure Costs required to be paid by the Debtors in connection with the assumption and assignment of the Assumed Contracts.

24. Where a non-Debtor counterparty to an Assumed Contract timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount (the "**Disputed Cure Amount**"), then (a) to the extent that the parties are able to

consensually resolve the Disputed Cure Amount, the Cure Amount shall be as agreed between the parties, or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection, including payment of cure (if any), will be heard at the Sale Hearing or such other date as the parties or the Court determine.

### D. Notice Procedures

25. The form of the Sale Notice and the Assumption and Assignment Notice annexed hereto are hereby approved and appropriate and sufficient for all purposes and no other or further notice shall be required. No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale.

26. As soon as reasonably practicable after entry of this Order, the Debtors shall cause the Sale Notice to be served upon the following: (i) the U.S. Trustee; (ii) the Committee; (iii) the United States Department of Justice; (iv) all state attorneys' general and consumer protection agencies in jurisdictions in which the Assets are located; (v) counsel to the Prepetition Agent and DIP Agent; (vi) counsel to Equinox Holdings, Inc.; (vii) all parties who are known by the Debtors to assert liens against the Assets, if any; (viii) all non-Debtor parties to the Assumed Contracts; (ix) any party known or reasonably believed to have expressed an interest in acquiring some or all or substantially all of the Debtors' assets within six (6) months prior to the Petition Date, which service may be sent electronically if a mailing address for any such parties is unknown; and (x) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

27. In addition, the Debtors shall publish the Sale Notice once in the national edition of The New York Times, or similar nationally circulated publication, as soon as practicable after entry of this Order and post the Stalking Horse Supplement, if applicable, the Sale Notice, and this Order on the website of the Debtors' claims and noticing agent:

https://dm.epiq11.com/BlinkFitness. Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008 and is reasonably calculated to provide notice to any affected party, including any Potential Bidder(s), and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

28. Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto for purposes of section 363(f)(2) of the Bankruptcy Code.

### E. Other Resolutions.

29. Each Qualified Bidder shall provide notice in connection with its Bid whether such Qualified Bidder intends to use or replace bonds issued by Hartford Fire Insurance Company ("**Hartford**"), and to the extent the Qualified Bidder intends to use bonds issued by Hartford, such bidder shall provide Hartford with Adequate Assurance Information and any transitional agreement that may contemplate the use of Hartford's bonds, and Hartford shall have the opportunity to object.

30. In the event there is any conflict between this Order and the Bidding Procedures, the terms and conditions of this Order shall control and govern in all respects.

31. For the avoidance of doubt, all objections to the application and allocation of any proceeds of the Sale on account of prepetition secured debt subject to a Challenge are expressly preserved and subject to the Sale Objection Deadline.

32. The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied, modified, or waived.

33. Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7052 or 9014, this Order shall be immediately effective and enforceable upon its entry. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**Dated: September 10th, 2024**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**