## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. 13, 53 |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING, AND (B) UTILIZE CASH COLLATERAL; (II) GRANTING SENIOR SECURED PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF**

Upon consideration of the motion, dated August 12, 2024 (the "**Motion**")[2] of Blink Holdings, Inc. and its debtor affiliates, as debtors in possession (collectively, the "**Debtors**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2, 9006-1, and 9013 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking interim relief pursuant to the Interim

---

[1]     The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354.  The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion, the DIP Credit Agreement (defined below), or the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Utilize Cash Collateral; (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to the Prepetition Secured Parties; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [ECF No. 53] (the "**Interim Order**"), as applicable.

Order, and the following final relief pursuant to this final order (this "**Final Order**" and together

with the Interim Order, the "**DIP Orders**"):

(i)  authorizing Blink Holdings, Inc., in its capacity as borrower (the "**DIP Borrower**"), to obtain postpetition financing, and for each of the other Debtors (the Debtors, other than the DIP Borrower, collectively, the "**DIP Guarantors**") to guarantee unconditionally, on a joint and several basis, the DIP Borrower's obligations pursuant to and in connection with a superpriority senior secured multiple draw term loan credit facility (the "**DIP Facility**") in the aggregate principal amount of $73.5 million (the "**Maximum Commitment**"), consisting of (a) new money term loan commitments in the maximum aggregate principal amount of $21 million (the "**New Money DIP Loans**", and the portion of such Maximum Commitment attributable to the New Money DIP Loans, the "**New Money Maximum Commitment**"), of which (1) upon entry of the Interim Order, up to $10.5 million in principal amount of such New Money DIP Loans which was made available to be drawn during the Interim Period subject to satisfaction of the other applicable conditions set forth in the Interim Order, the DIP Credit Agreement (defined below) and all other terms and conditions set forth in the DIP Documents (defined below) and (2) upon entry of this Final Order, up to the full New Money Maximum Commitment (net of such commitment already drawn), shall be made available to be drawn subject to the satisfaction of the other applicable conditions set forth in the DIP Credit Agreement and all other terms and conditions set forth in the DIP Documents and the DIP Orders (as defined below); (b) a roll-up, upon entry of the Interim Order, by the Roll-Up Lenders (defined herein) of their ratable share of certain Prepetition Obligations (defined below) in respect of the Prepetition Protective Advances (defined below), including, without limitation, interest and fees thereon, in the aggregate amount of $17,414,235.74 into DIP Obligations *pari passu* with the New Money DIP Loans (the "**Interim Roll-Up**") and (c) an additional roll-up, subject to entry of this Final Order, by the Roll-Up Lenders of their ratable share of a portion of additional Prepetition Obligations (other than Protective Advances and interest thereon) in respect of Term Loans and Delayed Draw Term Loans (as defined in the Prepetition Credit Agreement, as defined below) in the additional amount of $35,085,764.26 into DIP Obligations junior to the New Money DIP Loans and Interim Roll-Up (the "**Final Roll-Up**", and together with the Interim Roll-Up, the "**Roll-Up**"; and together with the New Money DIP Loans, collectively, the "**DIP Loans**").

(ii)  authorizing the DIP Borrower and the DIP Guarantors to (a) enter into and perform their respective obligations under that certain *Senior Secured Priming and Superpriority Debtor-in-Possession Credit and Guaranty Agreement*, dated as of August 12, 2024, among the DIP Borrower, the DIP Guarantors, the lenders party thereto (collectively in such capacities, and collectively with the Roll-Up Lenders (defined below), the "**DIP Lenders**"), and Varagon Capital Partners Agent, LLC, as administrative agent (in such capacity, the "**DIP Agent**" and, together with the DIP Lenders, the "**DIP Secured Parties**"), substantially in the form attached hereto as **Exhibit A** (as the same may be amended, restated, supplemented, waived, or

otherwise modified from time to time in accordance with its terms and the terms of the DIP Orders (as defined below), the "**DIP Credit Agreement**"), and all other agreements, documents, and instruments delivered or executed in connection therewith (including any fee letters or schedules executed in connection with the DIP Facility, and any guarantee and security documentation) (collectively with the DIP Credit Agreement, the respective DIP Orders and all other documents and instruments included in the definition of "Loan Documents" in the DIP Credit Agreement, the "**DIP Documents**"); and (b) enter into and perform such other and further acts as may be required in connection with the DIP Credit Agreement, the DIP Orders and the other DIP Documents;

(iii)     authorizing the Debtors to use the proceeds of the DIP Loans and the DIP Collateral (defined below), including Prepetition Collateral (as defined below) and Cash Collateral (defined below), to (a) in each case solely in accordance with the Approved Budget and the Budget Covenant (each as defined below), (1) fund the postpetition working capital and general corporate needs of the Debtors and (2) fund administrative costs of the Chapter 11 Cases, and (b) pay any and all fees, costs and expenses incurred by or for the benefit of the DIP Agent and Prepetition Agent from time to time, including, without limitation, those fees, costs and expenses incurred prior to the Petition Date, (1) under or otherwise in connection with the DIP Facility (including all legal, financial advisory, appraisal, and related professional fees and expenses), including those incurred in connection with the preparation, negotiation, documentation, and Court approval of the DIP Facility and the DIP Documents, in each case, whether or not included in the Approved Budget, and (2) in connection with the Chapter 11 Cases, including, without limitation, the Adequate Protection Payments (defined below), in each case, whether or not included in the Approved Budget;

(iv)     granting adequate protection to the Prepetition Secured Parties (defined below) to the extent of any Diminution in Value (defined below) of their interests in the Prepetition Collateral;

(v)     granting valid, enforceable, binding, non-avoidable, and fully perfected first priority priming liens on and senior security interests in all of the prepetition and postpetition property, assets, and other interests in property and assets of the Debtors, whether such property is presently owned or after-acquired, and each Debtor's estate as created by section 541 of the Bankruptcy Code, of any kind or nature whatsoever, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date (defined below) to secure the DIP Loans, subject only to (a) the Carve-Out (defined below) and (b) other valid, enforceable, properly perfected and unavoidable liens, if any, existing as of the Petition Date that, by operation of law or as permitted by the Prepetition Loan Documents (defined below), are senior to the liens and/or security interests of the Prepetition Secured Parties as of the Petition Date or thereafter to the extent permitted by section 546(b) of the Bankruptcy Code (the "**Permitted Prior Liens**");

3

(vi)     granting superpriority administrative expense claims against each of the Debtors' estates to the DIP Agent, on behalf of the DIP Lenders (including the Roll-Up Lenders (defined below)) with respect to the DIP Obligations (defined below), having priority over any and all administrative expenses of any kind or nature (subject to the DIP Superpriority Claim Sub-Priorities (defined below)), subject and subordinate only to the payment of the Carve-Out on the terms and conditions set forth herein and in the other DIP Documents;

(vii)    upon entry of this Final Order, waiving the Debtors' and the Debtors' estates' right to surcharge the DIP Collateral (defined below) and the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(viii)   upon entry of this Final Order, providing for the "equities of the case" exception under section 552(b) of the Bankruptcy Code to not apply to the DIP Secured Parties and the Prepetition Secured Parties, with respect to the proceeds, products, offspring, or profits of any of the DIP Collateral and the Prepetition Collateral, as applicable; and

(ix)     granting related relief.

The Court having considered the Motion, the exhibits thereto, the *Declaration of Steven Shenker in Support of Chapter 11 Petitions and First Day Pleadings* (Docket No. 2) (the "**First Day Declaration**") and the *Declaration of Andrew Swift in Support of Motion of Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash Collateral; (I) Granting Liens, Super-Priority Claims, and Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "**DIP Declaration**") (Docket No. 14); and notice having been provided in accordance with the Bankruptcy Rules and Local Rules; and it appearing that no other or further notice of the relief granted herein need be provided; and the Court having held an interim hearing (the "**Interim Hearing**") on the Motion on August 13, 2024, and the final hearing (the "**Final Hearing**") on September 10, 2024, and upon the record of the Interim Hearing and Final Hearing; and all objections, reservations of rights, and/or other statements with respect to the relief requested in the Motion, if any, having been withdrawn, resolved, or overruled; and the Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement and the other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING AND IN CONNECTION WITH THE STATEMENTS OF THE COURT MADE AT THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    _Petition Date_.  On August 12, 2024 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases by each filing a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

B.    _Debtors in Possession_.   The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.    _Jurisdiction and Venue_.  The Court has jurisdiction over the Motion, these Chapter 11 Cases, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the _Amended Standing Order of Reference_ from the United States District Court for the District of

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

Delaware, dated February 29, 2012.  Venue for the Chapter Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court may enter a final order consistent with Article III of the United States Constitution.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

D.      *Committee*.  On August 23, 2024, an official committee of unsecured creditors was appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Committee**").

E.      *Debtors' Stipulations*.  Subject only to the rights of parties in interest specifically set forth in paragraph 12 of this Final Order (and subject to the limitations thereon contained in such paragraph or as otherwise provided in this Final Order), the Debtors, on their own behalf and on behalf of their respective estates, admit, stipulate, acknowledge and agree to the following (paragraphs E(i) through (v) below, collectively, the "**Debtors' Stipulations**"):

(i)      *Prepetition Loans*.

(a)      *Prepetition Credit Agreement*.  The Prepetition Lenders (defined below) provided loans (the "**Prepetition Loans**") under that certain *Credit and Guaranty Agreement*, dated as of November 8, 2018, by and among Blink Holdings, Inc., as borrower (the "**Prepetition Borrower**"), Blink Company Intermediate HoldCo, Inc. and each of its direct and indirect subsidiaries other than the Prepetition Borrower, as guarantors (collectively with the Prepetition Borrower, the "**Prepetition Loan Parties**"), each of the lenders from time to time party thereto (collectively, the "**Prepetition Lenders**"), and Varagon Capital Partners Agent, LLC, as administrative agent (in such capacity, the "**Prepetition Agent**" and, together with the Prepetition Lenders, the "**Prepetition Secured Parties**") (such credit agreement, as amended, restated, supplemented, waived, or otherwise modified from time to time prior to the Petition Date, the "**Prepetition Credit Agreement**" and, together with the other "Loan Documents" (as defined in

the Prepetition Credit Agreement), the "**Prepetition Loan Documents**"). All Prepetition Loan Parties are also Debtors in the Chapter 11 Cases.

(b)    *Prepetition Obligations*.    As of the Petition Date, each of the Prepetition Loan Parties were jointly and severally indebted to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $159,262,642.07 on account of Prepetition Loans plus accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accounts', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Credit Agreement), in each case, owing under or in connection with the Prepetition Loan Documents (collectively, the "**Prepetition Obligations**").

(c)    *Prepetition Liens*.    In connection with the Prepetition Credit Agreement, each of the Prepetition Loan Parties entered into (or, as applicable, executed joinders to) that certain *Security and Pledge Agreement*, dated as of November 8, 2018, and related Collateral Documents (as defined in the Prepetition Credit Agreement).    As set forth in the Prepetition Collateral Documents and the other Prepetition Loan Documents, the Prepetition Obligations are secured by valid, binding, perfected, and enforceable first-priority security interests in and liens on (the "**Prepetition Liens**") all of the Collateral (as defined in the Security Agreement) (the "**Prepetition Collateral**"), which consists of substantially all of each Prepetition Loan Party's assets.

