

Thomas M. Pitegoff
914-309-9261
tom.pitegoff@offitkurman.com

July 3, 2024

Via FedEx [tracking number 777203116831] and email to lplave@plavekoch.com

Lee Plave, Esq.
Plave Koch PLC
3120 Fairview Park Drive, Suite 420
Falls Church, VA 22042

**Re: Stephen L. Stabile**

Dear Lee,

Our law firm has been engaged by Stephen L. Stabile to represent him and his companies, Platinum Gym One, Inc. ("Platinum One") and Platinum Gym Two, Inc. ("Platinum Two"), in their relations with their franchisor, Blink Fitness Franchising, Inc. ("Blink Fitness"), which we understand you represent. We are working together with the Law Offices of Lisa A. Biase, P.C. as co-counsel in its ongoing legal representation of Mr. Stabile and his companies.

As you know, Platinum One entered into a Development Rights Agreement with Blink Fitness on March 10, 2017, giving Platinum One and its affiliates the right to develop three new Blink Fitness gyms. The Development Rights Agreement was amended October 31, 2017, to expand the grant of rights to a total of seven Blink Fitness Gyms. However, Platinum One and its affiliate, Platinum Two, have only opened two units to date. The Platinum One gym is in Beverly, Massachusetts, and operates under a Unit Franchise Agreement signed March 10, 2017, simultaneously with the signing of the Development Rights Agreement. The Platinum Two gym is in Medford, Massachusetts, and operates under a Unit Franchise Agreement effective August 1, 2018.

The reason our client has not opened more than two franchised Blink Fitness franchised gyms under the Development Agreement is that (i) Blink Fitness has produced no FDD since its FDD dated September 29, 2020, and (ii) Blink Fitness is no longer registered in the State of New York. For these reasons, Blink Fitness cannot lawfully sell franchises. It can neither lawfully sell franchises under federal law (the FTC Rule) nor New York law. As you know, the New York Franchise Sales Act requires New York franchise registration for franchisors located in New York State regardless of whether the franchise buyer is located in New York or in any other state or country. There are no exemptions that apply under these circumstances. Therefore, aside from the legal issues, our client would like to know (and is entitled to know) the information that would be required to be disclosed in an FDD before he would invest in any additional Blink franchises. He has made numerous requests – both orally and in writing - to various Blink Fitness personnel to obtain the current Blink Fitness FDD, but all to no avail.

Because of Blink Fitness's inability to enter into new franchise agreements, our client is unable to open additional franchised Blink Fitness gyms. For the same reason, he is also prevented from selling his businesses to any potential buyers other than the franchisor. Any prospective third-party buyer would neither be able to receive a current FDD as required by the FTC Rule and by §684.5(a-c) of the New York



Lee Plave, Esq.
Page 2

Franchise Sales Act nor sign the "then-current form of Franchise Agreement", as required by Section 16.C of the franchise agreement.

Clearly, your client, as the franchisor, has an implied obligation under the franchise agreement to issue annual updates to its FDD and to maintain its franchise registration in New York. Blink Fitness has not met this fundamental obligation. This lack of material compliance came as a complete surprise to Mr. Stabile because when he was solicited by the franchisor to purchase Blink Fitness gyms, your client represented to Mr. Stabile that Blink Fitness had more than 300 gyms by 2020 (50% company-owned and 50% franchise owned). Blink Fitness *never* had more than 300 gyms and in fact, never came anywhere near this number. Instead, the franchisor aggregated its affiliate's gym numbers (*i.e.,* Equinox) in its marketing materials and misrepresented its growth rate. Currently, the franchisor has 94 gyms that are company-owned. The most franchised gyms it ever had was 12, of which most have left the system or filed for bankruptcy leaving only 7 today. Thus, it is Mr. Stabile, individually, who has tirelessly endeavored to make his gyms successful, not any assistance, growth or strategy plan by the franchisor.

Blink Fitness has provided essentially no support to our client in years. Our client pays ongoing royalties but receives nothing in return other than the license to use the Blink Fitness trademark. Our client also pays a "New Member Fee" for new gym memberships that are derived from the system's website or app. However, this has proved to be unworkable in the gym environment compounded by the fact that the franchisor repeatedly changes the terms of its membership through various promotions. Mr. Stabile also pays a technology fee under Section 7 of the franchise agreement. This fee is purportedly for "proprietary software or technology" which the franchisor *does not have*. All gyms including franchisees utilize *Motionsoft*™ which is available to any gym or fitness business outside of the Blink Fitness system. The technology fee is also supposed to cover "[c]omputer [s]ystem maintenance and support services" by the franchisor. Other than a bi-monthly Zoom with franchisees, there are no such maintenance and support services.

Additionally, as you know, our client recently discovered a breach by Blink Fitness regarding payments through the app by gym members and franchisees not receiving the money that they are due from such memberships. While your client has offered to 'fix' the problem, Mr. Stabile is not convinced that this has been fixed at all. Accordingly, he and his companies reserve all of their rights and remedies for damages against the franchisor on any monies due them from this breach. There may also be other yet undiscovered breaches by the franchisor for which Mr. Stabile likewise reserves his rights.

Because of your client's breaches of the franchise agreements, we are notifying Blink Fitness Franchising, Inc. by copy of this letter, in accordance with Section 23 of the franchise agreements, of our clients' termination of the franchise agreements pursuant to Section 18.A. of those agreements.

Since, over the years and with various changing executive personnel, Blink Fitness has consistently demonstrated its inability or refusal to create a current FDD, we do not expect that your client will cure these breaches, let alone within a reasonable time period. Therefore, we propose that we prepare and discuss a Mutual Termination agreement and Release that is acceptable to both of our clients. That agreement would explicitly state that our client may continue to operate gyms at its current Blink Fitness franchised locations but marketed with a new brand that is entirely distinct from the Blink Fitness brand.



We do not anticipate that this will be a problem since both of Mr. Stabile's gyms are approximately 250 miles away from the nearest Blink Fitness gym.

As long as the agreement is otherwise acceptable to our client, our client is willing to forego any requirement that your client refund any amounts paid under the development agreement for rights to open the five remaining franchised gyms permitted under that agreement or money damages for any breaches under the franchise agreements.

Our client is also willing to acknowledge in the Mutual Termination Agreement and Release that he has no intention in the near future to compete with Blink Fitness Gyms in the New York metropolitan area or within close proximity to any other Blink Fitness Gyms currently in operation. Of course, our client has no need or intention to disclose any Blink Fitness trade secrets or doing anything that would damage the Blink Fitness goodwill.

We are aware that you and Ms. Biase attempted to negotiate an amicable resolution before our engagement. That attempted resolution included your client's unreasonable demand for liquidated damages – an obligation that is not required in the franchise agreements and wholly inappropriate given the franchisor's breaches. Therefore, Mr. Stabile withdraws all offers and counteroffers that he and his companies have made to Blink Fitness. Our client reserves all of their rights and remedies, whatever they may be and in whatever forum.

We look forward to hearing from you.

Very truly yours,

Thomas Pitegoff

cc:   Lisa A. Biase, Esq.
      Daniel Goldberg, Esq.
      Stephen L. Stabile
      Blink Fitness Franchising, Inc. (via FedEx)