**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BLINK HOLDINGS, INC., *et al.*,[1] | ) Case No. 24-11686 (JKS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Obj. Deadline: September 30, 2024 at 4:00 p.m. (ET)[2] |
| | ) Hearing Date: Nov. 6 at 11:00 a.m. (ET) |
| | ) Re: Docket No. 361 |

**LIMITED OBJECTION OF 16302 JAMAICA AVENUE LLC, 15519 NORMANDIE, LLC, BRIXMOR HOLDINGS 12 SPE, LLC, PRIMESTOR JORDAN DOWNS, LLC, LODI VALUE ADD II, LLC, AND UE BERGEN MALL OWNER LLC TO NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS**

16302 Jamaica Avenue LLC, 15519 Normandie, LLC, Brixmor Holdings 12 SPE, LLC, Primestor Jordan Downs, LLC, Lodi Value Add II, LLC, and UE Bergen Mall Owner LLC (the "Landlords"), by and through their undersigned counsel, hereby file this limited objection (the "Objection") to the Debtors' *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [D.I. 361] (the "Cure Notice"), and respectfully state as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

1.    On August 12, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly consolidated for

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

[2] Deadline extended by agreement of the parties.

administrative purposes only (the "Chapter 11 Cases").  The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]  No trustee or examiner has been appointed in the Chapter 11 Cases.

2.      The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at each of the locations (the "Centers") set forth below:

| Landlord | Center | Location |
|---|---|---|
| 15519 Normandie, LLC | Gardena Plaza | Gardena, CA |
| Brixmor Holdings 12 SPE, LLC | Broadway | Houston, TX |
| Primestor Jordan Downs, LLC | Freedom Plaza | Los Angeles, CA |
| Lodi Value Add II, LLC | Lodi Marketplace | Lodi, NJ |
| UE Bergen Mall Owner LLC | Bergen Town Center | Paramus, NJ |
| 16302 Jamaica Avenue LLC | 163-02 Jamaica Avenue | New York, NY |

3.      Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.      On August 16, 2024, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of The Sale of All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (D) Granting Related Relief; and (II)(A) Authorizing and Approving the Debtors' Entry Into An Asset Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [D.I. 81] (the "Bidding Procedures Motion").

---

[3]  Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

5. On September 10, 2024, the Court entered that certain *Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of The Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (D) Granting Related Relief* [D.I. 348] (the "Bidding Procedures Order"), which authorized and approved, among other things, certain procedures to govern an auction process in connection with the potential a sale of all or substantially all of the Debtors' Assets,[4] including procedures for the assumption and assignment of any executory contracts or unexpired leases the Debtors may seek to have assumed and assigned in connection with such Sale.

6. On September 12, 2024, Debtors filed the Cure Notice, which identifies those executory contracts and unexpired leases that may be assumed and assigned to an applicable Successful Bidder in connection with the Sale, together with the Debtors' proposed cure amounts to be paid in connection any assumption and assignment of such contracts and leases, including the Leases.

7. The Landlords received an extension of time from the Debtors to respond to the Cure Notice to September 30, 2024. In the meantime, on September 26, 2024, the Landlords informally provided the Debtors with their calculation of the Cure Amounts for the Leases together with supporting documentation. As of the filing of this Objection, the parties have not yet agreed on the Cure Amounts for the Leases, and file this Objection to preserve all rights of the Landlords to their asserted Cure Amounts. Notwithstanding, Landlords will continue to work with the Debtors to reconcile and agree to Cure Amounts for the Leases.

---

[4] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Bidding Procedures Motion and the Bidding Procedures Order

8. As noted, Landlords file this Objection in order to preserve all of their rights with respect to any defaults under their Leases to be cured at the time of any assumption and assignment of their Leases to a Successful Bidder, and reserve their rights to raise further and other objections to the assumption and assignment of the Leases, including as to the adequate assurance information for the Stalking Horse Bidder or any Successful Bidder, once such Successful Bidder has been selected and/or such information has been provided, including as to the final forms of any Sale Order and/or APA.

**II.   CURE OBJECTION**

9. While Landlords do not generally object to a sale of the Debtors' assets to maximize the value of the estate for the benefit of all creditors, including as to Landlords' Leases, Landlords do object to any proposed assumption and assignment of the Leases unless and until the Debtors and/or a Successful Bidder complies with all of the requirements of Sections 365 of the Bankruptcy Code. Absent the ability, or willingness, of the Debtors and any proposed assignee to satisfy said requirements, the Court should deny any proposed assumption and assignment of the Leases. In addition, the amounts set forth in the Cure Notice for the Leases do not reflect all outstanding balances due and owing to Landlords under the Leases, or account for accruing or accrued, but unbilled charges or obligations under the Leases which may come due in the future.

