## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 81, 348, 350, 397** |

## NOTICE OF FILING OF *PROPOSED* SALE ORDER (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that, on August 16, 2024, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Debtors' Motion for Entry of Orders (I) (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (D) Granting Related Relief; and (II) (A) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [Docket No. 81] (the "**Motion**").  On September 10, 2024, the Court

---

[1]   The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354.  The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

entered an order [Docket No. 348] granting the relief sought in the Motion (the "**Bidding Procedures Order**").

      **PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a proposed form of order, a copy of which is attached hereto as <u>Exhibit A</u> (the "**Proposed Sale Order**"), approving the sale of the Debtors' assets, subject to the Debtors' receipt of higher and better offers in accordance with the Bidding Procedures Order.

      **PLEASE TAKE FURTHER NOTICE** that the hearing (the "**Sale Hearing**") to consider approval of the sale of the Debtors' assets is currently scheduled for November 6, 2024 at 11:00 a.m. (prevailing Eastern Time).  The Debtors intend to present the Proposed Sale Order, as may be revised, supplemented, or otherwise modified, at the Sale Hearing.

      **PLEASE TAKE FURTHER NOTICE** that the Proposed Sale Order attached hereto remains subject to further review and comments by the Debtors and other interested parties, and all rights are reserved in connection therewith.

*[Signature Page Follows]*

Dated: Wilmington, Delaware
October 4, 2024

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Allison S. Mielke*

Michael R. Nestor (No. 3526)
Sean T. Greecher (No. 4484)
Allison S. Mielke (No. 5934)
Timothy R. Powell (No. 6894)
Rebecca L. Lamb (No. 7223)
Benjamin C. Carver (No. 7176)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
         sgreecher@ycst.com
         amielke@ycst.com
         tpowell@ycst.com
         rlamb@ycst.com
         bcarver@ycst.com

*Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

## Proposed Sale Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
|  | Ref. Docket Nos. 81, 348, 350, 397 |

## ORDER (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion [Docket No. 81] (the "**Motion**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 365, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for, among other things, entry of an order (this "**Sale Order**") (a) approving that certain *Asset Purchase Agreement*, dated as of September 10, 2024 (as amended, supplemented, or otherwise modified from time to time, and including the exhibits, schedules or attachments thereto, the "**Asset Purchase Agreement**"),[2] a copy of which is attached hereto as Exhibit A, between Debtor Blink Holdings, Inc. and its Debtor affiliates, on the one hand, and Pinnacle US Holdings LLC, a Delaware limited liability company  (the "**Buyer**"), on the other hand; (b) authorizing and

---

[1]   The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354.  The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

[2]   Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Asset Purchase Agreement or, if not defined therein, in the Motion.

approving the transaction contemplated by the Asset Purchase Agreement, including the sale of the Acquired Assets to the Buyer (the "**Sale**") in accordance with the terms and conditions contained in the Asset Purchase Agreement (subject to higher and better bids in accordance with the Bidding Procedures Order (as defined below)), free and clear of all liens, claims and encumbrances, except for certain assumed liabilities, (c) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases in connection with the sale, including proposed cure amounts, and (d) granting related relief; and this Court having entered an order on September 10, 2024 [Docket No. 348] (the "**Bidding Procedures Order**") (a) approving certain bidding procedures (the "**Bidding Procedures**"), (b) authorizing the Debtors to designate a stalking horse bidder, (c) scheduling an auction and a sale hearing in connection with the sale, (d) establishing certain assumption and assignment procedures and approving the manner of notice thereof, and (e) granting related relief; and the Debtors having filed the *Notice of Filing of Stalking Horse Supplement* on September 10, 2024 [Docket No. 350]; and this Court having entered the *Order Approving the Stalking Horse Bid Protections* on September 20, 2024 [Docket No. 397]; and the Buyer having been selected as the prevailing bidder with the highest or otherwise best bid; and the Debtors having filed the *[Notice of Successful Bidder]* [[ ● ]]; and pursuant to the Asset Purchase Agreement, authorizing the Buyer to assign (in whole or in part) certain of its rights, interests, or obligations under the Asset Purchase Agreement to one or more Affiliates or Subsidiaries (each such Affiliate, a "**Buyer Designee**"), each of which shall be entitled to the rights and protections set forth in this Sale Order, including paragraph 30 hereof; and this Court having conducted a hearing on the Motion on November [6], 2024 (the "**Sale Hearing**"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware,

dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that no other or further notice of the Motion is required; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Motion, the Asset Purchase Agreement, and this Sale Order; and this Court having reviewed and considered the Motion and all objections thereto, and the arguments of counsel made, and the evidence adduced at the Sale Hearing; and upon the entire record of the Sale Hearing, and after due deliberation thereon, and good cause appearing therefor:

**THE COURT HEREBY FINDS THAT:[3]**

A.     The Debtors have articulated good and sufficient reasons for the Court to (i) authorize the Sale free and clear of all Interests; (ii) authorize the assumption, assignment, and/or transfer of the Assumed Agreements; and (iii) grant the other relief set forth in this Sale Order, in each case in accordance with the Asset Purchase Agreement.

