## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BLINK HOLDINGS, INC., *et al.*,[1] | ) Case No. 24-11686 (JKS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Obj. Deadline: Oct. 14, 2024 at 4:00 p.m. (ET)** |
| | ) **Hearing Date: Nov. 6 at 11:00 a.m. (ET)** |
| | ) **Re: Docket No. 81, 348, 361, & 451** |

**LIMITED OBJECTION OF 15519 NORMANDIE, LLC, 16302 JAMAICA AVENUE LLC,
BRIXMOR HOLDINGS 12 SPE, LLC, PRIMESTOR JORDAN DOWNS, LLC, LODI
VALUE ADD II, LLC, AND UE BERGEN MALL OWNER LLC TO DEBTORS'
MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING CERTAIN BIDDING
PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF,
(B) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL OF THE
SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS,
(C) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES
AND APPROVING MANNER OF NOTICE THEREOF, AND (D) GRANTING RELATED
RELIEF; AND (II)(A) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY
INTO AN ASSET PURCHASE AGREEMENT, (B) AUTHORIZING THE SALE OF ALL
OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL
ENCUMBRANCES, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
THE ASSUMED CONTRACTS, AND (D) GRANTING RELATED RELIEF**

15519 Normandie, LLC, 16302 Jamaica Avenue LLC, Brixmor Holdings 12 SPE, LLC,

Primestor Jordan Downs, LLC, Lodi Value Add II, LLC, and UE Bergen Mall Owner LLC (the

"Landlords"), by and through their undersigned counsel, hereby file this limited objection (the

"Objection") to the *Debtors' Motion for Entry of Orders (I)(A) Approving Certain Bidding*

*Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing*

*on the Approval of The Sale of All or Substantially All of the Debtors' Assets, (C) Establishing*

*Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and*

---

[1]  The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for
Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of
debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification
numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the
website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the
undersigned counsel for the Debtors.

*(D) Granting Related Relief; and (II)(A) Authorizing and Approving the Debtors' Entry Into An Asset Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [D.I. 81] (the "Sale Motion"), and respectfully state as follows:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1.      On August 12, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases").  The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]  No trustee or examiner has been appointed in the Chapter 11 Cases.

2.      The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at each of the locations (the "Centers") set forth below:

| Landlord | Center | Location |
|---|---|---|
| 15519 Normandie, LLC | Gardena Plaza | Gardena, CA |
| 16302 Jamaica Avenue LLC | 163-02 Jamaica Avenue | New York, NY |
| Brixmor Holdings 12 SPE, LLC | Broadway | Houston, TX |
| Primestor Jordan Downs, LLC | Freedom Plaza | Los Angeles, CA |
| Lodi Value Add II, LLC | Lodi Marketplace | Lodi, NJ |
| UE Bergen Mall Owner LLC | Bergen Town Center | Paramus, NJ |

3.      Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

---

[2]  Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

4.      On August 16, 2024, the Debtors filed the Sale Motion, seeking *inter alia,* approval of various procedures, including bid and assumption and assignment procedures (the "Bidding Procedures") to govern the sale (the "Sale") of substantially all of the Assets (as defined in the Sale Motion), pursuant to section 363 of the Bankruptcy Code.  As more fully set forth in the Sale Motion, the Sale contemplates the assumption and assignment of certain of the Debtors' unexpired nonresidential real property leases, including the Leases.

5.      On September 10, 2024, the Court entered that certain *Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of The Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (D) Granting Related Relief* [D.I. 348] (the "Bidding Procedures Order"), which authorized and approved, among other things, the Bidding Procedures.

6.      On September 10, 2024, the Debtors filed the *Notice of Filing of Stalking Horse Supplement* [D.I. 350]*,* which identified Pinnacle US Holdings, LLC, a Delaware limited liability company, as the Stalking Horse Bidder ("Pinnacle US" or the "Stalking Horse Bidder").  The Stalking Horse Bidder is a wholly owned subsidiary of PureGym Limited ("PureGym").

7.      On September 20, 2024, the Court entered an *Order Approving the Stalking Horse Bid Protections* [D.I. 397], which approved certain bid protections for the Stalking Horse Bidder in connection with the Sale.

