# EXHIBIT A

# General Indemnity Agreement



This General Indemnity Agreement ("Agreement") is made and entered into by the undersigned, for themselves and others, in favor of and to induce Hartford to Underwrite Bonds. In consideration thereof, the undersigned jointly and severally acknowledge and agree as follows:

1. **Definitions.** All defined words and terms shall be understood to include each and every tense and form of said words and terms along with their singular, plural, feminine or masculine forms whenever the context requires and shall be liberally construed in favor of Hartford.

   (a) **"Bond"** means any and all bonds, undertakings, guarantees, commitments, obligations of suretyship and like instruments Underwritten by Hartford, including all riders, renewals, continuations, endorsements, changes or modifications.

   (b) **"Books and Records"** means all manner of books, records, financial statements, bank records, cancelled checks, tax returns, computer systems, computer programs, software, accounts, invoices, contract documents, correspondence, account statements, reports, audits, work papers, memos, emails, voice mails, photographs, videos and the like, however, wherever and in whatever manner created, stored or maintained.

   (c) **"Claim"** means any claim, demand, notice, lawsuit, arbitration proceeding, regulatory proceeding, subpoena, or request for information related to: (i) any Bond; (ii) Underwriting; (iii) any Indemnitor; or (iv) any Principal.

   (d) **"Default"** shall include the following:
   (i) a Principal's breach of, abandonment of, or its failure, refusal or inability to timely perform, in whole or in part, any obligation for which a Bond has been Underwritten;
   (ii) a Principal's failure, refusal or inability to timely satisfy any Claim or obligation in connection with a Bond;
   (iii) a Principal's or Indemnitor's failure, refusal or inability to timely satisfy each and every term, obligation or condition of this Agreement or any other agreement in favor of Hartford;
   (iv) a declaration of default by an obligee or beneficiary of any Bond;
   (v) a dissipation or diversion of assets by any Principal or Indemnitor which impairs the performance of any term or condition of this Agreement or any obligation for which a Bond has been Underwritten;
   (vi) any Principal or Indemnitor becoming insolvent or the commencement of any proceeding regarding any Principal or Indemnitor on the basis of its actual or perceived insolvency, including, without limitation, bankruptcy, receivership, reorganization, liquidation, or any similar proceeding;
   (vii) the commencement or continuation of any proceeding which interferes with the Principal's performance of any obligation for which a Bond has been Underwritten;
   (viii) the death, disappearance, adjudged incompetence, incarceration, commitment or felony conviction of any Indemnitor or Principal;
   (ix) any material change in the character, financial condition, identity, control, management, or ownership of any Indemnitor or Principal;
   (x) a material adverse financial, operational or marketplace occurrence which interferes or may interfere with any Indemnitors ability to discharge its obligations under this Agreement;
   (xi) a Principal or Indemnitor providing, directly or indirectly, any materially false or misleading statement, document or disclosure to Hartford;
   (xii) a Principal's or Indemnitor's failure to fully and timely disclose to Hartford any material information regarding (a) its ability to perform this Agreement and/or Other Surety Documents; (b) any obligation for which a Bond has been Underwritten; and/or (c) any Claim.

RECEIVED
JAN 14 2021
NSFO

General Indemnity Agreement

---

(e) **"Hartford"** means The Hartford Financial Services Group, Inc. and its direct and indirect insurance company subsidiaries, affiliates, divisions, co-sureties, reinsurers, and/or any entity Underwriting a Bond at the request of Hartford, and all successors and assigns of all of the aforementioned entities.

(f) **"Indemnitor"** means all persons or entities signing this Agreement and their respective heirs, successors, assigns, executors, personal representatives, administrators, marital communities, co-venturers, affiliates, divisions and direct or indirect subsidiaries, whether now existing or hereafter acquired or created. Indemnitor also means any Principal and any person or entity acquiring through merger, acquisition or similar transaction a controlling interest in any Principal.

(g) **"Loss"** means all payments made or obligations incurred by Hartford: (i) as a result of or arising out of any Default; and/or (ii) in the belief that it was or might be liable as a result of having Underwritten any Bond; and/or (iii) in investigating and responding to any Claim; and/or (iv) in enforcing this Agreement or any Other Surety Documents; and/or (v) in the belief that it would mitigate its exposure. Loss shall include, but not be limited to, Claim payments, attorney fees, consultant fees, court costs, mediation fees, arbitration fees, expert witness fees, travel expenses, unpaid premiums, advances and guarantees on behalf of an Indemnitor and interest on all amounts paid at the maximum statutory rate.

