# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BLINK HOLDINGS, INC., *et al.*, [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11686 (JKS)<br><br>(Jointly Administered)<br><br>Re: D.I. 497 |

## REPLY OF THIRD AVENUE TOWER OWNER LLC IN SUPPORT OF ITS LIMITED OBJECTION TO DEBTORS' NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS

Third Avenue Tower Owner LLC (the "Landlord"), by and through its undersigned counsel, hereby submits its *Reply in Support of its Limited Objection to Debtors' Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [D.I. 417] (the "Limited Objection"),[2] and respectfully states as follows:

1. On September 12, 2024, the Debtors filed their *Notice of Assumption of Lease/Executory Contract - Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [D.I. 361] ("Debtors' Notice"). On September 25, 2024, Landlord timely filed its Limited Objection to the Debtors' Notice setting forth the correct cure amount owed to Landlord. *Compare* $500,824.21 set forth in the Limited Objection *with* $63,190.94 set forth in the Debtors' Notice.

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the proposed undersigned counsel for the Debtors.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Limited Objection.

{00039860. }

2. Shortly after the Limited Objection was filed, Debtor's counsel made an informal objection to the amount of Landlord's stated cure claim. A true and correct copy of the informal objection is attached hereto as **Exhibit A**. The informal objection maintains that Landlord's cure claim inappropriately "includes certain COVID deferrals that are not subject to acceleration and should be excluded from the cure calculation." Landlord disputes this and submits this Reply to address the Informal Objection.

## RELEVANT BACKGROUND

3. Landlord and Debtor Blink 600 Third Avenue, Inc. are parties to the Lease dated March 26, 2012. With the onset of the COVID pandemic, the Debtor requested Landlord agree to certain rent deferrals. After a good faith negotiation, Landlord agreed. Significantly, the "COVID deferrals" referred to in the informal objection are memorialized in the: (a) Second Amendment to Lease and Amendment of Guaranty, dated April 1, 2020 ("2d Amend.") and (b) Third Amendment to Lease and Amendment to Guaranties, dated July 21, 2022 ("3d Amend.," and, together with the 2d Amend., the "Amendments"). True and correct copies of the Amendments are attached hereto as **Exhibit B**. The Amendments are part and parcel to the Lease.[3]

---

[3] The Debtors' Notice expressly lists the Amendments as agreements potentially assumed and assigned together with the Lease and requires Landlord to include all cure amounts. The penalty for not asserting a cure amount is severe: "the non-debtor party to a Potentially Assigned Agreement shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Potentially Assigned Agreement, and the Debtors and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount; (ii) be deemed to have consented to any assumption and assignment to the Successful Bidder(s) of such Potentially Assigned Agreement; and (iii) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Potentially Assigned Agreement or that there is any objection or defense to the assumption and assignment of such Potentially Assigned Agreement." Debtors' Notice at 2-3.

4. Although the 2d and 3d Amend. modify the Existing Lease, the terms and conditions of the Existing Lease "shall continue in full force and effect in accordance with their terms and are hereby ratified and confirmed." 2 Amend. at 7.2; 3d Amend. at 5.2.

5. The 3d Amend. also provides in relevant part:

**ARTICLE 2 - RENT DEFERRAL AND REPAYMENT**

Section 2.1. Tenant acknowledges and agrees that as of the Effective Date, Tenant is in arrears under the Existing Lease on account of certain payments of fixed annual rent and additional rent (as such terms are defined in the Existing Lease) in the aggregate amount of **$353,353.95** (the "**Outstanding Arrearage Amount**") with respect to the period prior to May 10, 2022. Concurrently with Tenant's execution of this Agreement, Tenant shall pay to Landlord a portion of the Outstanding Arrearage Amount in the amount of **$77,902.32** (the "**Arrearage Payment**"). Notwithstanding anything contained in the Existing Lease to the contrary, and subject to the terms of this Agreement, **provided that Tenant shall not be in monetary or material non-monetary default under any terms, provisions or conditions of the Lease beyond the expiration of any applicable notice and cure period (except with respect to Tenant's failure to have paid the Deferred Rent (as hereinafter defined) as and when the same was due pursuant to the terms of the Existing Lease)**, the payment of the balance of the Outstanding Arrearage Amount (i.e., the Outstanding Arrearage Amount less the Arrearage Payment) in the amount of **$275,451.63** (the "**Deferred Rent**") shall be deferred until January 1, 2023 and shall be fully repaid by Tenant to Landlord as set forth in Section 2.2 below.

