# EXHIBIT B

## (Amendments to the Lease)

SECOND AMENDMENT TO LEASE AND AMENDMENT TO GUARANTY (this "**Amendment**") made as of the 1st day of April, 2020 (the "**Effective Date**"), between THIRD AVENUE TOWER OWNER LLC, having an office c/o L&L Holding Company, LLC, 142 West 57th Street, New York, New York 10019 (herein called "**Landlord**") and BLINK 600 THIRD AVENUE, INC., a New York corporation, having an office at 386 Park Avenue South, 11th Floor, New York, New York 10016 (herein called "**Tenant**").

<u>W I T N E S S E T H</u>

WHEREAS, Landlord and Tenant entered into that certain Agreement of Lease dated as of March 26, 2012 (the "**Original Lease**"), as amended by that certain Partial Surrender Agreement dated as of March 20, 2014 (the "**Partial Surrender Agreement**"; the Original Lease, as modified by the Partial Surrender Agreement, is herein collectively called the "**Existing Lease**"), pursuant to which Tenant leases a portion of the Ground Floor, Cellar and Sub-Cellar (collectively, the "**Premises**") of the building located at 600 Third Avenue, New York, New York (the "**Building**"), each as more particularly described in the Existing Lease;

WHEREAS, the term of the Existing Lease (the "**Existing Term**") is scheduled to expire on March 31, 2028 (the "**Original Expiration Date**");

WHEREAS, Tenant wishes to extend the Existing Term for the period commencing on April 1, 2028 (the "**Extension Term Commencement Date**") through and including September 30, 2033 (the "**New Expiration Date**");

WHEREAS, Landlord has agreed to extend the Existing Term on the terms and conditions contained herein; and

WHEREAS, Landlord and Tenant desire to modify and amend the Existing Lease in certain other respects, all as more particularly set forth herein.

NOW, THEREFORE, in consideration of the agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

ARTICLE 1

TERMS

Section 1.1.    The foregoing recitals are true and correct and are incorporated herein by reference.  Except as otherwise defined herein, all terms used in this Agreement shall have the meanings provided in the Existing Lease.  The term "**this Lease**" or "**the Lease**" as used in the Existing Lease or this Agreement shall mean the Existing Lease as modified pursuant to this Agreement.

## ARTICLE 2

## EXTENSION OF EXISTING TERM

Section 2.1.  The Existing Term is hereby extended under the same terms, covenants and conditions contained in the Existing Lease, except to the extent specifically modified by this Agreement, so that the Existing Term, as so extended, shall expire on the New Expiration Date, or upon such earlier date upon which the term of the Lease shall expire, be canceled or terminated pursuant to any of the conditions or covenants of the Lease or pursuant to law. Effective as of the date hereof, any reference in the Existing Lease to the "Expiration Date" shall be deemed to be referring to the New Expiration Date (except as otherwise provided herein), unless the Lease is sooner terminated or expires pursuant to the terms of the Lease or pursuant to law.  For purposes of clarification, Tenant's Extension Option pursuant to Article 42 of the Original Lease shall remain unmodified by this Agreement, and Tenant shall have the right to extend the term of the Lease for an additional five (5) years commencing on the date immediately following the New Expiration Date in accordance with the terms thereof.

Section 2.2.  The parties acknowledge that Tenant is currently in occupancy of the Premises, has inspected the same and is fully familiar with the physical condition thereof, and Tenant agrees that Landlord shall not be required to perform any work, grant any allowance or do anything in the Premises in order to make the Premises suitable for Tenant's continuing occupancy thereof.

## ARTICLE 3

## FIXED ANNUAL RENT;  ADDITIONAL RENT

Section 3.1.  From the date hereof through and including the Original Expiration Date, Tenant shall pay fixed annual rent (as defined in the Original Lease) in accordance with the terms and conditions of the Existing Lease (*i.e.*, Section 1.01 of the Original Lease as amended by Section 2.1(b)(ii) of the Partial Surrender Agreement).  Notwithstanding anything to the contrary contained herein, effective as of the date hereof, the reference to the "Expiration Date" in Section 1.1(a) of the Original Lease shall be deemed to mean March 31, 2028.

