## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 81 & 361** |

**EQUINOX HOLDING, INC.'s LIMITED RESPONSE AND OBJECTION TO DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF, (B) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (C) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND APPROVING MANNER OF NOTICE THEREOF, AND (D) GRANTING RELATED RELIEF; AND (II)(A) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO AN ASSET PURCHASE AGREEMENT, (B) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS, AND (D) GRANTING RELATED RELIEF; AND (III) GRANTING RELATED RELIEF**

Equinox Holdings, Inc. ("Equinox"), by and through its undersigned counsel, hereby files this limited response and objection (the "Response") to the *Debtors' Motion for Entry of Orders (I)(A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of The Sale of All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment*

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

*Procedures and Approving Manner of Notice Thereof, and (D) Granting Related Relief; and*

*(II)(A) Authorizing and Approving the Debtors' Entry Into An Asset Purchase Agreement, (B)*

*Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All*

*Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D)*

*Granting Related Relief* [ECF No. 81] (the "Sale Motion"), and to the *Notice of (I) Potential*

*Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts*

[ECF No. 361] (the "Cure Notice") and respectfully states as follows:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1.  On August 12, 2024, the Debtors each filed a voluntary petition for relief under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States

Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly

consolidated for administrative purposes only (the "Chapter 11 Cases"). The Debtors continue to

operate their businesses and manage their properties as debtors and debtors-in-possession pursuant

to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed

in the Chapter 11 Cases.

2.  On August 16, 2024, the Debtors filed the Sale Motion, seeking inter alia,

approval of various procedures, including bid and assumption and assignment procedures to

govern the sale (the "Sale") of substantially all of the Assets (as defined in the Sale Motion) of the

Debtors, pursuant to section 363 of the Bankruptcy Code.

3.  On September 10, 2024, the Debtors filed the *Notice of Filing of Stalking Horse*

*Supplement* [ECF No. 350], which identified Pinnacle US Holdings, LLC, a Delaware limited

liability company, as the Stalking Horse Bidder (the "Stalking Horse Bidder"). The Stalking Horse Bidder is a wholly owned subsidiary of PureGym Limited.

4.   On September 20, 2024, the Court entered an *Order Approving the Stalking Horse Bid Protections* [ECF No. 397], which approved certain bid protections for the Stalking Horse Bidder in connection with the Sale.

5.   On September 23, 2024, the Debtors entered into that certain Restructuring Support Agreement (the "RSA") among the Debtors and certain consenting pre-petition and DIP lenders (the "Consenting Lenders") which was subsequently amended on October 8, 2024 (the "Amended RSA").

6.   The Amended RSA sets forth the terms by which the Consenting Lenders have agreed to support a chapter 11 plan in the Debtors' Chapter 11 Cases and provides that all administrative claims will be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

7.   Equinox owns certain Series A preferred stock in Blink Holdings II, Inc., and provides various services and support to Blink Holdings, Inc. ("Blink") pursuant to that certain Transition Services Agreement dated December 1, 2016 (the "TSA"), which agreement was subsequently amended on February 5, 2024 (the "First TSA Amendment"), and amended again on August 2, 2024 (the "Second TSA Amendment, and the TSA as amended by the First TSA Amendment and the Second TSA Amendment, the "Amended TSA").

8.   Services Equinox provides to Blink pursuant to the Amended TSA include, without limitation, (i) the provision of Equinox personnel that provide services in finance, accounting, legal and people services (HR) (collectively, the "Personnel Services"); (ii) the

provision of discrete services by Equinox including with respect to technology, people services, finance, marketing and legal (collectively, the "Equinox-Provided Services"); (iii) pass-through costs for services provided by third parties including medical benefits, finance and AP reimbursables (collectively, the "Third Party-Provided Services"); and (iv) any payments with respect to lease guarantees provided by Equinox to Blink as a service under the Amended TSA (the "Lease Guarantees").

