**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BLINK HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11686 (JKS)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 501, 502<br><br>Hearing Date: November 6, 2024 at 11:00 a.m. (ET)<br>Objection Deadline: October 30, 2024 at 4:00 p.m. (ET) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) APPROVING THE COMBINED DISCLOSURE STATEMENT AND PLAN
ON AN INTERIM BASIS FOR SOLICITATION PURPOSES ONLY;
(II) ESTABLISHING SOLICITATION AND TABULATION PROCEDURES;
(III) APPROVING THE FORM OF BALLOT AND SOLICITATION MATERIALS;
(IV) ESTABLISHING THE VOTING RECORD DATE; (V) FIXING THE DATE, TIME,
AND PLACE FOR THE COMBINED HEARING AND THE DEADLINE FOR FILING
OBJECTIONS RELATED THERETO; AND (VI) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Debtors' Motion for Entry of Orders (i) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (ii) Establishing Solicitation and Tabulation Procedures; (iii) Approving the Form of Ballot and Solicitation Materials; (iv) Establishing the Voting Record Date; (v) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Related Thereto; and (vi) Granting Related Relief* (the "Conditional DS Motion").[1] In support of its Objection, the Committee respectfully states as follows:

---

[1] Docket No. 501.

17012343/1

## PRELIMINARY STATEMENT[2]

1. The Plan is not the type of plan whose confirmation Local Rule 3017-2 is intended to streamline. The only reason general unsecured creditors are not entitled to vote on, and are deemed to reject, the Plan is because the Debtors and Varagon agreed to (i) divert the Debtors' unencumbered assets, including claims against Former Directors and Officers, to Varagon on account of its Prepetition Secured Debt, and (ii) thereby deprive the Debtors' unsecured creditors of the *pro rata* recovery they are entitled to. The Plan is patently unconfirmable for that reason and others.

2. That being said, the Committee is not asking the Court to deny the Conditional DS Motion. The Committee will address all of its objections to confirmation at the appropriate time. The Committee simply requests that the Court require the Debtors to: (i) disclose the current status of their cases, including details regarding (a) the outcome of the Sale, (b) the Committee's Sale Objection (defined below), (c) the results of the Debtors' Investigation, (d) the value the estates received for releases under the Plan, (e) the claims being released under the Plan, (f) the claims being preserved under the Plan, and (g) the Committee's views on the Plan, in the DS, (ii) serve the DS and Plan (not just a plain vanilla, one-page notice of non-voting status) on all general unsecured creditors, and (iii) allow general unsecured creditors to vote. If those changes are made, the Committee does not oppose the Conditional DS Motion.

## BACKGROUND

3. On August 12, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. Since the

---

[2] Capitalized terms used but not defined in this Objection have the meanings ascribed to them in the Conditional DS Motion, the Sale Objection (defined below) or the Plan (defined below), as applicable.

Petition Date, the Debtors have remained in possession of their assets and continue to operate and manage their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On August 23, 2024, the U.S. Trustee appointed a five-member Committee consisting of: (i) Johnson Health Tech NA, Inc.; (ii) Motionsoft, Inc.; (iii) FW IL-Riverside/Rivers Edge, LLC; (iv) 96 N. 10th Street Holdings LLC; and (v) GS FIT ILL-1 LLC.[3] The Committee has retained Kelley Drye & Warren LLP as its lead counsel and Morris James LLP as its Delaware co-counsel.[4] The Committee also retained Dundon Advisers LLC as its financial advisor.[5]

5. On the Petition Date, the Debtors filed a motion for authority to sell substantially all of their assets to the prevailing bidder in an auction process (the "Sale Motion").[6] On October 22, 2024, the Committee objected to the Sale Motion (the "Sale Objection").[7] The Sale Objection is incorporated into this Objection by reference.

6. On September 24, 2024, the Debtors filed a notice of their entry into a restructuring support agreement (as amended, the "RSA") with Varagon Capital Partners Agent, LLC ("Varagon").[8] Pursuant to the RSA, the Debtors and Varagon agreed, *inter alia*, to pursue a chapter 11 plan that (i) delivers all of the Sale proceeds to Varagon on account of its prepetition secured claim, and (ii) provides no recovery to the Debtors' general unsecured creditors.[9]

---

[3] Docket No. 109.
[4] Docket Nos. 490, 491.
[5] Docket No. 492.
[6] Docket No. 81.
[7] Docket Nos. 515, 518.
[8] Docket Nos. 404, 483.
[9] Docket No. 483, Ex. A at 4.

