# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
| | Ref. No. 501 |

**EQUINOX HOLDING, INC.'S LIMITED
RESPONSE TO DEBTORS' MOTION FOR
ENTRY OF AN ORDER (I) APPROVING THE COMBINED
DISCLOSURE STATEMENT AND PLAN ON AN INTERIM BASIS FOR
SOLICITATION PURPOSES ONLY; (II) ESTABLISHING SOLICITATION
AND TABULATION PROCEDURES; (III) APPROVING THE FORM
OF BALLOT AND SOLICITATION MATERIALS; (IV) ESTABLISHING
THE VOTING RECORD DATE: (V) FIXING THE DATE, TIME, AND
PLACE FOR THE COMBINED HEARING AND THE DEADLINE FOR FILING
OBJECTIONS RELATED THERETO; AND (VI) GRANTING RELATED RELIEF**

Equinox Holdings, Inc. ("Equinox"), by and through its undersigned counsel, hereby files this limited response (the "Response") to the *Debtors' Motion for Entry of an Order (i) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (ii) Establishing Solicitation and Tabulation Procedures; (iii) Approving the Form of Ballot and Solicitation Materials; (iv) Establishing the Voting Record Date; (v) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Related Thereto; and (vi) Granting Related Relief* [ECF No. 501] (the "Interim Plan and Disclosure Statement Approval Order") and respectfully states as follows:

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

{02063911;v1 }

## I. FACTUAL AND PROCEDURAL BACKGROUND

1. On August 12, 2024, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

2. On August 16, 2024, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of The Sale of All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (D) Granting Related Relief; and (II)(A) Authorizing and Approving the Debtors' Entry Into An Asset Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [ECF No. 81] (the "Sale Motion"), seeking inter alia, approval of various procedures, including bid and assumption and assignment procedures to govern the sale (the "Sale") of substantially all of the Assets (as defined in the Sale Motion) of the Debtors, pursuant to section 363 of the Bankruptcy Code.

3. On September 10, 2024, the Debtors filed the *Notice of Filing of Stalking Horse Supplement* [ECF No. 350], which identified Pinnacle US Holdings, LLC, a Delaware

limited liability company, as the Stalking Horse Bidder ("Pinnacle"). Pinnacle is a wholly owned subsidiary of PureGym Limited.

4. On September 20, 2024, the Court entered an *Order Approving the Stalking Horse Bid Protections* [ECF No. 397], which approved certain bid protections for the Stalking Horse Bidder in connection with the Sale.

5. On September 23, 2024, the Debtors entered into that certain Restructuring Support Agreement [ECF No. 404] (the "RSA") among the Debtors and certain consenting pre-petition and DIP lenders (the "Consenting Lenders") which was subsequently amended on October 8, 2024 [ECF No. 483] (the "Amended RSA").

6. The Amended RSA sets forth the terms by which the Consenting Lenders have agreed to support a chapter 11 plan in the Debtors' Chapter 11 Cases and provides that all administrative claims will be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. *See* Exhibit A, Amended RSA.

7. Equinox owns certain Series A preferred stock in Blink Holdings II, Inc., and provides various services and support to Blink Holdings, Inc. ("Blink") pursuant to that certain Transition Services Agreement dated December 1, 2016 (the "TSA"), which agreement was subsequently amended on February 5, 2024 (the "First TSA Amendment"), and amended again on August 2, 2024 (the "Second TSA Amendment, and the TSA as amended by the First TSA Amendment and the Second TSA Amendment, the "Amended TSA"). The Amended TSA terminates in its entirety upon the expiration of the term which is currently December 31, 2024.[2] *See* Section 4.2, Amended TSA.

---

[2] The Amended TSA also terminates automatically upon a sale to a "Competitor" which is defined in the TSA as "any company operating a fitness business (other than boutique fitness)." *See* Section 4.2, Amended TSA.

3

8. Services Equinox provides to Blink pursuant to the Amended TSA include, without limitation, (i) the provision of Equinox personnel that provide services in finance, accounting, legal and people services (HR) (collectively, the "Personnel Services"); (ii) the provision of discrete services by Equinox including with respect to technology, people services, finance, marketing and legal (collectively, the "Equinox-Provided Services"); (iii) pass-through costs for services provided by third parties including medical benefits, finance and AP reimbursables (collectively, the "Third Party-Provided Services") and (iv) payments with respect to lease guarantees provided by Equinox to Blink as a service under the Amended TSA (the "Lease Guarantees").

9. Equinox and Pinnacle have negotiated and entered into a Transition Services Agreement (the "PureGym TSA") to support the transition of the business in the event a sale of the Debtors' assets to Pinnacle closes, subject to various conditions set forth therein including, without limitation, that the Amended TSA is assumed by Blink, that all amounts owed to Equinox under the Amended TSA are paid in full, that certain releases are provided to Equinox, and that an agreement is reached with respect to the reduced scope of services required by Blink under the Amended TSA following the close of any Sale that is acceptable to Blink and Equinox.

10. To the extent a different entity is determined to be the successful bidder through the Debtors' auction process, Equinox is amenable to discussing the services that it could provide and Equinox has provided Blink with a form of transition services agreement that can be shared with bidders to advance such discussions.

