**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>BLINK HOLDINGS, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11686 (JKS)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: 11/1/2024 by 4:00p.m. (ET)**<br><br>**Ref. Docket Nos. 81, 348, 361, 532** |

**OBJECTION OF K/BTF BROADWAY LLC TO**
**PROPOSED ASSUMPTION AND ASSIGNMENT OF UNEXPIRED**
**LEASE WITH BLINK HICKSVILLE, INC. ON GROUNDS OF FAILURE**
**TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE**

K/BTF BROADWAY LLC ("K/BTF" or "Landlord") as successor-in-interest to KRE Broadway Owner LLC ("KRE"), by and through its undersigned counsel, hereby objects (the "Objection") to the proposed assumption and assignment of its unexpired lease with Blink Hicksville, Inc., debtor and debtor-in-possession ("Debtor" or "Blink Hicksville"), to Pinnacle US Holdings, LLC (Pinnacle), a wholly owned subsidiary of PureGym Ltd. ("PureGym") (hereinafter "Pinnacle/PureGym"), in connection with the sale of substantially all of the assets of the above-captioned Debtors to Pinnacle/PureGym. In support thereof, K/BTF respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Blink Holdings, Inc. and its affiliated Debtors (collectively the "Debtors"), in connection with a sale process recently concluded in which Pinnacle/PureGym acquired, subject to Court approval, various assets of the Debtors, are seeking authority to assume and assign the

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036.

unexpired Lease (as defined below) between Blink Hicksville, Inc. as tenant and K/BTF as landlord. K/BTF files this Objection on the basis that the Debtor is seeking to assume and assign the Lease to an entity which has not, and K/BTF respectfully submits cannot, provide K/BTF with adequate assurance of future performance, including, complying with all provisions of the Lease on a go-forward basis.

2. To satisfy the Debtors' burden under Section 365 of the Bankruptcy Code, 11 U.S.C. § 365, Debtors must furnish K/BTF with sufficient adequate assurance information to determine if a proposed assignee is creditworthy and could be a viable operator of the business, specifically in the context of heightened requirements afforded to counterparties to shopping center leases under Section 365(b)(3) of the Bankruptcy Code, 11. U.S.C. § 365(b)(3). As part of adequate assurance of future performance, the proposed assignee must satisfy all amounts which have not yet been billed or become due under the Lease and must also comply with all contractual obligations set forth in the Lease, including, but not limited, the obligation to indemnify and hold K/BTF harmless with regard to events which have occurred prior to the assumption and assignment, but which were not known as of the date of the assumption and assignment, and continue to timely pay all rent, additional rent and other charges due under the Lease.

## BACKGROUND

3. On August 12, 2024 (the "Filing Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Code 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

4. The Debtors have continued in possession of their property and management of their businesses pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. On December 4, 2014, KRE and Debtor entered into a lease (the "Lease") for certain premises located in the Broadway Mall, Hicksville, New York. The Lease is a lease "of real property in a shopping center" for purposes of Section 365(b)(3) of the Bankruptcy Code.

6. On August 16, 2024, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (D) Granting Related Relief; and (II)(A) Authorizing and Approving the Debtors' Entry Into an Asset Purchase Agreement, (B) Authorizing the Sale of all or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* (the "Bidding Procedures Motion") [ECF 81].

7. Pursuant to the Bidding Procedures Motion, the Debtors sought entry of an order approving the bidding procedures in connection with a sale of all or substantially all of their assets, including an assignment of specified leases (the "Sale"). On or about September 10, 2024, the Court entered an Order (the "Bidding Procedures Order") [ECF 348] granting the relief requested in the Bidding Procedures Motion.

8. On September 10, 2024, the Debtors filed the Notice of Filing of Stalking Horse Supplement [ECF 350], which identified Pinnacle, a Delaware limited liability company, as the Stalking Horse Bidder. The Stalking Horse Bidder is a wholly owned subsidiary of PureGym. On September 20, 2024, the Court entered an Order Approving Stalking Horse Bid Protections [ECF 397], which approved certain bid protections for the Stalking Horse Bidder (i.e., Pinnacle) in connection with the Sale.

9. On October 28, 2024, an auction (the Auction") was held at the offices of Moelis & Co., the Debtors' investment banker. The Auction concluded in the evening of October 30,

3

2024, with Pinnacle/PureGym as the successful bidder with a bid price of $121 million [ECF 532]. The assets sold, subject to Bankruptcy Court approval, include the Lease.

10. As will be shown herein, K/BTF respectfully submits that the Debtors' request to assume and assign the Lease to Pinnacle/PureGym in connection with the Sale, must be denied as matter of law and fact, on the basis that the Debtors and Pinnacle/PureGym are unable to demonstrate adequate assurance of future performance with respect to Blink Hicksville's contractual obligations under the Lease.

