**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*, | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF LEE ROONEY IN**
**SUPPORT OF THE OBJECTION OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' SALE MOTION**

I, Lee Rooney, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a managing director at Dundon Advisers LLC ("Dundon Advisers"), a financial advisory and investment management firm.

2. The Official Committee of Unsecured Creditors (the "Committee") of *Blink Holdings, Inc.*, *et al.*, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") has retained Dundon Advisers as its financial advisor. I am authorized to execute this declaration on behalf of the Committee and Dundon Advisers.

3. I have more than four years of experience as a financial advisor. In my role at Dundon Advisers, I have extensive experience serving as an advisor to unsecured creditor committees in the retail and restaurant space. With Dundon Advisers, I have worked on several engagements, including as an advisor to the creditor committees of, or certain creditors of, fitness chains Gold's Gym, In-Shape, YogaWorks, and YouFit. Additionally, I have been a part of dozens of committee engagements in other industries that have included complicated sale processes.

4. I have a BS in physics from the University of Idaho, a BS in biology and an MBA from Boise State University, and a JD from the University of Texas.

17020713/1

5. I submit this Declaration in support of the (i) *Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of the Assumed Contracts, and (IV) Granting Related Relief* and (ii) *Supplemental Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to the Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of the Assumed Contracts, and (IV) Granting Related Relief* (collectively, the "<u>Sale Objection</u>").[1] I understand one of the primary grounds of the Sale Objection is that the Sale contemplates releases of Equinox and other insiders for no or insufficient consideration.

6. I am member of the Dundon Advisers team advising the Committee in this matter. As such, unless otherwise indicated, I have personal knowledge of the facts set forth herein. If I were called to testify as a witness in this matter, I could and would testify competently to each of the facts set forth herein.

7. In connection with the Sale Objection, the Committee requested that Dundon Advisers perform an analysis of the Debtors' financial performance, the Debtors' proposed Sale, and the terms of the Debtors' Original TSA and the TSA Amendments. In conducting this analysis, Dundon Advisers reviewed relevant documents produced by the Debtors

---

[1] Docket Nos. 515, 518, 546. Capitalized terms not defined in this declaration have the meanings ascribed to them in the Sale Objection.

and have had several conversations with the Debtors and their advisors, including Triple P RTS, LLC ("Portage") and Moelis & Company LLC ("Moelis").

8. █████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████

9. As of the filing of this Declaration, the Debtors' prepetition debts totaled approximately $354 million, consisting of (i) $161.5 million of the Prepetition Debt, (ii) $103.5 million of Equinox Loans, and (iii) approximately $89 million of other general unsecured claims. Together with the New Money DIP Financing, the Debtors' debts currently total approximately $375 million.

10. Based on my communications with Portage and Moelis, it is my understanding that █████████████████████████████████████████

█████████████████████████████████████████████

11. Based on information Dundon Advisers received from the Debtors and their professionals, Dundon Advisers has determined that, during the years of 2021 through the Petition Date, the Debtors paid the following amounts to Equinox for fees under the Original TSA: █████

█████████████████████████████████████████████

███████████████████████ Based on Dundon Advisers' review of the Debtors' filed schedules, during the year before the Petition Date, the Debtors paid Equinox $12.0 million under the Original TSA, including $6.6 million during the 90 days before the Petition Date.

12. Beginning in September 2024, Dundon Advisers began ████████████

█████████████████████████████████████████████

███████████████████████████████ The Debtors have not provided the information as of the date of this declaration.

13. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

14. ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████

15. At the direction of counsel, Dundon Advisers requested information regarding the roles that Houlihan Lokey and Cleary Gottlieb Steen & Hamilton LLP performed for the Debtors in order to better understand the nature of the payments made to these firms. Attached hereto as **Exhibit A** is a true and correct copy of an email, dated October 10, 2024, that I received from Scott Canna of Portage in response to our request.

16. I am aware of and have reviewed the Supreme Correspondence, including the alternate proposals included therein. One proposal is an offer by Supreme to purchase the Debtors' assets for $142 million (the "Supreme $142M Bid"), with a $28.4 million deposit, and a

representation that there is no requirement to make a premerger filing under the Hart-Scott-Rodino Antitrust Improvement Act of 1976 ("HSR").

17. Dundon Advisers analyzed the Supreme $142M Bid and compared it to PureGym's Successful Bid. Our analysis is based on the following assumptions:

(a) If the government enjoins the sale between the date that Supreme is selected as the winning bidder and December 2, 2024, Supreme will not close.

(b) If the government does not enjoin the sale before December 2, 2024, Supreme will close.

(c) If Supreme does not close for any reason, PureGym will be required to close on the terms of its original Stalking Horse Bid of $105 million.

18. Our bid analysis models the entire range of risk (between 0% and 100%) that the government will enjoin a sale pursuant to the Supreme $142M Bid before December 2, 2024. These risk levels are used to adjust the value of the Supreme $142M Bid. Based on this analysis and the assumptions provided above, Dundon Advisers' conclusion is that the risk-adjusted value of the Supreme $142M Bid provides greater net proceeds to the Debtors' estates than PureGym's Successful Bid at all levels of risk up to 89.5%. In other words, PureGym's Successful Bid only provides more value to the estates if the risk that the government enjoins the Supreme $142M Bid before December 2, 2024 is greater than 89.5%. Our analysis is attached hereto as **Exhibit B**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 4, 2024
Scituate, Massachusetts.

*/s/ Lee Rooney*
Lee Rooney