**<u>EXHIBIT B</u>**

**CPO Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 81, 348, 350, 397** |

## ORDER (I) APPROVING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion [Docket No. 81] (the "**Motion**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 365, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for, among other things, entry of an order (this "**Sale Order**") (a) approving that certain *Asset Purchase Agreement*, dated as of September 10, 2024 (as amended, supplemented, or otherwise modified from time to time, and including the exhibits, schedules or attachments thereto, the "**Asset Purchase Agreement**"),[2] a copy of which is attached hereto as Exhibit A, between Debtor Blink Holdings, Inc. and its Debtor affiliates, on the one hand, and Pinnacle US Holdings LLC, a Delaware limited liability company (the "**Buyer**"), on the other

---

[1]    The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354.  The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

[2]    Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Asset Purchase Agreement or, if not defined therein, in the Motion.

responsible for such Acquired Asset, Assumed Liability, or Assumed Agreement (including performance thereunder), as applicable.

~~31. Contemporaneously with the Closing, the Debtors are authorized to pay or cause to be paid the net proceeds of the Sale directly (i) first, to the DIP Agent (for the benefit of the DIP Lenders) and (ii) second, to the Prepetition Agent (for the benefit of the Prepetition Lenders) for application to the DIP Obligations and the Prepetition Obligations, respectively, in accordance with the priorities, terms and conditions set forth in the Final DIP Order; *provided* that Prepetition Obligations and Roll-Up shall remain subject to paragraph 12 of the Final DIP Order in accordance with the terms and conditions thereof; *provided*, further, that funds shall be retained to satisfy estate obligations contemplated to be paid under the Approved Budget, the Asset Purchase Agreement, and other Transaction Documents pursuant to a distribution reconciliation to be agreed upon by the Debtors, the Required DIP Lenders, the Required Prepetition Lenders, the DIP Agent, and the Prepetition Agent.[5]~~

31.     Following the indefeasible repayment in full in cash of all then outstanding DIP Obligations (including, without limitation, the Administration Fee and Closing Fee required under Section 2.09 of the DIP Credit Agreement and all fees, costs and expenses of the respective DIP Secured Parties that are then due and payable under the DIP Loan Documents) other than those DIP Obligations constituting the Roll-Up (collectively, the "**Non-Roll-Up DIP Obligations**"), the Debtors are hereby authorized and directed to promptly deposit all net proceeds of the Sale that would otherwise be available to repay the Roll-Up and Prepetition

---

[5]  ~~Capitalized terms used but not otherwise defined in this paragraph have the meanings ascribed to such terms in the~~ *~~Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Utilize Cash Collateral; (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to the Prepetition Secured Parties; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief~~* [Docket No. 393] (the "**Final DIP Order**").

Obligations pursuant to the DIP Documents and the Prepetition Loan Documents (such net proceeds, the "**Remaining Distributable Sale Proceeds**") into an interest-bearing escrow account (the "**Escrow Account**") administered by an escrow agent (the "**Escrow Agent**"), and subject to an escrow agreement, reasonably acceptable to the Committee, the Debtors, the DIP Agent and the Prepetition Agent (the "**Escrow Agreement**"). Except as set forth below, the Remaining Distributable Sale Proceeds and all interest thereon shall be released from the Escrow Account in accordance with the Escrow Agreement or by further order of this Court.

32.    Notwithstanding the foregoing, the Escrow Agent shall be authorized to release amounts of the Remaining Distributable Sale Proceeds as necessary for purposes of reimbursing the DIP Secured Parties and Prepetition Secured Parties for fees, costs and expenses accruing under and in accordance with the terms and conditions of the Final DIP Order and the DIP Documents.

