**Exhibit A**

**Proposed Complaint**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BLINK HOLDINGS, INC., *et al.*,<br><br>　　　　　　　　　　　　Debtors.<br><br>―――――――――――――――――<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF BLINK HOLDINGS, INC., *et al.*, on behalf of the Debtors' estates,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>VARAGON CAPITAL PARTNERS, L.P. and VARAGON CAPITAL PARTNERS, AGENT, LLC, as administrative agent,<br><br>　　　　　　　　　　　　Defendants. | Chapter 11<br><br>Case No. 24-11686 (JKS)<br><br>(Jointly Administered)<br><br><br><br><br><br>Adv. Proc. No. __ - _____ |

**COMPLAINT**

The Official Committee of Unsecured Creditors (the "Committee") of Blink Holdings, Inc., *et al.*, above-captioned debtors and debtors-in-possession (collectively, the "Debtors," and the Debtors together with their non-debtor affiliates, the "Company"), derivatively on behalf of and as the representative of the Debtors' estates, by and through its undersigned counsel, as and for its complaint (the "Complaint") against Varagon Capital Partners, L.P. and Varagon Capital Partners, Agent, LLC (collectively, "Varagon" or the "Defendants"), in its capacity as administrative agent and lender under the Credit and Guaranty Agreement, dated November 8, 2018 (the "Prepetition Credit Agreement"), hereby alleges as follows:

**NATURE OF ACTION**[1]

1.  This adversary proceeding asserts challenges pursuant to the Final DIP Order (defined below). Specifically, the Committee seeks: (i) a declaratory judgment that the Debtors' Unencumbered Assets (defined below), including, but not limited to, unencumbered commercial tort claims and Avoidance Actions, are not subject to valid and enforceable mortgages, liens or security interests (the "Prepetition Liens"); and (ii) avoidance of any and all mortgages, liens, and security interests that purport to encumber such assets. The Committee seeks such relief in order to properly allocate the proceeds of the Debtors' Sale between assets that are encumbered by the Prepetition Liens and those that are not and whose value should be shared among all of the Debtors' general unsecured creditors *pro rata*.

**JURISDICTION**

2.  The district court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, as a core matter "arising under" title 11 of the United States Code (the "Bankruptcy Code"). This proceeding has been referred to this Court under 28 U.S.C. § 157(a) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

3.  This is a core proceeding under 28 U.S.C. § 157(b). Federal subject matter jurisdiction also exists under 28 U.S.C. § 1332(a) based on complete diversity of citizenship of the parties and because the amount in controversy, exclusive of interests and costs, exceeds $75,000, and under 28 U.S.C. § 1331.

---

[1] Capitalized terms used but not defined in this Complaint have the meanings ascribed to them in *The Official Committee of Unsecured Creditors' Motion for Leave, Standing and Authority to Commence, Prosecute, and Settle Certain Claims and Causes of Action on Behalf of the Debtors' Estates* [Main Case Docket No. [●]].

2

4. The Court may grant the declaratory relief requested in this Complaint under 28 U.S.C. § 2201(a), and such relief is properly sought by adversary proceeding under Bankruptcy Rules 7001(2) and (9).

5. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Committee confirms its consent to the entry of final orders or judgments by the United States Bankruptcy Court for the District of Delaware (the "Court") in connection with this adversary proceeding if it is determined that, absent the consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6. This Court has personal jurisdiction over Varagon pursuant to Bankruptcy Rule 7004. Varagon has maintained minimum contacts with the United States in connection with the claims asserted herein.

7. Venue in the District of Delaware is proper under 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under, in connection with, and relates to the jointly administered chapter 11 cases of *In re Blink Holdings, Inc., et al*.

8. The statutory and legal predicates for the relief sought herein are sections 105, 363, 502, 506, 510, 544, 550 and 551 of the Bankruptcy Code and Bankruptcy Rules 3007, 3012, and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PARTIES[2]

9. The Committee is the Official Committee of Unsecured Creditors of the Debtors, which was appointed on August 23, 2024 by the Office of the United States Trustee pursuant to

---

[2] The Committee reserves the right to name additional defendants, either through the amendment of this Complaint if standing is granted, and such defendants are related to the Defendant named herein, or through a subsequent motion for standing to bring claims against additional defendants.

