**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BLINK HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11686 (JKS)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 537** |

**DEBTORS' OBJECTION AND RESERVATION OF RIGHTS REGARDING**
**THE FIRST MONTHLY FEE APPLICATION OF KELLEY DRYE & WARREN LLP**
**FOR COMPENSATION FOR SERVICES RENDERED AND**
**REIMBURSEMENT OF EXPENSES**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this reservation of rights (this "**Reservation of Rights**") regarding the *First Monthly Fee Application of Kelley Drye & Warren LLP* ("**Kelley Drye**") *for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Lead Counsel to the Official Committee of Unsecured Creditors for the Period from August 26, 2024 Through and Including September 30, 2024* [Docket No. 537] (the "**KDW Fee Application**"). In support of this Reservation of Rights, the Debtors respectfully state as follows:

**BACKGROUND**

1. On August 12, 2024 (the "**Petition Date**"), each of the Debtors commenced a voluntary case (collectively, the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"). The Debtors are

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

1

authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On the Petition Date, the Debtors filed the *Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash Collateral; (II) Granting Liens, Super-Priority Claims, and Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 13] (the "**DIP Motion**").[2] The United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order on August 13, 2024 [Docket No. 63], approving the DIP Motion on an interim basis.

3. On August 23, 2024, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors [Docket No. 109] (the "**Committee**"). No other trustee or an examiner has been appointed in the Chapter 11 Cases.

4. On September 10, 2024, the Court convened a hearing (the "**Final Hearing**") to consider, among other things, the relief requested in the DIP Motion on a final basis. At the Final Hearing, counsel for each of the Debtors and the Committee presented arguments regarding the appropriate allocation of a Carve-Out to satisfy Professional Fees incurred in the Chapter 11 Cases. Given that there was not a consensus on the appropriate allocation of the Carve-Out, and the Court could not compel the DIP Lenders to fund an unlimited Carve-Out, the Court determined that it would require all estate professionals to share fees *pro rata,* but expressly cautioned all parties that it would review fees thoroughly on a final basis and would look at the aggregate number and the value added by the various professionals in the Chapter 11 Cases. *See* Final Hr'g Tr. 66:1-5. ***The Court also stated that it did not***

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion or the Final DIP Order (as defined below), as applicable.

*anticipate the Committee's fees to exceed approximately thirty (30) percent of the amounts provided for the Debtors' counsel and the Debtors' restructuring advisor.* Id. at 65:22-25.

5. On September 18, 2024, the Court entered a final order [Docket No. 393] (the "**Final DIP Order**"). The Final DIP Order was heavily negotiated by various parties, including the Debtors and the Committee. The Final DIP Order reiterated that the Approved Budget reflects an illustrative, non-binding allocation of Professional Fees consistent with the colloquy at the Final Hearing and the Court's statement on the record that it did not anticipate the Committee's fees to exceed approximately thirty (30) percent of the Debtors' professional fees. *See* Final DIP Order, FN 4.

6. On September 25, 2024, the Committee filed the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment of Kelley Drye & Warren LLP as Lead Counsel Effective as of August 26, 2024* [Docket No. 414] (the "**Retention Application**"). On October 15, 2024, the Court entered an order approving the Retention Application [Docket No. 490].

7. On October 31, 2024, Kelley Drye filed the KDW Fee Application, seeking $813,438.75 in compensation and $2,826.97 in reimbursement for expenses (the "**Requested Fees**"). By way of example, Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**"), as sole counsel to the Debtors, filed a fee application for the period from September 1, 2024 through September 30, 2024 seeking $895,014.50 in compensation and $2,957.06 in reimbursement for expenses (*see* Docket No. 504).[3] During that time, Young Conaway was working on, without limitation, the following: (i) negotiating and finalizing the

---

[3] The Debtors recognize that Kelley Drye's period for which compensation and reimbursement was sought included six (6) additional days, from August 26, 2024 through August 31, 2024. Adjusting for these additional days, Kelley Drye still seeks compensation in the amount of over 75% of Young Conaway's proposed compensation.

