**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
| | <u>Hearing Date</u>:<br>**December 17, 2024 at 11:00 a.m. (ET)** |
| | <u>Objection Deadline</u>:<br>**December 10, 2024 at 4:00 p.m. (ET)** |

**DEBTORS' THIRD OMNIBUS MOTION FOR AN ORDER (I) AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY; (II) AUTHORIZING ABANDONMENT OF ANY REMAINING PROPERTY LOCATED AT THE PREMISES, IN EACH CASE EFFECTIVE AS OF <u>THE REJECTION DATE; AND (III) GRANTING RELATED RELIEF</u>**

---

**EACH LESSOR OR LESSEE RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND LEASE IN THE SCHEDULE ATTACHED TO THE PROPOSED ORDER AS <u>SCHEDULE 1</u>**

---

The above-captioned affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (this "**Motion**") for the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**"), (i) authorizing the Debtors to reject, effective as of the Rejection Date (as defined below), certain unexpired leases, including any supplements, schedules, amendments, modifications, guarantees, or other agreements in connection therewith to which any Debtor is a party, which the Debtors have determined, in their business judgment, should be rejected; (ii) authorizing the Debtors to abandon property remaining

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

at any location covered by an unexpired lease that the Court authorizes the Debtors to reject pursuant to this Motion; and (iii) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Steven Shenker in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] (the "**First Day Declaration**").[2]  In further support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors confirm their consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and legal predicates for the relief requested herein are sections 105(a), 365(a), and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**") and rules 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[2]    Capitalized terms used but not defined herein shall have the meanings set forth in the First Day Declaration or the Sale Order (as defined below), as applicable.

## BACKGROUND

### I.      General Background

4.      On August 12, 2024 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On August 23, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed, pursuant to section 1102 of the Bankruptcy Code, an official committee of unsecured creditors [Docket No. 109] (the "**Committee**").  No request has been made for the appointment of a trustee or an examiner.

6.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

### II.      Sale to Pinnacle US Holdings LLC

7.      On August 16, 2024, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale or All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (D) Granting Related Relief; and (II)(A) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [Docket No. 81].

8.     On November 13, 2024, the Court entered the *Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 611] (the "**Sale Order**"), approving the sale (the "**Sale**") of Acquired Assets to Pinnacle US Holdings LLC (the "**Buyer**") in accordance with the terms of the Asset Purchase Agreement appended to the Sale Order.  The Sale is targeting to close on November 29, 2024.

## III.     Rejection of the Unexpired Leases

### a.  Lease Agreements

9.     As set forth in the First Day Declaration, the Debtors are a leading owner and operator of fitness clubs in the United States.  As of the Petition Date, the Debtors operated 94 leased stores in seven states, which are located in both urban and suburban areas.  Pursuant to this Motion, the Debtors are seeking to reject five unexpired leases of nonresidential real property, which the Buyer has informed the Debtors will not be Acquired Assets and which, after the Rejection Date (as defined below), will simply represent an administrative burden to the estates (collectively, the "**Premises**").  Accordingly, the Debtors have determined in their business judgment that it is in their best interests to reject the unexpired leases of nonresidential real property relating to the Premises (including any amendments, side letters, modifications, schedules, or supplements thereto, or guarantees, settlements, or other agreements in connection therewith to which any Debtor is a party, the "**Lease Agreements**" and, together with the Sublease Agreement (as defined below), the "**Rejected Agreements**"), effective as of November 26, 2024 (the "**Rejection Date**"), thereby avoiding the potential incurrence of additional expense associated with the Premises, which, as of the closing of the Sale, are no longer generating revenue or

otherwise providing value to the Debtors and their estates.  A list of the Rejected Agreements is attached as Schedule 1 to the Proposed Order.

10.    The Debtors informed the counterparties to the Rejected Agreements (the "**Landlords**") of their intent to unequivocally surrender the Premises to the Landlords as of the Rejection Date, and will, on or before the Rejection Date, turn over the Premises to the Landlords, including, as applicable, turning over to the Landlords or their representative any keys to the Premises in the Debtors' possession and/or directing the Landlords to terminate all badge or other electronic access privileges of the Debtors, their employees, and the Sublessees (as defined below).

*b.  Sublease Agreement*

11.    Prior to the Petition Date, the Debtors executed an agreement (including any amendments, side letters, modifications, schedules, or supplements thereto, or guarantees, settlements, or other agreements in connection therewith to which any Debtor is a party, the "**Sublease Agreement**") to sublet portions of the Premises to another party.  The Debtors have advised the non-Debtor counterparty to the Sublease Agreement (the "**Sublessee**") that the Debtors intend to reject the Lease Agreements, and, as a consequence, the Sublease Agreement.  Absent authority under a Lease Agreement to possess any of the Premises, the Debtors could not maintain any Sublease Agreement with the Sublessee.  Accordingly, the Debtors have asked the Sublessee to surrender possession of any Premises that they occupy to the Debtors, including, as applicable, turning over to the Debtors any keys to the Premises in the Sublessee's possession pursuant to the Sublease Agreements.

