# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BLINK HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11686 (JKS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: January 6, 2025 at 4:00 p.m. (ET)** |

**SUMMARY OF SECOND MONTHLY FEE APPLICATION OF KELLEY DRYE & WARREN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS LEAD COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM OCTOBER 1, 2024 THROUGH AND INCLUDING OCTOBER 31, 2024**

| Name of applicant: | Kelley Drye & Warren LLP |
|---|---|
| Authorized to provide professional services to: | The Official Committee of Unsecured Creditors |
| Date of retention: | Effective as of August 26, 2024[1] |
| Period for which compensation and reimbursement is sought: | October 1, 2024 through and including October 31, 2024 |
| Amount of compensation sought as actual, reasonable, and necessary: | $689,666.50<br>($37,769.50)[2]<br>$651,897.00 |
| Less 20% holdback per procedures for interim compensation and reimbursement of expenses: | $130,379.40 |
| Total fees sought at this time: | $521,517.60 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $8,934.28 |

This is a(n):   X  Monthly      __ Interim      __ Final Application

This is a monthly application. This is Kelley Drye & Warren LLP's second monthly application filed in these cases.

---

[1]  Docket No. 490.

[2]  Amounts related to litigation against Varagon that are excluded from the carve-out under paragraph 27 of the Final DIP Order.

This application includes 28.0 hours, with a value of $18,592.50, incurred to prepare the firm's first monthly fee application.[3]

## PRIOR MONTHLY APPLICATION HISTORY

| Date Filed and Docket No. | Period Covered | Requested | | Allowed (Pending) | | 20% Holdback |
|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | |
| October 31, 2024 Docket No. 537 | August 26, 2024 – September 30, 2024 | $813,438.75 | $2,826.97 | $TBD | TBD | $162,687.75 |
| Totals: | | **$813,438.75** | **$2,826.97** | **TBD** | **TBD** | **$162,687.75** |

## PRIOR INTERIM APPLICATION HISTORY

No prior interim fee applications have been filed.

---

[3] If compensation is requested for time spent to prepare this application, it will be reflected in a subsequent monthly application.

2

## COMPENSATION BY TIMEKEEPER

| Name of Professional | Position | Law School Grad Year | Hourly Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Eric R. Wilson | Partner | 1997 | $1,170.00 | 86.1 | $100,737.00 |
| David H. Evans | Partner | 1995 | $1,040.00 | 2.5 | $2,600.00 |
| Kristin S. Elliott | Partner | 2002 | $990.00 | 228.0 | $225,720.00 |
| Wendy A. Clarke | Partner | 2009 | $945.00 | 0.6 | $567.00 |
| William S. Gyves | Partner | 1991 | $935.00 | 104.8 | $97,988.00 |
| John Ramirez | Special Counsel | 2008 | $975.00 | 27.1 | $26,422.50 |
| Richard Gage | Special Counsel | 2013 | $975.00 | 44.2 | $43,095.00 |
| Randall L. Morrison, Jr. | Special Counsel | 2014 | $895.00 | 2.7 | $2,416.50 |
| Philip A. Weintraub | Senior Associate | 2005 | $835.00 | 23.7 | $19,789.50 |
| Andres Barajas | Senior Associate | 2017 | $775.00 | 150.3 | $116,482.50 |
| Stephanie A. Carroll | Senior Associate | 2018 | $775.00 | 18.4 | $14,260.00 |
| Connie Y. Choe | Associate | 2020 | $690.00 | 26.2 | $18,078.00 |
| John A. Churchill, Jr. | Associate | 2021 | $620.00 | 30.4 | $18,848.00 |
| Gina C. Karnick | Paralegal | N/A | $375.00 | 7.1 | $2,662.50 |
| | | | **Total:** | 752.1 | **$689,666.50** **($37,769.50)**[4] **$651,897.00** |
| | | | **Blended Rate:** | | **$866.77** |

---

[4] Amounts related to litigation against Varagon that are excluded from the carve-out under paragraph 27 of the Final DIP Order.

## COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Case Administration | 12.9 | $10,871.50 |
| Pleadings Review | 2.1 | $1,032.50 |
| Retention Matters | 1.0 | $743.50 |
| Fee Matters | 28.0 | $18,592.50 |
| Financing | 3.5 | $2,595.00 |
| Asset Analysis and Disposition | 450.8 | $414,841.50 |
| Executory Contracts and Leases | 3.1 | $2,629.00 |
| Claims Administration | 1.8 | $1,499.00 |
| Plan and Disclosure Statement | 39.3 | $37,709.00 |
| Committee and Creditor Communications | 39.4 | $38,277.00 |
| Business Operations | 2.0 | $2,058.50 |
| Court Hearings | 3.7 | $3,779.00 |
| Debtor Communications | 17.9 | $18,212.00 |
| General Investigation | 96.9 | $90,233.50 |
| General Litigation | 49.7 | $46,593.00 |
| **Total:** | **752.1** | $689,666.50<br>**($37,769.50)**[5]<br>**$651,897.00** |

## EXPENSE SUMMARY

| Expense Category | Amount |
|---|---|
| Color Duplication | $0.25 |
| Duplication | $1,823.20 |
| Binding | $52.40 |
| Cab Service | $497.02 |
| Parking | $22.35 |
| Meals | $198.79 |
| Westlaw Research | $2,562.61 |
| Lexis Research | $569.66 |
| Transcription | $3,208.00 |
| **Total:** | **$8,934.28** |

---

[5] Amounts related to challenge litigation against Varagon that are excluded from the carve-out under paragraph 27 of the Final DIP Order.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BLINK HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11686 (JKS)<br><br>(Jointly Administered)<br><br>Objection Deadline: January 6, 2025 at 4:00 pm (ET) |

**SECOND MONTHLY FEE APPLICATION OF
KELLEY DRYE & WARREN LLP FOR COMPENSATION
FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES INCURRED AS LEAD COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM OCTOBER 1, 2024 THROUGH AND INCLUDING OCTOBER 31, 2024**

Pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and in accordance with the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* (the "Interim Compensation Order"),[1] Kelley Drye & Warren LLP ("Kelley Drye") hereby submits its second monthly application (the "Second Application") for compensation for professional services rendered and reimbursement of expenses incurred as lead counsel to the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), for the period from October 1, 2024 through and including October 31, 2024 (the "Application Period"). In support of the Second Application, Kelley Drye respectfully states as follows:

---

[1] Docket No. 162.

17091003/1

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction to consider and decide this Second Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief requested herein are: (i) sections 330 and 331 of the Bankruptcy Code; (ii) Bankruptcy Rule 2016; and (iii) Local Rule 2016-2.

**BACKGROUND**

3. On August 12, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. Since the Petition Date, the Debtors have remained in possession of their assets and continue to operate and manage their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On August 23, 2024, the U.S. Trustee appointed a five-member Committee consisting of: (i) Johnson Health Tech NA, Inc.; (ii) Motionsoft, Inc.; (iii) FW IL-Riverside/Rivers Edge, LLC; (iv) 96 N. 10th Street Holdings LLC; and (v) GS FIT ILL-1 LLC.[2] The Committee selected Kelley Drye as its lead counsel, Morris James LLP ("Morris James") as its Delaware co-counsel, and Dundon Advisers LLC ("Dundon") as its financial advisor.

5. On August 20, 2024, the Debtors filed their *Motion for Entry of an Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and (II) Granting Related Relief* (the "Interim Compensation Motion"),[3] and on September 5, 2024, the Court entered the Interim Compensation Order.[4]

---

[2] Docket No. 109. On November 4, 2024, Motionsoft, Inc. resigned from the Committee. Docket No. 571.

[3] Docket No. 93.

[4] Docket No. 162.

6.      Pursuant to the terms of the Interim Compensation Order, if no objection to a monthly fee application is served within 21 days of filing the application, the respective professional may be paid eighty percent (80%) of the fees and one hundred percent (100%) of the expenses set forth in the applicable monthly fee application.

