## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : : : : | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | : : : | Case No. 24-11686 (JKS) (Jointly Administered) |
| Debtors. | : : : : : : | **Re: D.I. 698** **Hearing Date: Feb. 4, 2025, at 10:00 a.m.** **Objections Due: Jan. 15, 2025, at 4:00 p.m.** **(extended for U.S. Trustee to Jan. 22)** |

## LIMITED OBJECTION OF THE UNITED STATES TRUSTEE
## TO CONFIRMATION OF COMBINED CHAPTER 11 PLAN

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, objects on a limited basis to confirmation of the *Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* [D.I. 698] (the "Plan"), and in support of his objection respectfully states:

## PRELIMINARY STATEMENT

1.      The Court should deny confirmation of the Plan for two reasons.  First, to the extent exculpation is permitted beyond the provisions of 11 U.S.C. § 1125(e), the plan supplement would give the plan administrator and its professionals prospective, post-effective date

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

exculpation.  Second, the Plan would give the debtors a discharge injunction (despite the debtors being ineligible for a discharge) and extend the discharge injunction to the third-party releases and exculpation.

## JURISDICTION & STANDING

2.      Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine Plan confirmation and this objection.

3.      Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has a duty to monitor and comment on plans and disclosure statements filed in chapter 11 cases.

5.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on Plan confirmation.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## FACTS

6.      On August 12, 2024, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court.

7.      As of the petition date, the Debtors owned and operated 94 fitness centers in the United States.  *See Declaration of Steven Shenker, Chief Restructuring Officer of the Debtors, In Support of Chapter 11 Petitions and First Day Motions* [D.I. 2] (the "Shenker Decl.") ¶ 15.

8.      Post-petition, the Debtors sold 67 of their fitness center locations to Pinnacle US Holdings for $121 million cash plus the assumption of certain liabilities.  The Debtors sold their remaining fitness centers to Lotemd Fit LLC.  *See* D.I. 591 & 611.  The sales closed about November 29, 2024.  *See* Plan § 3.4(f).

9.      On December 18, 2024, the Debtors filed the Plan.  The Plan's exculpation provision includes the following:

> **The Confirmation Order shall serve as a permanent injunction against any Entity seeking to enforce any claim or cause of action against the Exculpated Parties that has been exculpated pursuant to Section 14.1(a) of this Plan.**

Plan § 14.1(a).

10.      Section 14.1(d) of the Plan provides in relevant part:

> **Except as otherwise expressly provided for in this Plan or in obligations issued pursuant to this Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest that has been released or exculpated in the Plan, from:**
>
> > **(1) commencing or continuing in any manner any action or other proceeding of any kind against any of the Debtors, the Estates, the Post-Effective Date Debtors, the Plan Administrator, their successors and assigns, and any of their assets and properties on account of such Claim or Interest;**
> >
> > **(2) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any of the Debtors, the Estates, the Post-Effective Date Debtors, the Plan Administrator,**

> their successors and assigns, and any of their assets
> and properties on account of such Claim or Interest;
>
> (3) creating, perfecting or enforcing any encumbrance of
> any kind against any of the Debtors, the Estates, the
> Post-Effective Date Debtors, the Plan Administrator,
> their successors and assigns, and any of their assets
> and properties on account of such Claim or Interest;
>
> (4) asserting any right of setoff or subrogation of any
> kind against any obligation due from any of the
> Debtors, the Estates, the Post-Effective Date Debtors,
> the Plan Administrator or their successors and
> assigns, or against any of their assets and properties
> on account of such Claim or Interest, except to the
> extent a right to setoff or subrogation is asserted with
> respect to a timely Filed Proof of Claim or exercised
> prepetition; or
>
> (5) commencing or continuing in any manner any action
> or other proceeding of any kind in respect of any
> Claim or Interest or Cause of Action released under
> Article XIV of this Plan.
>
> Any Entity injured by any willful violation of such injunction
> may seek actual damages and, in appropriate circumstances,
> may seek punitive damages from the willful violator.