(d)      *Validity, Perfection, and Priority of Prepetition Liens and Prepetition Obligations*.  Each Debtor acknowledges and agrees that, in each case, as of the Petition Date: (A) the Prepetition Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (B) the Prepetition Liens on the Prepetition Collateral are subject and subordinate only to Permitted Prior Liens (if any); (C) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties; (D) the Prepetition Liens encumber all of the Prepetition Collateral; (E) the Prepetition Liens were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (F) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge, objection or defense, including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attack, offset, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (G) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance, preference, fraudulent conveyance or similar claims, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against any

of the Prepetition Secured Parties, or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Loans, the Prepetition Obligations, the Prepetition Loan Parties, or the Prepetition Liens; and (H) the full amount of the Prepetition Obligations constitutes an allowed, secured claim within the meaning of sections 502 and 506 of the Bankruptcy Code.

(ii)     _Cash Collateral_.  All of the Debtors' cash, including, without limitation, all of the (a) cash proceeds of accounts receivable, (b) cash proceeds of other Prepetition Collateral, (c) cash proceeds of Excluded Property (as defined in the Prepetition Credit Agreement) (to the extent such cash proceeds would not otherwise constitute Excluded Property), and (d) cash (i) in the Debtors' deposit, securities, commodities, and similar accounts pledged pursuant to any Collateral Document or any other Loan Documents as of the Petition Date or (ii) pursuant to section 552(b) of the Bankruptcy Code, deposited into such accounts after the Petition Date, in each case constitutes cash collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").  The Prepetition Secured Parties have legal, valid, binding, enforceable, and perfected security interests in the Cash Collateral.

(iii)     _No Control_.  As of the Petition Date, none of the Prepetition Secured Parties or their respective advisors, employees or representatives control the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted, or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Orders, the DIP Facility, the DIP Documents, or the Prepetition Loan Documents.

(iv)   _Default_.   Numerous Events of Default under, and as defined in, the Prepetition Credit Agreement occurred under the Prepetition Loan Documents prior to the Petition Date.

(v)   Equinox Subordination Agreement. The Prepetition Agent, Equinox Group LLC ("**Equinox**"), and others entered into that certain Subordination Agreement, dated as of September 30, 2020 (as amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "**Subordination Agreement**") to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Obligations relative to certain unsecured prepetition loans made by Equinox to Blink Holdings, Inc.  Each of the Debtors under the Prepetition Loan Documents acknowledged and agreed to the Subordination Agreement.

F.   _Findings Regarding the DIP Facility and Use of Cash Collateral_.

(i)   The Debtors have an immediate need to obtain the DIP Facility and to use Cash Collateral to, among other things, (A) permit the orderly continuation of their businesses, including satisfying working capital and general corporate purposes of the Debtors; (B) pay the costs of administration of the Chapter 11 Cases; (C) pay certain Adequate Protection Payments (defined below); (D) continue their prepetition marketing process to sell all or substantially all of the Debtors' assets; and (E) pay other fees and expenses incurred by or on behalf of the DIP Secured Parties. The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations provided by the DIP Facility is vital to the preservation and maintenance of the Debtors' going concern value and successful sale.  The Debtors will not have sufficient sources of working capital and financing to operate their businesses in the ordinary course of business

throughout the Chapter 11 Cases without access to the DIP Facility and the authorized use of Cash Collateral.

(ii)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Secured Parties under the DIP Credit Agreement and the other DIP Documents given their current financial condition, financing arrangements, and capital structure, and are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Credit Agreement and the other DIP Documents without the Debtors granting to the DIP Agent, for the benefit of the DIP Secured Parties, the DIP Liens (defined below) and the DIP Superpriority Claims (defined below) under the terms and conditions set forth in this Final Order and the other DIP Documents.

(iii)     The DIP Facility and the DIP Documents have been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility, the DIP Credit Agreement, the DIP Orders and the other DIP Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Credit Agreement and other DIP Documents and all other obligations thereunder (collectively, the "**DIP Obligations**"), including, without limitation, the Interim Roll-Up upon entry of the Interim Order and the Final Roll-Up upon entry of this Final Order, shall be deemed to have been extended by the DIP Secured Parties (including, without limitation, the Roll-Up Lenders upon the effectuation of the Roll-Up), as applicable, in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy

Code.  The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided therein, provided, that notwithstanding anything herein to the contrary, the Interim Roll-Up and Final Roll-Up shall remain subject to paragraph 12 of this Final Order.

      (iv)     The Roll-Up shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Roll-Up Lenders in their capacity as DIP Lenders, to fund amounts and provide other consideration to the Debtors under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of any of the Prepetition Obligations. The Prepetition Lenders would not otherwise consent to the use of their Cash Collateral and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder, without the inclusion of the (a) Interim Roll-Up upon entry of the Interim Order and (b) Final Roll-Up upon entry of this Final Order. The Roll-Up of all Prepetition Protective Advances (defined below) and other Prepetition Obligations in the Roll-Up Amount into DIP Obligations as described below will enable the Debtors to obtain urgently needed financing to administer the Chapter 11 Cases to fund their operations and maximize value for all parties in interest.

      (v)     *Adequate Protection*.  In exchange for their consent to the (i) priming of the Prepetition Liens by the DIP Liens, and (ii) use of Cash Collateral to the extent set forth in this Final Order, each of the Prepetition Secured Parties are entitled (A) pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral, and for any proven diminution in the value of such interests in accordance with the Bankruptcy Code (each such diminution, a "**Diminution in**

Value"), and (B) as further adequate protection and, to the extent applicable, also pursuant to section 506(b) of the Bankruptcy Code, to the Adequate Protection Payments (defined below).

(vi)    *Sections 506(c) and 552(b)*.    In light of the (i) DIP Secured Parties' agreement that, with respect to the DIP Collateral, their liens and superpriority claims shall be subject to the Carve-Out and (ii) Prepetition Secured Parties' agreement that, with respect to the Prepetition Collateral, their respective liens and claims shall be subject to the Carve-Out and subordinate to the DIP Liens, each of the DIP Secured Parties and the Prepetition Secured Parties is entitled to a waiver of (a) any "equities of the case" exception under section 552(b) of the Bankruptcy Code and (b) the provisions of section 506(c) of the Bankruptcy Code.

(vii)    *Consent by Prepetition Secured Parties*.    The Prepetition Secured Parties have consented to, conditioned upon the entry of this Final Order, the Debtors' entry into the DIP Documents, the incurrence of the DIP Obligations and the proposed use of Cash Collateral, in each case on the terms and conditions set forth in this Final Order, including, without limitation, the terms of the adequate protection provided for in this Final Order and in all respects subject to the Approved Budget (as defined below).

G.    *Arm's Length, Good Faith Negotiations*.

(i)    *Willingness to Provide Financing*.    The DIP Secured Parties have committed to provide financing to the Debtors, but solely subject to: (a) entry of the Interim Order and this Final Order; (b) approval of the terms and conditions of the DIP Facility and those set forth in the DIP Credit Agreement and other DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Credit Agreement and other DIP Documents; and (d) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Secured Parties are extending credit to the Debtors pursuant to the DIP Credit Agreement and other DIP Documents

in good faith, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code, and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Final Order or any other order.

(ii)     *Business Judgment*. Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing and the Final Hearing, (i) the terms of the financing embodied in the DIP Facility, the DIP Documents and this Final Order, including the fees, expenses and other charges paid and to be paid thereunder or in connection therewith, (ii) the adequate protection granted by this Final Order, and (iii) the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral), in each case pursuant to this Final Order and the DIP Documents, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and after considering all of their practical alternatives, constitute reasonably equivalent value and fair consideration, represent the best financing (and terms) available under the circumstances and are appropriate for secured financings to debtors in possession.

(iii)     *Good Faith Pursuant to Section 364(e)*. The terms of this Final Order were negotiated in good faith and at arm's length between the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties. The DIP Secured Parties and the Prepetition Secured Parties have acted in good faith in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the Debtors' incurrence of the DIP Facility and use of Cash Collateral, including in respect of all of the terms of this Final Order, the DIP Credit Agreement, and the other DIP Documents, and all documents

related to and transactions contemplated by the foregoing.  The Debtors and DIP Secured Parties co-drafted the DIP Credit Agreement and other DIP Documents. The Debtors' use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Secured Parties and the Prepetition Secured Parties, as applicable, within the meaning of section 364(e) of the Bankruptcy Code.

H.    *Good Cause Shown; Best Interest*.  Good cause has been shown for entry of this Final Order, and entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for a successful sale process. Absent granting the relief sought by this Final Order, the Debtors' estates will be immediately and irreparably harmed.

I.    *Notice*.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and granted pursuant to this Final Order, and of the Final Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and the applicable Local Rules.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    DIP Financing Approved.  The relief sought in the Motion is GRANTED on a final basis as set forth herein and subject to the terms and conditions of this Final Order.

2.    Objections Overruled.  Any objections, reservations of rights, or other statements with respect to entry of this Final Order, to the extent not withdrawn or resolved, are hereby denied and overruled on the merits.  This Final Order shall become effective immediately upon its entry.

The Interim Order is hereby ratified and affirmed in all respects from its entry through the date and time of the entry of this Final Order.

        3.    <u>Authorization of the DIP Facility and the DIP Documents</u>.

        (a)    The DIP Borrower and the DIP Guarantors are hereby immediately authorized and empowered to enter into, and execute and deliver, the DIP Documents, including the DIP Credit Agreement and such additional documents, instruments, certificates and agreements as may be reasonably required or requested by the DIP Agent or the "Required Lenders" under and as defined in the DIP Credit Agreement (such lenders, the "**Required DIP Lenders**") to implement the terms or effectuate the purposes of this Final Order and the other DIP Documents. Upon entry of the Interim Order, and as ratified by, and subject to, this Final Order, the DIP Credit Agreement, and the other DIP Documents shall govern and control the DIP Facility. The DIP Agent and the DIP Lenders are hereby authorized to execute the DIP Documents, subject to the terms and conditions set forth therein and in this Final Order. The DIP Credit Agreement and the other DIP Documents represent legal, valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms. To the extent there exists any conflict among the terms and conditions of this Final Order and the other DIP Documents, the terms and conditions of this Final Order shall govern and control.

        (b)    Upon entry of this Final Order (and satisfaction of all other terms and conditions precedent set forth herein and in the DIP Credit Agreement and other DIP Documents), the DIP Borrower is hereby authorized to borrow, and the DIP Guarantors are hereby authorized to guarantee, New Money DIP Loans in an aggregate principal amount of up to the New Money Maximum Commitment (net of such commitment already drawn), in accordance with

the terms of the DIP Credit Agreement and this Final Order, without any further notice to any other party.

(c)     Notwithstanding the foregoing, in accordance with the terms of this Final Order and the other DIP Documents, proceeds of the New Money DIP Loans shall be used solely for the purposes permitted under this Final Order and the other DIP Documents, and in accordance with the Approved Budget (as defined below).