**A.   The Debtors' Proposed Cure Amounts Do Not Provide For Payment Of All Obligations Due and Owing Under The Leases.**

10. To assume and assign the Leases, the Debtors must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating

4

to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;. . .

11 U.S.C. § 365(b)(1).

11. The Landlords' cure, as compared to the Debtors' cure, is summarized more fully in the chart below, and those charges comprising the Landlords' cure are more fully detailed in Exhibits 1-4, attached hereto and incorporated into this Objection by this reference:

| Landlord | Center | Location | Debtors' Cure | Landlords' Cure[5] | Attachment Showing Cure |
|---|---|---|---|---|---|
| Primestor Jordan Downs, LLC | Freedom Plaza | Los Angeles, CA | $42,302.35 | $42,591.80 | Exhibit 1 |
| UE Bergen Mall Owner LLC | Bergen Town Center | Paramus, NJ | $38,719.13 | $64,139.23 | Exhibit 2 |
| 16302 Jamaica Avenue LLC | 163-02 Jamaica Avenue | New York, NY | $96,467.74 (*Listed as 13602 Jamaica Avenue on Cure Notice for Confidential Settlement Agreement) | $426,073.44 | Exhibit 3 |

---

[5] Unless otherwise indicated, Landlords' cures do not include charges that are billed or come due after the filing of the Cure Notice, including but not limited to October 2024 rent and other charges, deferral amounts, or charges that are billed directly to the Debtors, including in some cases, real estate taxes. To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend the Objection to include such amounts. The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserves the right to payment (and amend this Objection to the extent necessary) for any amounts that come due under the Lease through the later of the date of any cure payment or effective date of assumption. In addition, unless otherwise indicated, Landlords' cure is exclusive of attorneys' fees, interest and costs that form the basis of the Landlords' actual pecuniary losses. Presently, Landlords estimate that their attorneys' fees incurred to date are in an amount not less than $5,000 per Lease.

| 15519 Normandie, LLC | Gardena Plaza | Gardena, CA | $20,189.96 | Agreed[6] | N/A |
| Brixmor Holdings 12 SPE, LLC | Broadway | Houston, TX | $12,173.67 | $12,173.68 | Exhibit 4 |
| Lodi Value Add II, LLC | Lodi Marketplace | Lodi, NJ | $17,129.91 | Agreed | N/A |

12. In addition, the Debtors' proposed cure amounts do not account for accruing but unbilled charges which may come due in the future, and do not take into account any actual pecuniary losses arising from defaults under the Leases that have been incurred by the Landlords, such as for attorney's fees, costs and interest. The cure amounts set forth by the Debtors must be modified to reflect additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein. Any such assumption of Landlords' Leases must comply with all the requirements of section 365 of the Bankruptcy Code, including that such assumption remain subject to all provisions of the Leases.

13. Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign a lease. As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord*, *In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 25

---

[6] Landlord agrees with Debtor's scheduled cure which is the balance of August rents presently due under the Lease attributable to the prepetition period; however, there is an additional $217,663.63 in accrued, but not presently due, deferred rent that must be repaid in accordance with the parties' agreements, with such repayment in part to commence on October 1, 2024 in the additional amount of $18,805.27/month to be repaid monthly from 10/1/24 – 03/1/25; and then again at $8,736.00/month from 10/2025 - 09/2026.

(Bankr. D. Kan. 2001); *In re Mushroom Transportation Co., Inc.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987). Indeed, "the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy had not intervened." *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992). Bankruptcy Code section 365(b)(1)(A) "clearly and unambiguously" requires the cure of *all defaults* before an unexpired lease of nonresidential real property may be assumed. *In re Building Block Child Care Centers, Inc.*, 234 B.R. 762, 765 (9th Cir. BAP 1999); *accord*, *In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, 49 (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults.") (emphasis in original).

14. As noted, the amounts set forth in the Cure Notice do not account for accruing or accrued but unbilled charges, which may come due in the future. The cure amounts set forth by the Debtors must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

15. To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend this Objection to include such amounts. Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." *See*, *e.g.*, *In re Rachels Industries, Inc.*, 109 B.R. 797, 811-12 (Bankr. W.D. Tenn. 1990), therefore, accrued but not yet due, and obligations that are accruing but not yet billed under the Leases, are not "defaults" that require cure at the time of assumption, but are to be paid when due under the terms of the Leases in the ordinary course. The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserve the right to seek payment (and amend this Objection to the extent necessary) from the Debtors or any prospective assignee of the Leases for

any amounts that come due under the Leases, either as cure as of the time of the assignment of the Leases, or when properly billed under the Leases in accordance with their terms.