**<u>Notice of the Sale, Auction, and Cure Payments</u>**

B.     Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, and the assumption, assignment, and/or transfer of the Assumed Agreements, and a reasonable opportunity to object or be heard with respect thereto and to the entry of this Sale Order has been afforded to all known interested Persons entitled to receive such notice, including the following parties: (i) the U.S. Trustee; (ii) the Committee; (iii) the United States Department of Justice;

---

[3]   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(iv) all state attorneys' general and consumer protection agencies in jurisdictions in which the Acquired Assets are located; (v) counsel to the Prepetition Agent and DIP Agent; (vi) counsel to Equinox Holdings, Inc.; (vii) all parties who were known by the Debtors to assert liens against the Acquired Assets, if any; (viii) all non-Debtor parties to the Assumed Agreements (the "**Agreement Counterparties**"); (ix) any party known or reasonably believed to have expressed an interest in acquiring some or all or substantially all of the Debtors' assets within six (6) months prior to the Petition Date, which service may have been sent electronically if a mailing address for any such parties was unknown; and (x) all parties who filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

C.      The Debtors caused the Motion, the Bidding Procedures Order, the Bidding Procedures, the Notice of the Stalking Horse Supplement, the Stalking Horse Order, the Asset Purchase Agreement, the Sale Notice, the Assumption and Assignment Notice and Cure Schedule, and certain other documents relevant to the Sale to be published on the website maintained by the Debtors' claims and noticing agent: https://dm.epiq11.com/BlinkFitness.  As described in the *Proof of Publication* [Docket No. 388], the Debtors caused the Sale Notice, which included the time and place of the proposed Auction, the time and place of the Sale Hearing, and the time for filing an objection to the Motion, to be published in the national and local editions of the *New York Times* on September 17, 2024.

D.      In accordance with the provisions of the Bidding Procedures Order, the Debtors have served the Assumption and Assignment Notice on each Agreement Counterparty (i) stating the cure amounts, if any, that the Debtors believe must be paid to cure any prepetition defaults and pay all amounts accrued under the Assumed Agreements (the "**Cure Amounts**"); (ii) notifying the Agreement Counterparty that such party's contract or lease may be assumed and assigned to a

purchaser of the Acquired Assets at the conclusion of the Sale Hearing; (iii) stating the date of the Sale Hearing and that objections to any Cure Amount or to the assumption, assignment, and/or transfer of any executory contract or unexpired lease will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors; and (iv) stating a deadline by which the Agreement Counterparty shall file an objection to the Cure Amount or to the assumption, assignment, or transfer of its executory contracts or unexpired leases.

E. The service of such Assumption and Assignment Notice: (i) was good, sufficient, and appropriate under the circumstances of these Chapter 11 Cases; (ii) provided such Agreement Counterparties with a full and fair opportunity to object to such assumption, assignment, and/or transfer and to the proposed Cure Amount set forth in the Assumption and Assignment Notice; and (iii) was in compliance with the Bidding Procedures Order and applicable provisions of the Bankruptcy Rules and Local Rules. Accordingly, no other or further notice need be given in connection with such assumption, assignment, or transfer or with respect to the Cure Amounts, except as expressly set forth in section 2.6(c)(ii) of the Asset Purchase Agreement (which such notice is good, sufficient and appropriate under the circumstances).

F. As evidenced by the affidavits of service previously filed with this Court and as approved under the Bidding Procedures Order: (i) due, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Hearing, the assumption, assignment, and/or transfer of the Assumed Agreements, this Sale Order, and the Sale has been provided to all parties in interest; (ii) such notice was, and is, good, sufficient, and appropriate under the circumstances of these Chapter 11 Cases, provided a fair and reasonable opportunity for parties in interest to object and to be heard with respect thereto, and was provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014, and

the applicable Local Rules; and (iii) no other or further notice with respect to such matters is necessary or shall be required.

### **Business Judgment**

G.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and other transactions contemplated by the Asset Purchase Agreement and all related documents (collectively, the "**Transaction Documents**"), including, without limitation, the assumption, assignment, and/or transfer of the Assumed Agreements (collectively, the "**Transactions**") pursuant to sections 363 and 365 of the Bankruptcy Code or otherwise, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors.  Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of depreciation of the value of the Acquired Assets if the Sale is not consummated promptly; (ii) the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets; (iii) the Asset Purchase Agreement and the Closing will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses; and (iv) unless the Sale is concluded expeditiously as provided for in this Sale Order and pursuant to the Asset Purchase Agreement, potential creditor recoveries may be substantially diminished.

### **Good Faith of the Buyer; No Collusion**

H.      The Buyer is not an insider (as that term is defined in section 101(31) of the Bankruptcy Code) of any of the Debtors.