8.      On September 12, 2024, the Debtors filed the *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [D.I. 361] (the "Cure Notice"), which identified those executory contracts and unexpired leases that may be assumed and assigned to an applicable Successful Bidder in connection with the Sale, together with

3

the Debtors' proposed cure amounts to be paid in connection any assumption and assignment of such contracts and leases, including the Leases.

9.      The Landlords received an extension of time from the Debtors to respond to the Cure Notice to September 30, 2024.  And, on September 26, 2024, the Landlords informally provided the Debtors with their calculation of the cure amounts for the Leases (the "Landlord Cures") together with supporting documentation.  On September 30, 2024, the Landlords thereafter filed an objection to the Cure Notice [D.I. 451] (the "Cure Objection"), which Cure Objection is incorporated herein as though fully set forth at length.   The parties have not yet agreed on cure amounts for the Leases, but have been working to reconcile and reach an agreement with respect to the Landlord Cures for the Leases.

10.      On October 3, 2024, the Debtors provided Landlords' undersigned counsel with certain confidential adequate assurance information for the Stalking Horse Bidder, which the Landlords continue to review.

11.      On October 4, 2024, the Debtors filed *Notice of Filing of* Proposed *Sale Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 466] (the "Proposed Sale Order").

12.      Landlords file this Objection in order to raise and preserve all of their rights with respect to the Stalking Horse Bidder's ability to provide adequate assurance of future performance in the event it takes an assumption and assignment of their Leases pending continued discussions with the Stalking Horse, as well as to reserve their rights to raise further and other objections to the assumption and assignment of the Leases, including as to the adequate assurance information for any Successful Bidder, once such Successful Bidder has been selected and/or such information has

been provided, including as to the final forms of any Sale Order and/or APA.  The Landlords will continue to work with the Debtors and/or the Stalking Horse Bidder to resolve the issues raised herein.

## II.    OBJECTION

### A.    General Objections to Assumption and Assignment of Leases

13.    While Landlords do not generally object to the Debtors' efforts to sell their assets and maximize the value of their estates for the benefit of all creditors, including Landlords, Landlords do object to any proposed assumption and assignment of the Leases unless Debtors and/or the Stalking Horse Bidder comply with all of the requirements of Sections 365 of the Bankruptcy Code.  Absent the ability, or willingness, of the Debtors and the Stalking Horse Bidder to satisfy said requirements, the Court should deny any proposed assumption and assignment of the Leases.

### B.    Any Assumption and Assignment Must Comply with the Terms of the Leases.

14.    Through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amendments, "Section 365(f)(1) was amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the Code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).  In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center.  When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

15.     The changes embodied in the BAPCPA specifically preserve a landlord's right to enforce use and other lease provisions.  Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to.  Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy.  It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

16.     BAPCPA clarified Section 365 to reflect the Congressional intent that a Debtor cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms.  The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

17.     Section 365(f)(1) does not modify or override Section 365(b).  Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.), 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)).  While it does not appear that the Stalking Horse Bidder is intending to modify the use, any assignment of the Leases must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance.

## C.     Adequate Assurance of Future Performance

18.     Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code, Debtors may only assume and assign the Landlords' Leases if "adequate assurance of future performance by the assignee of

such . . . lease is provided, . . . ." As set forth in Section 365(b)(3), adequate assurance of future

performance in the shopping center context includes, inter alia, adequate assurance:

> (A)    of the source of rent and other consideration due under such
> lease, and in the case of an assignment, that the financial condition
> and operating performance of the proposed assignee and its
> guarantors, if any, shall be similar to the financial condition and
> operating performance of the debtor and its guarantors, if any, as of
> the time the debtor became the lessee under the lease;
>
> * * *
>
> (C)    that assumption and assignment of such lease is subject to all
> the provisions thereof, including (but not limited to) provisions such
> as radius, location, use or exclusivity provision, and will not breach
> any such provision contained in any other lease, . . . relating to the
> shopping center; . . . .