(h) **"Other Surety Documents"** means other written agreements or documents with or in favor of Hartford including, without limitation, indemnity agreements, collateral agreements, loan agreements, subordination agreements, capital retention agreements, stock pledge agreements, forbearance agreements, deeds, notes, conveyances, name change agreements and other agreements and documents of like description, whether executed prior to, contemporaneously with or subsequent to the execution of this Agreement.

(i) **"Principal"** means any person or entity named on any Bond or for whom a Bond is Underwritten and its respective heirs, successors and assigns.

(j) **"Underwrite"** means all manner of underwriting, including furnishing, issuing, procuring, analyzing, assuming, executing, considering, renewing, extending, altering, modifying, replacing, participating in, refusing, declining, cancelling, non-renewing or continuing any Bond.

2. **Application of Agreement.** This Agreement shall apply to all Bonds Underwritten and Underwriting by Hartford, whether prior to, simultaneously with, or subsequent to this Agreement's execution (a) on behalf of any Indemnitor; and/or (b) at the request of any Indemnitor; and/or (c) for the benefit of any Indemnitor; and/or (d) for any parent, division, successor, assign, affiliate, or direct or indirect subsidiary of any Indemnitor. This Agreement is solely for the benefit of Hartford and no other person or entity shall have any rights under this Agreement. This Agreement and any Other Surety Documents are cumulative with, in addition to, not in lieu of and shall not be deemed to supersede, replace or compete with one another but shall in all respects be construed to be complementary. Conflicts or differences between the provisions of this Agreement and Other Surety Documents shall be construed as broadly as possible in favor of Hartford.

3. **Representations of Fact.** The Indemnitors represent, warrant and agree that each has a substantial, material and beneficial interest in (a) Hartford Underwriting Bonds; and (b) obtaining Bonds hereunder; and (c) each of the other Indemnitors obtaining Bonds hereunder; and (d) the transaction(s) for which they or any other Indemnitor has applied or will apply to Hartford for Bonds pursuant to this Agreement. The Indemnitors represent and warrant (a) there have been no written or verbal representations made to induce the Indemnitors to execute this Agreement; and (b) each and every agreement, term, commitment, condition and waiver contained in this Agreement was knowingly, willingly and voluntarily made as an inducement to Hartford after a full and complete opportunity by Indemnitors to have the entirety

---

of this Agreement reviewed carefully by legal counsel; and (c) that all Books and Records, information and disclosures provided to Hartford are materially accurate and complete.

4. **Indemnification, Hold Harmless and Exoneration.** The Indemnitors shall indemnify, hold harmless and exonerate Hartford from and against any and all Default, Loss, Claims and exposure or liabilities relating to Underwriting. The Indemnitors shall immediately be liable to Hartford for all Loss from the date such Loss was incurred by Hartford. Indemnitors agree that verified originals, copies, computer printouts, or other payment records kept or prepared by Hartford in the ordinary course of business shall be prima facie evidence of the fact and amount of Loss. Hartford may bring separate suits on this Agreement as causes of action accrue and the bringing of such suit or suits or the recovery of a judgment upon any cause of action shall not prejudice or bar the bringing of additional suits or causes of action.

5. **Premiums.** Principal and/or Indemnitors shall timely pay to Hartford all Bond premiums. Bond premiums are due until Hartford has been provided evidence satisfactory to it of its release from the obligations of the Bond.

6. **Additional Rights.** Hartford has the absolute right to: (a) Underwrite or decline to Underwrite any Bond; (b) consent to or refuse to modify any Bond; and (c) consistent with the Bond or applicable law continue, cancel, or non-renew any Bond.

7. **Waiver.**
   (a) *General Waivers.* Indemnitors expressly waive notice of and release any and all claims and defenses of any nature against Hartford relating to or arising out of:
      (i) Hartford's Underwriting or declining to Underwrite any Bond;
      (ii) any Claim, Default, or notice relating to any Bond or Underwriting;
      (iii) Hartford's acquisition, non-acquisition or release of any contract, legal or equitable interest, security, collateral, assignment, indemnification or other right, whether involving a Principal, an Indemnitor or otherwise;
      (iv) Hartford's exercise, forbearance, or delay in exercising or non-exercise of any right or remedy under this Agreement or at law;
      (v) information that may come to the attention of Hartford which affects or might affect its rights and liabilities or those of the Indemnitors or any of them; and/or
      (vi) the execution of Other Surety Documents.

   (b) *Waiver of Homestead/Property.* To the extent permitted by law, Indemnitors expressly waive, abandon and agree not to assert in any proceeding or action relating to any Bond or the enforcement of this Agreement, any statutory or common law claims or exemptions relating to Homestead and any claim that any property, whether Homestead or otherwise, is exempt from levy, execution, sale or other legal process under the laws of any State, Territory, Possession or Tribe.