Section 2.2. Tenant hereby agrees that it shall pay to Landlord the Deferred Rent in thirty-six (36) equal and consecutive monthly installments in the amount of $7,651.43 each (the "**Deferred Rent Monthly Payment**") (and, provided that each Deferred Rent Monthly Payment is timely paid by Tenant as and when required pursuant to this Section 2.2, Tenant shall not pay any interest on the Deferred Rent), which Deferred Rent Monthly Payment shall be due and payable on or before the first day of each month commencing on January 1, 2023 and ending on December 31, 2025 (the "**Deferral Repayment Period**") (time bring of the essence with respect to each of the foregoing dates and which installments of the Deferred Rent Monthly Payment shall constitute additional rent under the Lease, except that no further notice or demand therefor shall be required from Landlord, and which Deferred Rent Monthly Payment shall be paid in addition to the fixed annual rent and all additional rent otherwise due and payable under the Lease during the Deferral Repayment Period). Nothing contained herein shall be deemed to limit (i) Landlord's right to bill Tenant for any additional amounts relating to the period ending on May 10, 2022 or for any amounts relating to the period following May 10, 2022 or (ii) any rights or remedies that may be available to Landlord under the Lease or at law or in equity on account of Tenant's failure to pay any installment of the Deferred Rent Monthly Payment in strict

accordance with the provisions of this Section 2.2.  **If at any time prior to or during the Deferral Repayment Period, Tenant shall default in any monetary obligation or any other of its material non-monetary obligations under the Lease beyond the expiration of applicable notice and cure periods, if any, the Deferred Rent shall immediately become due and payable in full by Tenant to Landlord.  Tenant's obligation to pay the Deferred Rent in its entirety to Landlord shall survive the Expiration Date or any earlier termination of the Lease.**

6. Breaking down the block quote:

    - At the time of the Amendments, the outstanding arrearage amount owed was $353,353.95 (the "Outstanding Arrearage Amount").[4]  Upon execution of the 3d Amend. on July 21, 2022, the Debtors were required to pay $77,902.32 (the "Arrearage Payment").  However, the Debtors never paid the Arrearage Payment or any amount to Landlord in December 2023.  The Arrearage Payment amount is properly asserted in Landlord's cure claim.

    - The Debtors also was required to pay (the "Deferred Rent") on a monthly basis from January 1, 2023 to December 31, 2025; *i.e.,* $7,651.43 per month.  But Debtor only made partial payments of the Deferred Rent.

7. The Debtors failure to pay the contractually agreed amounts owed triggers section 2.2 of the 3d Amend. which provides that:

    "[i]f at any time prior to or during the Deferral Repayment Period [January 1, 2023 and ending on December 31, 2025], Tenant shall default in any monetary obligation or any other of its material non-monetary obligations under the Lease beyond the expiration of applicable notice and cure periods, if any**,** the Deferred Rent [$275,451.63] shall immediately become due and payable in full by Tenant to Landlord."

3d Amend. Section 2.2.  The Deferred Rent amount is properly asserted in Landlord's cure claim.

---

[4] The Outstanding Arrearage Amount cited in the Limited Objection has now been adjusted downward as set forth in **Exhibit C** following review of the original submission of the Cure Claim. The total cure claim is now **$440,212.67.**

{00039860. }                                                          4

Together, the Arrearage Payment ($77,902.32) and Deferred Rent are properly included in Landlord's cure claim.

## REPLY TO INFORMAL OBJECTION

8. The Debtors are obligated to cure all defaults in the assumption and assignment of the Lease. Section 365(b)(1) of the Bankruptcy Code provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee—
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default…;
> (B) compensates, or provides adequate assurance that the trustee will promptly cure, such default…;
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

9. It is well-settled under section 365 that assumption must be *cum onere*, meaning that the debtor must assume all of the benefits, burdens and obligations attendant thereto. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-21 (1984). An executory contract may not be assumed in part and rejected in part. *In re Sterling Optical Corp.*, 371 B.R. 680, 2007 WL 1989233, at *11 n.13 (Bankr. S.D.N.Y. 2007) ("A debtor may not reject (i.e., breach) one obligation under a contract and still enjoy the benefits of that [*5] same contract."). The trustee must either assume the entire contract, cum onere, or reject the entire contract, shedding obligations as well as benefits. In re MF Global Holdings Ltd., 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012). *See also In re Network Access Solutions, Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005) (The debtor must cure all defaults whether such defaults occurred pre- or post-petition.).

10. By their express terms and the parties' agreement, the Amendments are part of the Lease. And as set forth in the Debtors' Notice, it must be assumed by the Debtors along with the

Lease. That means the Arrearage Amount and Deferred Rent that was due but not paid must be cured as part of any assumption of the Lease.

## REVISED CURE AMOUNT

11. Notwithstanding the foregoing, Landlord has re-visited its prior calculation and the amount of **$440,212.67** is asserted as the correct Cure Claim supported by **Exhibit C** attached hereto.

**WHEREFORE**, Landlord respectfully requests that the Court enter an order (i) denying the proposed assumption and assignment of the Lease absent payment in full of the Cure Amount and (ii) grant Landlord such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: October 16, 2024
Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE #3995)
824 Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
rosner@teamrosner.com

*Counsel for Landlord*