Section 3.2.  Effective as of the Extension Term Commencement Date through and including the New Expiration Date, Tenant shall continue to pay fixed annual rent in accordance with the terms and conditions of the Existing Lease, except that the fixed annual rent payable by Tenant shall be in the following amounts during the following periods:

(i)  $891,402.51 per annum ($74,283.54 per month) for the period commencing on the Extension Term Commencement Date (*i.e.*, April 1, 2028) and ending on March 31, 2029;

#75440976_v4

(ii)     $913,687.57 per annum ($76,140.63 per month) for the period commencing on April 1, 2029 and ending on March 31, 2030;

(iii)    $936,529.76 per annum ($78,044.15 per month) for the period commencing on April 1, 2030 and ending on March 31, 2031;

(iv)    $959,943.00 per annum ($79,995.25 per month) for the period commencing on April 1, 2031 and ending on March 31, 2032; and

(vi)    $983,941.58 per annum ($81,995.13 per month) for the period commencing on April 1, 2032 and ending on the New Expiration Date.

Section 3.3.   From the date hereof through and including the New Expiration Date, Tenant shall continue to pay all items of additional rent (as defined in the Existing Lease) with respect to the Premises (including, without limitation, any additional rent due pursuant to the terms of Article 4 of the Original Lease as amended by Section 2.1(b)(iii) of the First Amendment (any such additional rent shall hereinafter be referred to as the "**Tax Escalation Rent**")), and all other amounts payable by Tenant in accordance with the terms and conditions of the Existing Lease; provided, however, that:

(a)    effective as of the Extension Term Commencement Date, on a going-forward basis only, the term "**base tax year**", as defined in Section 4.1(a) of the Original Lease, shall be deemed to mean an amount equal to the real estate taxes payable for the New York City real estate tax year commencing on July 1, 2027 and ending on June 30, 2028.

Section 3.4.   Notwithstanding anything to the contrary contained herein or in the Existing Lease, provided that Tenant shall not be in monetary or material non-monetary default under any terms, provisions or conditions of the Lease beyond the expiration of any applicable notice and cure period (Landlord hereby waives any rights, including, without limitation, under this Section 3.4, with respect to any default by Tenant under any terms, provisions or conditions of the Lease which first accrued for the period commencing on the Effective Date hereof and ending on July 6, 2020), the fixed annual rent and Tax Escalation Payment payable by Tenant shall be abated for the period (the "**2020 Rent Abatement Period**") commencing on April 1, 2020 and ending on September 30, 2020; *provided*, *however*, that during the 2020 Rent Abatement Period, Tenant shall be obligated to pay all other items of additional rent and other amounts payable by Tenant in accordance with the terms and provisions of the Existing Lease. Notwithstanding anything to the contrary contained herein, if Tenant shall be in monetary or material non-monetary default of its obligations under the Lease during the 2020 Rent Abatement Period, then, in addition to all of Landlord's rights and remedies set forth in the Lease or otherwise available to Landlord at law or in equity, no amount of fixed annual rent or Tax Escalation Rent shall be abated thereafter, and any amounts previously abated hereunder shall immediately become due and payable by Tenant to Landlord; provided, however, if Tenant cures such default pursuant to the terms and conditions of the Lease prior to the termination of the Lease, then any remaining abatement of fixed annual rent and Tax Escalation Payment that Tenant did not receive due to such default shall be thereafter abated as initially contemplated

3

#75440976_v4

hereunder.  The provisions of this Section 3.4 shall survive the expiration or sooner termination of the Lease.