9. In connection with a potential Sale to the Stalking Horse Bidder, Equinox negotiated a form of Transition Services Agreement with the Stalking Horse Bidder (such form, the "PureGym TSA") that it could provide to the Stalking Horse Bidder as a purchaser, subject to various conditions set forth therein including, without limitation, that the Amended TSA is assumed by Blink, that all amounts owed to Equinox under the Amended TSA are paid in full, that certain releases are provided to Equinox, and that an agreement is reached with respect to the reduced scope of services required by Blink under the Amended TSA following the close of any Sale that is acceptable to Blink and Equinox.  To the extent other bidders contemplate the need for a transition services agreement, Equinox is amenable to discussing the services that it could provide through a potential transition services agreement, and Equinox provided Blink with a form of transition services agreement that can be shared with potential bidders to facilitate discussions.

10.    On September 12, 2024, the Debtors filed the Cure Notice, which identified certain executory contracts and unexpired leases, including the Amended TSA, that may be assumed and assigned to an applicable successful bidder in connection with the Sale.  The Cure Notice also provided the Debtors' proposed cure amounts to be paid in connection any assumption of such contracts, including the Amended TSA.

11. Equinox received an extension of time from the Debtors to [[October 21]], 2024 to file an objection or response to the Cure Notice.

12. On October 4, 2024, the Debtors filed *Notice of Filing of Proposed Sale Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [ECF No. 466].

## II.   LIMITED RESPONSE AND OBJECTION

### a.   Potential Assumption and Assignment of Amended TSA and Post-Closing Provision of Services Under Amended TSA

13. Equinox files this Response to clarify the documents that comprise the Amended TSA if the Amended TSA is assumed, to object to the listed cure associated with any potential assumption of the Amended TSA, to seek further demonstration of Blink's ability to provide adequate assurance of future performance under the Amended TSA (where, pursuant to its terms, the Amended TSA cannot be assumed and assigned to a purchaser that is a competitor of Equinox), and to ensure that adequate provisions are made to ensure payment of any and all administrative claims under Equinox's continued performance pursuant to the Amended TSA, including, following the closing of any Sale. Equinox also reserves its rights to raise further and other objections to the assumption and assignment of the Amended TSA, as applicable, including as to the adequate assurance information for any successful bidder, once such successful bidder has been selected and/or such information has been provided, as well as to the final forms of any sale order and/or asset purchase agreement. Equinox has endeavored to work cooperatively with the Debtors to facilitate a sale through the provision of a transition services agreement to the stalking horse bidder and to discuss what potential services the Debtors could require following

the closing of a sale, and intends to continue to work with the Debtors, the Stalking Horse Bidder and/or any successful bidder in good faith to further a consensual transaction including with respect to matters related to the Amended TSA.

**b. Clarification Regarding Agreements Capable of Potential Assumption and Assignment**

14.    As an administrative matter, the Cure Notice lists the Amended TSA at entry 1105 with a $0 cure amount.  The Cure Notice also lists certain "Terms & Conditions DTD 2/1/2018" and "Terms & Conditions DTD 2/1/2022" at entries 468 and 469, respectively (the "Terms & Conditions Entries") with proposed cure amounts of $255,000 and $0, respectively.  The Amended TSA is a single document comprised of the TSA, First TSA Amendment and Second TSA Amendment and should be assumed or rejected in its entirety.  Equinox and the Debtors agree that the agreements listed in the Terms & Conditions Entries 468 and 469 do not exist and that these items should be removed from the schedule.  Equinox understands that the Debtors intended the proposed cure amount of $255,000 at entry 468 to be the proposed cure amount for the Amended TSA (Equinox has since reconciled this amount with the Debtors, please see the cure discussion below).  Further, Equinox and the Debtors agree that the following entries are not executory contracts capable of assumption and should be removed from the schedule: (i) entry 466 "Securities Purchase Agreement Dtd 6/30/2021", entry 464 "Amendment To Securities Purchase Agreement Dtd 11/17/2021", entry 463 "2nd Amendment To Securities Purchase Agreement Dtd 8/9/2023" and entry 465 "Ratification Notice Dtd 8/14/2023."