7. On October 16, 2024, the Debtors filed the Conditional DS Motion, seeking interim approval of a combined disclosure statement and chapter 11 plan of liquidation (the "<u>DS and Plan</u>") that implements the RSA.[10]

8. Pursuant to the Plan, Varagon will receive all Sale proceeds, regardless of whether they were generated by assets that are unencumbered by its liens.[11] Holders of general unsecured claims will receive no recovery and are not entitled to vote on the Plan.[12]

9. The Plan, *inter alia*, preserves certain estate causes of action (collectively, "<u>Preserved Estate Causes of Action</u>"), including causes of action against the Debtors' Former Directors and Officers (as defined in the DS and Plan).[13]

10. Pursuant to the Plan, Varagon will receive the net proceeds of the Preserved Estate Causes of Action (and other DIP Collateral) on account of its Prepetition Loan Secured Claims.[14] The Prepetition Loan Secured Claims are not secured by the Preserved Estate Causes of Action or any other DIP Collateral that is not Varagon's prepetition collateral.[15]

## OBJECTION

11. "A paramount requirement of bankruptcy, and particularly as to a chapter 11 debtor, is disclosure and transparency."[16] Section 1125(b) of the Bankruptcy Code implements this requirement in the plan solicitation process. Pursuant to section 1125(b), a debtor must

---

[10] Docket No. 502.

[11] *See id.*, § 2.1.

[12] *Id.*

[13] *Id.*, § 1.121 ("Preserved Causes of Action").

[14] *Id.*, §§ 7.3, 1.57 ("Distributable Proceeds").

[15] *See* DIP Order at E(i)(c).

[16] *In re Visicon Shareholders Trust*, 478 B.R. 292, 311 (Bankr. S.D. Ohio 2012). *See also e.g.*, *In re Sharon Steel Corp.*, 871 F.2d 1217, 1228 n. 15 (3rd Cir. 1989); *Tradex Corp. v. Morse*, 339 B.R. 823, 833 (D. Mass. 2006).

4

provide creditors a disclosure statement containing "adequate information" before it may solicit votes on, and thereafter seek confirmation of, a chapter 11 plan.[17]

   12. "[A]dequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and of the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.][18]

Adequate information includes, at a minimum, an accurate description of a debtor's assets and the risks associated with confirmation.[19]

   13. The Debtors should not receive interim approval of a DS that does not provide accurate, basic information regarding the Plan. Among other things, the DS should advise the Debtors' creditors (i) of the outcome of the Sale, (ii) that the Committee filed the Sale Objection and a general description of its contents, (iii) the results of the Debtors' Investigation, (iv) the value the estates received for releases under the Plan, (v) the claims being released under the Plan, (vi) the claims being preserved under the Plan, (vii) that the Committee believes the Plan improperly diverts unencumbered value to Varagon on account of its prepetition secured claim, in

---

[17] *See* 11 U.S.C. § 1125(b).

[18] *Id.* at § 1125(a)(1); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (emphasizing "[t]he importance of full disclosure").

[19] *See, e.g.*, *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) (stating, "[d]ebtors must therefore identify and disclose all property of the estate including all of the debtor's legal and equitable property interests").

5

violation of the Bankruptcy Code, and (viii) the other bases on which the Committee vigorously will oppose confirmation.[20]

14. The Debtors should also be required to serve the DS and Plan on all general unsecured creditors—a notice of non-voting status is insufficient notice of the Plan and the Committee's strong objections to confirmation. If the Court is inclined to limit notice, the notice of non-voting status should conspicuously advise creditors that the Committee strongly opposes the Plan and believes, *inter alia*, that general unsecured creditors should be entitled to vote.

15. General unsecured creditors should have the opportunity to vote on the Plan. The Plan preserves and provides for the liquidation of unencumbered assets, including the Preserved Causes of Action against Former Directors and Officers, which belong to general unsecured creditors. As described in the Sale Objection, those causes of action are valuable.

16. Proceeds of unencumbered assets must be shared among general unsecured creditors *pro rata*.[21] Notwithstanding the Debtors' attempt to deliver those unencumbered assets to Varagon alone (by requiring the payment in full of the Prepetition Secured Debt before any proceeds of Preserved Causes of Action can be paid to unsecured creditors), there is no basis in the Bankruptcy Code to deliver 100% of the estates' unencumbered assets to Varagon. Holders of general unsecured creditors are entitled to a *pro rata* recovery from such assets (in which any allowed deficiency claim Varagon ultimately may hold will share) and, therefore, a right to vote on the Plan.[22]

---

[20] The Committee will provide suggested language to the Debtors in advance of the hearing on the Conditional DS Motion.

[21] *See* 11 U.S.C. § 1123(a)(3).

[22] *See* 11 U.S.C. § 1126(g).

**CONCLUSION**

**WHEREFORE**, the Committee respectfully requests that the Court (i) deny the Conditional DS Motion unless (a) the DS is amended to provide adequate information to creditors, (b) the Debtors are required to serve the DS and Plan on all general unsecured creditors, and (c) the solicitation procedures are revised to allow holders of general unsecured claims to vote on the Plan; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: October 30, 2024

**MORRIS JAMES LLP**

*/s/ Siena B. Cerra*
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
Siena B. Cerra (DE Bar No. 7290)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
       bkeilson@morrisjames.com
       scerra@morrisjames.com

-and-

**KELLEY DRYE & WARREN LLP**

Eric R. Wilson, Esq. (admitted *pro hac vice*)
Kristin S. Elliott, Esq. (admitted *pro hac vice*)
Andres Barajas, Esq. (admitted *pro hac vice*)
3 World Trade Center
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
E-mail: ewilson@kelleydrye.com
       kelliott@kelleydrye.com
       abarajas@kelleydrye.com

*Counsel to the Official Committee of Unsecured Creditors*