11. On September 12, 2024, the Debtors filed the *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [ECF No. 361] (the "Cure Notice"), which identified certain executory contracts and unexpired

4

leases, including the Amended TSA, that may be assumed and assigned to an applicable successful bidder in connection with the Sale. The Cure Notice also provided the Debtors' proposed cure amounts to be paid in connection any assumption of such contracts, including the Amended TSA. On October 21, 2024, Equinox filed the *Limited Response and Objection to Debtors Motion for Entry of Orders (I)(A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of The Sale of All or Substantially All of the Debtors Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (D) Granting Related Relief* [ECF No. 512] (the "Equinox Sale Response") which among other things, objected to the required cure amount with respect to the Amended TSA and noted the need to have any party assuming the Amended TSA demonstrate adequate assurance of future performance.

12. On October 16, 2024, the Debtors filed the Interim Plan and Disclosure Statement Approval Order and *the Chapter 11 Combined Plan & Disclosure Statement of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* [ECF No. 502] (the "Plan" and "Disclosure Statement", together the "Plan and Disclosure Statement").

## II.   LIMITED RESPONSE

13. Equinox understands that the Debtors are currently working to preserve and maximize the value of their business and assets through an auction process, and that they intend to seek approval of a sale transaction at the November 6 hearing. The Debtors also have filed a Plan and Disclosure Statement to further the plan process and efficiently administer these cases in parallel to the sale and auction process. Equinox has been working cooperatively with the Debtors to further the sale of the Debtors' assets through the provision of services under the Amended TSA and by being available to engage with other counterparties on potential transition services that

could be required. As of the time of the finalization of this response, the Debtors have not publicly identified a successful bidder for their assets, such that the ultimate proposed treatment of Equinox's agreements and claims in connection with a sale and under the Plan and Disclosure Statement remains unclear. Equinox files this Response, in addition to the Equinox Sale Response, to highlight for the Debtors, as well as other parties in interest, the issues that will need to be addressed under the Plan in the hope of furthering a consensual plan process. Equinox reserves its rights with respect to the proposed confirmation of the final Plan and Disclosure Statement, as well as with respect to all matters related to the sale of the Debtors' assets.

14. As highlighted in the Equinox Sale Response, if the Debtors assume the Amended TSA (as it may be consensually amended between the parties), the Debtors will need to fully cure outstanding amounts owed and demonstrate Blink's ability to provide adequate assurance of future performance under the Amended TSA as an entity that is proposed to be wound down under the Plan.

15. Equinox incorporates and restates its objection to the Cure Notice to the extent that it lists $0 (or alternatively $255,000) as the proposed cure amount for the Amended TSA. Equinox has determined that the Quantifiable Cure Amount for the Amended TSA (as defined in the Equinox Sale Response) should be $237,424.16 as of the date of the Equinox Sale Response and has sent an invoice to Blink dated October 8, 2024, that reflects the detailed support for such amount, which include personnel costs in finance, accounting, technology, legal and HR and pass-through costs relating to medical benefits, technology, HR, financing, marketing and legal. As further noted in the Equinox Sale Response, the Debtors will remain liable for presently unquantifiable amounts under the Amended TSA including (i) any charges under the Amended TSA that relate to the period from and after September 15, 2024, (ii) any accruing but unbilled

charges, either before or after September 15, 2024, that may come due in the future with respect to Third Party-Provided Services, which include, for example, costs related to medical benefits provided to Blink's employees, or (iii) payments that could be made or owing by Equinox to certain lessors that become due pursuant to the Lease Guarantees (clauses (i), (ii) and (iii) collectively, the "Presently Unquantifiable Amounts"), where the Debtors must demonstrate their ability to fund and satisfy the Presently Unquantifiable Amounts that may become known or owing either prior to or following the date of assumption, as well as other obligations and liabilities that may arise going forward under the terms of the Amended TSA, if any.

16. Here, the Debtors are selling their assets and contemplate winding down and dissolving their remaining business and associated entities. It is not clear that Blink will have any further sources of cash following the closing of the Sale other than the proceeds from such Sale and any cash on hand, such that Blink is required to demonstrate it has reserved adequate funds to be able to satisfy all obligations under the Amended TSA, both as a condition to the assumption of such agreement and in connection with confirmation of its plan. The current Plan purports to pay all administrative claims in full, *see* Plan, Section 6.2, but the Plan does not currently provide sufficient information or protections to ensure that any payments arising under the Amended TSA for the duration of the agreement will be covered by the Wind Down Reserve established by the Plan, as the Wind Down Reserve will be set under a Wind Down Budget that is not publicly filed in final form, to the extent it has even been finalized as of this time.

17. Even to the extent that the Debtors do not seek to assume the Amended TSA, they would need to adequately provide for all administrative claims owed and that may be owing under the Amended TSA. As noted above, Equinox has provided the Debtors with information to further their reconciliation of known amounts owing under the Amended TSA.

However, the Debtors also are responsible for paying in full the Presently Unquantifiable Amounts that relate to the post-filing period, as administrative priority claims that are accruing in these cases. The Plan must establish an adequate reserve to satisfy these amounts as they become known and quantifiable.

18. Finally, Equinox continues to engage with the Debtors regarding whether they may need services under the Amended TSA after the closing of the sale of their assets. Equinox understands that the Debtors may have further clarity on their needs following the completion of their auction process and reserve all rights with respect to such matters. Equinox remains available to work cooperatively with the Debtors on these issues.

Dated: Wilmington, Delaware
October 30, 2024

**ASHBY & GEDDES, P.A.**

*/s/ Ricardo Palacio*
Ricardo Palacio (Del. Bar No. 3765)
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888

-and-

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Lisa M. Schweitzer
Thomas S. Kessler
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Equinox Holdings, Inc. and Equinox Group LLC*