## ARGUMENT

### I. DEBTORS MUST PROVIDE EVIDENCE OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER THE LEASE

#### A. Adequate Assurance of Future Performance for Shopping Center Leases

11. In connection with the assumption and assignment of leases, shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of adequate assurance of future performance. *In re Joshua Slocum*, 922 F.2d at 1086, *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002) specifically, Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

12. Section 365(b)(1) of the Bankruptcy Code provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default… ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

13. In connection with the assumption and assignment of a shopping center lease, adequate assurance of future performance includes adequate assurance:

> (A) of the source of rent … due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee … shall be similar to the financial condition and operating performance of the debtor … as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) the assumption…of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement related to such shopping center; and
>
> (D) that assumption … of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

14. Although adequate assurance of future performance is not defined in the Bankruptcy Code, the legislative history, as reviewed by the courts, has concluded that "the term was to be given a practical, pragmatic construction" in light of the facts of each case. *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009). The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a

debtor that may continue to default and return to bankruptcy." *In re Natco Industries, Inc.*, 54 B.R. 436, 441 (Bankr. S.D.N.Y. 1985).

15. The Debtors bear the burden of providing adequate assurance of future performance in connection with the potential assumption and assignment of the Lease. *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

16. K/BTF respectfully submits that to determine whether the requirements of adequate assurance of future performance will be satisfied with respect to the proposed assignment to Pinnacle/PureGym, at a minimum, K/BTF must receive the following information (collectively, the "Adequate Assurance Information");

    a. The exact name of the entity that will be designated as the assignee of the Lease and the guarantor;

    b. The corporate structure, including affiliates and subsidiaries of the proposed assignee;

    c. Audited (or un-audited, if audited is not available) financial statements and any supplemental schedules for the calendar or fiscal years ended 2021, 2022, 2023 and 2024 for Pinnacle/PureGym and the proposed guarantor;

    d. Any and all documents regarding the Pinnacle/PureGym's and the guarantor's experience operating physical fitness centers in shopping centers;

    e. The Pinnacle/PureGym's and the guarantor's 2024, 2025, 2026 and 2027 business plans, including sales and cash flow projections;

    f. Pinnacle/PureGym's marketing and advertising strategies in connection with its operating and business plan;

    g. Financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of acquiring the Lease; and

       h.       Information setting forth the identities of senior management of Pinnacle/PureGym and their prior experience in managing and operating physical fitness centers in the U.S.

17.       K/BTF may also need similar information for the Debtors in the years when Blink Hicksville entered into the Lease to appropriately evaluate the ability of the proposed assignee to provide adequate assurance of future performance.

18.       Unless and until the K/BTF receives all of this information, the Debtors have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

19.       As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the estate from any liability for any breach of such … lease occurring after such assignment."

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach").

20.       Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption of a shopping center lease "is subject to all the provisions thereof … ." 11 U.S.C. § 365(b)(3)(C). Bankruptcy courts have described the assumption of an unexpired lease as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g., In re CellNet Data System, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

21.       In that regard, the Debtors or Pinnacle/PureGym must be required to comply with all contractual obligations to indemnify and hold K/BTF harmless for events which occurred before assumption and assignment, but which may not have been known to K/BTF as of the date of the assumption and assignment. This includes, but is not limited to, (i) claims for personal

injury that occurred at the Leased premises, (ii) damages and destruction to the Leased premises or property by the Debtors or their agents, and (iii) environmental damage or clean-up. To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Lease, either (a) the Debtors or the proposed assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where the applicable Landlord is joined as a party to a lawsuit or for damages and destruction of property by the Debtors or their agents or employees.

      **B.**      **The Debtors and Pinnacle/PureGym Have Failed to Provide Adequate Assurance of Future Performance**

      22.      First and foremost, Pinnacle/PureGym's inability to provide adequate assurance of future performance was demonstrated early on in the sale process when representatives of R.C.S., the Debtors' real estate advisor, contacted representatives of K/BTF and advised K/BTF that unless K/BTF would agree to a 35% rent reduction, the Debtor would have no choice but to reject the Lease. Suffice it to say, that statement is any thing but assurance that Pinnacle/PureGym can timely and fully perform under the Lease.

      23.      A review of the September 2024 PureGym Group Information (the "PureGym Adequate Assurance Documentation") made available by PureGym does nothing to alter this conclusion. The information indicates that of the approximately 600 fitness centers owned and operated by PureGym, 387 sites are in the United Kingdom, 45 sites are in Switzerland, 161 sites are in Denmark and 20 sites are in Saudi Arabia. According to the PureGym Adequate Assurance

Documentation, PureGym opened its first United States location in 2022. Upon information and belief, most, if not all of the U.S. locations are on the west coast. Thus, PureGym has a limited track record, if any, in operating fitness centers in the U.S.

24. The PureGym Adequate Assurance Documentation does not contain a detailed business plan, marketing or advertising strategies or pro forma financial information with respect to the locations it intends to acquire, including, the Blink Hicksville location. Representatives of the Landlord have been advised that L.A. Fitness, a successful and financially robust fitness center operator and competitor of the Debtors is opening a facility three times the size of the Debtor's facility,[2] directly across the street from the Blink Hicksville location. There is nothing in the PureGym Adequate Assurance Documentation as to how PureGym will respond to increased competition from well financed competitors.