33.    For the avoidance of doubt and notwithstanding anything herein to the contrary, (i) the deposit of the Remaining Distributable Sale Proceeds into the Escrow Account shall not constitute a repayment of any portion of the Roll-Up or the Prepetition Obligations, and the Roll-Up and Prepetition Obligations, respectively, shall continue to accrue non-default rate interest and any applicable fees as and when due under the DIP Documents and the Prepetition Loan Documents, as applicable, unless and solely to the extent such amounts are repaid and applied to such obligations in accordance with the DIP Documents (and if applicable, the Prepetition Loan Documents); (ii) the Debtors shall be authorized to reserve net sale proceeds necessary to fund reserves for the Carve-Out and other amounts provided for in the Asset Purchase Agreement, the Transaction Documents, or this Order prior to repaying the Non-Roll-Up DIP Obligations or depositing Remaining Distributable Sale Proceeds into the

Escrow Account as required herein, pursuant to a distribution reconciliation to be agreed upon among the Debtors, the Required DIP Lenders, the Required Prepetition Lenders, the DIP Agent, the Prepetition Agent and the Committee; (iii) the fees and costs of administering the Escrow Account shall not reduce the amount of the Roll-Up or Prepetition Obligations; and (iv) any dispute concerning the amount of the Non-Roll-Up DIP Obligations, the identity of the escrow agent or the terms of the Escrow Agreement shall be resolved by further order of this Court.[5]

34.    ~~32.~~ Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases (including any order dismissing these Chapter 11 Cases), (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.  To the extent of any such conflict or derogation, the terms of this Sale Order shall govern; *provided*, that, for the avoidance of doubt, the Final DIP Order shall govern the application of the net proceeds of the Sale to the DIP Obligations and the Prepetition Obligations (each as defined in the Final DIP Order).

35.    ~~33.~~ Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply.  Accordingly, the Debtors are authorized and empowered to close the Sale and other Transactions immediately upon entry of this Sale Order.

---

[5]   Capitalized terms used but not otherwise defined in these paragraphs 31 through 33 have the meanings ascribed to such terms in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Utilize Cash Collateral; (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to the Prepetition Secured Parties; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 393] (the "**Final DIP Order**").

32187713.8

## **EXHIBIT A**

**Asset Purchase Agreement**

"Intellectual Property Assignment Agreement"); (iii) a TSA duly executed by  Equinox; (iv) duly executed written instructions to the Deposit Holder directing the Deposit Holder to deliver the Deposit to Sellers; (v) a duly executed certificate from an officer of each Seller to the effect that each of the conditions specified in Section 7.1(a), Section 7.1(b) and Section 7.1(h) is satisfied; (vi) an ELA duly executed by each of the Sellers or their Affiliates party thereto; and (vii) a properly completed and duly executed IRS Form W-9 from each Seller.

(b)      At the Closing, Buyer will deliver to Sellers: (i) an amount in cash, by wire transfer of immediately available funds to an account designated in writing by the Sellers to Buyer no later than two (2) Business Days prior to the Closing Date, equal to (A) the Closing Cash Payment *less* (B) the Deposit *less* (C) the Adjustment Escrow Amount, (ii) the Bill of Sale and Assignment duly executed by Buyer; (iii) the Intellectual Property Assignment Agreement duly executed by Buyer or its designated Affiliate; (iv) the TSA duly executed by Buyer or its designated Affiliate; (v) the ELA duly executed by Buyer or its designated Affiliate; (vi) duly executed written instructions to the Deposit Holder directing the Deposit Holder to deliver the Deposit to Sellers; and (vii) a duly executed certificate from an officer of Buyer to the effect that each of the conditions specified in Section 7.2(a) and Section 7.2(b) are satisfied.

(c)      With respect to each Assumed Agreement, Buyer shall satisfy the Buyer Cure Costs and Sellers shall satisfy all Cure Costs, if any, that do not constitute Buyer Cure Costs.

Section 2.6      Treatment of Certain Contracts and Leases.