3

section 1102(a)(1) and 1102(b)(1) of the Bankruptcy Code.[3]

10. Upon information and belief, Defendant Varagon is a corporation organized under the laws of the State of Maryland with its principal place of business in New York, NY.

11. Due to the large number of Debtors in these chapter 11 cases, *In re Blink Holdings, Inc., et al*, Case No. 24-11686 (the "Main Case"), a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the Debtors' counsel.

### STATEMENT OF FACTS

**I.    General Background**

12. The Debtors operate in the high-value, low-price fitness industry, with 101 gyms located throughout New York, New Jersey, Massachusetts, Texas, Illinois, and California.[4] The Debtors were founded by Equinox (defined below) in 2011.[5]

13. On August 12, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

14. On August 23, 2024, the Office of the United States Trustee formed the Committee.

---

[3]   Main Case Docket No. 109.

[4]   *Declaration of Steven Shenker, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Decl."), Main Case Docket No. 2, ¶¶ 10, 15.

[5]   *Id.*, ¶ 10, Ex. A.

4

**II.   Varagon Financing**

15. On November 8, 2018, the Debtors entered into a Credit and Guaranty Agreement (the "Prepetition Credit Agreement") with Varagon, as administrative agent, CIT Bank, N.A., as revolving agent, and various lenders (collectively, the "Prepetition Secured Parties").[6]

16. Pursuant to the Prepetition Credit Agreement, the Debtors received $145 million of senior secured financing (the "Prepetition Facility" and the obligations thereunder, the "Prepetition Secured Debt").[7] The Prepetition Secured Debt is secured by first priority liens on substantially all of the Debtors' assets subject to the exclusions and limitations below.[8]

17. The Prepetition Credit Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The revolver portion of the Prepetition Facility was retired pursuant to the ninth amendment.[9]

18. As of the Petition Date, the outstanding balance owed to the Prepetition Secured Parties under the Prepetition Credit Agreement, including the obligations associated with the Prepetition Protective Advances, is approximately $161.4 million, inclusive of accrued and unpaid interest.[10]

19. To secure the obligations under the Prepetition Credit Agreement, each of the Borrowers executed that certain Security and Pledge Agreement, dated as of November 8, 2018, in favor of Varagon as Agent, for the benefit of itself and the lenders (the "Security Agreement").

20. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6]   Main Case Docket No. 13, ¶ 6.
[7]   *Id.*
[8]   *Id.*, ¶ 7.
[9]   First Day Decl., ¶ 25.
[10]  *Id.* at ¶ 27.

████████████████████

21. ██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████

22. ██████████████████████████████████████
████████████████████████████████████████████

### III. The Excluded Assets

23. To secure the Debtors' obligation to repay the Prepetition Secured Debt, the Prepetition Secured Parties received liens on substantially all of the Debtors' assets, ████████ ████████████████

    a. ████████████████████████████████████████

    b. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████

    c. ████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████

---

[11] Security Agreement at § 1.1 ████████████

**IV.    Cash** ███████████████

24. As of the Petition Date, the Debtors had 16 bank accounts (collectively, the "<u>Bank Accounts</u>").[12] The Debtors granted liens on the Bank Accounts in favor of the Prepetition Secured Parties under the Security Agreement.[13]

25. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

26. As of the Petition Date, ███████████████████████████████████████████████

**V.    ███████████████████████**

27. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[12] *See Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Operating Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Affiliate Transactions; (II) Authorizing Debtors' Continued Use of Corporate Credit Cards and Granting Administrative Expenses Status to Postpetition Credit Card Obligations; (III) Waiving Certain U.S. Trustee Guidelines; and (IV) Granting Related Relief* [Docket No. 10] (the "<u>Cash Management Motion</u>"), ¶ 11.

[13] Security Agreement § 2.1(i).

[14] See *Schedules of Assets and Liabilities for Blink Holdings, Inc.* (Case No. 24-11686), Schedule AB Part 1 [Docket No. 199].

[15] Security Agreement § 2.1(viii).