DIP financing order; (ii) assisting with the preparation of and finalizing over 120 schedules of assets and liabilities and statements of financial affairs for the Debtors; (iii) drafting, revising, and finalizing bidding procedures for the sale of the Debtors' assets; (iv) obtaining a stalking horse purchaser and responding to substantial diligence requests in connection with the Debtors' sale process, (v) negotiating, drafting, and finalizing a stalking horse asset purchase agreement and schedules; (vi) implementing the key employee incentive and retention plans; (vii) resolving objections from various utility providers; (viii) conducting an investigation into potential claims and causes of action on behalf of the Debtors' Restructuring Committee; (ix) responding to, reviewing comments from, and resolving issues raised by the Committee regarding the DIP financing, bidding procedures, stalking horse agreement/protections, and other pleadings; and (x) responding to various diligence requests made by the Committee. For the Committee's lead counsel to bill a similar amount to Young Conaway is unreasonable, improper, and contrary to the Court's direction on September 10th.

## **OBJECTION AND RESERVATION OF RIGHTS**

8. Since the retention of Kelley Drye as lead counsel to the Committee, Kelley Drye has disregarded the budget of the Chapter 11 Cases. As of the week ending November 14, 2024, while the Debtors' advisors have incurred roughly $4.5 million in fees and expenses, the Committee's advisors reported an estimate of $2.14 million in fees and expenses incurred (<u>nearly 50%</u> of the Debtors' professional fees).[4]

---

[4] The KDW Fee Application does not categorize what portion of Kelley Drye's Requested Fees related to fees and expenses incurred in connection with the investigation, initiation, assertion, prosecution, or commencement of the Challenge that the Committee has been undertaking, as demonstrated by the Committee's filing of a motion seeking standing to pursue litigation against the DIP Agent, Prepetition Agent, DIP Secured Parties and Prepetition Secured Parties (*see* Docket No. 612) (the "**Standing Motion**"). The Final DIP Order states in paragraph 27 that no more than $100,000 of the DIP Facility, the DIP Collateral, or the Prepetition Collateral, in the aggregate may be used by the Committee to investigate actions such as those contemplated in the Standing Motion, and none of the proceeds may be used to initiate, assert, prosecute, or commence such actions. The
*(cont'd)*

9. While the Debtors' advisors have exercised their best efforts to conduct the Chapter 11 Cases within the available professional fee budget, at no point since the Court entered the Final DIP Order has Kelley Drye shown any effort to operate within the Approved Budget, and the fees and expenses reported to date reflect no regard for the Court's admonition at the Final Hearing with respect to an appropriate allocation of fees between Committee and Debtor advisors, as reflected in the Final DIP Order. Kelley Drye's Requested Fees are grossly disproportionate to the value provided to the Chapter 11 Cases and are inconsistent with the Approved Budget.

10. In light of the foregoing and the significant fees that Kelley Drye continues to accrue, the Debtors reserve all rights to object to entry of any order approving any of Kelley Drye's fee applications that seek payments that are (i) disproportionate to the value Kelley Drye has provided; (ii) inconsistent with Approved Budget; or (iii) in excess of the allocation guidance that the Court provided at the Final Hearing and in the Final DIP Order.

*[Remainder of Page Intentionally Left Blank]*

---

*(cont'd from previous page)*
Debtors reserve their rights to object to Kelley Drye's efforts to obtain payment for any fees and expenses in excess of the limitations that were agreed to in the Final DIP Order in this regard, despite Kelley Drye's failure to categorize the same in the KDW Fee Application.

**CONCLUSION**

WHEREFORE, the Debtors request that the Court reserve the rights of the Debtors to object to any fee application of Kelley Drye and seek an appropriate allocation of fees and expenses paid or to be paid to Kelley Drye, notwithstanding any interim compensation to be paid, and grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>November 21, 2024 | **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>*/s/ Michael R. Nestor*<br>Michael R. Nestor (No. 3526)<br>Sean T. Greecher (No. 4484)<br>Allison S. Mielke (No. 5934)<br>Timothy R. Powell (No. 6894)<br>Rebecca L. Lamb (No. 7223)<br>Benjamin C. Carver (No. 7176)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: mnestor@ycst.com<br>　　　　sgreecher@ycst.com<br>　　　　amielke@ycst.com<br>　　　　tpowell@ycst.com<br>　　　　rlamb@ycst.com<br>　　　　bcarver@ycst.com<br><br>*Counsel to the Debtors and Debtors in Possession* |