**IV.    Abandonment of Any Remaining Property at the Premises**

12.    As part of the process of vacating the Premises that are the subject of the Rejected Agreements, there may remain certain personal property at the Premises (collectively,

the "**Remaining Property**").  The Debtors have determined that it would be difficult or expensive to remove and/or store the Remaining Property, relative to its value, such that the economic benefits of removing and/or storing some or all of the Remaining Property would be exceeded by the attendant costs thereof.  The Debtors intend to abandon the Remaining Property when they abandon and surrender the Premises on the Rejection Date, and, accordingly, the Debtors request the Court's approval to do so effective as of the Rejection Date.

## RELIEF REQUESTED

13.    By this Motion, the Debtors request entry of the Proposed Order (i) authorizing the Debtors to reject, effective as of the Rejection Date, the Rejected Agreements, which the Debtors have determined, in their business judgment, should be rejected; (ii) authorizing the Debtors to abandon property remaining at any location covered by any Rejected Agreement; and (iii) granting related relief.

## BASIS FOR RELIEF REQUESTED

### I.    Rejection of the Rejected Agreements Is Authorized by Section 365(a) of the Bankruptcy Code

14.    Section 365(a) of the Bankruptcy Code provides that a trustee or debtor in possession, "subject to the court's approval may . . . reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992).  "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed."  *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (quoting *Phoenix Exploration, Inc. v. Yaquinto (In re Murexco Petroleum, Inc.)*, 15 F.3d 60, 62 (5th Cir. 1994)).

15.    The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the trustee.  *See NLRB v. Bildisco & Bildisco (In re*

*Bildisco),* 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *Delightful Music Ltd. v. Taylor* (*In re Taylor*), 913 F.2d 102, 107 (3d Cir. 1990); *see also Computer Sales Int'l, Inc. v. Fed. Mogul* (*In re Fed. Mogul Glob., Inc.*), 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Glob. Holdings*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).   The business judgment standard mandates that a court approve a trustee's business decision unless the decision is the product of bad faith, whim, or caprice.  *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Fed. Mogul Glob., Inc.*, 293 B.R. at 126 (court should approve a debtor's decision to reject a contract unless the decision is the product of bad faith or a gross abuse of discretion); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *Summit Land Co. v. Allen* (*In re Summit Land Co.*), 13 B.R. 310, 315 (Bankr. D. Utah 1981) ("[C]ourt approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course.").

16.    Rejection of an executory contract or unexpired lease is appropriate where rejection of the contract or lease would benefit the estate.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989).  The standard for rejection is satisfied when a trustee or debtor has made a business determination that rejection will benefit the estate.  *See Com. Fin., Ltd. v. Hawaii Dimensions, Inc.* (*In re Hawaii Dimensions, Inc.*), 47 B.R. 425, 427 (D. Haw. 1985) ("Under the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate.").  Accordingly, if the trustee's or debtor's business judgment has been reasonably exercised, a court should approve the rejection of an executory contract or an unexpired lease.  *See, e.g.*, *Bildisco & Bildisco*, 465 U.S. at 523; *In re Fed. Mogul Glob., Inc.*, 293 B.R. at 126.

17.     A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses.  *See Bildisco & Bildisco*, 465 U.S. at 523 (stating that rejection relates back to the petition date); *Thinking Machs. v. Mellon Fin. Servs. Corp.* (*In re Thinking Machs. Corp.*), 67 F.3d 1021, 1028 (1st Cir. 1995) ("In the section 365 context . . . bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."); *Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC* (*In re CCI Wireless, LLC*), 297 B.R. 133, 140 (D. Col. 2003) (holding that a bankruptcy court "has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *In re Amber's Stores*, 193 B.R. 819, 827 (N.D. Tex. 1996); *Constant Ltd. P'ship v. Jamesway Corp.* (*In re Jamesway Corp.*), 179 B.R. 33, 37–38 (S.D.N.Y. 1995) (affirming bankruptcy court's retroactive approval of lease rejection).

18.     Courts in this jurisdiction have previously considered the question of retroactive rejection of unexpired leases.  *See In re Namco Cybertainment, Inc.*, Case No. 98-00173 (PJW) (Bankr. D. Del. Feb. 6, 1998).  In *Namco*, the court permitted retroactive rejection on the conditions that (i) the property (and the keys thereto) subject to a lease were surrendered with an unequivocal statement of abandonment to the landlord or lessor; (ii) the motion was filed and served on the landlord or lessor; (iii) the official committee consented to the relief requested in the motion; and (iv) the debtor acknowledged that it would not have the right to withdraw the motion prior to the hearing.