7.      On September 25, 2024, the Committee filed the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment of Kelley Drye & Warren LLP as Lead Counsel Effective as of August 26, 2024* (the "Retention Application").[5]  On October 15, 2024, the Court entered an order approving the Retention Application, effective as of August 26, 2024.[6]

8.      On October 31, 2024, Kelley Drye filed the *First Monthly Fee Application for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Lead Counsel to the Official Committee of Unsecured Creditors for the Period from August 26, 2024 Through and Including September 30, 2024* (the "First Application").[7]

9.      On November 21, 2024, (i) Varagon Capital Partners Agent, LLC ("Varagon"), the Prepetition Agent and the DIP Agent (each as defined in the final DIP financing order (the "Final DIP Order"),[8] filed a reservation of rights to the First Application,[9]  and (ii) the Debtors filed an objection and reservation of rights to the First Application.[10]  Neither of those pleadings opposed the interim payment of fees and expenses requested in the First Application.

---

[5]  Docket No. 414.

[6]  Docket No. 490.

[7]  Docket No. 537.

[8]  Docket No. 393.  Capitalized terms used but not defined in this Second Application have the meanings ascribed to them in the Final DIP Order.

[9]  Docket No. 630.

[10]  Docket No. 631.

10. On November 25, 2024, Kelley Drye filed the *Certification of Counsel Regarding First Monthly Fee Application for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Lead Counsel to the Official Committee of Unsecured Creditors for the Period from August 26, 2024 Through and Including September 30, 2024*.[11] Kelley Drye has received payment of 80% of the fees and 100% of the expenses requested in the First Application.

## SUMMARY OF SERVICES RENDERED

11. Kelley Drye rendered various legal services to the Committee during the Application Period, including:

    a. Analysis of the Debtors' proposal to sell substantially all of their assets, including estate causes of action against insiders, pursuant to an auction process, including analysis of the asset purchase agreement, form of transition services agreement between Equinox and the purchaser, proposed form of sale order, and competing bids received for the Debtors' assets;

    b. Preparation of a comprehensive objection to the Debtors' proposed sale, including legal research, document discovery and depositions;

    c. Participation at a three-day auction;

    d. Investigation of estate causes of action against Equinox and other insiders;

    e. Analysis of the Debtors' disclosure statement and plan;

    f. Preparation of an objection to the Debtors' motion to conditionally approve the disclosure statement;

    g. Investigation of Varagon's prepetition liens and claims against the Debtors and preparation of a report to the Committee regarding same;

---

[11] Docket No. 640.

   h. Preparation of a motion for standing and a draft complaint against Varagon to preserve certain Challenges under the Final DIP Order;

   i. Preparation for the Court's hearing to approve the sale;

   j. Preparation of the First Application; and

   k. Ongoing communications with the Committee regarding all outstanding issues in these chapter 11 cases.

## SUMMARY OF SERVICES BY PROJECT

12. To assist the Court in its review of the fees requested in this Second Application, Kelley Drye has divided its time entries into the project categories set forth below. Attached as **Exhibit A** to this Second Application are detailed invoices, by project category, of all services performed by Kelley Drye with respect to these chapter 11 cases during the Application Period.

**A.** **Case Administration** (Hours: 12.9 - Fees: $10,871.50)

13. This category represents time spent by Kelley Drye addressing general administrative matters. During the Application Period, Kelley Drye maintained a working task/project management tracker as well as a critical dates chart to manage all case workstreams and deadlines. Kelley Drye also conferred regularly with Morris James and Dundon regarding general case administration matters and held regular working group calls to manage progress on open workstreams.

**B.** **Pleadings Review** (Hours: 2.1 - Fees: $1,032.50)

14. This category represents time spent by Kelley Drye monitoring the docket and conducting an initial review of pleadings filed in these cases, including notices, motions, objections, certifications of counsel, and proposed orders.

5

C. **<u>Retention Matters</u>** (Hours: 1.0 - Fees: $743.50)

15. This category represents time spent by Kelley Drye on matters regarding the retention of estate professionals. During the Application Period, Kelley Drye reviewed a supplemental declaration filed by the Debtors' professionals, coordinated with Morris James to prepare and file certifications of counsel for the Committee's retention applications and reviewed the orders approving those applications.

D. **<u>Fee Matters</u>** (Hours: 28.0 Fees - $18,592.50)

16. This category represents time spent by Kelley Drye to (i) review the Debtors' professionals' fee applications, (ii) prepare the First Application; (iii) review the other Committee professionals' first monthly fee applications, and (iv) review and revise firm invoices for reasonableness and compliance with confidentiality obligations.