11.     On January 8, 2025, the Debtors filed the plan supplement. *See* D.I. 718.

The plan supplement identifies Burton Hastings Advisors LLC as the plan administrator. *See id.*

Ex. B at 1. The plan supplement includes the plan administration agreement, which provides in

relevant part:

> Neither the Plan Administrator nor any Plan Administrator
> Professional shall be liable for losses, claims, damages, liabilities,
> or expenses in connection with the affairs or property of the Post-
> Effective Date Debtors to any Holder of an Allowed Claim or any
> other Person or Entity for the acts or omissions of the Plan
> Administrator under this Agreement or the Plan; provided, however,
> that the foregoing limitation shall not apply as to any losses, claims,
> damages, liabilities, or expenses suffered or incurred by any Holder
> of an Allowed Claim or any other Person or Entity that are found by
> a Final Order of a court of competent jurisdiction to have resulted
> primarily and directly from the actual fraud, gross negligence, or

willful misconduct of the Plan Administrator or the Plan Administrator Professional, as applicable. Every act done or omitted, power exercised, or obligation assumed by any Plan Administrator Professional pursuant to the provisions of this Agreement shall be held to be done, omitted, exercised, or assumed, as the case may be, by such Plan Administrator Professional for and on behalf of the Plan Administrator and not otherwise; provided, however, that neither the Plan Administrator nor the Plan Administrator Professionals shall be deemed to be responsible for any other's actions or inactions outside of the scope of the authority provided by the Plan Administrator. Except as provided in the proviso of the first sentence of this Section 7.a, every Holder of an Allowed Claim or other Person or Entity contracting or otherwise dealing with or having any relationship with the Plan Administrator or any Plan Administrator Professional shall have recourse only to the Post-Effective Date Debtors for payment of any liabilities arising in connection with such contracts, dealings, or relationships, and the Plan Administrator and the Plan Administrator Professionals shall not be individually liable therefor. For the avoidance of doubt, except as provided in the proviso of the first sentence of this Section 7.a, the Plan Administrator, in the Plan Administrator's capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors or the Post-Effective Date Debtors.

D.I. 718 Ex. B § 7(a).

12.     Section 16.15 of the Plan provides: "All exhibits and schedules annexed hereto, and all documents submitted in support hereof, are incorporated into and are a part of this Plan as if set forth in full herein."

## **ARGUMENT**

### I.     **Plan Supplement Gives Plan Administrator and Its Professionals Prospective, Post-Effective Date Exculpation**

13.     The Court should deny confirmation because the plan supplement would give the plan administrator and its professionals prospective, post-effective date exculpation.

14.     To the extent exculpation is permitted beyond the provisions of 11 U.S.C. § 1125(e), the Third Circuit has held that applicable law confers "a limited grant of immunity"

5

on "committee members and the entities that provided services to the Committee" "within the scope of their duties." *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000); *accord In re Wash. Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (directing that exculpation "must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers"); *In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011) (same); *In re PTL Holdings LLC*, 2011 WL 5509031 at *11-12 (Bankr. D. Del. 2011) (BLS) (holding exculpation "must be reeled in to include only those parties who have acted as estate fiduciaries and their professionals"); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (holding exculpation "limited so as to apply only to estate fiduciaries" was consistent with applicable law).

15.    Case law in this District also counsels that exculpation must be limited to acts and omissions occurring between the petition date and effective date. *See In re United Artists Theatre Co. v. Walton*, 315 F.3d 217, 227 n.10 (observing that *PWS Holding Corp.* did not "cover more than immunity from liability under § 1103(c)"); *In re PWS Holding Corp.*, 228 F.3d at 245-46 (exculpation clause did not violate section 524(e) of the Bankruptcy Code because it did not "affect[] the liability of the members of the Committee and professionals who provided services to the Debtors to third parties."); *In re Coram Healthcare Corp.*, 315 B.R. 321, 337 (Bankr. D. Del. 2004) (releases of chapter 11 trustee, equity committee and their professionals "are not permissible except to the extent they are limited to post-petition activity" and exclude gross negligence and willful misconduct); *In re Mallinckrodt PLC*, 639 B.R. 837, 882-83 (Bankr. D. Del. 2022) (holding exculpation was "temporally overbroad in that it improperly sweeps in prepetition conduct. . . . [Exculpation] only extends to conduct that occurs between the Petition Date and the effective date.").