(d)     In furtherance of the foregoing and without further approval of the Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to permit the Debtors, to perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement and any other DIP Documents), and to pay all fees, costs and expenses of the DIP Agent and DIP Lenders under this Final Order and the other DIP Documents that may be required or necessary for the Debtors' performance of their obligations under the DIP Credit Agreement and other DIP Documents, including, without limitation:

(1)     the execution, delivery, and performance of the DIP Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent required thereby;

(2)     the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Documents (excluding this Final Order solely for purposes of this clause (2)) (in each case in accordance with the terms of the applicable DIP Documents and in such form as the Debtors, the DIP Agent, the Required DIP Lenders and the Prepetition Agent each may agree), it being understood that no further approval of the Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Documents or the DIP Obligations that are not material; *provided* that any such non-material amendment shall be provided to the U.S. Trustee and counsel for the Committee two (2) business days prior to the effectiveness thereof;

(3)    the non-refundable payment to or on behalf of each of the DIP Secured Parties and the Prepetition Secured Parties, as applicable, of the fees referred to in the DIP Documents or the Motion, including (x) all premiums, fees, expenses and other amounts owed to the DIP Secured Parties (which premiums, fees and expenses, in each case, are deemed approved by the Court upon entry of this Final Order), and (y) all reasonable and documented fees, costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of counsel and other professionals retained by or for the benefit of the DIP Secured Parties and Prepetition Agent as provided for in the DIP Documents and this Final Order (whether incurred or earned before or after the Petition Date, including, for the avoidance of doubt, the fees, costs and expenses of (a) Katten Muchin Rosenman LLP (as counsel to the DIP Agent and Prepetition Agent), (b) Morris, Nichols, Arsht & Tunnell LLP (as Delaware bankruptcy counsel to the DIP Agent and Prepetition Agent), (c) any financial advisor to the DIP Agent and Prepetition Agent, and any other specialty counsel and other professionals necessary to represent the interests of the DIP Agent, DIP Lenders and the Prepetition Secured Parties in connection with the Chapter 11 Cases, which fees, costs and expenses shall not be subject to further approval of the Court, nor shall any recipient of any such payments be required to file with respect thereto any interim or final fee application with the Court, *provided* that any fees and expenses of such professionals shall be subject to the provisions of paragraph 19(b) of this Final Order; and

(4)    the performance of all other acts required under or in connection with the DIP Credit Agreement and the other DIP Documents (including this Final Order).

(e)    Upon entry of the Interim Order, as ratified by this Final Order, the DIP Credit Agreement, the DIP Documents, the DIP Obligations, and the DIP Liens constitute valid, binding, and non-avoidable obligations of the Debtors and their estates enforceable against each Debtor and its estate in accordance with their respective terms and the terms of this Final Order for all purposes during the Chapter 11 Cases, any subsequently converted Chapter 11 Case of any Debtor to a case under chapter 7 of the Bankruptcy Code (each such Case, a "**Successor Case**"), and after any dismissal of any Chapter 11 Case or Successor Case. No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Documents,

or this Final Order shall be stayed, restrained, voidable, avoidable, or otherwise recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim. For the avoidance of doubt, and notwithstanding anything to the contrary in any Prepetition Loan Document, DIP Document, any additional document, instrument, certificate and/or agreement related to any of the foregoing, in no event shall any property, proceeds, cash, cash equivalents, or other property placed or held in any escrow account at any time upon which the Prepetition Secured Parties or DIP Secured Parties hold an interest be, or be deemed to be, property of any of the Debtors, of any the Debtors' affiliates or subsidiaries, or of any of the Debtors' estates.

(f)     Upon entry of the Interim Order (and as ratified by this Final DIP Order), the DIP Guarantors were authorized to jointly, severally, and unconditionally guarantee, and upon entry of the Interim Order (as ratified by this Final DIP Order), were deemed to have guaranteed, in full, all of the DIP Obligations.

4.     <u>Budget and Variance Reporting</u>.

(a)     Debtors shall use the proceeds of the DIP Facility and Cash Collateral only in accordance with the weekly budget attached hereto as **<u>Exhibit B</u>** (the "**Initial Approved Budget**"), and any Updated Approved Budget (as defined below), each of which shall reflect on a line item basis the Debtors' anticipated cumulative cash receipts, disbursements and expenses on a weekly basis, in sufficient line item detail (including a separate exhibit or line item detailing each Professional retained by the Debtors and the Committee).

(b)      The Initial Approved Budget and any Updated Approved Budget may be amended, replaced, supplemented or otherwise modified at any time with the prior written consent of the DIP Agent, the Prepetition Agent and Required DIP Lenders, in their sole discretion, without the need for further Court approval (any such amended or otherwise updated approved budget, an "**Updated Approved Budget**", and the Initial Approved Budget or Updated Approved Budget, as applicable, that is in effect as of any date of determination, an "**Approved Budget**"); provided that Debtors shall provide at least two (2) business days' advance notice of any such Updated Approved Budget to the U.S. Trustee and the Committee (email notice being sufficient). In the event the approvals and other conditions for the most recently delivered proposed budget to constitute an "Approved Budget" are not met as set forth herein and in the DIP Documents, the prior Approved Budget shall remain in full force and effect.

(c)      The DIP Borrower shall be permitted to draw under the DIP Facility, in accordance with the terms and conditions set forth herein and in the DIP Documents, solely to the extent projected disbursements for the immediately following two-week period, as set forth in the Approved Budget, exceeds the Debtors' budgeted, unrestricted cash on hand, net of outstanding checks, for such period (provided such cash on hand shall be no less than $3 million).

(d)      It shall be an Event of Default if:

(1)      the Debtors' use of DIP Facility proceeds and Cash Collateral for actual cumulative disbursements (other than the "Restructuring Costs" and "Other Restructuring Costs" line items in the Approved Budget) for each two-week rolling period exceeds 115% of the sum of (x) the cumulative budgeted disbursements (other than the "Restructuring Costs" and "Other Restructuring Costs" line items in the Approved Budget) for such two-week rolling period as set forth in the Approved Budget and (y) any unspent budgeted disbursement amounts (other than for "Restructuring Costs" and "Other Restructuring Costs") that are carried over from previous testing periods as provided below;

(2)      the Debtors' use of DIP Facility proceeds and Cash Collateral for actual cumulative disbursements with respect to the

"Restructuring Costs" (other than the "Lender Counsel" line item in the Approved Budget) and "Other Restructuring Costs" line items set forth in the Approved Budget for each two-week rolling period exceeds 115% of the sum of (x) the cumulative budgeted disbursements for such "Restructuring Costs" (other than the "Lender Counsel" line item) and "Other Restructuring Costs" line items in the Approved Budget for such two-week rolling period and (y) any unspent budgeted disbursements for "Restructuring Costs" (other than the "Lender Counsel" line item) and "Other Restructuring Costs" that are carried over from previous testing periods as provided below; and

(3)     the Debtors' net collections for each four-week rolling period is less than 85% of the budgeted net collections for such four-week rolling period as set forth in the Approved Budget (clauses (1) through (3), collectively, the "**Budget Covenant**").

(e)     If the aggregate amount of cumulative disbursements actually made by the Debtors, measured on a weekly basis, is less than the amount of cumulative disbursements forecasted in the Approved Budget during such period, then for purposes of the Budget Covenant, the Debtors may carry over any such unused amounts to the future periods in the Approved Budget. For the avoidance of doubt, the Budget Covenant shall exclude and shall not apply to the "Lender Counsel" line item contained in the Approved Budget.

(f)     By no later than noon (Eastern Time) on the first Friday following the week of the Petition Date and by no later than noon (Eastern Time) on each Friday thereafter, the DIP Borrower shall deliver simultaneously to the DIP Agent (for distribution to the DIP Lenders) and counsel to the Committee (i) a variance report (each, a "**Variance Report**"), in form and substance acceptable to DIP Agent, showing comparisons of actual line item receipts and disbursements compared against such line items set forth in the Approved Budget, (ii) a written management discussion and analysis of any line item variance between actual and budgeted items greater than 10.0%, and (iii) a compliance certificate (each, a "**Compliance Certificate**"), in form and substance acceptable to DIP Agent, certifying as to Debtors' compliance with the Approved Budget and the Budget Covenant for the immediately preceding applicable period.

5.    <u>Access to Records</u>.  The Debtors shall provide the DIP Agent and Prepetition Agent (for distribution to the DIP Lenders and Prepetition Lenders, respectively) and the Committee with all reporting and other information required to be provided to the DIP Agent under the DIP Documents.  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Documents, upon reasonable notice to counsel to the Debtors (email being sufficient), the Debtors shall permit representatives, affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors agents,  employees and advisors of the DIP Agent and Prepetition Agent (the "**Agent Representatives**") to have reasonable access to (i) inspect the Debtors' assets, and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management and advisors of the Debtors, and the DIP Agent and Prepetition Agent, and their respective Agent Representatives, shall be provided with access to all information they shall reasonably request, excluding any information subject to attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law.

6.    <u>DIP Superpriority Claims</u>.  Subject only to the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, upon entry of the Interim Order (as ratified by this Final Order), all of the DIP Obligations constitute allowed superpriority administrative expense claims against each of the Debtors' estates (the "**DIP Superpriority Claims**") (without the need to file any proof of claim), with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all

administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, upon entry of this Final Order, any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "**Avoidance Actions**", and any proceeds thereof, "**Avoidance Action Proceeds**").  Notwithstanding anything herein or in any other DIP Document to the contrary, the DIP Superpriority Claims shall be subject to the following sub-priorities: (1) first, the New Money DIP Loans and the Rolled-Up Protective Advances, on a *pari passu* basis and (2) the other Rolled-Up Prepetition Obligations (defined below) (such sub-priorities, the "**DIP Superpriority Claim Sub-Priorities**"). Except as set forth in this Final Order, no other superpriority claims shall be granted or allowed in the Chapter 11 Cases or any Successor Case that are senior to, or *pari passu* with, the DIP Superpriority Claims.

7.    <u>DIP Liens</u>.    As security for the DIP Obligations, effective and perfected immediately and automatically upon the entry of the Interim Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Agent or any DIP Lender, each of the Debtors granted (and such grant is hereby approved on a final basis) to the DIP Agent (for the benefit of the DIP Secured Parties) the security interests and liens described in clauses (a), (b) and (c) below, upon all

prepetition and postpetition assets, properties, and interests in assets and properties of the Debtors (including, without limitation, the Prepetition Collateral and the property identified in clauses (a), (b) and (c) below) (collectively, the "**DIP Collateral**"), with such security interests and liens described below being subject only to (x) Permitted Prior Liens (if any) and (y) the Carve-Out (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Secured Parties, pursuant to this Final Order and the DIP Documents, the "**DIP Liens**"):

(a)    First Priority Liens Under Section 364(c)(2).  Subject only to the Carve-Out, pursuant to section 364(c)(2) of the Bankruptcy Code, a priming, valid, binding, continuing, enforceable, non-avoidable, automatically, and properly and fully-perfected first priority senior security interest in and lien upon all property, assets or interests in property or assets of each Debtor (in each case, to the extent not subject to valid, perfected, and non-avoidable liens), whether existing on the Petition Date or acquired thereafter, including, without limitation, a 100% pledge of equity interests in any direct or indirect subsidiaries and all unencumbered assets of the Debtors; all Prepetition Collateral and other prepetition property and postpetition property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, unencumbered cash (and any investment of such cash) of the Debtors (whether maintained with the DIP Agent, DIP Lenders, or otherwise); all equipment, all goods, all accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date); all insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements of the Debtors; all owned

real estate, real property leaseholds (*provided*, that in the event an applicable underlying lease prohibits or restricts the granting of liens thereon, such liens shall attach only to the proceeds of such lease), and fixtures of the Debtors; all patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property of the Debtors; all commercial tort claims of the Debtors; and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from a Debtor to (x) another Debtor and/or (y) a non-Debtor affiliate incurred on or following the Petition Date), and any and all proceeds, products, rents, and profits of the foregoing, including all Avoidance Action Proceeds, and all economic rights of the Debtors in and to all of the foregoing; *provided*, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein, that to the extent a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to the Interim Order (and approved on a final basis pursuant to this Final Order) shall still attach to the Debtors' economic rights in such assets, including, without limitation, any and all proceeds of the foregoing.