16. In addition to the current outstanding rent and other monthly charges due, and not yet paid under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors or any assignee, either as cure or when properly billed under the Leases:

    i. *Year-end adjustments and reconciliations; Indemnification Obligations*

17. In addition to the rent and related monthly charges due under the Leases, together with attorneys' fees, costs, and interest, there are some charges for which the Debtors bear responsibility under the Leases that either have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods, or will not be known by the Landlords until after the assumption and assignment of the Leases. By way of example, as is typical in modern commercial leases, the Debtors pay fixed minimum rent, along with their pro-rata share of certain "Operating Expenses" such as utilities, real property taxes, insurance, common area maintenance expenses, ("CAM") HVAC maintenance expenses, and the like. Certain of these charges are estimated prospectively based on budgeted amounts compared to a base year, billed to and paid by the tenant on a monthly basis during the year, and subject to later reconciliation based on actual expenses incurred, typically after year-end. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (*i.e.*, year-end reconciliations and adjustments that accrued in 2023 may not yet have been billed, and such charges that are accruing for 2024 will not be billed until 2025).

In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.

18. Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Leases and, therefore, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time. Nevertheless, Debtors, or any prospective assignee, remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due in the ordinary course under the Leases in accordance with their terms. Therefore, in order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), Debtors or any potential assignee must provide Landlords with adequate assurance that such accrued, but unbilled, obligations will be satisfied when billed in the future, irrespective of the period in which they relate, and Landlords' rights and remedies with respect thereto are reserved.

19. The Debtors (or any successor) assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under the Leases.[7] Any sale order should clearly state that the Debtors (or the assignee) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment. In addition, any provision in a sale order that purports to release the Debtors (or successor) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

---

[7] Any ability to assume and assign the Leases is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Leases.

20. Similarly, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims, which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors or their agents. Again, any assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption and assignment of the Leases. Nothing in any sale order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

    ii.  *Attorneys' fees, costs and interest*

21. Where, as here, there are defaults under leases sought to be assumed and assigned, Bankruptcy Code section 365(b)(1) comes into play, and the Landlords are entitled not only to a cure of any defaults but also compensation for their actual pecuniary losses resulting from such defaults. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. *In re LCO Enterprises*, 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*). Each of the Leases contain provisions for the recovery of attorneys' fees, costs and interest in the event of defaults or to otherwise compel compliance with the terms of the Leases. Bankruptcy courts have held that attorneys' fees incurred in the enforcement of the obligations, covenants and conditions of a lease are proper components of a cure claim, and

recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) upon assumption and assignment of a lease if the underlying lease provides for them. *In re Entertainment, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). "[T]here is no logical distinction, for purposes of § 365, between claims for attorney's fees in connection with pre-petition defaults and such claims in connection with post-petition defaults."). *Id.* at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *Id.* at 152; *see also*, *In re Crown Books Corporation*, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al.*, 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)*, 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. *Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric*, 127 S. Ct. 1199, 1206 (2007).

22. Here, Landlords have incurred attorneys' fees enforcing their rights under the Leases and, pursuant to the Leases, are entitled to recover those attorneys' fees from the Debtors as cure as an obligation under the Leases. Landlords estimate their attorneys' fees and costs through any hearing on the assumption and assignment of their Leases to be approximately $5,000 per Lease. Landlords reserve the right to supplement their response to provide such further attorneys' fees

information as may be requested by Debtors, and to amend or reconcile such fees to the actual fees incurred at the time of the assumption and assignment of their Leases.

### B. The Cure Amounts Serve Only As Estimates.

23. Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend this Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases as of the time of the filing of this Cure Objection.

## III. JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

24. To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

## IV. RESERVATION OF RIGHTS

25. Landlords reserve their rights to further object to any proposed assumption or assignment of the Leases on additional grounds including, without limitation, Debtors' or a prospective assignee's showing of adequate assurance of future performance as required by Bankruptcy Code section 365(b)(1)(C) and (f)(2)(B), consistent with the Bidding Procedures Order, and any other objections to the proposed assumption and assignment of the Leases based upon any new information provided by Debtors or a proposed assignee or upon any different relief requested by Debtors.

## V. CONCLUSION

WHEREFORE, Landlords respectfully request that the Court enter an order consistent with the foregoing Objection and for such other and further relief as may be just and proper under all of the circumstances.

| | |
|---|---|
| Dated: September 30, 2024<br>Wilmington, Delaware | */s/ Leslie C. Heilman*<br>Leslie C. Heilman (DE No. 4716)<br>Laurel D. Roglen (DE No. 5759)<br>Margaret A. Vesper (DE No. 6995)<br>BALLARD SPAHR LLP<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4465<br>Facsimile: (302) 252-4466<br>E-mail: heilmanl@ballardspahr.com<br>         roglenl@ballardspahr.com<br>         vesperm@ballardspahr.com<br><br>*Counsel for 16302 Jamaica Avenue LLC, 15519 Normandie, LLC, Brixmor Holdings 12 SPE, LLC, Primestor Jordan Downs, LLC, Lodi Value Add II, LLC, and UE Bergen Mall Owner LLC* |