I.      The Buyer is purchasing the Acquired Assets in good faith and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to, and granted pursuant to paragraph 29 below, the full rights, benefits, privileges, and protections

32187713.4

6

of that provision, and has otherwise proceeded in good faith in all respects in connection with the Transactions in that, *inter alia*: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied with the provisions in the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (v) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (vi) no common identity of directors or controlling stockholders exists between the Buyer and any of the Debtors; and (vii) the negotiation and execution of the Asset Purchase Agreement and the other Transaction Documents were at arms' length and in good faith.

J.      None of the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any of the other Transaction Documents, or the consummation of the Transactions, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

## Highest and Best Offer

K.      In accordance with the Bidding Procedures Order, the Asset Purchase Agreement constitutes a Qualified Bid (as defined in the Bidding Procedures Order) and the Buyer was eligible to participate at any Auction.

L.      The Debtors conducted an auction process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order.  The auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Acquired Assets.  The Auction

32187713.4

was duly noticed and the auction process was conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Acquired Assets.

M.    The Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets, and will provide greater value for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

N.    The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these Chapter 11 Cases. No other Person or group has made a higher or otherwise better offer for the Acquired Assets or otherwise has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Buyer.

O.    Approval of the Motion and the Asset Purchase Agreement, and the prompt consummation of the Transactions contemplated thereby, is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

P.    The sale of all Purchased Actions described in section 1.1 of the Asset Purchase Agreement[4] and the covenant not to sue on account of any Acquired Avoidance Actions described in section 6.9 of the Asset Purchase Agreement were a material inducement for, and an express condition of, the Buyer's willingness to enter into the Asset Purchase Agreement, and when

---

[4]    For the avoidance of doubt, "Purchased Actions" means all Causes of Action (including all Acquired Avoidance Actions) Sellers or their estates as of the time of Closing can, shall or may have (i) against (A) Buyer or any of its Affiliates (other than Claims related to Seller's right to enforce this Agreement or any Related Agreement), (B) any Transferred Employee, (C) the Persons serving as directors of Blink during the Bankruptcy Cases, (D) any customer, supplier, manufacturer, distributor, broker, or vendor of any Seller or any other Person with whom any Seller has an ordinary course commercial relationship (including, for the avoidance of doubt, Equinox and any of its Affiliates (including their respective current and former directors, officers, managers, employees, personnel and advisors), or (ii) that otherwise arise out of or in connection with the Business, the Acquired Assets, or the Assumed Liabilities.

32187713.4

viewed with the Transactions as a whole, will provide a greater benefit to the Debtors, their estates, and their creditors than would the retention and prosecution of such Purchased Actions in the absence of the Transactions.

**No Fraudulent Transfer; Not a Successor**

Q.      The Asset Purchase Agreement and the other Transaction Documents were not entered into, and the Transactions are not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under applicable Law, and none of the Parties to the Asset Purchase Agreement or any of the other Transaction Documents are consummating the Transactions with any fraudulent or otherwise improper purpose.  The Purchase Price for the Acquired Assets constitutes (i) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act; (ii) fair consideration under the Uniform Fraudulent Conveyance Act; and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws.

R.      Except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities, the Buyer shall have no liability, responsibility, or obligations of any kind or nature whatsoever for any Interest of or against the Debtors, or otherwise related to the Acquired Assets, by reason of the transfer of the Acquired Assets to the Buyer.  The Buyer shall not be deemed, as a result of any action taken in connection with the Transactions: (i) to the greatest extent permitted under applicable law, to be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the Asset Purchase Agreement); or (ii) to have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors.  The Buyer is not acquiring or assuming any Interest, except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities.

32187713.4

**Validity of Transfer**

S.        Subject to the entry of this Sale Order, the Debtors have full corporate power and authority (i) to perform all of their obligations under the Asset Purchase Agreement and the other Transaction Documents, and the Debtors' prior execution and delivery thereof and performance thereunder, is hereby ratified in full; and (ii) to consummate the Transactions.  The Asset Purchase Agreement and the other Transaction Documents, and the Transactions contemplated thereby, have been duly and validly authorized by all necessary corporate action.  No further consents or approvals are required for the Debtors to consummate the Transactions or otherwise perform their respective obligations under the Asset Purchase Agreement or the other Transaction Documents, except, in each case, as otherwise expressly set forth in the Asset Purchase Agreement or applicable Transaction Documents.

T.        As of the Closing Date, the transfer of the Acquired Assets to the Buyer, including the assumption, assignment, and/or transfer of the Assumed Agreements, will be a legal, valid, and effective transfer thereof, and will vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets, free and clear of all Interests accruing or arising any time prior to the Closing Date (except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities or Permitted Liens), with all such Interests to attach to the proceeds of the Sale as set forth in paragraph 9 of this Sale Order.