19.    The burden of proof on adequate assurance issues is with the Debtors. <u>See</u> <u>In re</u>

<u>Lafayette Radio Elecs. Corp.</u>, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

20.    To date, Landlords have received certain confidential adequate assurance

information relating to Pinnacle US as the Stalking Horse Bidder in the form of a letter, which

provides summary information about the Stalking Horse Bidder, including its operating model,

potential funding and ownership structure, as well as PureGym's track record, and certain financial

information for Pinnacle US's parent entity, Pinnacle Bidco plc ("<u>Pinnacle Bidco</u>").  While

Landlords intend to engage in discussions and work with the Stalking Horse Bidder between now

and the Sale Hearing to obtain additional necessary information pertaining to the ultimate assignee

of the Leases in order to properly evaluate such assignee's ability to perform under the Leases,

including information pertaining to the funding and capitalization of same, by this Objection,

Landlords demand strict proof of the Stalking Horse Bidder's (and any assignee's) ability to provide

adequate assurance of future performance.  Specifically, most of the information provided to date

is not for Pinnacle US or any assignee of the Leases, but instead is only for Pnnacle Bidco and/or

PureGym, who Landlords do not believe will be the operators of the business or the tenant under

the Leases. The Stalking Horse bidder must provide the Landlords with supplemental financial and other information to demonstrate the Stalking Horse Bidder's (and any assignee) ability to perform under the Leases, including how Pinnacle US (and any assignee) will be capitalized and the underlying financial metrics (including future projections) to demonstrate operating revenue and performance long term.

21.    Further, since certain of the Debtors' stores are located in shopping centers, the Debtors and the Stalking Horse Bidder, must meet the heightened requirements of adequate assurance that the Bankruptcy Code contemplates in the case of such assignments. The Bankruptcy Code requires more than the basic adequate assurance of future performance of the leases under Section 365(b)(1)(C). In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999). In order to assume and assign shopping center leases, Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) – (D). See Joshua Slocum, 922 F.2d at 1086; see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F. 3d 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements include the following:

- The source of rent and assurance that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);

- That any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);

- That assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and

- That assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

**D.**     **Additional Security**

22.     As indicated, based on the limited information available for the Stalking Horse Bidder, Landlord has concerns that the Stalking Horse Bidder may not possess sufficient operating experience or capitalization to satisfy the Landlords' requirements under the Lease, and therefore would request that the assignee be required to provide some type of credit enhancement as part of its adequate assurance of future performance demonstration, such as: (i) a guaranty of future performance from a financially capable parent or other entity; (ii) a letter of credit; or (iii) a cash security deposit, as required by Section 365(l) of the Bankruptcy Code.

23.     Under most, if not all of the Leases, the Landlords currently have a guaranty from Debtor Blink Holdings, Inc., which guaranties should be replaced by a financially capable parent or other entity of the assignee under the Leases at the time of assumption and assignment of the Leases.

24.     Accordingly, pursuant to Section 365(l) of the Bankruptcy Code, Landlords demand that any proposed assignee provide a parent guaranty and/or post either a letter of credit or, in Landlords' sole discretion, a security deposit, equal to three (3) months' rent and additional rental charges under each Lease.

**E.**     **Assumption and Amendment Agreement**

25.     Landlords also request that, as a condition to any order approving assumption and assignment of any of Landlords' Leases, the assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the assignee shall become directly obligated to Landlords and the provisions of the Leases regarding notice addresses will be modified.

**F.    Any Assignment of Leased Real Property Must be Subject to all Applicable Restrictive Covenants**

26.    The *cum onere* principle and requirements of section 365 (including section 365(b)(3)) of the Bankruptcy Code also mandate that restrictive covenants be respected in connection with any lease assignment. See 11 U.S.C. § 365(b)(3)(C) (requiring that "assumption or assignment of such lease is subject to all the provisions thereof"); N.L.R.B. v. Bildisco & Bildisco,, 465 U.S. 513, 531 (1984); In re MF Glob. Holdings Ltd., 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).  As is typical, shopping center leases are part of an integrated and complex commercial relationship between the shopping center owner and tenants that arise under both leases as well as reciprocal easement agreements (or similar agreements) and other restrictive covenants applicable to the properties.  Accordingly, assumption of any assignment of any leases in accordance with section 365 of the Bankruptcy Code and applicable law requires compliance with, and is subject to, any agreements containing restrictive covenants or other obligations related to the properties.