   (c) *Procedural Waivers.* In any proceeding or action relating to any Bond or the enforcement of this Agreement, Indemnitors, unless requested by Hartford to assert said rights, expressly waive, abandon and agree not to assert as a claim, defense or otherwise:
      (i) any objection to venue, claim of forum non conveniens or any claim that the court in which the action or proceeding is brought lacks personal or subject matter jurisdiction; and
      (ii) any claim that the law applicable to any action or proceeding as determined by Hartford is improper or incorrect; and
      (iii) exhaustion of remedies; and
      (iv) the single action rule; and
      (v) that the action or proceeding is subject to arbitration.

General Indemnity Agreement

8. **INDEMNITORS WAIVE ANY RIGHT TO A TRIAL BY JURY.**

9. **Notice.** Principal and Indemnitors shall immediately notify Hartford in writing of any Claim, Default or notice related to any Bond.

10. **Compliance.** Principal and Indemnitors shall be solely responsible for ensuring that any Bonds comply with all contractual or statutory requirements. Hartford does not guarantee the acceptance of its Bonds by any obligee.

11. **Demand for Collateral.** On Hartford's demand, the Indemnitors shall immediately but no later than thirty (30) days after demand, deposit with Hartford collateral in form, amount and value acceptable to Hartford. Hartford may, in its sole discretion, demand collateral under this provision regardless of whether any Claim has been made, any Default has occurred or any Loss has been incurred. Hartford shall have no duty to invest or pay interest on any collateral. Said collateral may be used by Hartford in its sole discretion at any time without notice to the Indemnitors to accomplish the purposes of this Agreement. In the event Hartford accepts collateral other than funds, Hartford is authorized, without notice to Indemnitors, to manage, borrow against, sell, pledge, convey or dispose of said collateral to accomplish the purposes of this Agreement.

12. **Claim Settlement/Mitigation.** Hartford shall have the absolute discretion and unconditional right but not the obligation to pay, perform, adjust, settle, compromise, deny, defend, tender, dispute, litigate, appeal, or otherwise resolve any Claim or pay any Loss in whole or in part or remedy any Default. Hartford's decision shall be binding upon and conclusive as to Indemnitors' liability to Hartford.

13. **Attorney-In-Fact.** The Indemnitors irrevocably appoint and designate Hartford as attorney-in-fact with the right, but not the obligation, to exercise all rights, to create, execute and deliver any documents and to take and perform all other actions deemed necessary by Hartford to secure all rights provided by this Agreement, any Other Surety Documents or at law. The Indemnitors ratify and confirm all actions taken or to be taken by Hartford as attorney-in-fact.

14. **Books and Records.** Until Hartford's liability or potential liability for all Bonds, Underwriting and Claims has been terminated and Hartford is without Loss or Claim, Hartford shall have the right to review and copy in their entirety each Indemnitor's Books and Records or other information it deems necessary. Indemnitors agree to fully cooperate and provide immediate access to Books and Records or other information requested and shall direct third parties to cooperate and disclose same to Hartford.

15. **Rights Between Indemnitors/Priority to Hartford.** In the event of any Default, Loss, or Claim no Indemnitor shall have a right of indemnity or contribution against any other Indemnitor until all obligations to Hartford under this Agreement, Other Surety Documents, and at law have been fully satisfied.

16. **Set-off.** Hartford shall have the absolute right to set off any amount owed to any Principal or Indemnitor against any amount owed by any Principal or Indemnitor to Hartford. Hartford shall have the absolute right to apply any amount owed to any third party owned or controlled by any Principal or Indemnitor against the amount owed by any Principal or Indemnitor to Hartford whether the transactions are related or not.

17. **Joint, Several and Continuing Obligations.** The Indemnitors' obligations under this Agreement and Other Surety Documents are joint, several and continuing. Hartford shall not be required to enforce or exhaust its rights or remedies against any one or more Indemnitors before asserting its rights against any other Indemnitors.

General Indemnity Agreement

18. **Termination of Prospective Liability.** An Indemnitor's exclusive means of terminating its prospective liability under this Agreement shall be through a written notice sent by overnight delivery, personal service, certified or registered mail to Hartford Fire Insurance Company, Bond Department, One Hartford Plaza, T-12, Hartford, CT 06155, Attn: Vice President, Bond. Said termination shall be effective on the later of the date set forth in the notice or 30 days after actual receipt of the notice by Hartford's designated recipient as set forth herein. Said termination shall not release the terminating Indemnitor from obligations under this Agreement for Underwriting or Bonds Underwritten prior to the effective date of termination or which arose prior to the effective date of termination nor shall it affect the continuing liability of any non-terminating Indemnitor.

19. **Severability.** In the event any part of this Agreement shall be deemed invalid or unenforceable under the law of the place governing its construction, then such part only shall be considered as deleted and the remainder of this Agreement shall continue in full force and effect.