ARTICLE 4

CONFIDENTIALITY

Section 4.1.    As a material inducement for each party to enter into this Agreement, each party covenants and agrees to keep this Agreement and all terms and conditions hereof, and all discussions and negotiations related thereto, confidential, and shall not discuss or disclose the terms or conditions hereof other than to such party's attorneys (and each party shall cause its attorneys to keep this Agreement and all terms and conditions hereof, and all discussions and negotiations related thereto, confidential).  Tenant expressly acknowledges and agrees that Tenant's discussion of this Agreement or any term or condition hereof with any third party (included, but not limited to, any broker, other tenant or occupant of the Building or other buildings owned by Landlord or Landlord's affiliates or Tenant's employees employed at the Premises) shall be deemed a material default under the Lease.  The provisions of this Section 4.1 shall survive the expiration or sooner termination of the Lease.

ARTICLE 5

MISCELLANEOUS LEASE MODIFICATIONS; MODIFICATIONS TO GUARANTY

Section 5.1.    Effective as of the date hereof, copies of any notices sent to Landlord pursuant to Article 31 of the Original Lease shall be sent to "Holland & Knight, 31 West 52nd Street, 12th Floor, New York, New York 10019, Attention: Noah Shapiro, Esq." in lieu of Haynes & Boone LLP.

Section 5.2.    Blink Holdings, Inc. ("**Blink**") delivered to Landlord that certain Guaranty dated March 26, 2012 (the "**Blink Holdings Guaranty**").  Notwithstanding anything to the contrary contained in the Blink Holdings Guaranty and the expiration of the Guarantee Period (as such term is defined in the Blink Holdings Guaranty), Blink hereby absolutely, unconditionally and irrevocably guarantees to Landlord the full and prompt payment of all Guarantor Obligations (as defined in the Blink Holdings Guaranty) incurred during and/or accruing and/or attributable to the period of time (the "**Reinstated Guarantee Period**") commencing on the date hereof and ending on June 30, 2021.  Effective as of the date hereof, all references in the Blink Holdings Guaranty to the "Guarantee Period" shall be deemed to mean the "Reinstated Guarantee Period."

## ARTICLE 6

## BROKER

Section 6.1   Article 39 of the Original Lease and Article 3 of the Partial Surrender Agreement shall be deemed inapplicable to this Agreement.  Tenant represents and warrants that it neither consulted nor negotiated with any broker or finder with regard to the Premises or this Agreement other than L&L Acquisitions, LLC ("**Landlord's Broker**").  Tenant agrees to indemnify, defend and save Landlord harmless from and against any claims for fees or commissions by anyone other than Landlord's Broker with whom Tenant has dealt in connection with the Premises or this Agreement.  The provisions of this Article 6 shall survive the expiration or sooner termination of the Lease.

## ARTICLE 7

## MISCELLANEOUS

Section 7.1.   Tenant hereby acknowledges and agrees that Tenant shall not be entitled to make any claim for rent abatement or any claim for actual or constructive eviction (or on account of casualty, interruption of services or otherwise) resulting from a COVID-19 Occurrence occurring on or prior to September 30, 2020.  For purposes hereof, a "**COVID-19 Occurrence**" shall mean the occurrence of any mandatory or voluntary closure of the Building, the Premises or Tenant's conduct of business at the Premises which is suspended, delayed, interfered with or where Tenant is otherwise barred from operating as a result of the COVID-19 outbreak in the City of New York or State of New York or as a result of any governmental orders, pre-emption, rules, regulations or the like in connection with such COVID-19 outbreak.

Section 7.2.   Except as modified, amended and supplemented by this Agreement, the terms and provisions of the Existing Lease shall continue in full force and effect in accordance with their terms and are hereby ratified and confirmed.

Section 7.3.   This Agreement shall not be binding upon Landlord and Tenant unless and until this Agreement is signed by both parties hereto and a signed copy thereof is delivered by Landlord to Tenant.

Section 7.4.   This Agreement constitutes the entire agreement among the parties hereto with respect to the matters stated herein and may not be amended or modified unless such amendment or modification shall be in writing and signed by the party against whom enforcement is sought.