**c. Any Assumption and Assignment Must Cure All Amounts Owing Under the Amended TSA**

15. Equinox objects to the Cure Notice to the extent that it lists $0 (or alternatively $255,000) as the proposed cure amount for the Amended TSA.

16. To assume and assign the Amended TSA, Blink must comply with Section 365(b)(1)(A) of the Bankruptcy Code which provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;. . .
>
> 11 U.S.C. § 365(b)(1)(A).

17. Under the Amended TSA, Equinox provides services that include both costs associated with support provided by Equinox employees and third-party costs. The third-party costs are billed to Blink over time only after such services are billed to Equinox by such third parties, and therefore all such costs associated with the period prior to the assumption of the Amended TSA may not be fully known as of the time of any such assumption.

18. Equinox and Blink have worked in good faith to reconcile amounts owing under the Amended TSA related to the costs of Personnel Services and Equinox-Provided Services provided prior to September 15, 2024 (the "Quantifiable Cure Amount"). Equinox has determined that the Quantifiable Cure Amount should be $237,424.16, and has sent an invoice to Blink dated

October 8, 2024, that reflects the detailed support for such amount, which include personnel costs in finance, accounting, technology, legal and HR and pass-through costs relating to medical benefits, technology, HR, financing, marketing and legal.  The Quantifiable Cure Amount does not account for (i) any charges under the Amended TSA that relate to the period from and after September 15, 2024, (ii) any accruing but unbilled charges, either before or after September 15, 2024, that may come due in the future with respect to Third Party-Provided Services, which include, for example, costs related to medical benefits provided to Blink's employees, or (iii) payments that could be made or owing by Equinox to certain lessors that become due pursuant to the Lease Guarantees (clauses (i), (ii) and (iii) collectively, the "Presently Unquantifiable Amounts").  While Equinox and Blink are able to determine the Quantifiable Cure Amount because such charges are based on Equinox's own provision of employees and services to Blink, the parties do not have the ability to know the Presently Unquantifiable Amounts under the Amended TSA and such amounts would remain owing by Blink following the assumption of the Amended TSA and would not be subsumed within any cure payment amount with respect to the Amended TSA on assumption.

19.    Bankruptcy Code section 365(b)(1)(A) requires that unless a debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign an executory contract.  The Third Circuit has noted that "as a matter of fairness, before requiring the creditor to perform, courts require the debtor in possession to give the other contracting party the full benefit of its bargain."  *In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 318 (3rd Cir., 2003) *citing* H.R.Rep. No. 95–595, at 348 (1977).  Further, the Third Circuit has noted "the debtor must cure all defaults, assure future

performance, and make the other contracting party whole before it may be permitted to assume the agreement." *Id.* In order to make Equinox whole, payment of the Quantifiable Cure Amount is without prejudice to the right of Equinox to invoice Blink for further obligations and liabilities under the Amended TSA in respect of the Presently Unquantifiable Amounts that may become known or owing either prior to or following the date of assumption, as well as for other obligations and liabilities that may arise going forward under the terms of the Amended TSA, if any.

> **d.  Blink Must Demonstrate Adequate Assurance of Future Performance if they Assume the Amended TSA**

20.     Presently Unquantifiable Amounts may not be known by Equinox until after the assumption and/or assignment of the Amended TSA. Since Bankruptcy Code Section 365(b) only requires debtors to cure defaults under applicable contracts, and since there can be no default for failure to pay an amount that has not as yet been billed, any accrued, but unbilled, charges are not yet due under the Amended TSA for these purposes and, therefore, they do not create a current default that gives rise to a requirement of cure by Blink at this time. Nevertheless, Blink would remain responsible for payment of all accrued or accruing charges, including the Presently Unquantifiable Amounts, as well as future obligations in the event of an assumption of the Amended TSA.