25. The PureGym Adequate Assurance Documentation likewise does not identify senior management (or any upper level management) for the acquired locations. There is nothing which discusses relevant qualifications for the fitness center industry, management's particular roles and responsibilities, and prior experience in U.S. fitness center operations.

26. In addition to the failure to disclose managements' relevant experience, there is no information as to who will fill the critical role of turning around the east coast operations, which have been limping along at best. In this regard, the PureGym Adequate Assurance Documentation asserts, without support, that a $30 million follow on investment to refurbish and upgrade the acquired locations will be sufficient "to grow EBITDA over the next few years." A $30 million

---

[2] K/BTF respectfully submits that based on its knowledge of the fitness industry, the Blink Hicksville facility is significantly undersized.

follow on investment amounts to approximately $450,000 per store, which hardly seems adequate in light of the acquired locations operating results and presumed needs.

27. K/BTF respectfully submits that in light of the lack of financial information, business plans or models, management information and pro forma budgets and projections with respect to the Blink Hicksville location, the Debtors and PureGym have not satisfied their burden of establishing adequate assurance of future performance.

28. The experience, pro forma financial information and creditworthiness of Blink Hicksville were all critically important for enticing Landlord's predecessor-in-interest to enter into the Lease. While the Debtors have provided certain limited information, much needed information is missing in view of the critical facts discussed above.

29. In sum, Debtors have failed to provide information sufficient to determine the financial status of Pinnacle/PureGym and, therefore, K/BTF has no way to determine if Pinnacle/PureGym is in substantially the same financial condition Blink Hicksville was in at the time KRE entered into the Lease. Unless and until K/BTF receives all of the Adequate Assurance Information detailed above, Debtors have not demonstrated that Pinnacle/PureGym can perform under the Lease and have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

## II. IF THE LEASE IS ASSIGNED, LANDLORDS REQUIRE ADDITIONAL SECURITY FOR THE PERFORMANCE OF LEASE OBLIGATIONS

30. In connection with entering into the Lease, Blink Hicksville was required to provide KRE (Landlord's predecessor-in-interest) with substantial credit enhancement in the form of a guaranty (the "Guaranty") from Blink Hicksville's parent corporation, Blink Holdings, Inc. Blink Holdings, Inc. is owned by Equinox Holdings, Inc. ("Equinox"), a large luxury fitness company that also owns Soul Cycle, Pure Yoga and Equinox Fitness Clubs. Equinox, which is headquartered

in New York, operates more than 300 club facilities in major cities in the United States, as well as, London, Toronto and Vancouver.

31. In contrast, Pinnacle/PureGym, the proposed assignee, is an entity formed for the purpose of acquiring the Debtors' assets. PureGym, the parent company of Pinnacle, is a U.K. entity. Limited information with respect to the creditworthiness of Pinnacle/PureGym has been provided. Moreover, the fact that PureGym, is a foreign entity is in and of itself a substantial decrease in the credit enhancement by the potential guarantor as compared to the substantial credit worthiness of the current guarantor and its parent (Equinox) at the time the Lease was entered into.

32. Section 365(l) of the Bankruptcy Code provides, in the pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

33. In the ordinary course of its business, K/BTF routinely requires security deposits, letters of credit, or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history, particularly from entities which are formed for the sole purpose of acquiring leases from a bankruptcy entity. In connection with the potential assumption and assignment of the Lease, K/BTF hereby demands such security in one of those forms as required by section 365(l) of the Bankruptcy Code. Given that the proposed assignee's parent (whom K/BTF would require to guaranty the Lease) is a foreign entity, K/BTF would require a security deposit equal to twelve (12) months of gross rent or a letter of credit in the same amount.

34. In light of the *de minimus* amount of relevant information contained in the PureGym Adequate Assurance Documentation, K/BTF respectfully submits that neither the Debtor nor Pinnacle have shown that they are capable of providing adequate assurance of future performance.

WHEREFORE, for all of the foregoing reasons, K/BTF respectfully requests that the proposed assumption and assignment of the Lease be denied in all respects and that the Court grant Landlord such other and further relief as is just and proper.

Dated:   November 1, 2024

         CONNOLLY GALLAGHER LLP

By: /s/ *Karen C. Bifferato*
    Karen C. Bifferato (No. 3279)
    1201 N. Market Street, 20th Floor
    Wilmington, DE, 19801
    T.: (302) 888-6221
    kbifferato@connollygallagher.com

    and

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Scott A. Steinberg, Esq. (N.Y. Bar No. 1838218)
190 Willis Avenue
Mineola, New York, 11501
T.: (516) 747-0300
ssteinberg@meltzerlippe.com

*Attorneys for K/BTF Broadway LLC*