(a)      Schedule 2.6(a) sets forth a list or reference, as of the date hereof, of all executory Contracts and unexpired Leases related to the Business to which any Seller is a party and which sets forth the Sellers' good faith estimate of the Cure Costs associated with each such Contract and unexpired Lease set forth thereon as of the date hereof (the "Proposed Cure Costs").  Upon written request by Buyer, Sellers shall provide to Buyer as promptly as practicable an updated Schedule 2.6(a), setting forth, to the knowledge of Sellers, the Proposed Cure Costs as of the date of such request with respect to any Contracts or Leases specifically identified by Buyer in such written request.  Prior to and during the Designation Rights Period, Sellers shall not reject, terminate, amend, supplement, modify, waive any rights under, or create any adverse interest with respect to any Contract or Lease, or take any affirmative action not required thereby without Buyer's prior written consent unless (i) Buyer expressly designates such Contract or Lease an Excluded Agreement by written notice to Sellers, (ii) such Lease is deemed an Excluded Agreement as of the Final Lease Specification Time pursuant to Section 2.52.6(b)(i) or (iii) such Contract or Lease is deemed an Excluded Agreement at Closing pursuant to Section 2.52.6(b)(iii); provided, however, that Sellers shall not be obligated to renew or extend any expiring Contract or Lease during the Designation Rights Period unless Buyer agrees to designate any such renewed or extended Contract or Lease as an Assumed Agreement; provided, further, that Sellers shall provide Buyer with reasonable

(d)    Buyer will pay the Buyer Cure Costs associated with the Assumed Agreements and the Liabilities arising under the Reserved Agreements in accordance with Section ~~2.5~~2.6(c)(iii).  For the avoidance of doubt, Sellers shall be responsible for, and pay upon the effectiveness of the assumption and assignment thereof, all other Liabilities arising under any Contract or Lease attributable to, arising during, or related to any pre-Closing period.

(e)    During the Designation Rights Period, Sellers shall provide unrestricted access to all properties governed by any Reserved Agreement that is a Specified Lease to allow the Buyer, its Representatives, and the Covered Employees to operate the Business during the period from and after Closing through the effective date of the applicable Lease's assumption and assignment to Buyer or designation of such Lease as an Excluded Agreement. Buyer shall indemnify, defend, and hold harmless Sellers for any claims for out-of-pocket damages payable by them to third parties to the extent such damages are caused by Buyer's or Buyer's Representatives' operation of the Business at any Gym Location operated pursuant to a Reserved Agreement that is a Specified Lease during the Designation Rights Period.

(f)    Sellers shall take all actions reasonably required to assume and assign the Assumed Agreements to Buyer (including payment of the Cure Costs other than the Buyer Cure Costs), including to obtain an order of the Bankruptcy Court containing a finding that the proposed assumption and assignment of the Contracts or Leases to the Buyer satisfies all applicable requirements of section 365 of the Bankruptcy Code.

(g)    Buyer shall take all actions reasonably required for Sellers to assume and assign the Assumed Agreements to Buyer (including the payment of the Buyer Cure Costs), including taking all actions reasonably necessary to obtain an order of the Bankruptcy Court containing a finding that the proposed assumption and assignment of the Contracts or Leases to Buyers satisfies all applicable requirements of section 365 of the Bankruptcy Code.

(h)    Subject to and in accordance with Section 5.6, after the date of this Agreement, Sellers shall provide Buyer and its Representatives with reasonable access to all Contract and Lease counterparties requested by Buyer to discuss and negotiate Cure Costs and any other provisions.  Buyer and Sellers shall cooperate and coordinate in a reasonable manner in connection with the foregoing.

(i)    For as long as the assumption and assignment of any Assumed Agreement remains pending on or after the Closing Date, Sellers shall (i) continue to take all actions reasonably required to assume and assign such Assumed Agreement to Buyer, and (ii) continue to perform its obligations under the terms of such Assumed Agreement unless and until directed otherwise by Buyer.

(j)    From and after the Closing, if Sellers become aware of any Contract or Lease to which a Seller is a party not previously listed on Schedule 2.6(a), Sellers shall promptly notify Buyer and shall, as soon as reasonably practicable thereafter, if requested by Buyer after a reasonable review period, take all actions reasonably required for Sellers