██████████████████████████████████████████████████████

### VI. Avoidance Actions

28.     The Debtors, by operation of the Bankruptcy Code, have various causes of action under chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>," and together with the Excluded Assets, ████████████████████████████████████████████, the "<u>Unencumbered Assets</u>").  As the Avoidance Actions did not exist until the Petition Date, Varagon did not have a security interest in Avoidance Actions under the Security Agreement with respect to the obligations under the Prepetition Credit Agreement.

29.     Among other potential Avoidance Actions, the Debtors' statements of financial affairs list approximately $24.5 million in transfers made to non-insiders during the ninety days prior to the Petition Date and approximately $15.1 million in transfers made to insiders during the one year prior to the Petition Date, which includes $12 million of transfers to Equinox.

### VII. The Bankruptcy Cases

30.     On August 12, 2024, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing and Use Cash Collateral, (II) Granting Liens, Super-Priority Claims, and Adequate Protection (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "<u>DIP Motion</u>")[17] seeking authorization to enter into a $73.5 million DIP facility (the "<u>DIP Facility</u>"), consisting of a $52.5 million roll-up in prepetition obligations and $21 million in new money.

---

16      *See, e.g.*, N.Y. U.C.C. § 9-108(e)(1).

17      Docket No. 13.

31.     On September 18, 2024, the Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Utilize Cash Collateral; (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to the Prepetition Secured Parties; (IV) Modifying the Automatic Stay; and Granting Related Relief* (the "Final DIP Order"). In addition to stipulating to the amount of the Prepetition Secured Parties' claims, that the Prepetition Secured Parties have liens on all of the Debtors' assets, and that such liens are perfected, the Final DIP Order also stipulates that:

> [T]he Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance, preference, fraudulent conveyance or similar claims, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against any of the Prepetition Secured Parties, or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Loans, the Prepetition Obligations, the Prepetition Loan Parties, or the Prepetition Liens; and (H) the full amount of the Prepetition Obligations constitutes an allowed, secured claim within the meaning of sections 502 and 506 of the Bankruptcy Code.[18]

32.     The Final DIP Order also contains the following provision regarding effect of stipulations on third parties:

> The Debtors' Stipulations contained in paragraph E hereof and the Debtors' releases contained in paragraph 24 hereof shall be binding upon each other party-in-interest, including the Committee, except to the extent the Committee or such other party in interest that obtains standing, other than the Debtors (or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (defined below), the chapter 7 trustee in such Successor Case), first, commences within seventy-five (75) calendar days following the date of entry of the Interim Order.[19]

---

[18]     Final DIP Order ¶ E(i)(d).

[19]     *Id.* ¶ 12. Varagon consensually extended the Challenge Period (as defined in the Final DIP Order) through November 13, 2024.

9

33. The Committee and its professionals commenced an investigation of, among other things, the validity, enforceability and extent of the liens on and security interests in the Debtors' assets purportedly securing the Prepetition Secured Debt (defined below).

34. On the Petition Date, the Debtors filed the Sale Motion, seeking authority to sell substantially all of their assets to the prevailing bidder in an auction process (the "Sale").[20]

35. On September 24, 2024, the Debtors filed a notice of entry into a restructuring support agreement (as amended, the "RSA") with Varagon.[21]

36. Pursuant to the RSA, the Debtors and Varagon agreed, *inter alia*, to pursue a chapter 11 plan that (i) delivers all of the Sale proceeds to Varagon on account of its prepetition secured claim, and (ii) provides no recovery to the Debtors' general unsecured creditors.[22]

37. On October 16, 2024, the Debtors filed a combined disclosure statement and plan of liquidation that implements the RSA.[23]

38. If the proposed plan is confirmed, Varagon will receive all of the Sale proceeds, regardless of whether they were generated by assets that are unencumbered by their liens.[24] Holders of general unsecured claims will receive no recovery.[25]

39. On November 12, 2024, the Court approved the Sale.

40. On November 13, 2024, the Committee filed a motion in the Main Case seeking standing to assert the claims and causes of action asserted in this Complaint.

---

[20]  Docket No. 81.

[21]  Docket Nos. 404, 483.

[22]  Docket No. 483, Ex. A at 4.

[23]  Docket No. 502.

[24]  *Id.* at 20.

[25]  *Id.* at 21.

41. Pursuant to the Court's Order Confirming the Committee has leave, standing, and authority to commence, prosecute, and settlement certain claims and causes of action on behalf of the Debtors' estates, the Committee has authority and standing to pursue the claims and causes of action asserted in this Complaint.