19.     Here, the Debtors seek to reject the Rejected Agreements, pursuant to section 365(a) of the Bankruptcy Code, to avoid the incurrence of any additional, unnecessary expenses related thereto following the closing of the Sale.  As of the Rejection Date, the Debtors

will no longer occupy the Premises and therefore will not derive any meaningful benefit from the Rejected Agreements.  The Debtors submit that there is no basis to retain the Rejected Agreements after the Rejection Date, and that rejecting the Rejected Agreements would provide a benefit to the Debtors and their estates by removing any ongoing costs or obligations in connection therewith.

20.     The Debtors therefore submit that the Court should authorize the rejection of the Rejected Agreements effective as of the Rejection Date because the *Namco* factors are satisfied.  As set forth above, as of the date hereof, the Debtors have (i) informed the Landlords of their intent to unequivocally surrender the Premises to the Landlords as of the Rejection Date and (ii) will turn over the Premises by or on the Rejection Date. The Debtors submit that these actions, together with the filing and service of this Motion via overnight delivery, demonstrate the Debtors' unequivocal intent to abandon the Premises.  The Debtors have also consulted with counsel to the Prepetition Agent and DIP Agent and counsel to the Committee, who are supportive of the relief requested herein.  The Debtors hereby acknowledge that this Motion will not be withdrawn prior to any hearing on this Motion.

21.     Therefore, as it is in the Debtors' and their estates' interests to eliminate the potential incurrence of administrative expenses, and to avoid the potential accrual of any further obligations under the Rejected Agreements, the Debtors respectfully submit that the retroactive rejection of the Rejected Agreements effective as of the Rejection Date is appropriate.

## II.    Abandonment of Any Remaining Property Located at the Premises Is Authorized by Section 554(a) of the Bankruptcy Code

22.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); *see also Hanover Ins. Co. v. Tyco Indus., Inc.,* 500 F.2d 654, 657 (3d Cir. 1974) ("[A trustee] may abandon his claim

to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim."); *In re Contract Research Sols., Inc.,* Case No. 12-11004, 2013 WL 1910286, at *4 (Bankr. D. Del. May 1, 2013) ("[A debtor] need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon."). The right to abandon property is virtually unfettered, unless (i) abandonment of the property will contravene laws designed to protect public health and safety, or (ii) the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 501 (1986). Neither of these limitations is relevant under the instant facts.

23.     The Debtors submit that any Remaining Property that will be left at the Premises after the Rejection Date is either of inconsequential value to the Debtors' estates or burdensome to the Debtors' estates to remove. The Debtors will vacate the Premises prior to the Rejection Date and remove certain property at that time. Among other things, the Debtors believe the costs of retrieving, marketing, and reselling the Remaining Property—to the extent there is any—would exceed any recovery that the Debtors and their estates could reasonably obtain in exchange for such property.

24.     Accordingly, the Debtors have determined, in the exercise of their sound business judgment, that abandonment of any interest the Debtors have in the Remaining Property at the Premises as of the Rejection Date is in the best interest of the Debtors, their estates, and their creditors.

**<u>WAIVER OF STAY PURSUANT TO BANKRUPTCY RULE 6004(h)</u>**

25.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As provided herein, and to implement the foregoing successfully, the Debtors request that the Proposed Order include

32397237.4

10

a finding that the Debtors have established cause to exclude such relief from the fourteen (14)-day stay period under Bankruptcy Rule 6004(h).

26.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Order.

## **RESERVATION OF RIGHTS**

27.     Nothing in the Proposed Order or this Motion:  (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

## **NOTICE**

28.     Notice of this Motion has been or will be provided to:    (i) U.S. Trustee; (ii) counsel to the Prepetition Agent and DIP Agent; (iii) counsel to the Committee; (iv) the non-debtor counterparties to the Rejected Agreements and their counsel, if known; (v) any party (if known) that has an interest in the Remaining Party; and (vi) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order granting the relief

requested herein and such other and further relief as is just and proper.

Dated: Wilmington, Delaware          **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
      November 26, 2024

*/s/ Rebecca L. Lamb*
Michael R. Nestor (No. 3526)
Sean T. Greecher (No. 4484)
Allison S. Mielke (No. 5934)
Timothy R. Powell (No. 6894)
Rebecca L. Lamb (No. 7223)
Benjamin C. Carver (No. 7176)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email: mnestor@ycst.com
       sgreecher@ycst.com
       amielke@ycst.com
       tpowell@ycst.com
       rlamb@ycst.com
       bcarver@ycst.com

*Counsel to the Debtors and Debtors in Possession*