E. **<u>Financing</u>** (Hours: 3.5 - Fees: $2,595.00)

17. This category represents time spent by Kelley Drye to prepare and deliver weekly fee estimates required under the Final DIP Order. Kelley Drye also reviewed the Debtors' weekly fee estimates and requests for reimbursement of fees and expenses submitted by Varagon.

F. **<u>Asset Analysis and Disposition</u>** (Hours: 450.8 - Fees: $414,841.00)

18. This category represents time spent by Kelley Drye in connection with the sale of the Debtors' NY and NJ business to Pinnacle US Holdings LLC d/b/a PureGym (the "<u>Stalking Horse</u>") pursuant to an auction (the "<u>Sale</u>").

19. During the Application Period, Kelley Drye analyzed numerous issues related to the Sale, including (i) the proposed sale and *de facto* release of insider claims, (ii) the extent to which a transition services agreement with Equinox was necessary to transition the Debtors' business to a buyer, (iii) whether the entry into a transition services agreement (a "<u>TSA</u>") with Equinox was necessary to effectuate a going concern Sale, (iv) the manner in which the TSA

6

was negotiated, (v) competing bids received from Supreme Orange LLC ("Supreme"), and (vi) regulatory/antitrust risks attendant to the competing bids received for the Debtors' assets.

20. Kelley Drye conducted substantial fact discovery and legal research regarding the foregoing issues. During the Application Period, Kelley Drye (i) analyzed documents produced by the Debtors, Equinox and Varagon regarding the TSA and assets to be sold in the Sale, (ii) drafted Rule 30(b)(6) discovery requests, (iii) negotiated discovery issues with the Debtors, Equinox and Varagon, (iii) prepared for and deposed the Debtors' investment banker, (iv) prepared for a deposition of the Debtors' chief restructuring officer that occurred on November 1, and (v) prepared for a deposition of Equinox's financial advisor that occurred on November 4.

21. Kelley Drye also researched several issues related to the Sale, including (i) the appropriate standard of review, (ii) issues related to sections 363(n) and (m) of the Bankruptcy Code, (iii) the ability to sell insider causes of action for no, or inadequate, consideration, and (iv) standards for determining the highest and best bid between two bidders. Kelley Drye prepared a detailed initial objection to the Sale,[12] along with two supporting declarations and numerous corresponding exhibits. Kelley Drye also prepared a supplemental objection to the Sale after the auction based on new bids received for the Debtors' assets from Supreme.[13]

22. During the Application Period, Kelley Drye also worked to ensure Supreme's participation at the auction. Among other things, Kelley Drye encouraged the Debtors to grant Supreme a brief extension of the bid deadline, thereby guaranteeing a competitive auction. Thereafter, Kelley Drye participated actively at the auction, encouraging Supreme to bid

---

[12] Docket No. 518.

[13] Docket No. 546.

competitively and pushing the other parties to engage with Supreme to increase value. Although the Stalking Horse ultimately prevailed, Kelley Drye's efforts to engage Supreme in the process were very successful, increasing the value received through the Sale by $16 million. As Supreme advised the Court at the Sale hearing, Kelley Drye was instrumental to that accomplishment.

**G.** **Executory Contracts and Leases** (Hours: 3.1 - Fees: $2,629.00)

23. This category represents time spent by Kelley Drye tracking the Debtors' go-forward lease and executory contract portfolio. During the Application Period, Kelley Drye reviewed notices of assumption, cure amounts and related pleadings.

**H.** **Claims Administration** (Hours: 1.8 Fees - $1,499.00)

24. This category represents time spent by Kelley Drye to address claims asserted against the Debtors' estates. During the Application Period, Kelley Drye negotiated a stipulation to allow Equinox to file a master proof of claim. Kelley Drye also reviewed the bar date order and advised the Committee of the claim bar dates contained therein.

**I.** **Plan and Disclosure Statement** (Hours: 39.3 - Fees: $37,709.00)

25. This category represents time spent by Kelley Drye on the Debtors' plan, disclosure statement and exit strategy. During the Application Period, Kelley Drye reviewed the Debtors' proposed plan and disclosure statement, outlined issues and open questions regarding the plan, prepared an issues list identifying the Committee's objections to the plan, and drafted an objection to the Debtors' motion to approve the disclosure statement and solicit votes on the plan.