6

16.     Here, exculpation in the plan supplement would cover the plan administrator and its professionals for future acts and omissions occurring after the effective date.  Those entities should not be exculpated in advance, especially given that they will be subject to little, if any, Court oversight.  *See Wash. Mut.*, 442 B.R. at 348 ("The Liquidating Trust and its Trustee have not done anything yet for which they need a release.  They will not even come into existence until the Plan is confirmed.").  The Court should deny confirmation unless section 7(a) of the plan administration agreement [D.I. 718 Ex. B] is removed.

## II.     Plan Would Give Debtors a Discharge Injunction and Extend Such Injunction to Third-Party Releases and Exculpation

17.     The Court should deny confirmation because the Plan would give the Debtors a discharge injunction and extend the injunction to the Plan's third-party releases and exculpation.[2]

18.     The Plan provides that it does not discharge the Debtors.  *See* Plan § 14.1(d) ("In accordance with section 1141(d)(3) of the Bankruptcy Code, this Plan does not discharge the Debtors.").  However, the Plan would create a permanent injunction protecting the Debtors, their estates, and the post-effective date Debtors from claims that are released or exculpated under the Plan.  *See id.*  If the Debtors are not eligible for a discharge, then they are not eligible for a discharge injunction.  *See* 11 U.S.C. § 524(a)(2) ("A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" any debt discharged under section 1141).

---

[2] Under the Plan, Class 3 (Prepetition Loan Secured Claims) is the only voting class.  The members of that class are giving releases under the Plan [§ 1.132(b)] and have agreed to give those releases pursuant to the *Amended Restructuring Support Agreement* [D.I. 483 Ex. A].

19.    No Bankruptcy Code provision authorizes chapter 11 plans or confirmation orders to include injunctions to enforce even consensual releases among non-debtors.  Such an injunction is not warranted by the traditional factors that support injunctive relief.  Parties seeking an injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)); *id.* (noting that an injunction is an "extraordinary remedy").  The Debtors have not shown that these factors are met.  Nor could such a showing likely be made: if the Plan's release is truly consensual, then there is no threatened litigation and no need for an injunction to prevent irreparable harm to either the estates or the released parties.  A consensual release may serve as an affirmative defense in any ensuing, post-effective date litigation between the third-party releasees and releasors, but there is no reason for this Court to be involved with the post-effective date enforcement of those state-law releases.  Moreover, the Plan injunction essentially precludes any party deemed to consent to the Plan's releases from raising any issue with respect to the effectiveness or enforceability of the release (such as mistake or lack of capacity) under applicable non-bankruptcy law.

20.    Similarly, to the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), there is no statutory authority in the Bankruptcy Code that justifies an

injunction to enforce an exculpation, and the Debtors have shown no need for an injunction to prevent "irreparable harm" to either the estate or the released parties.

21.     The Court should deny confirmation unless the injunction in Plan §§ 14.1(a) & (d) is narrowed so that it protects only the property being distributed under the Plan and the entity distributing it (i.e., the plan administrator).

### CONCLUSION

22.     The U.S. Trustee reserves all of his rights and objections regarding any and all future amendments to the Plan and Plan Supplement.  The U.S. Trustee reserves the rights to comment on and object to the proposed form of confirmation order.  The U.S. Trustee reserves the rights to amend and/or to supplement this objection.

WHEREFORE, the U.S. Trustee respectfully asks that this Court deny confirmation unless the above changes are made and grant such other relief as the Court deems fair and just.

Dated: January 22, 2025                              Respectfully submitted,
      Wilmington, Delaware

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: */s/ Benjamin Hackman*
Benjamin A. Hackman
Trial Attorney
Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
benjamin.a.hackman@usdoj.gov