(b)    Liens Under Section 364(c)(3).  Subject only to the Carve-Out, pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all DIP Collateral (which, for the avoidance of doubt, include Avoidance Action Proceeds) to the extent such DIP Collateral is subject to valid, enforceable and properly perfected and non-avoidable liens in existence at the time of the commencement of the Chapter 11 Cases or to valid liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code (other than property that is subject to the existing liens that secure obligations under the agreements referred to in clause (c) below, which liens shall be primed by

the liens to be granted to the DIP Agent, for the benefit of the DIP Secured Parties, as described in such clause), immediately junior solely to any Permitted Prior Liens.

(c)     Liens Under Section 364(d)(1).  Subject only to the Carve-Out and the Permitted Prior Liens, and without limiting any of the foregoing, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all Prepetition Collateral, including, without limitation, Cash Collateral constituting Prepetition Collateral; *provided*, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein, that to the extent a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to the Interim Order (and approved on a final basis pursuant to this Final Order) shall attach to the Debtors' economic rights in such assets, including, without limitation, any and all proceeds of the foregoing.

8.     Adequate Protection for the Prepetition Secured Parties.  Subject only to each of (i) the Carve-Out, (ii) the DIP Obligations, (iii) the Permitted Prior Liens, and (iv) the terms of this Final Order, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), for any Diminution in Value that may result from, among other things, the imposition of the priming DIP Liens on the Prepetition Collateral, the Carve-Out, the Debtors' use of the Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, is hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)      <u>Adequate Protection Liens</u>.  As security for any Diminution in Value, the Prepetition Agent shall have continuing, additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the date of the Interim Order (together, the "**Adequate Protection Liens**"), on all DIP Collateral, including all Avoidance Action Proceeds.  Subject to the terms of the DIP Orders, the Adequate Protection Liens shall be subordinate only to the (A) the Carve-Out, (B) the DIP Liens, and (C) Permitted Prior Liens.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral. The Adequate Protection Liens shall (1) be valid, enforceable, perfected and non-avoidable without the necessity of the execution by the Debtors (or recordation or other filing), of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents and (2) remain in full force and effect notwithstanding any Successor Case or dismissal of any of the Chapter 11 Cases or any Successor Case.  Notwithstanding the foregoing, the Debtors shall be authorized to and shall execute and deliver to the Prepetition Agent such financing statements, mortgages, instruments and other documents as the Prepetition Agent may request from time to time in respect of the Adequate Protection Liens.

(b)      <u>Adequate Protection Superpriority Claims</u>.  As further adequate protection, and to the extent provided by sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, to the extent of any Diminution in Value, the Prepetition Agent was granted pursuant to the Interim Order (and such grant is hereby ratified on a final basis) allowed administrative expense claims in each of the Chapter 11 Cases ahead of and senior to any and all other administrative expense claims in such Chapter 11 Cases (the "**Adequate Protection Superpriority Claims**"), but immediately junior to the Carve-Out and the DIP Superpriority Claims.  Subject to the Carve-

Out and the DIP Superpriority Claims in all respects, the Adequate Protection Superpriority Claims will not be junior to, or *pari passu* with, any claims and shall have priority over all administrative expense claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The Adequate Protection Superpriority Claims shall be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, any Avoidance Action Proceeds.

(c)     Adequate Protection Payments.  As further adequate protection, and also pursuant to section 506(b) of the Bankruptcy Code if applicable, subject to any Diminution in Value, the Debtors are authorized and directed to:

(1)     without limiting the foregoing, reimburse all reasonable and documented out of pocket costs and expenses incurred by or for the benefit of the Prepetition Agent (including all fees, out-of-pocket expenses and out-of-pocket disbursements of outside counsel and advisors) incurred before the Petition Date; and

(2)     pay monthly in arrears in cash, all reasonable and documented out of pocket costs and expenses of the Prepetition Agent (including all reasonable and documented fees, out-of-pocket expenses and out-of-pocket disbursements of outside counsel and advisors) incurred in connection with the Chapter 11 Cases, and including, but not limited to, in connection with the monitoring of the Chapter 11 Cases, any Challenge, and/or the enforcement or protection of any of the Prepetition Agent's rights and remedies (clauses (1) and (2), collectively, the "**Adequate Protection Payments**").

(d)     PIK Interest. As further adequate protection, and also pursuant to section 506(b) of the Bankruptcy Code if applicable, subject to any Diminution in Value, all monthly interest on the Prepetition Obligations calculated at the default rates set forth in the

Prepetition Credit Agreement as in effect on the Petition Date shall automatically be paid in kind when due under the Prepetition Credit Agreement by capitalizing the amount of such interest accrued and adding such accrued amounts to the principal balance of the Prepetition Obligations as of such due date.

(e)   Right to Seek Additional Adequate Protection.  This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Agent, on behalf of the Prepetition Secured Parties, to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

(f)   Other Covenants.  As additional adequate protection to the Prepetition Secured Parties, the Debtors shall comply with the covenants contained in the DIP Credit Agreement and other DIP Documents (including this Final Order) regarding conduct of business, including, without limitation, preservation of rights, qualifications, licenses, permits, privileges, franchises, governmental authorizations and intellectual property rights material to the conduct of their business and the maintenance of properties and insurance.

(g)   Reporting Requirements.  As additional adequate protection to the Prepetition Secured Parties, the Debtors shall comply with all documentation reporting requirements set forth in the DIP Credit Agreement and deliver such reporting materials thereunder simultaneously to the Prepetition Agent (for distribution to the Prepetition Lenders) and the Committee.

(h)   Miscellaneous.  Except for (i) the Carve-Out, (ii) the DIP Liens and the DIP Obligations and (iii) as otherwise provided in this paragraph 8, the Adequate Protection Liens and Adequate Protection Superpriority Claims granted to the Prepetition Secured Parties

shall not be subject to, junior to, or *pari passu* with, any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under the Bankruptcy Code, including, without limitation, pursuant to section 551 or otherwise, and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under the Bankruptcy Code, including, without limitation, pursuant to section 364 or otherwise.

(i)      Notwithstanding anything to the contrary in this Final Order, nothing in this Final Order shall limit the right of any party-in-interest other than the Debtors from asserting a Challenge, in accordance with paragraph 12 hereof (and subject to paragraph 27 hereof), to (i) what constitutes Prepetition Collateral for purposes of determining Diminution of Value of the Prepetition Secured Parties' interests in Prepetition Collateral, and/or (ii) the extent of such Diminution of Value.

9.      <u>DIP Roll-Up Amounts</u>.

(a)      <u>Interim Roll-Up</u>: Upon entry of the Interim Order and subject only to paragraph 12 hereof and to the Carve-Out, $17,414,235.74 of Prepetition Obligations in respect of the Protective Advances (as defined in the Prepetition Credit Agreement, the "**Prepetition Protective Advances**"), including without limitation, interest and fees thereon (together with the Prepetition Protective Advances, the "**Rolled-Up Protective Advances**"), collectively held by the DIP Lenders (or, if applicable, affiliates or managed accounts of such DIP Lenders designated by such DIP Lenders to receive the benefit of any roll-up on their behalf) in their capacities as Prepetition Lenders (collectively, the "**Roll-Up Lenders**") was automatically rolled up and converted into DIP Loans on a *pari passu* basis with the New Money DIP Loans, based upon such

Roll-Up Lenders' pro rata share of such New Money DIP Loans, without any further action by the Debtors or any other party; and

(b)     <u>Final Roll-Up</u>: Upon entry of this Final Order and subject only to paragraph 12 hereof and to the Carve-Out, an additional $35,085,764.26 of the Prepetition Obligations in respect of Term Loans and/or Delayed Draw Term Loans (as defined in the Prepetition Credit Agreement) as determined by each Roll-Up Lender (other than the amounts subject to the Interim Roll-Up described above) (such rolled-up Term Loans and Delayed Draw Term Loans, collectively, the "**Rolled-Up Prepetition Term Loans**," and together with the Rolled-Up Protective Advances, the "**Rolled-Up Prepetition Obligations**") held by the Roll-Up Lenders shall be rolled up and converted into DIP Loans, based on such Roll-Up Lenders' pro rata share of such New Money DIP Loans, and which Rolled-Up Prepetition Term Loans shall be immediately junior in priority and right of payment to the New Money DIP Loans and Rolled-Up Protective Advances, without any further action by the Debtors or any other party.

(c)     For the avoidance of doubt, the term "DIP Lenders" shall include (i) the Roll-Up Lenders holding the Rolled-Up Protective Advances and (ii) upon the entry of this Final Order, the Roll-Up Lenders holding all Rolled-Up Prepetition Obligations.

10.    <u>Carve-Out</u>.

(a)     As used in this Final Order and the DIP Documents, the "**Carve-Out**" shall be comprised of and shall not exceed the sum of: (i) all fees required to be paid to the Clerk of this Court and U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, which fees shall not be capped by any provision of this Final Order, or the amounts allocated for Statutory Fees in the Approved Budget or any subsequent budget (collectively, the "**Statutory Fees**"); (ii) solely in the event that the

Termination Date occurs as a result of the consummation of an Acceptable Sale without any prior Event of Default then continuing, up to $1 million set forth in the "Winddown Expenses" line item of the Approved Budget solely to fund a liquidating chapter 11 plan that is consistent in all respects with this Final Order and the DIP Documents and solely to the extent unencumbered assets of the Debtors are insufficient to provide such funding; (iii) all budgeted administrative expenses and allowed statutory priority claims included in the Approved Budget in periods including and prior to the Termination Date that are incurred prior to such Termination Date but not otherwise paid using Cash Collateral, DIP Facility proceeds or otherwise; (iv) subject to the Approved Budget, postpetition fees, expenses and costs of legal and financial professionals retained or engaged in the Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 363 503 or 1103 which shall not exceed the aggregate amount in the "Debtor Counsel," "Debtor Restructuring Advisor," "Debtor Investment Banker," and "UCC Advisors" line items set forth in the Approved Budget, and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court, (and, for the avoidance of doubt, such cap shall include any success fee, transaction fee, deferred fee, or other similar fee set forth in such professionals' respective engagement letters, and that such aggregate cap (other than the cap set forth in the "Debtor Investment Banker" line item set forth in the Approved Budget, which shall be available solely for amounts owed to Moelis, as ultimately allowed by the Court) shall be available to satisfy approved Professional Fees of legal and financial professionals of both the Debtors and the Committee on a *pro rata* basis)[4] incurred or accrued prior to the date of the occurrence of a Termination Date

---

[4]    Notwithstanding the foregoing, the attached Approved Budget reflects an illustrative, non-binding allocation of Professional Fees among the professionals of the Debtors and the Committee under which the Committee professionals are allocated $1,600,000, approximately 30% of the amounts provided for (i) Young Conaway Stargatt & Taylor LLP, the Debtors' counsel ($3,072,500), and (ii) Triple P RTS, LLC, the Debtors' restructuring advisor ($2,255,000) in the Approved Budget for the Interim Order. This illustrative allocation is consistent with

(collectively, the "**Professional Fees**"); and (vi) Statutory Fees plus Professional Fees paid on or after of the date of the delivery of a Carve-Out Trigger Notice (defined below) not to exceed $200,000 on account of professional fees incurred by the Debtor Professionals and $100,000 on account of professional fees incurred by Committee Professionals(the "**Post-Carve-Out Trigger Notice Cap**", which cap, for the avoidance of doubt, will apply to Professional Fees but not Statutory Fees), in each case subject to the rights of the DIP Agent (on behalf of the DIP Lenders) and Prepetition Agent (on behalf of the Prepetition Lenders) to object to the allowance of any such fees and expenses. For the avoidance of doubt, other than the Carve-Out, no other amounts owed by any of the Debtors to any party (including any amounts set forth in the Approved Budget) as of the date the Carve-Out Trigger Notice is delivered shall be payable from the Prepetition Collateral or DIP Collateral or proceeds of DIP Loans. The Carve-Out shall be permanently reduced dollar-for-dollar by any payments of fees, expenses, and costs to the applicable Professionals and must be paid out of any prepetition retainer, which retainers shall reduce the Carve-Out, before such payments are made from proceeds of the DIP Facility or any DIP Collateral or proceeds of DIP Loans.