**Section 363(f) Is Satisfied**

U.        The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Transactions if the sale of the Acquired Assets, including the assumption, assignment, and/or transfer of the Assumed Agreements, to the Buyer were not free and clear of all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities), or if the Buyer, or any

32187713.4

of its Affiliates or Subsidiaries, would, or in the future could, be liable for any of such Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities).

V.      The Debtors may sell or otherwise transfer the Acquired Assets free and clear of all Interests because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests against the Debtors, their estates, or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force, and effect, that such creditor had immediately prior to consummation of the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

W.      As used in this Sale Order, the term "**Interest**" includes all of the following, in each case to the extent against or with respect to any of the Debtors or in, on, or against or with respect to any of the Acquired Assets: liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial, or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, choate or

inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of setoff, rights of use or possession, subleases, leases, condition sale arrangements, or any similar rights; (ii) all claims, including all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other Person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "**ERISA**")), health or welfare, compensation or other employee

benefit plans, agreements, practices, and programs, including any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state Law, (i) state discrimination Laws, (j) state unemployment compensation Laws or any other similar state Laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (1) the WARN Act (29 U.S.C. §§ 2101, *et seq.*) or any state or other Laws of similar effect; (viii) any bulk sales or similar Law; (ix) any tax statutes or ordinances, including the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors prior to the Closing; (x) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assumed Agreement; (xi) any other Excluded Liabilities under the Asset Purchase Agreement; and (xii) Interests arising under or in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, Affiliates, or Subsidiaries, including Interests arising under any doctrines of successor liability (to the greatest extent permitted by applicable law), or transferee or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities Laws or

32187713.4

regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

X.    Except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities or Permitted Liens, and without limiting the nature or scope of paragraph W above, the transfer of the Acquired Assets, including the assumption, assignment, and/or transfer of the Assumed Agreements, to the Buyer will not subject the Buyer or its Affiliates or Subsidiaries to, or subject any Acquired Asset to or provide recourse for, any Interest whatsoever with respect to the operation or condition of the Business or any of the Acquired Assets prior to the Closing or with respect to any facts, acts, actions, omissions, circumstances, or conditions existing, occurring or accruing with respect thereto prior to the Closing Date.

### Assumption, Assignment, and/or Transfer of the Assumed Agreements

Y.    The assumption, assignment, and/or transfer of the Assumed Agreements to the Buyer pursuant to the terms of this Sale Order is integral to the Asset Purchase Agreement, is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

Z.    The Debtors have or will have as of the Closing Date (or as of such later time when the Assumed Agreements are assumed if during the Designation Rights Period) (such date of assumption, an "**Assumption Date**"): (i) cured, or provided adequate assurance that they will cure, any default existing prior to the Closing Date with respect to the Assumed Agreements, within the meaning of and as required by sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of and as required by section 365(b)(1)(B) of the Bankruptcy Code.  The respective Cure Amounts set forth on the Cure Schedules annexed to the Debtors' Assumption and Assignment Notice are the sole amounts

necessary under sections 365(b)(1)(A), 365(b)(1)(B), and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assumed Agreements, except to the extent otherwise agreed by the Debtors and the applicable Agreement Counterparty in writing or determined by order of this Court; *provided*, *further*, that the Buyer's and the Debtors' respective obligations with respect to payment of such Cure Amounts shall be as set forth in the Asset Purchase Agreement.

AA.    The promise of the Buyer to perform the obligations first arising under the Assumed Agreements after their assumption, assignment, and/or transfer to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Agreement Counterparties to such Assumed Agreements.  Any objections to the foregoing, the determination of any Cure Amount, or otherwise related to or in connection with the assumption, assignment, or transfer of any of the Assumed Agreements to the Buyer are hereby overruled on the merits or otherwise treated as set forth in paragraph 3 below.  Those Agreement Counterparties to the Assumed Agreements who did not object to the assumption, assignment, or transfer of their applicable Assumed Agreement, or to their applicable Cure Amount, are deemed to have consented thereto for all purposes of this Sale Order.

BB.    Pursuant to section 2.6 of the Asset Purchase Agreement, (i) before the Closing, the Buyer will have the right to supplement, amend, or otherwise modify the Assumed Agreements List and the Reserved Agreements List until the Closing to add or remove any Contracts or Specified Leases, and (ii) during the Designation Rights Period, the Buyer will have the right to designate any Reserved Agreement as an Assumed Agreement, in each case in accordance with the terms of the Asset Purchase Agreement.  The Buyer would not have agreed to the Transactions

without such rights set forth in section 2.6 of the Asset Purchase Agreement.  The notice and opportunity to object provided to Agreement Counterparties to such Assumed Agreements and to other parties in interest, as set forth in the Bidding Procedures Order, fairly and reasonably protect any rights that such Agreement Counterparties and other parties in interest may have with respect to such Contracts and Leases.