27.    Accordingly, Landlords object to the assumption and/or assignment of the Leases or any Premises to the extent such transfer is not subject to all applicable reciprocal easement agreements, other similar agreements, and other restrictive covenants or obligations set forth therein.

**G.    Proposed Sale Order**

28.    As more fully set forth herein at Paragraphs 14-17 and 26-27, as well as in Landlords' Cure Objection, no assumption and assignment of the Leases shall be free and clear of the terms of the Leases, any restrictive covenants or any obligations arising or accruing under the Leases, including for year-end adjus8ments or reconciliation of items such as common area maintenance, insurance, taxes, percentage rent and other items that are paid during the course of the year on an estimated basis, but not billed or due until some date in the future.  Accordingly, in

10

addition to the issues raised herein and in the Cure Objection, at a minimum Paragraphs T, U, V, W, X, 8, 9, and 16 of the proposed Sale Order must be modified to specifically provide that any such approved assignee of the Buyer, including the Stalking Horse Bidder, will be responsible for all obligations arising or accruing under the Leases, including year-end adjustments and tax obligations, when such obligations arise and as charges are billed and become due in accordance with the terms of the Leases, whether such obligations are accruing prior to or after the effective date of assumption and assignment of the Leases.  In addition, "Interests" as defined in the proposed Sale Order should be modified to exclude any obligations, encumbrances, deposits, credits, options, rights, restrictions, limitations, contractual commitments, rights or interests of any kind or nature arising under the terms of the assigned Leases themselves.  Finally, any Section 365(k) release of the Debtors must be modified to preserve indemnification obligations of the Debtors for the period prior to the Closing to the extent of available insurance, if the Buyer is not assuming such obligations under the Asset Purchase Agreement.

29.     Further, the Proposed Order provides that the Assets may be sold to the Buyer (or its designee).  To assign the Leases, the Buyer must identify the assignee prior to the Court's approval of the Sale, and demonstrate adequate assurance of future performance for that approved assignee at the Sale Hearing.  The Debtors cannot assume and assign the Leases to an unknown assignee of the Leases, so any "designee" if not the Buyer must be identified and subject to the Court's approval as of the time of the Sale Hearing.

30.     Landlords reserve the right to raise other and further objections to any Proposed Sale Order for any of their Premises once a final proposed Sale Order and Asset Purchase Agreement is filed of record.

## III.    JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

31.    To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

## IV.    RESERVATION OF RIGHTS

32.    Landlords reserve their rights to further object to any proposed assumption or assignment of the Leases on additional grounds including, without limitation, Debtors' or a prospective assignee's showing of adequate assurance of future performance as required by Bankruptcy Code section 365(b)(1)(C) and (f)(2)(B), consistent with the Bidding Procedures Order, and any other objections to the proposed assumption and assignment of the Leases based upon any new information provided by Debtors or a proposed assignee or upon any different relief requested by Debtors.

## V.    CONCLUSION

WHEREFORE, Landlords respectfully request that the Court modify the proposed sale order to incorporate the objections raised above, require the Stalking Horse Bidder to provide further and other adequate assurance information as set forth herein before a determination on adequate assurance is made, and grant such further relief as the Court deems proper.

Dated:  October 14, 2024
Wilmington, Delaware

/s/ Leslie C. Heilman
Leslie C. Heilman (DE No. 4716)
Laurel D. Roglen (DE No. 5759)
Margaret A. Vesper (DE No. 6995)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
        roglenl@ballardspahr.com
        vesperm@ballardspahr.com

*Counsel for 15519 Normandie, LLC, 16302 Jamaica Avenue LLC, Brixmor Holdings 12 SPE, LLC, Primestor Jordan Downs, LLC, Lodi Value Add II, LLC, and UE Bergen Mall Owner LLC*