20. **Modifications.** No verbal modification of this Agreement shall be effective. All modifications shall be made by written amendment executed to form a part hereof.

21. **Credit Records.** Indemnitors expressly authorize Hartford to access its credit records and to make such pertinent inquiries as may be necessary from third party sources for the following purposes: (a) to verify information supplied to Hartford; (b) Underwriting; (c) debt collection; and/or (d) in the event of a Default, Loss or Claim.

22. **Equitable Remedies.** In the event of a Default, Loss or Claim, Hartford is entitled to specific performance of this Agreement including relief in the form of a preliminary, temporary or permanent injunction and/or restraining order or such other relief as may be available. The Indemnitors failure to immediately perform any obligation or requirement of this Agreement, or Other Surety Documents shall cause irreparable harm to Hartford for which there is no adequate remedy at law. On Hartford's demand the Indemnitors shall stipulate and Hartford may as attorney in fact stipulate that Hartford is entitled to all manner of equitable relief including, without limitation, specific performance and injunctive relief in addition to the relief otherwise afforded by this Agreement, Other Surety Documents or at law.

23. **Time is of the Essence.** Time is of the essence with respect to Indemnitors' obligations under this Agreement.

24. **Counterparts/Signatures.** This Agreement may be executed in any number of counterparts, each of which may be signed by fewer than all of the parties hereto. Each of the counterparts shall be an original but all of the counterparts together shall constitute one Agreement. The failure by any person or entity to execute this Agreement or the invalidity of any signature for any reason shall not render this Agreement invalid or unenforceable as to any of the undersigned. Minor irregularities, deficiencies or discrepancies in any signature shall not affect or invalidate any Indemnitors obligations to Hartford.

25. **Headings.** Paragraph headings are inserted for convenience only and are not to be used to interpret this Agreement.

26. **Copy as Original.** A true and correct copy of this Agreement in whatever form executed, maintained or stored which has been authenticated as such by a sworn statement from Hartford shall for all purposes be accepted as an original.

27. **Jurisdiction\Venue\Choice of Law.** At the sole election of Hartford, this Agreement is to be governed by the laws of the State (a) in which any Indemnitor resides or can be located or (b) which is the site of any obligation for which any Bond is Underwritten. At the sole election of Hartford, the venue for any dispute shall be at the State or Federal

General Indemnity Agreement

---

Court of the State (a) in which any Indemnitor resides or can be located or (b) which is the site of any obligation for which any Bond is Underwritten. Hartford's elections shall be binding on the Indemnitors.

28. **Special Provision.** [This Paragraph intentionally left blank.]

The undersigned acknowledge that, not including all signature pages, this is a 6 page document containing 28 numbered paragraphs.

Each of the undersigned affirms to Hartford that he or she has read and understands this Agreement. If executing this Agreement as a representative of an entity, each of the undersigned hereby represents, warrants and affirms to Hartford that (a) he or she is aware of all the documents which establish the rights and govern the affairs and authority of the entity on whose behalf he or she signs this Agreement; (b) the execution, delivery and performance of this Agreement by the entity shall not be in conflict with or result in a violation of any term, condition or provision of any charter documents, bylaws, operating agreements or similar formation or operational documents of such entity, or any law, rule, regulation, order, writ, injunction, judgment or decree of any court or governmental authority or any other agreement binding upon the entity; (c) he or she is duly authorized and empowered by the entity to execute this Agreement and to bind the entity to all of the obligations, terms and conditions of this Agreement.

Dated:   9/30/2020

**[Signature(s) Appear on Following Page(s)]**

General Indemnity Agreement
Signature Page
Entity

**ATTEST:**

By: _[signature]_ Equity Director of Risk Management
SIGN NAME, TITLE

Evelyn Shannon, Director of Risk Management
PRINT FULL NAME, TITLE

**INDEMNITOR:**

Blink Holdings, Inc.

By: _Marc Bengtten, MB SVP_
PRINT AND SIGN NAME, TITLE

Tax ID: ▮▮▮▮▮▮

Address: 386 Park Avenue South, 11th Floor, NY NY 10016

**ACKNOWLEDGMENT**

State of New York
County of New York  } ss

On the _2_ day of _November_, 20_20_, before me, _Susan Lum_, personally appeared
(Name of Notary Public)

INSERT NAME AND TITLE OF OFFICER who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of this state that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

No: 01LU6352654
Notary Registration Number

_[signature]_
Notary Public (signature)

(SEAL)

SUSAN LUM
Notary Public - State of New York
NO. 01LU6352654
Qualified in Kings County
My Commission Expires Jan 3, 2021

My commission expires the _3_ day of _January_, 20_21_