Section 7.5.   The terms, covenants and conditions contained in this Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

Section 7.6.   This Agreement shall be governed in all respects by the laws of the State of New York.

Section 7.7.   This Agreement may be executed in one or more counterparts each of which, when taken together, shall constitute one and the same instrument.  Signatures exchanged via .pdf or other electronic means shall be deemed originals.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**LANDLORD**:

**THIRD AVENUE TOWER OWNER LLC**

By: _____
Name: Robert Lapidus
Title: Authorized Person


**TENANT**:

**BLINK 600 THIRD AVENUE, INC.**

By: _____
Name: Jeffrey Weinhaus
Title: President


The undersigned Guarantor hereby confirms, acknowledges and agrees that (i) the obligations of the undersigned under that certain Guaranty dated March 26, 2012 (the "**Blink Holdings Guaranty**") are extended to include all of the terms and conditions of the Lease (i.e., the Existing Lease as amended or modified by this Agreement), and (ii) notwithstanding the execution of this Agreement, the Blink Holdings Guaranty (as amended or modified by Section 5.2 of this Agreement) remains in full force and effect as to Guarantor and shall continue to be the legal, valid and binding obligation of the undersigned, enforceable in accordance with its terms.

**GUARANTOR**:

**BLINK HOLDINGS, INC.**

By: _____
Name: Jeffrey Weinhaus
Title: President

The undersigned Guarantor hereby confirms, acknowledges and agrees that (i) the obligations of the undersigned under that certain Guaranty dated March 26, 2012 (the "**Equinox Holdings Guaranty**") are extended to include all of the terms and conditions of the Lease (i.e., the Existing Lease as amended or modified by this Agreement), and (ii) notwithstanding the execution of this Agreement, the Equinox Holdings Guaranty remains in full force and effect as

to Guarantor and shall continue to be the legal, valid and binding obligation of the undersigned, enforceable in accordance with its terms.

**GUARANTOR**:

**EQUINOX HOLDINGS, INC.**

By: _____*Jeffrey Weinhaus*_____
Name:
Title:    Jeffrey Weinhaus
          President

**THIRD AMENDMENT TO LEASE AND AMENDMENT TO GUARANTIES** (this "**Agreement**") made as of the 21 day of   July   , 2022 (the "**Effective Date**"), between THIRD AVENUE TOWER OWNER LLC, having an office c/o L&L Holding Company, LLC, 142 West 57th Street, New York, New York 10019 (herein called "**Landlord**") and BLINK 600 THIRD AVENUE, INC., a New York corporation, having an office at 386 Park Avenue South, 11th Floor, New York, New York 10016 (herein called "**Tenant**").

W I T N E S S E T H

WHEREAS, Landlord and Tenant entered into that certain Agreement of Lease dated as of March 26, 2012 (the "**Original Lease**"), as amended by that certain Partial Surrender Agreement dated as of March 20, 2014 (the "**Partial Surrender Agreement**") and that certain Second Amendment to Lease and Amendment to Guaranty dated as of April 1, 2020 (the "**Second Amendment**"; the Original Lease, as modified by the Partial Surrender Agreement and the Second Amendment, is herein collectively called the "**Existing Lease**"), pursuant to which Tenant leases a portion of the Ground Floor, Cellar and Sub-Cellar (collectively, the "**Premises**") of the building located at 600 Third Avenue, New York, New York (the "**Building**"), each as more particularly described in the Existing Lease;

WHEREAS, Blink Holdings, Inc. ("**Blink**") delivered to Landlord that certain Guaranty of Lease in connection with the Original Lease dated as of March 26, 2012 (the "**Original Blink Holdings Guaranty**") which Original Blink Holdings Guaranty was amended by Section 5.2 of the Second Amendment (the Original Blink Holdings Guaranty, as amended, the "**Blink Holdings Guaranty**");