21.     The Bankruptcy Code does not define adequate assurance and bankruptcy courts have found that the "the particular facts and circumstances of each case are evaluated and taken into consideration to determine what constitutes adequate assurance." *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del., 2009). Here, the Debtors are selling their assets and contemplate winding down and dissolving their remaining business and associated entities. It is not clear that Blink will have any further sources of cash following the closing of the Sale other than the proceeds

from such Sale and any cash on hand, such that it is important that Blink demonstrate it has reserved adequate funds to be able to satisfy all obligations under any assumed contract, including the Amended TSA.  In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), Blink must provide Equinox with adequate assurance that it has sufficient funds available to pay the Presently Unquantifiable Amounts and any other future obligations due under the Amended TSA as they may arise over time.  While under the Amended RSA, the Debtors and the Consenting Lenders have agreed to support a plan that pays all administrative claims in full, in the event the Amended TSA is assumed by Blink, any sale order should establish a reserve with sufficient funds to pay all amounts that may arise after the Amended TSA is assumed for the duration of the agreement.  Courts recognize that the requirements to satisfy adequate assurance may vary from case to case, and can include demonstration of a sufficient financial backing, escrow deposits or other similar forms of security or guaranty.  See e.g., *In re Gold Standard at Penn, Inc*., 75 B.R. 669, 674 (Bankr. E.D. PA., 1987).  Payment of the Quantifiable Amount and funding of any reserve are without prejudice to Equinox's right to make a claim for any Presently Unquantifiable Amounts or any obligations and liabilities that may arise going forward under the terms of the Amended TSA.  Further, any provision in a sale order that purports to release Blink (or any successor) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Amended TSA.

### e.  Discussions Regarding Go Forward Services Ongoing

22.    The Amended TSA terminates by its terms no later than December 31, 2024.  Equinox understands that Blink may require further services beyond the current outside

{02061331;v1 }

date of the Amended TSA, including depending on the outcome of the auction process.[2] Additionally, certain of these services may be different from the current services Blink receives under the Amended TSA.  As such, Equinox cannot at this time calculate a reserve that would need to be established with respect to providing adequate protection in connection with an assumption of the Amended TSA.   Equinox has endeavored to work through these issues consensually with the Debtors and is amenable to continuing discussions with the Debtors prior to the sale hearing. In the absence of an agreement, Equinox reserves all rights with respect to these matters.

### f.    Conclusion

23.    Based on the foregoing, Equinox respectfully requests that (i) the schedule in the Cure Notice is updated to remove the entries that are not executory contracts capable of assumption, (ii) the Amended TSA cure amount be revised to be $237,424.16 and that any order approving the assumption of the Amended TSA confirm that the Presently Unquantifiable Amounts are not included in the cure amount and (iii) Blink be required to provide adequate assurance of future performance of the Amended TSA, as it may be modified (or absent any agreement on modified terms, the Court find that the Amended TSA is not susceptible of assumption following the closing of a Sale to a Competitor).

---

[2]    As noted above, the Amended TSA automatically terminates by its terms upon a Stockholding Change (as defined in the Amended TSA) which including a sale to a Competitor (as defined in the Amended TSA).  See Amended TSA, Section 4.2.  Absent a consensual resolution of these issues, Equinox reserves all rights in this regard, including that the Amended TSA is not susceptible of being assumed because of such termination provision.

Dated: Wilmington, Delaware
      October 21, 2024

**ASHBY & GEDDES, P.A.**

*/s/ Ricardo Palacio*
Ricardo Palacio (DE Bar No. 3765)
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Email: RPalacio@ashbygeddes.com

*Counsel to Equinox Holdings, Inc. and Equinox Group LLC*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Lisa M. Schweitzer
Thomas S. Kessler
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Equinox Holdings, Inc. and Equinox Group LLC*