## CAUSES OF ACTION

### COUNT I
**(Declaratory Judgment –Excluded Asset ▮▮▮▮▮▮▮▮▮▮)**

42. The Committee repeats and realleges each and every allegation contained in paragraphs 1 through 41 as if set forth fully herein.

43. This action presents an actual controversy within the Court's jurisdiction, so the Court may declare the rights and other legal relations of the parties in accordance with 28 U.S.C. § 2201(a).

44. A declaratory judgment will resolve the legal issues involved by finalizing the controversy and offering relief from uncertainty.

45. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

46. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

47. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

48. This Court is authorized to resolve this dispute under section 506 of the Bankruptcy Code and Bankruptcy Rule 7001(2) and (9).

49. The Committee is entitled to a declaration that the ▮▮▮▮▮▮▮▮ are unencumbered as excluded from the Prepetition Secured Parties' collateral package under the Security Agreement.

11

## COUNT II
**(Declaratory Judgment –Excluded Asset ███████)**

50.     The Committee repeats and realleges each and every allegation contained in paragraphs 1 through 49 as if set forth fully herein.

51.     This action presents an actual controversy within the Court's jurisdiction, so the Court may declare the rights and other legal relations of the parties in accordance with 28 U.S.C. § 2201(a).

52.     A declaratory judgment will resolve the legal issues involved by finalizing the controversy and offering relief from uncertainty.

53.     ███████████████████████████████████████████

54.     ████████████████████████████████

55.     █████████████████████████████████████████████████ ██████████████████████████

56.     This Court is authorized to resolve this dispute under section 506 of the Bankruptcy Code and Bankruptcy Rule 7001(2) and (9).

57.     The Committee is entitled to a declaration that the ███████ is unencumbered as excluded from the Prepetition Secured Parties' collateral package under the Security Agreement.

## COUNT III
**(Declaratory Judgment –Excluded Asset ██████████████████████)**

58.     The Committee repeats and realleges each and every allegation contained in paragraphs 1 through 57 as if set forth fully herein.

59.     This action presents an actual controversy within the Court's jurisdiction, so the Court may declare the rights and other legal relations of the parties in accordance with 28 U.S.C. § 2201(a).

60. A declaratory judgment will resolve the legal issues involved by finalizing the controversy and offering relief from uncertainty.

61. █████████████████████████████████████

62. █████████████████████████████████████

63. █████████████████████████████████████

64. This Court is authorized to resolve this dispute under section 506 of the Bankruptcy Code and Bankruptcy Rule 7001(2) and (9).

65. The Committee is entitled to a declaration that the ███████████████ ██████ are unencumbered as excluded from the Prepetition Secured Parties' collateral package under the Security Agreement.

## COUNT IV
### (Avoidance of Unperfected Security Interest in ███████████████ — 11 U.S.C. §§ 544, 550, and 551)

66. The Committee repeats and realleges each and every allegation contained in paragraphs 1 through 65 as if set forth fully herein.

67. As of the Petition Date, █████████████████████████████████████
████████████████████

---

[26] See *Schedules of Assets and Liabilities for Blink Holdings, Inc.* (Case No. 24-11686), Schedule AB Part 1 [Main Case Docket No. 199].

68. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████

69. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

70. ███████████████████████████████████████████

███████████████████████████████████████████

71.     The Committee is entitled, under section 544(b) of the Bankruptcy Code, to a judgment avoiding the Prepetition Liens against the ███████████████, and such assets should be recovered by the Debtors' estate pursuant to section 550(a) of the Bankruptcy Code and/or automatically preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

### COUNT V
**(Avoidance of Unperfected Security Interest in ███████████████████████ —
11 U.S.C. §§ 544, 550, and 551)**

72.     The Committee repeats and realleges each and every allegation contained in paragraphs 1 through 71 as if set forth fully herein.

73. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████

74. ███████████████████████████████████████████

███████████████████████████████

75. ███████████████████████████████████████████

76. ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████

77. The Committee is entitled, under section 544(b) of the Bankruptcy Code, to a judgment avoiding the Prepetition Liens against the ███████████████████████ and their proceeds, if any, and such assets should be recovered by the Debtors' estate pursuant to section 550(a) of the Bankruptcy Code and/or automatically preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

## COUNT VI
**(Declaratory Judgment – Avoidance Actions)**

78. The Committee repeats and realleges each and every allegation contained in paragraphs 1 through 77 as if set forth fully herein.

79. This action presents an actual controversy within the Court's jurisdiction, so the Court may declare the rights and other legal relations of the parties in accordance with 28 U.S.C. § 2201(a).

80. A declaratory judgment will resolve the legal issues involved by finalizing the controversy and offering relief from uncertainty.

81. An estate's rights and claims under chapter 5 of the Bankruptcy Code do not come into existence until a debtor files a petition for relief under the Bankruptcy Code.

82. A bankruptcy trustee (or other authorized party), on behalf of all creditors, has sole authority to pursue Avoidance Actions.

83. Accordingly, Avoidance Actions are not subject to Defendants' liens as of the

Petition Date.

84. This Court is authorized to resolve this dispute under section 506 of the Bankruptcy Code and Bankruptcy Rule 7001(2).

85. The Committee is entitled to a declaration that Varagon's prepetition liens do not attach to Avoidance Actions or their proceeds.

## COUNT VII
### (Objection to Claims)

86. The Committee repeats and realleges each and every allegation contained in paragraphs 1 through 85 as if set forth fully herein.

87. ███████████████████████████████████████████
███████████████████████████████████████████
████████████████████

88. In the Final DIP Order, the Debtors stipulated that the Prepetition Secured Parties have liens on, or security interests in, some or all of the Unencumbered Assets.

89. The Committee disputes these stipulations as they relate to the Unencumbered Assets.

90. The Committee further submits that none of the Debtors' various acknowledgments, waivers, and stipulations in the Final DIP Order should have any impact on any rights, claims, defenses, offsets, or causes of action that the Committee or any of the Debtors' estates may have against the Prepetition Secured Parties with respect to the Proposed Claims or otherwise unrelated to the Prepetition Credit Agreement and the obligations thereunder.

91. The Committee objects to the liens and claims of the Prepetition Secured Parties against the Debtors or their estates to the extent inconsistent with the foregoing.

92. Pursuant to the applicable provisions of the Bankruptcy Code, including without

limitation section 502 and Bankruptcy Rules 3007 and 7001, each of the claims of the Prepetition Secured Parties should be disallowed to the extent set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor against the Defendant as follows:

(a) Determining Defendants do not have liens on each of the Excluded Assets and Avoidance Actions;

(b) Determining that the purported liens on each of the ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ is avoidable pursuant to the applicable provisions of the Bankruptcy Code and applicable state law, including, without limitation, sections 544, 548, and 550 of the Bankruptcy Code;

(c) Ordering that pursuant to the applicable provisions of the Bankruptcy Code, including, without limitation, section 502(d) of the Bankruptcy Code, each claim asserted by the Defendant is disallowed;

(d) Granting Plaintiff costs of suit incurred herein, including, without limitation, attorneys' fees, costs, and other expenses incurred in this action; and

(e) Ordering such other and further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Date: November 13, 2024 | **MORRIS JAMES LLP**<br><br>*/s/ DRAFT*<br>Eric J. Monzo (DE Bar No. 5214)<br>Brya M. Keilson (DE Bar No. 4643)<br>Siena B. Cerra (DE Bar No. 7290)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 888-6800<br>Facsimile: (302) 571-1750<br>E-mail: emonzo@morrisjames.com<br>    bkeilson@morrisjames.com<br>    scerra@morrisjames.com<br><br>-and-<br><br>**KELLEY DRYE & WARREN LLP**<br>Eric R. Wilson, Esq. (admitted *pro hac vice*)<br>Kristin S. Elliott, Esq. (admitted *pro hac vice*)<br>Andres Barajas, Esq. (admitted *pro hac vice*)<br>3 World Trade Center<br>New York, NY 10007<br>Telephone: (212) 808-7800<br>Facsimile: (212) 808-7897<br>E-mail: ewilson@kelleydrye.com<br>    kelliott@kelleydrye.com<br>    abarajas@kelleydrye.com<br><br>*Counsel to the Official Committee of Unsecured Creditors* |