26. Kelley Drye also worked with Dundon to develop a proposed global settlement framework and determine the economic terms of a global settlement proposal to the Debtors and Varagon. Kelley Drye thereafter attempted to engage the Debtors and Varagon in settlement discussions, including delivering a global settlement proposal in an attempt to resolve

these cases consensually. Neither the Debtors nor Varagon responded to the Committee's settlement proposal.

**J.    Committee and Creditor Communications** (Hours: 39.4 - Fees: $38,277.00)

27. This category represents time spent by Kelley Drye preparing for and participating in regular Committee meetings as well as communicating with Committee members and other creditors on an individual basis. During the Application Period, Kelley Drye updated the Committee and individual members of the Committee via weekly telephonic meetings and regular email reports on case developments, filed pleadings, issues related to the Sale, and other Committee business. Kelley Drye also coordinated with Morris James and Dundon to develop materials for distribution to the Committee and to prepare for Committee meetings. In addition, Kelley Drye corresponded with creditors and Committee members to address individual inquiries on various issues in these chapter 11 cases.

**K.    Business Operations** (Hours: 2.0 Fees - $2,058.50)

28. This category represents time spent by Kelley Drye analyzing the Debtors' cash flow and business operations. During the Application Period, Kelley Drye worked with Dundon to improve the Debtors' negotiated resolution of Bank of America's ("BoA") request for a supplemental deposit under the Debtors' credit card processing agreement with BoA. Through those efforts, the Debtors were able to (i) reduce the amount of BoA's deposit by $1.25 million, and (ii) negotiate a right to recover an additional $1.5 million from the Stalking Horse (to whom the processing agreement was assigned) when the contract expires.

**L.    Court Hearings** (Hours: 3.7 - Fees: $3,779.00)

29. This category represents time spent by Kelley Drye preparing for and participating in Court hearings. During the Application Period, Kelley Drye began to prepare for the Sale hearing.

M.  **<u>Debtor Communications</u>** (Hours: 17.9 Fees: $18,212.00)

30.  This category represents time Kelley Drye spent communicating with the Debtors. During the Application Period, Kelley Drye communicated with the Debtors' professionals regarding the Sale, including bids received, Supreme's request to extend the bid deadline, cure amounts and auction logistics. Kelley Drye also communicated with the Debtors' professionals regarding discovery matters, the plan, the disclosure statement and the potential for settlement discussions.

N.  **<u>General Investigation</u>** (Hours: 96.9 Fees - $90,233.50)

31.  This category represents time spent by Kelley Drye to investigate the Debtors' prepetition relationship with Equinox and other insiders, including whether potential estate claims and causes of action exist against such parties. During the Application Period, Kelley Drye (i) continued its ongoing efforts to procure document discovery from the Debtors and Equinox, (ii) met and conferred with the Debtors and Equinox on several occasions, (iii) analyzed documents produced in response to the Committee's requests, and (iv) conducted legal research with respect to several potential causes of action and/or claim objections against Equinox and other insiders.

32.  Kelley Drye faced significant headwinds in its efforts to investigate Equinox. Unlike typical chapter 11 cases, where debtors share information with official committees to streamline investigations and reduce expenses, these Debtors refused to share any work product regarding their independent insider investigation before the Sale hearing. That refusal left the Committee no choice but to conduct a dual-track investigation of its own on an expedited basis.

33.  The Committee's investigation was further hampered by the fact that, except for a small universe of documents, the Debtors' books and records were maintained by

Equinox (a fact the Committee did not learn until discovery was well underway). As a result, Kelley Drye was forced to engage in protracted meet and confers with the Debtors and Equinox to understand how the Debtors' books and records were maintained and to obtain documents responsive to the Committee's discovery requests, which increased the time and expense of the Committee's investigation.

O.   **General Litigation** (Hours: 49.7 - Fees: $46,593.00)[14]

34.   This category represents time spent by Kelley Drye to investigate and prepare a standing motion and draft complaint to assert certain Challenges Varagon. During the Application Period, Kelley Drye (i) conducted legal research to investigate various potential Challenges, (ii) reviewed transaction documents, and (iii) prepared a motion for standing and draft complaint filed on November 15 to preserve certain Challenges against Varagon.[15]

## SUMMARY OF EXPENSES

35.   During the Application Period, Kelley Drye incurred out-of-pocket expenses in the amount of $8,934.28.[16] Attached hereto as **Exhibit B** is a description of the expenses actually incurred by Kelley Drye in the performance of services rendered as lead counsel to the Committee.