(b)     <u>Funded Reserve Account</u>.  On a weekly basis, the Debtors shall fund from the DIP Facility or cash on hand into a segregated escrow account (the "<u>Funded Reserve Account</u>") held by Epiq Corporate Restructuring, LLC in trust for the benefit of the Professionals

---

the colloquy at the Final Hearing and Court's statement on the record that it did not anticipate the Committee's fees to exceed approximately 30% of the Debtors' professional fees.

By no later than each Monday prior to the delivery of any Carve-Out Trigger Notice, counsel for each of the Debtors and the Committee shall provide to the Debtors' Chief Restructuring Officer and counsel to the Debtors or the Committee, as applicable, via e-mail, a good faith, running estimate of fees and expenses incurred by the professionals for the Debtors and the Committee, as applicable, for the period beginning on the effective date of such professional's retention through the second previous Friday (i.e. 10 days prior to submission); provided that such good faith estimate shall not constitute either an allowance or admission of such estimated fees and expenses or a binding cap on such fees and expenses.

an amount (the "<u>Funded Reserve Amount</u>") equal to the sum of the total budgeted weekly fees of Professionals for the current week set forth in the Approved Budget. For the avoidance of doubt, the DIP Lenders shall have no obligation to fund any Professional Fees in excess of the amounts set forth in the Approved Budget. Debtors shall use funds held in the Funded Reserve Account exclusively to pay Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of the Court; provided, that when all allowed Professional Fees have been paid in full (regardless of when such Professional Fees are allowed by the Court), any funds remaining in the Funded Reserve Account shall revert to the Debtors for use in a manner consistent with the DIP Credit Agreement, the other DIP Documents, and the DIP Orders.

(c)    <u>Carve-Out Trigger Notice</u>.

(1)    For purposes hereof, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by the DIP Agent or Prepetition Agent (if applicable) to (i) the Debtors, (ii) any Committee, and (iii) the U.S. Trustee (in each case via email), which notice may be delivered at any time following the occurrence of the Termination Date (defined below). Within five (5) business days following the delivery of a Carve-Out Trigger Notice, each Professional shall provide written notice (via e-mail) to the DIP Agent and Prepetition Agent of its accrued but unpaid Professional Fees as of the date of the Carve-Out Trigger Notice (such fees collectively, the "**Pre-Carve-Out Trigger Notice Reserve**"). After applying the aforementioned requirement herein that any payments of Professional Fees to any Professionals appointed in the Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code must first be paid out of any prepetition retainer held by such Professionals, if any, the Debtors shall thereafter be authorized to utilize any and all cash on hand as of the date of the Carve-Out Trigger Notice and any available cash thereafter held by the Debtors to fund the Pre-Carve-Out Trigger Notice Reserve, and to deposit and hold such cash in a segregated account in trust to pay any such Professional Fees prior to any and all other claims other than Statutory Fees. In addition, the Debtors shall deposit cash in such segregated account in an amount not to exceed the Post-Carve-Out Trigger Notice Cap to pay Professional Fees benefiting from the Post-Carve-Out Trigger Notice Cap (the "**Post-Carve-Out Trigger Notice Reserve**," and, together with the Pre-Carve-Out Trigger Notice Reserve, the "**Carve-Out Reserves**") prior to any and all other claims other than Statutory Fees.

(2)     All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) and (iii) of the definition of Carve-Out set forth above (the "**Pre-Carve-Out Amounts**") until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Secured Parties in accordance with their rights and priorities under the DIP Documents and applicable law.  All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (collectively, the "**Post-Carve-Out Amounts**"), and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Secured Parties in accordance with their rights and priorities under the DIP Documents and applicable law.

(3)     Notwithstanding anything to the contrary in this Final Order, if either of the Carve-Out Reserves are not funded in full in the amounts set forth herein, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth herein, prior to making any payments to the DIP Secured Parties in accordance with their rights and priorities under the DIP Documents and applicable law.

(4)     Nothing herein shall be construed to impair the ability of any party to object to any Professional Fees or other fees included in the definition of Carve-Out.

(5)     Notwithstanding the foregoing, so long as a Carve-Out Trigger Notice has not been delivered in accordance with this Final Order: (i) the Debtors shall be permitted to pay Professional Fees, as the same may become due and payable, solely in accordance with this Final Order and other orders of this Court (and subject to the Approved Budget, as provided herein), and (ii) such payments shall not reduce, or be deemed to reduce, the Post-Carve-Out Trigger Notice Cap but shall permanently reduce dollar-for-dollar the Carve-Out amount prior to the delivery of a Post-Carve-Out Trigger Notice as provided below.  None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional incurred or earned in connection with the Chapter 11 Cases or any Successor Cases. Nothing in this Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professionals, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(6)     The Carve-Out shall be reduced dollar-for-dollar by any payments of Professional Fees to each applicable Professional (including those referenced in the Approved Budget); provided that any such Professional Fees must be paid out of any prepetition retainer before such payments are made from proceeds of the DIP Facility or any DIP Collateral (including Cash Collateral).

(7)     The Carve-Out shall not be available to pay any such Professional Fees, disbursements, costs, or expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the Prepetition Agent, Prepetition Secured Parties, DIP Agent or DIP Secured Parties, or any of their respective professionals, advisors, agents, employees and other representatives, or in connection with challenging or raising any defenses to the Prepetition Obligations or any Prepetition Liens or the DIP Obligations or DIP Liens (including, without limitation, any challenges with respect to the allocation of value of any sale proceeds), and nothing herein shall impair the right of any party to object to the reasonableness of any such Professional Fees to be paid by the Debtors' estates.

11.     <u>Reservation of Rights of the DIP Agent, DIP Lenders, and Prepetition Secured Parties</u>.  Subject only to the Carve-Out, notwithstanding any other provision in this Final Order or the DIP Documents to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Prepetition Secured Parties to seek (or the rights of the Debtors to oppose) any other or supplemental relief in respect of the Debtors including the right to seek additional adequate protection prior to, at and/or following the Final Hearing; (b) any of the rights of the DIP Secured Parties or the Prepetition Secured Parties under the DIP Documents, the Prepetition Loan Documents, any intercreditor agreement, or the Bankruptcy Code or under non-bankruptcy law (as applicable), including, without limitation, the right of any of the DIP Secured Parties or the Prepetition Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code solely in connection with the DIP Facility, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Chapter 11 Cases, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans (any such plan, a "**Chapter 11 Plan**"); or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Secured Parties or the Prepetition Secured Parties.   The delay in or failure of the DIP Secured Parties and/or the

Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Secured Parties' or the Prepetition Secured Parties' rights and remedies.  For all adequate protection purposes throughout the Chapter 11 Cases, each of the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection for any Diminution in Value from and after the Petition Date.  For the avoidance of doubt, such request will survive termination of this Final Order.

      12.    <u>Reservation of Certain Committee and Third-Party Rights and Bar of Challenges and Claims</u>.  The Debtors' Stipulations contained in paragraph E hereof and the Debtors' releases contained in paragraph 24 hereof shall be binding upon the Debtors and their estates (subject to the immediately following sentence), in all circumstances and for all purposes in the Chapter 11 Cases and any Successor Case, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (defined below) as of the Petition Date.  The Debtors' Stipulations contained in paragraph E hereof and the Debtors' releases contained in paragraph 24 hereof shall be binding upon each other party-in-interest, including the Committee, except to the extent the Committee or such other party in interest that obtains standing, other than the Debtors (or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (defined below), the chapter 7 trustee in such Successor Case), first, commences within seventy-five (75) calendar days following the date of entry of the Interim Order (the "**Challenge Period**"; and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge after obtaining standing to do so, such Challenge is fully and finally adjudicated, shall be referred to as the "**Challenge Period Termination Declaration Date**"), an adversary proceeding challenging or

otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations (each, a "**Challenge**"), and second, obtains a final, non-appealable order in favor of such party-in-interest sustaining any such Challenge in any such timely-filed adversary proceeding (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "**Successful Challenge**").  Except as otherwise expressly provided herein, from and after the Challenge Period Termination Declaration Date and for all purposes in the Chapter 11 Cases and any Successor Cases (and after the dismissal of any of the Chapter 11 Cases or any Successor Cases), and without further notice, motion, or application to, order of, or hearing before this Court (i) any and all payments made to or for the benefit of the Prepetition Secured Parties or otherwise authorized by the DIP Orders (whether made prior to, on, or after the Petition Date) on account of Prepetition Obligations shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance by any party in interest, (ii) any and all such Challenges by any party-in-interest shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations shall be binding on all parties in interest in the Chapter 11 Cases and any Successor Cases, including any Committee or chapter 11 or chapter 7 trustee.  Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party-in-interest from and after the Challenge Period Termination Declaration Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge Period and such Challenge becomes a Successful Challenge;

provided that all other stipulations (other than those subject to a Successful Challenge) shall remain binding on any Committee and other party-in-interest.  Notwithstanding any provision to the contrary herein, nothing in this Final Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' estates.  The failure of any party-in-interest, including any Committee, to obtain an order of this Court prior to the Challenge Period Termination Declaration Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Declaration Date as required under this paragraph 12 or to require or permit an extension of the Challenge Period Termination Declaration Date. Notwithstanding the foregoing, the timely filing of a motion seeking standing to file a Challenge consistent with applicable law and rules of procedure prior to expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Period only as to the party that timely filed such standing motion, and solely with respect to the Challenge asserted in the draft complaint, until entry of an order granting the motion for standing to prosecute such Challenge described in the draft complaint and permitted by the Court; provided, further, that if standing is denied by the Court, the Challenge Deadline shall be deemed to have immediately expired with respect to such Challenge. For the avoidance of doubt, notwithstanding anything else to the contrary in this Final Order, any chapter 7 or chapter 11 trustee appointed or elected in these cases shall, until the expiration of the Challenge Period, be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, releases, and stipulations of the Debtors in this Final Order until the expiration of the Challenge Period; *provided* that any chapter 7 trustee appointed in these cases shall be deemed a successor,

party, or intervenor to any timely and properly initiated Challenge brought by the Committee in accordance with this Final Order; *provided further* that the fact that any Debtor is a limited liability company shall not be a defense to any Challenge.