### **Compelling Circumstances for an Immediate Sale**

CC.    To maximize the value of the Acquired Assets, to preserve the viability of the business to which the Acquired Assets relate, and to reduce the amount of postpetition debtor-in-possession financing borne by the Debtors, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale.  The Sale must be approved and consummated promptly in order to preserve the viability of the Business as a going concern.  Accordingly, there is cause to eliminate the stay contemplated by Bankruptcy Rules 6004 and 6006 with regard to the Transactions contemplated by this Sale Order, the Asset Purchase Agreement, and the other Transaction Documents.

DD.    Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed transfer of the Acquired Assets to the Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their estates, and their creditors, and should be approved.

EE.    The consummation of the Transactions is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105, 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transactions.

32187713.4

FF.     The Sale does not constitute a *de facto* plan of reorganization or liquidation.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### General Provisions

1.      The Motion, and the relief requested therein, are granted and approved, and the Sale and the other Transactions contemplated thereby and by the Asset Purchase Agreement and the other Transaction Documents are approved, in each case as set forth in this Sale Order.

2.      This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

3.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, resolved, or otherwise settled as set forth herein, as announced to this Court at the Sale Hearing, or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the merits.

### Approval of Asset Purchase Agreement; Binding Nature

4.      The Asset Purchase Agreement and the other Transaction Documents, and all of the terms and conditions thereof, are hereby approved as set forth herein.

5.      The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement, including (a) the assumption of the Assumed Liabilities and (b) the payment of cash in the amount of the Closing Cash Payment, is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other applicable Law, and the Transactions may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.

6.      Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale and the other Transactions pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and the other Transaction Documents; and (b) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their respective obligations as contemplated by the Asset Purchase Agreement and the other Transaction Documents, in each case, without further notice to or order of this Court.  The Transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack or purported lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

7.      This Sale Order shall be binding in all respects on the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of any claims (whether known or unknown) against any Debtor, any holders of Interests against, in, or on all or any portion of the Acquired Assets, all Agreement Counterparties to the Assumed Agreements, the Buyer, and all successors and assigns of the foregoing, including any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of these Chapter 11 Cases, in each case, in any and all circumstances, including after the closing of the Transactions, confirmation or consummation of a chapter 11 plan, conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or the dismissal of these Chapter 11 Cases for any reason.

**Transfer of Acquired Assets Free and Clear of Interests; Injunction**

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Acquired Assets, including the Assumed Agreements, to the Buyer on the Closing Date in accordance with the Asset Purchase

Agreement and the other Transaction Documents.  Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets, and the Buyer shall take title to and possession of such Acquired Assets free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities).

9.      All such Interests (but, for the avoidance of doubt, excluding the Permitted Liens, which shall remain attached to the Acquired Assets) shall attach solely to the proceeds of the Sale with the same extent, validity, priority, force, and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  This Sale Order shall be effective as a determination that, on and as of the Closing, all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities) have been unconditionally released, discharged, and terminated in, on, or against the Acquired Assets, with such Interests attaching to the proceeds of the Sale as set forth herein.  The provisions of this Sale Order authorizing and approving the transfer of the Acquired Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

10.      The transfer of the Assumed Liabilities to the Buyer in accordance with the terms of the Purchase Agreement will be constitute a legal, valid, enforceable, and effective sale and transfer of the Assumed Liabilities, and the assumption of any Assumed Liabilities by the Buyer shall constitute a legal, valid, and effective delegation of any Assumed Liabilities to the Buyer and shall divest the Debtors of all liabilities with respect to any Assumed Liabilities, in each case solely

to the extent provided for in the Asset Purchase Agreement and the other Transaction Documents. Notwithstanding anything to the contrary in this Sale Order or the Asset Purchase Agreement, upon the Closing, no Person shall be permitted to commence or continue, and all such Persons are hereby barred, estopped, and permanently enjoined from commencing or continuing any action against, or seeking payment from, the Debtors or their Affiliates with respect to the Assumed Liabilities.

11.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all Persons holding Interests (other than the Permitted Liens and Assumed Liabilities) are hereby forever barred, estopped, and permanently enjoined from asserting their respective Interests against the Buyer or any of its Affiliates or Subsidiaries and each of their respective property and assets, including the Acquired Assets.  On and after the Closing Date, the Buyer shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of an Interest to release, discharge, and terminate such Interests in, on, and against the Acquired Assets as provided for herein, or to record or otherwise appropriately effectuate such release, discharge, and termination, as such Interests may have been recorded or may otherwise exist.  On and after the Closing Date, and without limiting the foregoing, the Buyer shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order.  This Sale Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code ("**UCC**") for the Buyer to file UCC termination statements with respect to all security interests in or liens on the Acquired Assets.

12.     On and after the Closing, the Persons holding an Interest (other than a Permitted Lien or an Assumed Liability) shall execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Acquired Assets, as such Interests may have been recorded or otherwise filed.  The Buyer may, but shall not be required to, file a copy of this Sale Order in any filing or recording office in any federal, state, county, or other jurisdiction in which any Debtor is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date.  All Persons that are in possession of any portion of the Acquired Assets on the Closing Date shall promptly surrender possession thereof to the Buyer at the Closing.