WHEREAS, Equinox Holdings, Inc. ("**Equinox**") delivered to Landlord that certain Guaranty of Lease dated as of March 26, 2012 (the "**Equinox Guaranty**");

WHEREAS, Landlord and Tenant desire to modify and amend the Existing Lease (a) to provide for the deferral by Landlord of certain outstanding amounts payable under the Existing Lease as of the date hereof, (b) to provide for Tenant to re-pay to Landlord all such deferred outstanding amounts as more particularly set forth in this Agreement, and (c) to otherwise amend and modify the Existing Lease in certain other respects, all as more particularly set forth in this Agreement;

WHEREAS, Landlord and Blink desire to modify and amend the Blink Holdings Guaranty in certain respects, all as more particularly set forth in this Agreement; and

WHEREAS, Landlord and Equinox desire to modify and amend the Equinox Guaranty in certain respects, all as more particularly set forth in this Agreement.

NOW, THEREFORE, in consideration of the agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1

## TERMS

Section 1.1.    The foregoing recitals are true and correct and are incorporated herein by reference.  Except as otherwise defined herein, all terms used in this Agreement shall have the meanings provided in the Existing Lease.  The term "**this Lease**" or "**the Lease**" as used in the Existing Lease or this Agreement shall mean the Existing Lease as modified pursuant to this Agreement.

## ARTICLE 2

## RENT DEFERRAL AND REPAYMENT

Section 2.1.    Tenant acknowledges and agrees that as of the Effective Date, Tenant is in arrears under the Existing Lease on account of certain payments of fixed annual rent and additional rent (as such terms are defined in the Existing Lease) in the aggregate amount of $353,353.95 (the "**Outstanding Arrearage Amount**") with respect to the period prior to May 10, 2022.  Concurrently with Tenant's execution of this Agreement, Tenant shall pay to Landlord a portion of the Outstanding Arrearage Amount in the amount of $77,902.32 (the "**Arrearage Payment**").  Notwithstanding anything contained in the Existing Lease to the contrary, and subject to the terms of this Agreement, provided that Tenant shall not be in monetary or material non-monetary default under any terms, provisions or conditions of the Lease beyond the expiration of any applicable notice and cure period (except with respect to Tenant's failure to have paid the Deferred Rent (as hereinafter defined) as and when the same was due pursuant to the terms of the Existing Lease), the payment of the balance of the Outstanding Arrearage Amount (i.e., the Outstanding Arrearage Amount less the Arrearage Payment) in the amount of $275,451.63 (the "**Deferred Rent**") shall be deferred until January 1, 2023 and shall be fully repaid by Tenant to Landlord as set forth in Section 2.2 below.

Section 2.2.    Tenant hereby agrees that it shall pay to Landlord the Deferred Rent in thirty-six (36) equal and consecutive monthly installments in the amount of  $7,651.43 each (the "**Deferred Rent Monthly Payment**") (and, provided that each Deferred Rent Monthly Payment is timely paid by Tenant as and when required pursuant to this Section 2.2, Tenant shall not pay any interest on the Deferred Rent), which Deferred Rent Monthly Payment shall be due and payable on or before the first day of each month commencing on January 1, 2023 and ending on December 31, 2025 (the "**Deferral Repayment Period**") (time bring of the essence with respect to each of the foregoing dates and which installments of the Deferred Rent Monthly Payment shall constitute additional rent under the Lease, except that no further notice or demand therefor shall be required from Landlord, and which Deferred Rent Monthly Payment shall be paid in addition to the fixed annual rent and all additional rent otherwise due and payable under the Lease during the Deferral Repayment Period).   Nothing contained herein shall be deemed to

#156265357_v3

limit (i) Landlord's right to bill Tenant for any additional amounts relating to the period ending on May 10, 2022 or for any amounts relating to the period following May 10, 2022 or (ii) any rights or remedies that may be available to Landlord under the Lease or at law or in equity on account of Tenant's failure to pay any installment of the Deferred Rent Monthly Payment in strict accordance with the provisions of this Section 2.2.  If at any time prior to or during the Deferral Repayment Period, Tenant shall default in any monetary obligation or any other of its material non-monetary obligations under the Lease beyond the expiration of applicable notice and cure periods, if any, the Deferred Rent shall immediately become due and payable in full by Tenant to Landlord.  Tenant's obligation to pay the Deferred Rent in its entirety to Landlord shall survive the Expiration Date or any earlier termination of the Lease.