## VALUATION OF SERVICES

36.   Kelley Drye's professionals expended a total of 752.1 hours to represent the Committee during the Application Period. The amount of time spent by each of the professionals

---

[14]   Pursuant to paragraph 27 of the Final DIP Order, fees to litigate against Varagon are excluded from the carve-out. As a result, Kelley Drye only seeks payment of $8,823.50 of fees in this category at this time.

[15]   Docket No. 612.

[16]   Kelley Drye reserves the right to request reimbursement of additional expenses incurred during the Application Period in subsequent applications, to the extent that any such additional expenses have not been processed to date in Kelley Drye's billing system.

11

providing services to the Committee during the Application Period is set forth on **Exhibit A**. The rates charged are Kelley Drye's normal hourly rates for work of this character. The reasonable value of the services Kelley Drye rendered during the Application Period is $689,666.50.

37. Kelley Drye believes that the time entries included in **Exhibit A**, and the expense breakdown set forth in **Exhibit B** comply with the Interim Compensation Order and the requirements of Local Rule 2016-2.

38. All services for which compensation is requested by Kelley Drye were performed for or on behalf of the Committee, and not on behalf of the Debtors or other persons. There is no agreement or understanding between Kelley Drye and any other person, other than members of the firm, for the sharing of compensation to be received in these chapter 11 cases.

39. In accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amount requested is fair and reasonable given (i) the complexity of the Debtors' cases, (ii) the Committee's need to investigate Equinox and other insiders on an expedited basis before the Sale hearing, (iii) the discovery challenges described above, (iv) the nature and extent of the services rendered, (v) the value of such services, (vi) the $16 million increase in Sale proceeds generated through Kelley Drye's efforts to engage Supreme in the auction process, (v) the enhanced resolution of issues involving BoA's credit card processing agreement, and (vi) the costs of comparable services other than in a case under this title.

## **CERTIFICATE OF COMPLIANCE AND WAIVER**

40. The undersigned representative of Kelley Drye certifies that he has reviewed the requirements of Local Rule 2016-2 and that the Second Application substantially complies with it.

41. If the Second Application does not comply in all respects with the requirements of Local Rule 2016-2, Kelley Drye believes such deviations are not material and respectfully requests that any such requirements be waived.

## NOTICE

42. Pursuant to the Interim Compensation Order, notice of this Second Application has been provided to: (i) the Debtors; (ii) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Sean T. Greecher (sgreecher@ycst.com) and Allison S. Mielke (amielke@ycst.com), (iii) counsel to the DIP Agent, (a) Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, Illinois 60661, Attn: Peter P. Knight (peter.knight@katten.com) and Allison E. Yager (allison.yager@katten.com), and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Curtis S. Miller (cmiller@morrisnichols.com); (iv) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov); and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. Kelley Drye respectfully submits that no further notice of the Second Application is necessary or required.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

**WHEREFORE,** Kelley Drye respectfully requests: (i) interim allowance of $689,666.50 in fees for necessary professional services rendered to the Committee during the Application Period and reimbursement of actual and necessary expenses incurred by Kelley Drye during the Application Period in the sum of $8,934.28; (ii) payment of $530,451.88, which represents 80% of the requested fees (net of amounts excluded from the carve-out under the Final DIP Order) and 100% of the expenses incurred during the Application Period; and (iii) such other relief as this Court deems just and proper.

Dated: December 16, 2024

**KELLEY DRYE & WARREN LLP**

*/s/ Eric R. Wilson*
Eric R. Wilson, Esq. (admitted *pro hac vice*)
Kristin S. Elliott, Esq. (admitted *pro hac vice*)
Andres Barajas, Esq. (admitted *pro hac vice*)
3 World Trade Center
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
E-mail: ewilson@kelleydrye.com
          kelliott@kelleydrye.com
          abarajas@kelleydrye.com

*Counsel to the Official Committee of Unsecured Creditors*