13. <u>Termination Date</u>. On the Termination Date (defined below), consistent with the DIP Credit Agreement, (a) all DIP Obligations shall be immediately due and payable, and all Commitments will terminate; (b) all authority to use Cash Collateral shall cease; *provided* that during the Remedies Notice Period (defined below), if any, the Debtors may continue to use Cash Collateral (but not borrow any further DIP Loans) solely to pay payroll, make Adequate Protection Payments, pay items provided for in the Carve-Out in accordance with the DIP Orders, and pay other expenses necessary to maintain going concern operations and in no event in excess of the budgeted disbursements set forth in the Approved Budget during such Remedies Notice Period; *provided*, *further*, that in no event shall any proceeds of the DIP Facility or Cash Collateral be used for capital expenditures during the Remedies Notice Period; and (c) the DIP Secured Parties and Prepetition Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Documents in accordance with this Final Order.

14. <u>Events of Default</u>. Unless (x) waived by the DIP Agent and Required DIP Lenders in accordance with the terms of the DIP Documents or (y) within any grace or cure period provided under the DIP Credit Agreement, cured by the Debtors during such period and in accordance with the conditions set forth in the DIP Credit Agreement, the occurrence of any of the following events shall constitute an event of default thereunder and hereunder (each, an "**Event of Default**," and, collectively, the "**Events of Default**"): (a) the failure of the Debtors to timely and fully perform any of the terms, provisions, conditions, covenants, or obligations under this Final Order, (b) the

failure of the Debtors to timely and fully comply with any of the Milestones (defined below), or (c) the occurrence of an "Event of Default" under the DIP Credit Agreement.[5]

15.    <u>Milestones</u>.  As a condition to the DIP Facility and the use of Cash Collateral, the Debtors' failure to timely and fully comply with any of the following milestones (the "**Milestones**") shall constitute an immediate "Event of Default":

(a)    On the Petition Date, Debtors shall have filed a motion for approval of the DIP Facility and a motion to approve the use of Cash Collateral in form and substance acceptable to DIP Agent, Required DIP Lenders, and Prepetition Agent;

(b)    No later than three (3) business days after the Petition Date, the Court shall have entered the Interim Order, in form and substance acceptable to DIP Agent, Required DIP Lenders, and Prepetition Agent;

(c)    No later than five (5) days after the Petition Date, the Debtors shall have filed a motion to approve sale and bidding procedures (the "**Bid Procedures**") for a sale of substantially all of their assets (a "**Sale**") in form and substance acceptable to DIP Agent, Required DIP Lenders and Prepetition Agent (the "**Bid Procedures Motion**");

(d)    No later than nine (9) days after the Petition Date, the Debtors shall have filed a motion seeking to retain Moelis & Company or another investment banker acceptable to DIP Agent in its sole discretion (the "**Investment Banker**") to manage the Sale process, nunc pro tunc to the Petition Date, pursuant to that certain engagement letter agreement dated June 21, 2024 (or, with respect to any investment banker other than Moelis & Company, pursuant to an

---

[5]    For the avoidance of doubt, notwithstanding anything in the DIP Credit Agreement or the other DIP Documents to the contrary, the cure period for failure to timely deliver a Variance Report or Compliance Certificate shall be five (5) days from the date of written notice of such failure as provided in Section 9.01(p)(29) of the DIP Credit Agreement (provided, however, that the DIP Lenders shall not be obligated to fund under the DIP Facility during any such pending cure period for delivery of a Variance Report or Compliance Certificate).

engagement letter agreement acceptable to DIP Agent in its sole discretion), which motion shall be approved by order of the Court no later than thirty (30) days after the Petition Date;

(e)     No later than three (3) business days after entry of the Interim Order, the Debtors shall have filed a motion to reject certain leases, which shall be in form and substance acceptable to DIP Agent and Required DIP Lenders (including with respect to specific leases designated for rejection) (the "**Rejection Motion**");

(f)     No later than thirty (30) days after the Petition Date, the Court shall have entered the Final Order, in form and substance acceptable to DIP Agent and Required DIP Lenders and Prepetition Agent;

(g)     No later than thirty (30) days after the Petition Date, the Court shall have entered an order approving the Bid Procedures, in form and substance acceptable to DIP Agent and Prepetition Agent;

(h)     No later than thirty (30) days after the Petition Date, the Court shall have entered an order approving the Rejection Motion, in form and substance acceptable to DIP Agent and Prepetition Agent (including with respect to rejected leases);

(i)     No later than seventy (70) days after the Petition Date, final binding "qualified bids" for the Debtors' assets shall be due under, and in accordance with, the Bid Procedures;

(j)     No later than eighty (80) days after the Petition Date, the Debtors shall, if necessary in accordance with the Bid Procedures, have conducted an auction with respect to the Debtors' assets;

(k)     No later than November 6, 2024 (the "**Sale Hearing**"), the Court shall have entered an order authorizing the Sale, in form and substance acceptable to DIP Agent,

the Required DIP Lenders, and Prepetition Agent in their discretion, pursuant to definitive documentation acceptable to DIP Agent, the Required DIP Lenders, and Prepetition Agent in their discretion, free and clear of all liens, claims, encumbrances and other interests (such Sale, an "**Acceptable Sale**");

(l)    No later than thirty (30) days after the date on which the auction concludes, the Debtors shall have consummated the Acceptable Sale and remitted the net proceeds thereof to DIP Agent (for the benefit of the DIP Lenders) for application to the DIP Obligations, and if applicable, then to the Prepetition Agent (for the benefit of the Prepetition Lenders) for application to the Prepetition Obligations (provided that, for the avoidance of doubt, the Prepetition Obligations and Roll-Up shall remain subject to paragraph 12 hereof).

16.    Rights and Remedies Upon Event of Default and Following Termination Declaration.

(a)    Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order, subject to providing the Debtors, any Committee, and the U.S. Trustee with five (5) business days' written notice (email being sufficient) (such period, the "**Remedies Notice Period**"), (a) the DIP Agent (at the direction of the Required DIP Lenders) may declare (email being sufficient) (any such declaration shall be referred to herein as a "**Termination Declaration**") (i) all or any portion of the DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability

or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the Carve-Out shall be triggered, through the delivery of the Carve-Out Trigger Notice to the DIP Borrower (provided that the Carve-Out shall be deemed automatically triggered notwithstanding anything to the contrary herein from and upon the occurrence of the Maturity Date (as defined in the Credit Agreement) (including, for the avoidance of doubt, upon the closing of an Acceptable Sale) without the need for delivery of a Carve-Out Trigger Notice or Termination Declaration) and (b) the Prepetition Agent (at the direction of the required Prepetition Lenders) may declare (email being sufficient) a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date on which a Termination Declaration is delivered or the Maturity Date (as defined in the DIP Credit Agreement) otherwise occurs, the "**Termination Date**").   The automatic stay in the Chapter 11 Cases otherwise applicable to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties is hereby modified so that upon the expiration of the Remedies Notice Period (if applicable under the DIP Credit Agreement): (a) the DIP Agent (at the direction of the Required DIP Lenders) shall be entitled to exercise its rights and remedies in accordance with the DIP Documents and this Final Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve-Out and (b) subject to the foregoing clause (a), the Prepetition Agent shall be entitled to exercise its respective rights and remedies to the extent available in accordance with the applicable Prepetition Loan Documents and this Final Order with respect to the Prepetition Collateral, including, without limitation, Debtors' use of Cash Collateral.   During the Remedies Notice Period, the Debtors and the Committee may seek an emergency hearing with the Court to be conducted within the Remedies Notice Period, provided that any request for such emergency hearing by the Debtors (but not the Committee) shall be for the sole purpose of determining

whether an Event of Default has in fact occurred or is continuing. Notwithstanding the foregoing, if the Debtors or Committee, as applicable, properly requests in accordance with applicable law and rules of procedure that the Court hold an emergency hearing during the Remedies Notice Period for the purposes described above, then the Remedies Notice Period shall be tolled until the occurrence of such emergency hearing; provided that if the Court denies any such request for an emergency hearing, the Remedies Notice Period shall be deemed to have immediately expired. Upon the occurrence of the Termination Date, the automatic stay, as to all of the DIP Agent, DIP Lenders, and Prepetition Secured Parties (and the Prepetition Collateral and DIP Collateral, respectively) shall automatically be terminated without further notice or order and the DIP Secured Parties and the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, and in the DIP Documents and Prepetition Loan Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Final Order. The Debtors shall take all action that is reasonably necessary to cooperate with the DIP Secured Parties and the Prepetition Secured Parties, respectively, in the exercise of their rights and remedies and to facilitate the realization of the DIP Collateral by the DIP Secured Parties and Prepetition Secured Parties.

(b)     Upon the occurrence of a Termination Date, subject to the Carve-Out, the Debtors are hereby authorized and directed to remit to the DIP Agent (for the benefit of the DIP Lenders) one hundred percent (100%) of all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Documents and this Final Order.  In furtherance of the foregoing, (a) each bank or other financial institution with an account of any Debtor is hereby authorized to (i) comply at all times with any instructions originated by the DIP Agent to such bank or financial institution directing the disposition of cash, securities, investment property and

other items from time to time credited to such account, without further consent of any Debtor, including without limitation, any instruction to send to the DIP Agent by wire transfer or in such other manner as the DIP Agent directs, all cash, securities, investment property and other items held by such bank or financial institution, and (b) the DIP Agent may (at the direction of the Required DIP Lenders), or may direct the Debtors to, (and the Debtors shall comply with such direction to) collect accounts receivable; *provided*, *however*, that in the event the DIP Obligations are indefeasibly repaid in full in cash, then the Prepetition Agent and the Required Prepetition Lenders, respectively, shall be substituted for the DIP Agent and Required DIP Lenders, respectively, for purposes of this clause (b).

(c)      Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Secured Parties or Prepetition Secured Parties under this Final Order, the DIP Documents and applicable law, after the occurrence of a Termination Date, for the purpose of the DIP Secured Parties or Prepetition Secured Parties (or any of their respective employees, agents, consultants, contractors, or other professionals) (all such parties, collectively, the "**Enforcement Agents**") exercising any remedy with respect to any of the DIP Collateral, the DIP Agent, or Prepetition Agent (if the DIP Obligations have been repaid in full) shall have the right to: (i) enter upon, occupy, and use any real or personal property, fixtures, equipment, leasehold interests, or warehouse arrangements owned or leased by the Debtors, provided, however, the Enforcement Agent may only be permitted to do so in accordance with (a) existing rights under applicable non-bankruptcy law, including, without limitation, applicable leases, (b) any prepetition (and, if applicable, post-petition) landlord waivers or consents, if any, or (c) further order of this Court on motion and notice appropriate under the circumstances, and provided, further, that nothing herein shall authorize or affect any right, of any of the Debtors,

Prepetition Secured Parties, DIP Secured Parties, or the applicable franchisees with respect to entry upon, occupation of, or use of any real or personal property at the Debtors' franchised locations; and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents, equipment or any other similar assets of the Debtors, or assets which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, *provided*, *however*, the Enforcement Agents may use such assets to the extent permitted by applicable non-bankruptcy law; and *provided*, *further* that, except as expressly set forth below, all costs associated with the enforcement of such rights shall constitute DIP Obligations.  The Enforcement Agents will be responsible for the payment of any applicable fees, rentals, royalties, or other amounts owing to such lessor, licensor or owner of such property (other than the Debtors) on a per diem basis and solely for the period of time that the Enforcement Agents occupies any real property or uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals, or other amounts owing for any period prior to the date that the Enforcement Agents actually occupies or uses such assets or properties). Nothing contained herein shall require the Enforcement Agents to (a) assume any lease as a condition to the rights afforded in this paragraph, (b) enter into the premises of any Debtor in connection with the orderly sale or disposition of the DIP Collateral (including, without limitation, complete any work in process) and (c) exercise any rights of the Debtors to access any DIP Collateral (including inventory) held by any third party.