13.     The transfer of the Acquired Assets to the Buyer pursuant to the Asset Purchase Agreement and the other Transaction Documents does not require any consents other than as specifically provided for in this Sale Order.

14.     This Sale Order is and shall be binding on and govern the acts of all Persons (including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, and federal and local officials) who may be required by operation of Law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease.  Each of the foregoing Persons are authorized to accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of

32187713.4

the Interests or to otherwise consummate the Transactions contemplated by this Sale Order, the

Asset Purchase Agreement, or any Transaction Document.

<u>**Assumed Agreements and Cure Payments**</u>

15.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to

and conditioned upon the Closing Date, the Debtors' assumption, assignment, and/or transfer to

the Buyer of the Assumed Agreements are hereby authorized and approved in full, subject to the

terms set forth below.  Subject to the terms of the Asset Purchase Agreement and this Sale Order,

the Buyer shall pay all Buyer Cure Costs and the Debtors shall pay all other Cure Amounts to the

applicable Agreement Counterparties to the Assumed Agreements, in each case in accordance with

the terms of the Asset Purchase Agreement, on the later of (a) the applicable Assumption Date or

(b) the date agreed by the Debtors and the applicable Agreement Counterparty or otherwise ordered

by the Court.

16.     The Debtors are authorized and empowered to, and upon the applicable Assumption

Date shall, assume, assign, and/or transfer each of the Assumed Agreements to the Buyer free and

clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect

to the Permitted Liens and Assumed Liabilities).  The payment of the applicable Cure Amounts (if

any), or the reservation of an amount of cash that is equal to the lesser of (a) the amount of any

cure or other compensation asserted by the applicable Agreement Counterparty as required under

section 365 of the Bankruptcy Code or (b) the amount approved by order of this Court to reserve

for such payment (such lesser amount, the "**Alleged Cure Claim**") shall, pursuant to section 365

of the Bankruptcy Code and other applicable Law, (x) effect the cure, or provide adequate

assurance of the cure, of all defaults existing thereunder as of the applicable Assumption Date and

(y) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to

such Agreement Counterparty resulting from such default.    Accordingly, on and as of the

32187713.4

applicable Assumption Date, other than such payment or reservation, none of the Debtors nor the Buyer shall have any further liabilities or obligations to the Agreement Counterparties to the Assumed Agreements with respect to, and the Agreement Counterparties to the Assumed Agreements shall be forever enjoined and barred from seeking, any additional amounts or claims (as defined in section 101(5) of the Bankruptcy Code) that arose, accrued, or were incurred at any time on or prior to the Closing Date on account of the Debtors' cure or compensation obligations arising under section 365 of the Bankruptcy Code.  The Buyer has provided adequate assurance of future performance under the relevant Assumed Agreements within the meaning of section 365(f) of the Bankruptcy Code.

17.    To the extent any provision in any Assumed Agreement assumed or assumed and assigned (as applicable) pursuant to this Sale Order (including any "change of control" provision) (a) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, including the imposition of any fee, payment or penalty as a result of or in connection with, such assumption or assignment, or (b) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (i) the commencement of these Chapter 11 Cases; (ii) the insolvency or financial condition of any Debtor at any time before the closing of these Chapter 11 Cases; (iii) any Debtor's assumption or assumption and assignment (as applicable) of such Assumed Agreement; or (iv) the consummation of the Transactions (including the Buyer's ability to rebrand or otherwise change the signage at the Gym Locations following the Transactions), then such provision shall be deemed modified so as to not entitle the Agreement Counterparty thereto to prohibit, restrict, or condition such assumption or assignment, to modify or terminate such Assumed Agreement, or to exercise any other default-related rights or remedies with respect thereto, including any such provision that purports to allow the applicable Agreement Counterparty

thereto to recapture such Assumed Agreements, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees, payments, penalties or other charges in connection therewith, or prohibit the rebranding of or otherwise changing the signage at the Gym Locations.  All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

18.     All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Agreements have been satisfied.  Upon the applicable Assumption Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assumed Agreements, and each Assumed Agreement shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order.  Upon and as of the Applicable Assumption Date, the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Agreements and, accordingly, the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Agreements.

19.     The Assumed Agreements will remain in full force and effect, and upon the payment of the applicable Cure Amount or reservation of the Alleged Cure Claim, if any, no default shall exist, or be deemed to exist, under the Assumed Agreements as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

20.     The rights of the Buyer to (a) supplement, amend, or otherwise modify the Assumed Agreements List and the Reserved Agreements List until the Closing to add or remove any

Contracts or Specified Leases, and (b) designate any Reserved Agreement as an Assumed Agreement, in each case in accordance with the terms of the Asset Purchase Agreement, are hereby approved.   Notwithstanding anything in this Sale Order to the contrary, on the date any such Contract or Lease is assumed, assigned, and/or transferred to the Buyer, such Contract or Lease shall thereafter be deemed an Acquired Asset for all purposes under this Sale Order and the Asset Purchase Agreement.   The rights of the Debtors and the Buyer with respect to assuming and assigning, rejecting, amending, supplementing, modifying, waiving any rights under, or creating any adverse interest with respect to any Contracts and Leases shall be governed in accordance with the terms of the Asset Purchase Agreement and other Transaction Documents.