ARTICLE 3

CONFIDENTIALITY; MODIFICATIONS TO GUARANTY

Section 3.1.    As a material inducement for each party to enter into this Agreement, each party covenants and agrees to keep this Agreement and all terms and conditions hereof, and all discussions and negotiations related thereto, confidential, and shall not discuss or disclose the terms or conditions hereof other than to such party's attorneys (and each party shall cause its attorneys to keep this Agreement and all terms and conditions hereof, and all discussions and negotiations related thereto, confidential).  Tenant expressly acknowledges and agrees that Tenant's discussion of this Agreement or any term or condition hereof with any third party (included, but not limited to, any broker, other tenant or occupant of the Building or other buildings owned by Landlord or Landlord's affiliates or Tenant's employees employed at the Premises) shall be deemed a material default under the Lease.  The provisions of this Section 3.1 shall survive the expiration or sooner termination of the Lease.

Section 3.2.    Notwithstanding anything to the contrary contained in the Blink Holdings Guaranty and the expiration of the Reinstated Guarantee Period (as defined in Section 5.2 of the Second Amendment), Blink hereby absolutely, unconditionally and irrevocably guarantees to Landlord the full and prompt payment of: (a) all Guarantor Obligations (as defined in the Blink Holdings Guaranty) incurred during and/or accruing and/or attributable to the period of time (the "**Second Reinstated Guarantee Period**") commencing on July 1, 2021 and ending on December 31, 2025 or such later date that the Deferred Rent shall be paid to Landlord in full, and (b) the Deferred Rent pursuant to the terms set forth in Section 2.2, which shall be deemed to be included in the definition of the "Guarantor Obligations".  Effective as of the date hereof, all references in the Original Blink Holdings Guaranty (as amended by the Blink Holdings Guaranty) to the "Guarantee Period" shall be deemed to include the "Second Reinstated Guarantee Period", and all references to the "Guarantor Obligations" shall be deemed to include the payment of the Deferred Rent.

#156265357_v3

Section 3.3.   Notwithstanding anything to the contrary contained in the Equinox Guaranty, Equinox hereby absolutely, unconditionally and irrevocably guarantees to Landlord the full and prompt payment of the Deferred Rent pursuant to the terms set forth in Section 2.2 (the "**Sixth Amendment Guarantor Obligations**"), which Sixth Amendment Guarantor Obligations shall be deemed to be incorporated into Equinox's obligations under the Equinox Guaranty through and including December 31, 2025 or such later date that the Deferred Rent shall be paid to Landlord in full (and, for the avoidance of doubt, the "Guarantee Period" and/or the "Additional Guarantee Period" (and/or any other time limitation or expiration date with respect to Equinox's obligation to perform under the Equinox Guaranty)) shall not be applicable with respect to the Sixth Amendment Guarantor Obligations (it being agreed and acknowledged, however, that Guarantor's obligations with respect to the Guarantor Obligations (as defined in the Equinox Guaranty) and/or the Additional Guarantor Obligations (as defined in the Equinox Guaranty) are not in any way modified, amended, or extended pursuant to the terms of this Section 3.3).