17.     <u>Limitation on Charging Expenses Against Collateral; Equities of the Case Exception</u>.  All payments or proceeds remitted to or on behalf of the DIP Agent, any DIP Lenders, or the Prepetition Secured Parties pursuant to the provisions of the DIP Documents, this Final Order, or any subsequent order of the Court shall be received free and clear of any claim, charge, assessment, or other liability, provided that any payments or proceeds applied to the Roll-Up shall

remain subject to paragraph 12 of this Final Order. Subject to, but without limiting, the foregoing, except to the extent of the Carve-Out, no expenses of the administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including any Successor Case or liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the (i) DIP Collateral (except to the extent of the Carve-Out), the DIP Agent, or the DIP Lenders or (ii) the Prepetition Collateral (except to the extent of the Carve-Out) or the Prepetition Secured Parties, as applicable, in each case, pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent, the Required DIP Lenders, and the Prepetition Agent, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties. Further, the "equities of the case" exception of section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties.

18. <u>Use of Prepetition Secured Parties' Cash Collateral</u>. The Debtors are hereby authorized to use Cash Collateral of the Prepetition Secured Parties, but solely for the purposes set forth in this Final Order and in accordance with the Approved Budget and the Budget Covenant, including, without limitation, to make payments on account of the Adequate Protection Obligations (which, for the avoidance of doubt, shall not have to be in accordance with the Approved Budget) provided for in this Final Order, from the date of the Interim Order through and including the Termination Date. Except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

19. <u>Expenses</u>.

(a)     The Debtors are hereby authorized to pay, in accordance with this Final Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents and this Final Order as such amounts become due and without need to obtain further Court approval, including, without limitation, backstop, fronting, closing, arrangement, participation, or commitment payments (including all payments and other amounts owed to the DIP Secured Parties and the Prepetition Secured Parties), all fees and other amounts owed to the DIP Agent and the Prepetition Agent, the reasonable and documented fees and disbursements of counsel to the DIP Agent and Prepetition Agent and the other professionals to the extent set forth in paragraphs 3(d)(3)and 8(c), (d), and (e) of this Final Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Final Order, the DIP Documents, or the Prepetition Loan Documents, as applicable.   Notwithstanding the foregoing, the Debtors are authorized to pay on the Closing Date (as defined in the DIP Credit Agreement) all fees, costs, and expenses (including the fees and expenses of counsel and financial advisors to each of the DIP Agent and the Prepetition Agent), incurred or earned on or prior to such date without the need for any professional engaged by the DIP Agent or Prepetition Agent to first deliver a copy of its invoice as provided in clause (b) below. For the avoidance of doubt, the payment of any fees, cost and/or expenses of the DIP Agent and the Prepetition Agent (including the fees and expenses of counsel and financial advisors to each of the DIP Agent and the Prepetition Agent) shall not be capped notwithstanding the amounts allocated for such items in the Approved Budget.

(b)     The Debtors shall be jointly and severally obligated to pay all fees and expenses described above, which obligations shall constitute the DIP Obligations to the extent they are owed to the DIP Secured Parties.   The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in

paragraphs 3(d)(3)and 8(c) of this Final Order (collectively, the "**Lender Professionals**" and, each, a "**Lender Professional**") no later than seven (7) days (the "**Review Period**") after the receipt by counsel for the Debtors, any Committee, and the U.S. Trustee of each of the invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including such amounts arising before the Petition Date.  Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred or earned during the pendency of the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.  The Debtors, any Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") if, within the Review Period, a Debtor, any Committee that may be appointed in the Chapter 11 Cases, or the U.S. Trustee notifies the submitting party in writing (which may be an email to the submitting party's counsel) setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least five (5) calendar days prior written notice to the submitting party of any hearing on such motion or other pleading).  For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

20.     <u>No Third-Party Rights</u>.  Except as explicitly provided for herein with respect to the Prepetition Secured Parties and DIP Secured Parties, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

21.     <u>Section 507(b) Reservation</u>.  Subject only to the Carve-Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral).

22.     <u>No Waiver for Failure to Seek Relief</u>.  The failure or delay of the DIP Secured Parties or Prepetition Secured Parties to exercise rights and remedies under this Final Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

23.     <u>Perfection of the DIP Liens and Adequate Protection Liens</u>.

(a)     The DIP Agent and the Prepetition Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder.  Subject to paragraph 12 of this Final Order, whether or not the DIP Agent or the Prepetition Agent shall choose to file such financing statements, intellectual property filings, mortgages, notices of lien,

or similar instruments, such liens and security interests were, effective upon entry of the Interim Order (and as ratified by this Final Order) deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination.  If the DIP Agent or the Prepetition Agent determines to file or execute any financing statements, agreements, notice of liens, or similar instruments, the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the DIP Agent or the Prepetition Agent, and the automatic stay shall be modified to allow such filings as provided for in this Final Order.

(b)     A certified copy of this Final Order may be filed with or recorded in filing or recording offices by the DIP Agent or the Prepetition Agent in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; *provided* that notwithstanding the date of any such filing, the date of such perfection shall be the date of the Interim Order.

24.     <u>Release</u>.  Subject to the rights and limitations set forth in paragraph 12 of this Final Order, upon entry of this Final Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors, and assigns, shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge, each of the DIP Agent, DIP Lenders, the Prepetition Agent, the Prepetition Lenders, each in their capacities as such, and each of their respective former or current officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors-in-interest, each in their capacity as such (collectively, the "**Related Parties**"), of and from any and all claims, demands, liabilities,

responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist as of the date of this Final Order, in each case with respect to or relating to the Debtors, the Prepetition Loan Parties, the Interim Order, the DIP Obligations, the DIP Liens, the DIP Credit Agreement, the DIP Documents, the Prepetition Obligations, the Prepetition Liens, the Prepetition Loan Documents or this Final Order, as applicable, including, without limitation: (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties and the Prepetition Secured Parties, respectively; *provided* that nothing in this paragraph shall in any way limit or release the obligations of any DIP Secured Party under the DIP Documents or applicable law, or any Prepetition Secured Party under the Prepetition Loan Documents or applicable law.

25.    <u>Credit Bidding</u>. The DIP Agent (at the direction of the Required DIP Lenders) and, subject to the reservations of rights set forth in paragraph 12, the Prepetition Agent (at the direction of the Required Lenders under, and as defined in, the Prepetition Credit Agreement (the "**Required Prepetition Lenders**")) shall have the right to submit a credit bid (either directly or through one or more acquisition vehicles or other designees) pursuant to section 363(k) or any other applicable provisions of the Bankruptcy Code, for the DIP Collateral and/or the Prepetition Collateral (as

applicable) up to the full amount of the DIP Obligations (including the Interim Roll-Up and the Final Roll-Up, and any accrued interests and expenses thereon), the Prepetition Obligations, the DIP Secured Parties' and Prepetition Secured Parties' respective claims, including, for the avoidance of doubt, accrued interest, expenses, and the Adequate Protection Superpriority Claims, if any, in any sale of all or any portion of the DIP Collateral or the Prepetition Collateral (as applicable) without the need for further Court order authorizing the same, including, without limitation, any sales, dispositions or other transfers occurring pursuant to section 363 of the Bankruptcy Code or included as part of any Chapter 11 Plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A), and the DIP Secured Parties and Prepetition Secured Parties (or their designees), respectively, shall be deemed a "qualified bidder" with respect to any disposition of DIP Collateral or Prepetition Collateral (as applicable) under or pursuant to (a) section 363 or any other applicable section of the Bankruptcy Code, (b) a Chapter 11 Plan, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code.

26.     Preservation of Rights Granted Under this Final Order.

(a)     In the event this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Secured Parties and/or the Prepetition Secured Parties, respectively, hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits as and to the extent afforded in section 364(e) of the Bankruptcy Code.

(b)      Except with respect to the Carve-Out, unless and until all DIP Obligations and Prepetition Obligations (including the Adequate Protection Superpriority Claims) are indefeasibly paid in full in cash, and all commitments in respect of the New Money DIP Loans are terminated, it shall constitute an Event of Default for the Debtors to seek or consent to, directly or indirectly (i) except with the prior written consent of the DIP Agent, the Required DIP Lenders and the Prepetition Agent and the Required Prepetition Lenders, (x) any modification, stay, vacatur, or amendment of this Final Order or (y) except as permitted under this Final Order or any other DIP Documents, a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases, *pari passu* with or senior to the DIP Obligations, DIP Superpriority Claims, the Adequate Protection Superpriority Claims, or the Prepetition Obligations, or (z) any other order allowing use of the DIP Collateral; (ii) except as permitted under this Final Order or other DIP Documents (including the Carve-Out), any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens, the Adequate Protection Liens, the Permitted Prior Liens or the Prepetition Liens, as applicable; *provided*, that this Final Order and other DIP Documents do not permit liens other than the DIP Liens and Permitted Prior Liens to be senior to, or *pari passu* with, the Adequate Protection Liens or the Prepetition Liens; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Final Order; (iv) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor; or (v) an order converting or dismissing any of the Chapter 11 Cases.

(c)     Subject to the reservation of rights set forth in paragraph 12 (solely as it pertains to the Prepetition Secured Parties, the Prepetition Collateral, and the Roll-Up), to the extent applicable, and notwithstanding any order dismissing any of the Chapter 11 Cases entered at any time, (y) the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to the Interim Order (and ratified and approved on a final basis pursuant to this Final Order) and any other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted under this Final Order shall continue in full force and effect and shall maintain their priorities as provided herein until all DIP Obligations, Adequate Protection Obligations, and Prepetition Obligations are indefeasibly paid in full in cash (and such DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Final Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (z) to the fullest extent permitted by law, the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (y) above.

(d)     Subject to the reservation of rights set forth in paragraph 12 (solely as it pertains to the Prepetition Secured Parties, the Prepetition Collateral, and the Roll-Up), to the extent applicable, and except as expressly provided in this Final Order, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of the Interim Order (and ratified and approved on a final basis pursuant to this Final Order) and any other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted under this Final Order and the DIP Documents

shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale or any other disposition of any Prepetition Collateral or DIP Collateral pursuant to section 363(b) or any other applicable section of the Bankruptcy Code, or (iii) the entry of an order confirming a Chapter 11 Plan and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in the Chapter 11 Cases and in any Successor Case.  The DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties, respectively, granted by the provisions of the Interim Order (and ratified and approved on a final basis pursuant to this Final Order) and any other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted under this Final Order and the other DIP Documents shall continue in full force and effect until the DIP Obligations and the Prepetition Obligations are indefeasibly paid in full in cash.