21.     All Agreement Counterparties to the Assumed Agreements shall be deemed to have consented to such assumption, assignment, and/or transfer under section 365(c)(1)(B) of the Bankruptcy Code or otherwise and the Buyer shall enjoy all of the Debtors' rights, benefits, and privileges under each such Assumed Agreement as of the applicable date of such assumption, assignment, and/or transfer without the necessity to obtain any Agreement Counterparty's written consent to the assumption, assignment, and/or transfer thereof.

22.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assumed Agreement is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

23.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed Agreement shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Assumed Agreements.

**Additional Injunction; No Successor Liability**

24.     Effective upon the Closing Date and except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities, all Persons are

32187713.4

25

forever prohibited and permanently enjoined from (a) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding), to collect, recover, or set off any Interest; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to an Interest; (c) creating, perfecting, or enforcing any Interest; or (d) asserting any setoff or right of subrogation of any kind with respect to an Interest, in each case as against the Buyer, any of its Affiliates or Subsidiaries, any of their respective current and former officers, directors, managers, members, partners, managed funds, affiliates, agents, advisors, professionals, and representatives (collectively, the "**Representatives**"), or any of their respective property or assets, including the Acquired Assets.

25.    The Transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents do not cause there to be, and there is not (a) a consolidation, merger, or *de facto* merger of the Buyer, on the one hand, with or into the Debtors or the Debtors' estates, on the other hand, or vice versa; (b) a substantial continuity between the Buyer, on the one hand, and the Debtors or the Debtors' estates, on the other hand; (c) a common identity between the Buyer, on the one hand, and the Debtors or the Debtors' estates, on the other hand; or (d) a mere continuation of the Debtors or their estates, on the one hand, with the Buyer, on the other hand.

26.    Except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities, the transfer of the Acquired Assets, including the assumption, assignment, and/or transfer of any Assumed Agreement, to the Buyer shall not cause or result in, or be deemed to cause or result in, the Buyer or any of its Representatives having any liability, obligation, or responsibility for, or any Acquired Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor liability (to the

greatest extent permitted by applicable law), transferee or vicarious liability, breach of fiduciary duty, aiding or abetting breach of fiduciary duty, or otherwise, whether at law or in equity, directly or indirectly, and whether by payment, setoff, or otherwise.

27.     For the avoidance of doubt, except as expressly set forth in the Asset Purchase Agreement and notwithstanding the consummation of the Transactions and the employment by the Buyer of certain Persons previously employed by the Debtors, (a) the Buyer shall not have any obligations or liabilities to any employee of the Debtors or in respect of any employee benefits owing to any employee of the Debtors by the Debtors or by any plan or program administered by the Debtors or for the benefit of the Debtors' employees; and (b) any obligations of the Buyer to any such Person shall be expressly limited to (i) those obligations expressly agreed upon by the Buyer (if any) with such Person, and (ii) those obligations explicitly assumed by the Buyer (if any) under the Asset Purchase Agreement.

28.     To the extent applicable and subject to the terms of the Asset Purchase Agreement, the other Transaction Documents (as applicable), and this Sale Order, the Buyer and the Debtors shall be authorized, in their respective sole discretion, to take all actions, including all resolutions and administrative actions, necessary and proper to effectuate the transfer of any benefit plans, including 401(k) plans or participant accounts and outstanding loans, flexible spending plans, health and welfare plans, and all other employee benefit plans, from the Debtors to the Buyer (or any other properly designated Person) in a manner consistent with the Asset Purchase Agreement and the other Transaction Documents (as applicable).

**Good Faith**

29.     The Transactions contemplated by this Sale Order, the Asset Purchase Agreement, and the other Transaction Documents are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal

32187713.4

27

or modification on appeal of the authorization provided herein to consummate the Sale and other Transactions approved by this Court shall not alter, affect, limit, or otherwise impair the validity of the Sale or such other Transactions (including the assumption, assignment, and/or transfer of the Assumed Agreements), unless such authorization and such sale are duly stayed pending such appeal. The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.