ARTICLE 4

BROKER

Section 4.1   Article 39 of the Original Lease, Article 3 of the Partial Surrender Agreement and Article 6 of the Second Amendment shall be deemed inapplicable to this Agreement.  Tenant represents and warrants that it neither consulted nor negotiated with any broker or finder with regard to the Premises or this Agreement other than L&L Acquisitions, LLC ("**Landlord's Broker**").  Tenant agrees to indemnify, defend and save Landlord harmless from and against any claims for fees or commissions by anyone other than Landlord's Broker with whom Tenant has dealt in connection with the Premises or this Agreement.  The provisions of this Article 6 shall survive the expiration or sooner termination of the Lease.

ARTICLE 5

MISCELLANEOUS

Section 5.1.   Tenant hereby acknowledges and agrees that Tenant shall not be entitled to make any claim for rent abatement or any claim for actual or constructive eviction (or on account of casualty, interruption of services or otherwise) resulting from a COVID-19 Occurrence occurring on or prior to December 31, 2025.  For purposes hereof, a "**COVID-19 Occurrence**" shall mean the occurrence of any mandatory or voluntary closure of the Building, the Premises or Tenant's conduct of business at the Premises which is suspended, delayed, interfered with or where Tenant is otherwise barred from operating as a result of the COVID-19 outbreak (and/or any viral variant thereof) in the City of New York or State of New York or as a result of any governmental orders, pre-emption, rules, regulations or the like in connection with such COVID-19 outbreak (and/or any viral variant thereof).

4

#156265357_v3


Section 5.2.   Except as modified, amended and supplemented by this Agreement, the terms and provisions of the Existing Lease shall continue in full force and effect in accordance with their terms and are hereby ratified and confirmed.

Section 5.3.   This Agreement shall not be binding upon Landlord and Tenant unless and until this Agreement is signed by both parties hereto and a signed copy thereof is delivered by Landlord to Tenant.

Section 5.4.   This Agreement constitutes the entire agreement among the parties hereto with respect to the matters stated herein and may not be amended or modified unless such amendment or modification shall be in writing and signed by the party against whom enforcement is sought.

Section 5.5.   The terms, covenants and conditions contained in this Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

Section 5.6.   This Agreement shall be governed in all respects by the laws of the State of New York.

Section 5.7.   This Agreement may be executed in one or more counterparts each of which, when taken together, shall constitute one and the same instrument.  Signatures exchanged via .pdf or other electronic means shall be deemed originals.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**LANDLORD**:

**THIRD AVENUE TOWER OWNER LLC**

By: _____
Name:   Robert Lapidus
Title:    Authorized Person

**TENANT**:

**BLINK 600 THIRD AVENUE, INC.**

By: _____
Name:    Jeffrey Weinhaus
Title:     President

The undersigned Guarantor hereby confirms, acknowledges and agrees that (i) the obligations of the undersigned under the Blink Holdings Guaranty are extended to include all of the terms and conditions of the Lease (i.e., the Existing Lease as amended or modified by this Agreement), and (ii) notwithstanding the execution of this Agreement, the Blink Holdings Guaranty (as amended by Section 3.2 of this Agreement) remains in full force and effect as to Guarantor and shall continue to be the legal, valid and binding obligation of the undersigned, enforceable in accordance with its terms (as amended by Section 3.2 of this Agreement).

**GUARANTOR**:

**BLINK HOLDINGS, INC.**

By: _____
Name:   Jeffrey Weinhaus
Title:    President

The undersigned Guarantor hereby confirms, acknowledges and agrees that (i) the obligations of the undersigned under the Equinox Guaranty are extended to include all of the terms and conditions of the Lease (i.e., the Existing Lease as amended or modified by this Agreement), and (ii) notwithstanding the execution of this Agreement, the Equinox Guaranty (as amended by Section 3.3 of this Agreement) remains in full force and effect as to Guarantor and shall continue to be the legal, valid and binding obligation of the undersigned, enforceable in accordance with its terms (as amended by Section 3.3 of this Agreement).

**GUARANTOR**:

**EQUINOX HOLDINGS, INC.**

By: _/s/ Jeffrey Weinhaus_
Name:    Jeffrey Weinhaus
Title:    President

#156265357_v3