(e)     Other than as set forth in this Final Order, subject to the Carve-Out, neither the DIP Liens nor the Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases or arising after the Petition Date (except pursuant to Section 546(b)), and neither the DIP Liens nor the Adequate Protection Liens shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

27.  <u>Limitation on Use of DIP Facility Proceeds and DIP Collateral</u>.  Notwithstanding anything to the contrary set forth in this Final Order or the other DIP Documents, none of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or Carve-Out or proceeds thereof may be used: (a) to investigate (including by way of examinations or discovery proceedings), initiate, assert, prosecute, join, commence, support, or finance the initiation or prosecution of any Challenge or other claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (i) against any of the DIP Agent, Prepetition Agent, DIP Secured Parties or the Prepetition Secured Parties (each in their capacities as such), and each of the Agent Representatives and their respective affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors, in each case with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, any so-called "lender liability" claims and causes of action or the seeking of any other relief that would impair the rights and remedies of any of the DIP Agent, Prepetition Agent, DIP Secured Parties or the Prepetition Secured Parties (each in their capacities as such), respectively, under the DIP Documents, the Prepetition Loan Documents, this Final Order and/or applicable law, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Committee appointed in the Chapter 11 Cases in connection with the assertion of or joinder in any Challenge or other claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Agent, Prepetition Agent, DIP Secured Parties or the Prepetition Secured Parties to

recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief against any of the DIP Agent, Prepetition Agent, DIP Secured Parties or the Prepetition Secured Parties or any of the Agent Representatives related to the DIP Obligations or the Prepetition Obligations, as applicable; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations or the Prepetition Obligations, or the DIP Agent's, the DIP Lenders', and the Prepetition Secured Parties' liens or security interests in the DIP Collateral or Prepetition Collateral (including, without limitation, any Adequate Protection Liens), as applicable; or (iii) for monetary, injunctive, or other affirmative relief against any of the DIP Agent, Prepetition Agent, DIP Secured Parties or the Prepetition Secured Parties, or the DIP Agent's, the DIP Lenders', the Prepetition Agent's, or Prepetition Secured Parties' respective liens on or security interests in the DIP Collateral or the Prepetition Collateral that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations or the Prepetition Obligations, to the extent applicable (including, without limitation, any such relief with respect to the allocation of value of any sale proceeds); and (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens and the Adequate Protection Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Obligations, or by or on behalf of the DIP Agent and the DIP Lenders related to the DIP Obligations (including the DIP Liens); (c) for asserting, commencing, or prosecuting any Challenge or other claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to the DIP Obligations, the DIP Liens, the Adequate Protection Liens, the Adequate Protection Obligations, the Prepetition Obligations, and/or the Prepetition Liens; or (d) for prosecuting an objection to, contesting in any

manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of: (x) any of the DIP Liens or any other rights or interests of the DIP Agent or the DIP Lenders related to the DIP Obligations or the DIP Liens, or (y) any of the Prepetition Liens or any other rights or interests of any of the Prepetition Secured Parties related to the Adequate Protection Liens, the Adequate Protection Obligations, the Prepetition Obligations or the Prepetition Liens, *provided* that notwithstanding anything to the contrary herein, no more than $100,000 of the proceeds of the DIP Facility, the DIP Collateral, or the Prepetition Collateral, in the aggregate, may be used by any Committee appointed in the Chapter 11 Cases or by any chapter 7 or chapter 11 trustee appointed or elected, if any, solely to investigate solely within the Challenge Period, any Challenge or other claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Parties solely concerning the legality, validity, priority, perfection, enforceability, avoidability or extent of the claims, liens, or interests (including the Prepetition Liens and Adequate Protection Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Obligations.

28.     Conditions Precedent.  No DIP Lender shall have any obligation to make any New Money DIP Loan or other financial accommodations under the respective DIP Documents unless all of the conditions precedent to the making of such extensions of credit under this Final Order and the other applicable DIP Documents have been satisfied in full or waived in accordance with such DIP Documents.

29.     Intercreditor Provisions.  Pursuant to section 510 of the Bankruptcy Code, any applicable intercreditor or subordination provisions contained in any of the Prepetition Loan Documents, including, without limitation, the Subordination Agreement, (x) shall remain in full force and effect, (y) shall continue to govern the relative obligations, priorities, rights, and

remedies in favor of the Prepetition Secured Parties, and (z) shall not be deemed to be amended, altered, or modified by the terms of this Final Order except to the extent expressly set forth herein. For the avoidance of doubt, nothing in this Final Order approves, validates or renders enforceable any right of subrogation or setoff afforded to Equinox under the Subordination Agreement.

30.    <u>Binding Effect; Successors and Assigns</u>.  The DIP Credit Agreement and the other DIP Documents (with respect to the parties thereto) and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, (including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Committee, and the Debtors and their respective successors and permitted assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors)) and the successors and assigns of each such aforementioned party, and shall inure to the benefit of the DIP Secured Parties and the Prepetition Secured Parties; *provided* that, except to the extent expressly set forth in this Final Order, the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

31.    <u>Limitation of Liability; Exculpation</u>.  In determining to make any loan under the DIP Documents or permitting the use of Cash Collateral pursuant to this Final Order and the DIP Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (including, without limitation, as such terms, or any similar terms, are used in the United States

Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), and shall not be deemed to owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.  Furthermore, nothing in this Final Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any Prepetition Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors, including with respect to the operation of their businesses, in connection with their restructuring efforts or administration of the Chapter 11 Cases.  In addition, (a) the DIP Secured Parties and Prepetition Secured Parties shall not in any way or manner be liable or responsible for: (i) the safe-keeping of the DIP Collateral (including any Prepetition Collateral), (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any Diminution in Value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral (including any Prepetition Collateral) shall be borne by the Debtors.

32.    No Requirement to File Claim for DIP Obligations.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the DIP Agent nor any DIP Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or

enforceability of any of the DIP Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Agent's or any DIP Lender's rights, remedies, powers, or privileges under any of the DIP Documents, this Final Order, or applicable law.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

33.    <u>No Requirement to File Claim for Prepetition Obligations</u>.    Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the Prepetition Agent nor any Prepetition Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition Obligations; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the Prepetition Loan Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the Prepetition Agent's or any Prepetition Lenders' rights, remedies, powers, or privileges under any of the Prepetition Loan Documents, this Final Order, or applicable law.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

34.    <u>No Marshaling</u>.  The DIP Secured Parties and Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable, and the proceeds of such DIP

Collateral and Prepetition Collateral shall be received and applied pursuant to the DIP Orders, the DIP Documents, and the Prepetition Loan Documents, as applicable, notwithstanding any other agreement or provision to the contrary.

35.    <u>Equities of the Case</u>.  The DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties and the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the DIP Collateral and Prepetition Collateral, as applicable.

36.    <u>Affiliate Transactions</u>.  Notwithstanding anything in the DIP Documents to the contrary, in no event shall any of the Debtors transfer any property to a non-Debtor affiliate (as defined under section 101(2) of the Bankruptcy Code) without the consent of the DIP Agent, Required DIP Lenders, Prepetition Agent, Required Prepetition Lenders, and in consultation with the Committee, except in the ordinary course of business or as authorized pursuant to an order of the Court.

37.    <u>Postpetition Pleadings</u>.  The Debtors shall use reasonable efforts to furnish the DIP Agent, Prepetition Agent, and the Committee, no later than two (2) business days prior to filing, or distribution of, (unless doing so is unreasonable, in which case the Debtors shall do so as soon as practicable under the circumstances) copies of all material pleadings, motions, applications, and other documents to be filed by or on behalf of Debtors with the Court or submitted to the U.S. Trustee.

38.    <u>Turn Over</u>.  Except as expressly permitted in this Final Order or the DIP Documents and except with respect to the Debtors, in the event any party receives any payment on account of a security interest in the DIP Collateral that is junior and/or subordinate to the DIP Liens or a claim

that is subordinate to the DIP Superpriority Claims (including any of the Prepetition Secured Parties and Equinox) or is paid the proceeds of any DIP Collateral or receives any other payment or consideration from any other source prior to the indefeasible payment in full in cash of all DIP Obligations and termination of all commitments under the DIP Documents, such party shall be deemed to have received, and shall hold, such proceeds or payments in trust for the DIP Secured Parties and shall immediately turn over such amounts to the DIP Agent, or as otherwise instructed by the Court, for application in accordance with the DIP Documents and this Final Order.

39.    <u>Texas Taxing Authorities Resolution</u>. Notwithstanding any other provisions in this Final Order or any final orders pertaining to the use of cash collateral in these Chapter 11 Cases, any statutory liens on account of ad valorem taxes held by the Texas Taxing Authorities[6] (the "**Tax Liens**") shall neither be primed by nor made subordinate to any liens granted to any party hereby to the extent the Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved. Furthermore, as adequate protection for the asserted secured tax claims of the Texas Taxing Authorities to such Tax Liens (the "**Tax Claims**"), the Debtors shall set aside the amount of $93,000.00 in a segregated account (the "**Tax Reserve**"). The Tax Liens of the Texas Taxing Authorities shall attach to the Tax Reserve to the same extent and with the same priority as the liens attached to the Debtors' assets securing the Tax Liens. The funds in the Tax Reserve shall be on the order of adequate protection and shall constitute neither the allowance of the Tax Claims nor a cap on the amounts the Texas Taxing Authorities may be entitled to receive. The funds from the Tax Reserve may be distributed only upon agreement

---

[6]    The term "Texas Taxing Authorities" shall refer to: Fort Bend County, City of Houston (where represented by Linebarger), Houston Community College System, Houston Independent School District, Tarrant County, City of Houston (where represented by Perdue), Alief Independent School District, Fort Bend Independent School District and Spring Branch Independent School District.

between the Texas Taxing Authorities and the Debtors, or by subsequent order of the Court, duly noticed to the Texas Taxing Authorities. Notwithstanding any order that may be entered converting these Chapter 11 cases to cases under chapter 7, the funds in the Tax Reserve will continue to be held for the benefit of the Texas Tax Authorities and the Tax Liens shall remain attached to the funds in the Tax Reserve in their relative priority until the Tax Claims are paid in full.

40.    <u>Hartford Fire Insurance Company Resolution</u>. Nothing in the DIP Orders, the DIP Facility or the DIP Documents shall in any way prime or otherwise affect the rights of Hartford Fire Insurance Company, or its past, present or future parents, subsidiaries or affiliates (individually and collectively as the "**Surety**") as to (a) any funds being held for it as of the Petition Date or in the future (to the extent permitted by the Approved Budget) including any proceeds due or to become due any of the Debtors or their non-debtor affiliates in relation to obligations bonded by the Surety; or  (b) under that certain General Indemnity Agreement executed on or about November 2, 2020 by Debtor/Indemnitor Blink Holdings, Inc. or any other applicable agreements among or involving such parties, including, without limitation, with respect to any assets of the Debtors securing any claim of the Surety arising thereunder (if any).  In addition, nothing in the DIP Orders, the DIP Facility, or the DIP Documents shall prime (x) any setoff and/or recoupment rights and/or the lien rights and/or trust fund rights of the Surety or any party to whose rights the Surety has or may be subrogated; and/or (y) any subrogation or other common law rights of the Surety.  Nothing herein is an admission by the Surety or the Debtors, or a determination by the Bankruptcy Court, regarding any claims under any bonds, and the Surety and the Debtors reserve any and all rights, remedies and defenses in connection therewith.

41.  <u>Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

42.  <u>Retention of Jurisdiction</u>.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

43.  <u>Final Order Controls</u>.  To the extent of any conflict or inconsistency between or among (a) the express terms or provisions of any of the DIP Documents, the Motion, or any other order of this Court, or any other agreements, and (b) the terms of this Final Order, the terms and provisions of this Final Order shall govern and control.

**Dated: September 18th, 2024**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**