## Other Provisions

30. The Buyer is hereby authorized, in its discretion, in connection with consummation of the Transactions, to allocate the Acquired Assets, Assumed Liabilities, and Assumed Agreements among any its Affiliates, Subsidiaries, designees, assignees, and/or successors in a manner as it, in its discretion, deems appropriate, and such Person shall be entitled to all of the rights, benefits, privileges, and protections of the Buyer as are afforded to the Buyer under this Sale Order, and the Debtors shall, to the extent set forth in the Asset Purchase Agreement and the other Transaction Documents, cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing. In the event that the Buyer designates any Buyer Designee to acquire any Acquired Assets, including any Assumed Agreements, then any reference to the "Buyer" in this Sale Order shall be deemed to be a reference to "the Buyer and/or such applicable Buyer Designee," unless the context requires otherwise. Upon the transfer of any Acquired Asset or Assumed Agreement to, or the assumption of any Assumed Liability by, a Buyer Designee, such Buyer Designee shall be solely responsible for such Acquired Asset, Assumed Liability, or Assumed Agreement (including performance thereunder), as applicable.

31. Contemporaneously with the Closing, the Debtors are authorized to pay or cause to be paid the net proceeds of the Sale directly (i) first, to the DIP Agent (for the benefit of the DIP

32187713.4

Lenders) and (ii) second, to the Prepetition Agent (for the benefit of the Prepetition Lenders) for application to the DIP Obligations and the Prepetition Obligations, respectively, in accordance with the priorities, terms and conditions set forth in the Final DIP Order; *provided* that Prepetition Obligations and Roll-Up shall remain subject to paragraph 12 of the Final DIP Order in accordance with the terms and conditions thereof; *provided*, further, that funds shall be retained to satisfy estate obligations contemplated to be paid under the Approved Budget, the Asset Purchase Agreement, and other Transaction Documents pursuant to a distribution reconciliation to be agreed upon by the Debtors, the Required DIP Lenders, the Required Prepetition Lenders, the DIP Agent, and the Prepetition Agent.[5]

32.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases (including any order dismissing these Chapter 11 Cases), (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.  To the extent of any such conflict or derogation, the terms of this Sale Order shall govern; *provided*, that, for the avoidance of doubt, the Final DIP Order shall govern the application of the net proceeds of the Sale to the DIP Obligations and the Prepetition Obligations (each as defined in the Final DIP Order).

33.     Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon

---

[5]     Capitalized terms used but not otherwise defined in this paragraph have the meanings ascribed to such terms in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Utilize Cash Collateral; (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to the Prepetition Secured Parties; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 393] (the "**Final DIP Order**").

entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply. Accordingly, the Debtors are authorized and empowered to close the Sale and other Transactions immediately upon entry of this Sale Order.

34.     Nothing in this Sale Order shall modify or waive any closing conditions or termination rights in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

35.     No bulk sales Law or any similar Law of any state or other jurisdiction applies in any way to the Transactions.

36.     All payment or reimbursement obligations of the Debtors owed to the Buyer pursuant to the Asset Purchase Agreement or the other Transaction Documents shall be paid in the manner provided therein, without further notice to or order of this Court. All such obligations shall constitute allowed administrative claims against each of the Debtors on a joint and several basis, with administrative expense status under sections 503(b) and 507(a)(2) of the Bankruptcy Code. Until satisfied in full in cash, all such obligations shall continue to have the protections provided in this Sale Order, and shall not be discharged, modified, or otherwise affected by any chapter 11 plan for the Debtors.

37.     As of the Closing Date, the Debtors are authorized to change the name of each Debtor to a name that was not included as part of the Acquired Assets, provided that the Debtors shall follow the procedures set forth in Rule 9004-1 of the Local Rules of this Court regarding any changes to be made to the caption of these cases.

38.     The failure specifically to include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it

being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

39.     The Asset Purchase Agreement and the other Transaction Documents may be modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court; provided that any such modification, amendment, or supplement shall not have a material adverse effect on the Debtors' estates unless approved by order of this Court upon a motion on notice.  All such modifications, amendments, and/or supplements, and all Transaction Documents, not previously provided to the Committee shall be provided promptly to the Committee.

40.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (a) interpret, implement, and enforce the terms and provisions of this Sale Order, the Asset Purchase Agreement, the other Transaction Documents, any amendments thereto, and any waivers and consents given thereunder; (b) compel delivery of the Acquired Assets to the Buyer; (c) enforce the injunctions and limitations of liability set forth in this Sale Order; and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Agreements.

41.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the provisions of this Sale Order and the terms and conditions of the Asset Purchase Agreement and the other Transaction Documents.

43.     The rules of construction set forth in section 1.2 of the Asset Purchase Agreement shall apply to this Sale Order, with necessary modifications.

44.    To the extent that this Sale Order is inconsistent with any prior order or pleading, the Motion, the Asset Purchase Agreement, or any Transaction Document, the terms of this Sale Order shall govern; *provided*, that, for the avoidance of doubt, the Final DIP Order shall govern the application of the net proceeds of the Sale to the DIP Obligations and the Prepetition Obligations (each as defined in the Final DIP Order).  To the extent there are any inconsistencies between the terms of the Asset Purchase Agreement or any Transaction Document, on the one hand, and any prior pleading (including the Motion), on the other hand, the terms of the Asset Purchase Agreement or the applicable Transaction Documents shall govern, as applicable.

32187713.4