**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
|  | Ref. Docket Nos. 502, 697, 698, & 718 |

**NOTICE OF FILING OF AMENDED PLAN SUPPLEMENT FOR THE AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF BLINK HOLDINGS, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

       **PLEASE TAKE NOTICE** that, on October 16, 2024, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 502] with the United States Bankruptcy Court for the District of Delaware (the "**Court**").

       **PLEASE TAKE FURTHER NOTICE** that, on December 18, 2024, the Court entered the *Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Form of Ballot and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Thereto; and (VI) Granting Related Relief* [Docket No. 697] (the "**Interim Approval and Procedures Order**").

       **PLEASE TAKE FURTHER NOTICE** that, on December 18, 2024, the Debtors filed with the Court the *Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 698] (the "**Combined Disclosure Statement and Plan**").[2]

       **PLEASE TAKE FURTHER NOTICE** that, on January 8, 2025, the Debtors filed with the Court the *Notice of Filing of Plan Supplement for the Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors*

---

[1]    The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

[2]    Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Combined Disclosure Statement and Plan.

*in Possession* [Docket No. 718] (as may be further amended, modified, or supplemented from time to time, the "**Plan Supplement**").

PLEASE TAKE FURTHER NOTICE that, except where indicated below, the Debtors have further amended, modified, or supplemented the documents and designations contained in the Plan Supplement.

| Exhibit | Plan Supplement Document | Amendments |
|---------|--------------------------|------------|
| A | Wind Down Organizational Documents | No amendments, modifications or supplements at this time. |
| B | Plan Administrator Agreement | Replaced with the revised version attached hereto as **Exhibit B** that incorporates the changes reflected in the blackline attached hereto as **Exhibit B-1**. |
| C | Assumption Schedule[3] | No amendments, modifications or supplements at this time. |

PLEASE TAKE FURTHER NOTICE that certain documents, or portions thereof, contained in this Plan Supplement remain subject to continuing negotiations among the Debtors and other interested parties. Subject to the terms and conditions of the Combined Disclosure Statement and Plan, the Debtors reserve all rights to amend, revise, or supplement this Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Combined Disclosure Statement and Plan, or any such other date as may be provided for by the Combined Disclosure Statement and Plan or by order of the Court.

PLEASE TAKE FURTHER NOTICE that a combined hearing (the "**Confirmation Hearing**") to consider, among other things, (a) final approval of the Combined Disclosure Statement and Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and (b) confirmation of the Plan will be held before the

---

[3]  For the avoidance of doubt, the Assumption Schedule is a schedule of Executory Contracts that will be assumed by the Debtors pursuant to the Plan, if any. Certain Executory Contracts and Unexpired Leases have been designated as "Reserved Agreements" in accordance with the *Order (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 611] (the "**Pinnacle Sale Order**"). Consistent with Section 12.1 of the Combined Disclosure Statement and Plan and the terms of the Pinnacle Sale Order, any Executory Contract or Unexpired Lease that has been designated a Reserved Agreement in accordance with the Stalking Horse Agreement shall be assumed or rejected in accordance with the terms of the Stalking Horse Agreement upon or before the expiration of the Designation Rights Period. Accordingly, none of the Reserved Agreements are included on the Assumption Schedule, and the status of the Reserved Agreements as subject to subsequent designation as an Assumed Agreement (as defined in the Pinnacle Sale Order) or designated for rejection in accordance with the Stalking Horse Agreement and the Pinnacle Sale Order is unaffected hereby.

2

Honorable J. Kate Stickles, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 5th Floor, Courtroom No. 6, 824 North Market Street, Wilmington, Delaware 19801, on **February 4, 2025 at 10:00 a.m. (prevailing Eastern Time)**.  The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtors in open court of the adjourned date at the Confirmation Hearing or any continued hearing or as indicated in any notice filed with the Court on the docket in the Chapter 11 Cases.

*[Remainder of Page Intentionally Left Blank]*

Dated: Wilmington, Delaware
January 31, 2025

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Sean T. Greecher*
Michael R. Nestor (No. 3526)
Sean T. Greecher (No. 4484)
Allison S. Mielke (No. 5934)
Timothy R. Powell (No. 6894)
Rebecca L. Lamb (No. 7223)
Benjamin C. Carver (No. 7176)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
        sgreecher@ycst.com
        amielke@ycst.com
        tpowell@ycst.com
        rlamb@ycst.com
        bcarver@ycst.com

*Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT B**

## **Plan Administration Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (this "Agreement") is made as of this [ ] day of [ ] by and among Blink Holdings, Inc. and its affiliated debtors and debtors in possession (as applicable, the "Debtors" or "Post-Effective Date Debtors") and Burton Hastings Advisors LLC (the "Plan Administrator") for the purpose of providing plan administrator services (collectively, the "Services") to the Post-Effective Date Debtors pursuant to and in accordance with the *Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* confirmed by an order [Docket No. [ ] of the Bankruptcy Court entered on [ ] (as amended, modified or supplemented, including, without limitation, pursuant to the Confirmation Order, the "Plan").[1]

1. **Appointment; Effectiveness.**

   a.  The Plan Administrator hereby accepts its retention and appointment as the Plan Administrator and agrees to provide the Services pursuant to and in accordance with the Plan, the Confirmation Order and this Agreement.

   b.  Notwithstanding the date of execution of this Agreement, this Agreement shall only become effective upon the occurrence of the Effective Date.  The Plan Administrator shall have no duties in the Plan Administrator's capacity as such until the occurrence of the Effective Date.

2. **Scope of Services.**

   a.  The Plan Administrator shall serve as a fiduciary and shall provide Mr. Peter Hurwitz, solely in his capacity as the Managing Member of Burton Hastings Advisors LLC and not in any individual capacity, as the sole officer and director of the Post-Effective Date Debtors. In all circumstances, the Plan Administrator shall act in the Plan Administrator's reasonable discretion in the best interests of the Estates pursuant to the terms of the Plan and this Agreement.

   b.  The Plan Administrator shall devote such time to the performance of the Services as the Plan Administrator determines appropriate in the Plan Administrator's discretion.

   c.  The Plan Administrator shall have the power and responsibility to do all acts required under the Plan to be done by the Plan Administrator or by or on behalf of the Post-Effective Date Debtors and all other acts that may be necessary or appropriate in connection with the disposition of the Assets,  and the distribution of the proceeds thereof, as contemplated by the Plan and in accordance therewith and with this Agreement.  For the avoidance of doubt, the Plan Administrator shall not pursue or dispose of Avoidance Actions or other Causes of Action that were released under the Plan.

---

[1]    Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Plan.

d. From and after the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, pursuant to and in accordance with the terms and provisions of the Plan and this Agreement, the Plan Administrator shall have all duties, powers and rights of the Plan Administrator, the Debtors or the Post-Effective Date Debtors set forth herein, in the Plan and in the Confirmation Order, including, but not limited to the right, power or obligation (as applicable) to:

   i. take all steps and execute all instruments and documents necessary to make Distributions to Holders of Allowed Claims and to perform the duties assigned to the Post-Effective Date Debtors and the Plan Administrator under the Plan or this Agreement;

   ii. comply with the Plan;

   iii. employ, retain or replace professionals to represent the Plan Administrator with respect to the Plan Administrator's responsibilities, which professionals may be counsel or advisors to the Committee or the Debtors;

   iv. object to Claims as provided in the Plan and prosecute such objections or decline to object to Claims or prosecute any objection to Claims;

   v. compromise, settle or abandon any issue or dispute regarding the amount, validity, priority, treatment or allowance of any Claims;

   vi. exercise such other powers as may be vested in the Plan Administrator pursuant to the Plan, this Agreement or any other Order of the Bankruptcy Court, including the Confirmation Order, or otherwise act on behalf of the Post-Effective Date Debtors from and after the Effective Date;

   vii. file applicable tax returns for the Post-Effective Date Debtors, pay applicable taxes, and challenge, dispute, negotiate and resolve the assessment of any taxes by any foreign, domestic, federal, state, local or other taxing authority;

   viii. seek to resolve any tax liability pursuant to sections 346, 505 and 1146 of the Bankruptcy Code;

   ix. take any and all actions necessary or appropriate to comply with all withholding, payment and reporting requirements imposed by any federal, state, local or foreign taxing authority;

   x. administer and wind down any of the Post-Effective Date Debtors' remaining employee benefit plans, including 401(k) benefit plans;

   xi. comply with any continuing obligations of the Post-Effective Date Debtors under the Sale Transactions and take all actions necessary or appropriate to enforce the Post-Effective Date Debtors' rights under the Sale Orders;

   xii. establish, maintain, fund and/or administer the Professional Fee Escrow Account;

2

xiii.   file quarterly operating or other periodic reports with the Bankruptcy Court and pay any statutory fees required under 28 U.S.C. § 1930;

xiv.   sell, liquidate, monetize or otherwise dispose of any Wind Down Assets;

xv.   take any actions necessary or appropriate to wind down and dissolve any of the Post-Effective Date Debtors;

xvi.   in consultation with the Prepetition Agent, abandon or donate to a charitable organization any remaining assets of the Post-Effective Date Debtors that the Plan Administrator determines to be of inconsequential value or too impractical to distribute to holders of Allowed Claims under the Plan;

xvii.   seek entry of a final decree closing the Chapter 11 Cases; and

xviii.   subject to the provisions of the Wind Down Organizational Documents, pursue, settle, or abandon any Preserved Causes of Action.

e.   In no event shall the Plan Administrator be obligated to take any action, or refrain from taking any action, that the Plan Administrator believes in good faith to be unlawful or inconsistent with the Plan Administrator's fiduciary duties as the Plan Administrator.

f.   The Plan Administrator shall maintain books and records relating to the payment of expenses of, and liabilities of, Claims against or assumed by, the Debtors' Estates in such detail and for such period of time as may be necessary to enable the Plan Administrator to make full and proper accounting in respect thereof and to comply with applicable provisions of law.  Except as provided herein, nothing in this Agreement requires the Plan Administrator to file any accounting or seek approval of any court with respect to the administration of the Plan, or as a condition for making any payment or distribution out of the Estates' property.

## 3. <u>Limitation of Plan Administrator's Authority.</u>

a.   The Plan Administrator shall not, and shall not be authorized to, engage in any trade or business with respect to the Estates' property or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the Plan and this Agreement and shall take such actions consistent with the prompt orderly distribution of the Estates' remaining property as are required by applicable law and the Plan.

b.   For the avoidance of doubt, the Plan Administrator shall not have any authority to pursue any Claims or Causes of Action, including Avoidance Actions, waived, exculpated or released in accordance with the provisions of the Plan or the Confirmation Order.

c.   Notwithstanding anything to the contrary in this Agreement, any and all payments and other disbursements made, or to be made, by the Plan Administrator shall be subject to, and made in accordance with, the Wind-Down Budget as provided in the Plan.

4. **Compensation of Plan Administrator.**

    a.    The Plan Administrator will be paid by the Estates and the Post-Effective Date Debtors for the Services at $20,000 per month for the first six (6) months following the Effective Date and at $15,000 per month beginning in the seventh (7) month following the Effective Date, subject to periodic adjustments to reflect economic and other conditions. The Plan Administrator will periodically bill the Post-Effective Date Debtors for fees and out-of-pocket expenses.

    b.    The payment of the fees, costs and expenses of the Plan Administrator shall be made in the ordinary course of business upon presentment of an invoice in customary form and shall not be subject to the approval of the Bankruptcy Court, but, for the avoidance of doubt shall be subject to the Wind-Down Budget as set forth in the Plan.

5. **Retention of Plan Administrator Professionals.**

    a.    The Plan Administrator may, without the need for further Bankruptcy Court approval, employ or retain agents, financial advisors, attorneys, consultants, independent contractors, representatives and other professionals to advise or assist the Plan Administrator in the performance of the Plan Administrator's duties (collectively, the "Plan Administrator Professionals"), which Plan Administrator Professionals may include Persons and Entities that have provided professional services to the Debtors or Committee.

    b.    The Plan Administrator shall pay the undisputed reasonable fees and expenses of the Plan Administrator Professionals upon presentment of an invoice in customary form. If the Plan Administrator disputes any fees or expenses of any Plan Administrator Professional and the parties are unable to resolve the dispute consensually, the Bankruptcy Court shall determine the dispute.

6. **Resignation; Termination.**

    a.    The Plan Administrator may resign at any time before the Debtors' affairs are fully administered; provided, however, that such resignation shall not be effective until (i) the Plan Administrator appoints a successor Plan Administrator and such successor accepts such appointment in writing, or (ii) thirty (30) days following the date on which the Plan Administrator provides notice to the Bankruptcy Court that the Plan Administrator intends to resign without appointing a successor Plan Administrator. Upon the appointment of any successor Plan Administrator, the successor Plan Administrator, without the need for any further action by or notice to the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor Plan Administrator under the Plan, and all duties and responsibilities of the predecessor Plan Administrator relating to the Post-Effective Date Debtors shall cease. To the extent a successor Plan Administrator is appointed, such successor shall not be a Holder of a Claim or Interest. No successor Plan Administrator shall bear any liability for any prior Plan Administrator, and no prior Plan Administrator shall bear any liability for any successor Plan Administrator.

b.   The Plan Administrator role shall terminate upon the earlier of (i) the Debtors' affairs being fully administered, as determined in the Plan Administrator's sole discretion, and (ii) the Bankruptcy Court entering an order terminating the Plan Administrator role. Upon such termination, all duties and responsibilities of the Plan Administrator shall cease.

**7.  <u>Exculpation; Indemnification.</u>**

a.   To the fullest extent permitted under applicable law, neither the Plan Administrator nor any Plan Administrator Professional shall be liable for losses, claims, damages, liabilities, or expenses in connection with the affairs or property of the Post-Effective Date Debtors to any Holder of an Allowed Claim or any other Person or Entity for the acts or omissions of the Plan Administrator under this Agreement or the Plan; <u>provided</u>, <u>however</u>, that the foregoing limitation shall not apply as to any losses, claims, damages, liabilities, or expenses suffered or incurred by any Holder of an Allowed Claim or any other Person or Entity that are found by a Final Order of a court of competent jurisdiction to have resulted primarily and directly from the actual fraud, gross negligence, or willful misconduct of the Plan Administrator or the Plan Administrator Professional, as applicable. Every act done or omitted, power exercised, or obligation assumed by any Plan Administrator Professional pursuant to the provisions of this Agreement shall be held to be done, omitted, exercised, or assumed, as the case may be, by such Plan Administrator Professional for and on behalf of the Plan Administrator and not otherwise; <u>provided</u>, <u>however</u>, that neither the Plan Administrator nor the Plan Administrator Professionals shall be deemed to be responsible for any other's actions or inactions outside of the scope of the authority provided by the Plan Administrator.  Except as provided in the proviso of the first sentence of this Section 7.a, every Holder of an Allowed Claim or other Person or Entity contracting or otherwise dealing with or having any relationship with the Plan Administrator or any Plan Administrator Professional shall have recourse only to the Post-Effective Date Debtors for payment of any liabilities arising in connection with such contracts, dealings, or relationships, and the Plan Administrator and the Plan Administrator Professionals shall not be individually liable therefor.  For the avoidance of doubt, except as provided in the proviso of the first sentence of this Section 7.a, the Plan Administrator, in the Plan Administrator's capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors or the Post-Effective Date Debtors.

b.   The Debtors and the Post-Effective Date Debtors shall indemnify and hold harmless: (i) the Plan Administrator (solely in the Plan Administrator's capacity as such) and (ii) the Plan Administrator Professionals (solely in their capacities as such) (each, an "<u>Indemnified Party</u>"), with respect to any and all expenses arising out of or due to their post-Effective Date actions or omissions, or consequences of such actions or omissions, taken in connection with the Plan, this Agreement and the Confirmation Order, other than any such acts or omissions, or consequences of any such actions or omissions, resulting from such Indemnified Party's willful misconduct, actual fraud or gross negligence.  To the extent that an Indemnified Party asserts a claim for indemnification as provided

5

above, (i) any payment on account of such claim shall be paid out of the Estates, any available insurance, or from any remaining retainer amounts held by such Indemnified Party in connection with its employment and retention in the Chapter 11 Cases and (ii) the expenses incurred by counsel to the Plan Administrator in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Indemnified Party is not entitled to be indemnified therefore) out of the Estates, any available insurance, or from any remaining retainer amounts held by such Indemnified Party or by counsel to the Plan Administrator in connection with their employment and retention in the Chapter 11 Cases. For the avoidance of doubt, subject to the Wind-Down Budget, the Post-Effective Date Debtors' indemnification obligations hereunder are expenses of the Post-Effective Date Debtors and their Estates within the meaning of Section 8 of this Agreement. The indemnification provisions of this Agreement shall remain available to and be binding upon any former Plan Administrator or the estate of any decedent of the Plan Administrator and shall survive the termination of this Agreement.

c.    The Plan Administrator shall be authorized to obtain and pay for, out of the funds of the Estates, all reasonably necessary insurance coverage for the Plan Administrator and the Plan Administrator Professionals, and the Post-Effective Date Debtors' sole officer and director, including, but not limited to, coverage with respect to: (i) any property that is or may in the future become the property of the Estates; and (ii) the expenses, duties and obligations of the Plan Administrator and the Plan Administrator Professionals under this Agreement, the latter of which insurance coverage may remain in effect for a reasonable period of time after the termination of this Agreement, as determined by the Plan Administrator.

d.    The Plan Administrator may rely upon, and shall be fully protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper parties.

e.    The Plan Administrator may consult with any and all of its Plan Administrator Professionals.

f.    The Plan Administrator may, but shall not be required (unless required by the Plan or Confirmation Order), to seek Bankruptcy Court approval in connection with any matter under this Agreement, including with respect to any action taken or not taken hereunder. Any action or inaction approved by the Bankruptcy Court shall not constitute actual fraud, willful misconduct or gross negligence.

g.    The provisions of this Section 7 shall survive the termination of this Agreement and the termination or resignation of the Plan Administrator.

8. **Distributions.**

The Plan Administrator shall make Distributions in accordance with the Plan and the Confirmation Order.  For the avoidance of doubt, the Plan Administrator shall reserve for or pay all of its expenses and the expenses of the Post-Effective Date Debtors and their Estates to the extent set forth in the Wind-Down Budget and consistent with the Wind Down Reserve before making any Distributions.

9. **Final Decree.**

The Plan Administrator shall seek and obtain a final decree from the Bankruptcy Court upon the full administration of the Estates and the Chapter 11 Cases. For the avoidance of doubt, the Plan Administrator may, in its sole discretion, seek to close any Chapter 11 Case as and when such Chapter 11 Case is fully administered; provided, that, at least one Chapter 11 Case shall remain open until the Plan is fully administered and a final decree is obtained.

10. **Privilege.**

In connection with any Preserved Causes of Action, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether oral or written) in respect of those Assets (collectively, the "Privileges") shall vest in the Post-Effective Date Debtors on the Effective Date, and thereafter, such Privileges shall belong to the Post-Effective Date Debtors and shall be waivable only by the Plan Administrator.  The Plan Administrator's receipt of any information subject to the Privileges shall not waive any such Privileges, and all such Privileges are expressly preserved.

11. **Ratification of Prior Acts.**

To facilitate implementing the Plan and fully administering the Debtors' affairs in an orderly and efficient manner, the Plan Administrator may perform and be compensated in accordance with the Plan for certain Services in connection with the Plan Administrator's duties and obligations under this Agreement prior to the Effective Date, and the authorization for such performance and ratification of acts taken by the Plan Administrator prior to the Effective Date is evidenced by the execution hereof to the extent not already authorized by the Plan or the Confirmation Order.

12. **Other Matters.**

a. The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

b. This Agreement shall be irrevocable, except as otherwise expressly provided in this Agreement.

c. This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Delaware without reference to any conflict of laws provision thereunder,

and the Bankruptcy Court shall retain jurisdiction over the Estates to the fullest extent permitted by law, including, but not limited to, for the purpose of interpreting, implementing or enforcing the provisions of this Agreement.  If, and only if, the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising from or related to this Agreement, the state and federal courts located in the State of Delaware shall have exclusive jurisdiction in relation to all such matters.  THE PLAN ADMINISTRATOR AND THE POST-EFFECTIVE DEBTORS HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT, OR OTHERWISE) RELATING TO THIS AGREEMENT.

d.  The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and the Confirmation Order.  If the provisions of this Agreement are found to be materially inconsistent with the provisions of the Plan or the Confirmation Order, the provisions of the Plan or Confirmation Order, as applicable, shall control.

e.  If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof.  In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect.

f.  No party hereto shall have the right to assign its rights hereunder, in whole or in part, without the prior written consent of the other party (other than to such party's affiliates or subsidiaries, which shall not require such consent).  This Agreement shall be binding upon and inure to the benefit of the parties' respective successors and permitted assigns. For the avoidance of doubt, the Plan Administrator shall not be required to obtain the consent of any party to appoint a different individual to serve as the sole officer and director of the Post-Effective Date Debtors under Section 1.b of this Agreement.

g.  Prior to the Effective Date, no change, modification, extension, renewal, ratification, waiver or rescission of this Agreement or of any of the provisions hereof shall be binding unless it is in writing and signed by both parties hereto.  From and after the Effective Date, the Plan Administrator may modify, supplement or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order with the prior written consent of the Prepetition Agent, which shall not be unreasonably withheld.

h.  No failure by the Post-Effective Date Debtors or the Plan Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any right, power or privilege.

i.    This Agreement (together with the Plan and the Confirmation Order) constitutes the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any prior agreements (whether written or oral) between the parties regarding the subject matter hereof.

j.    This Agreement may be executed in any number of counterparts each of which shall be an original, but all of which together shall constitute one and the same instrument. Signatures may be exchanged electronically by email or facsimile.

k.    The headings of sections of this Agreement are inserted for convenience only, and shall not affect the interpretation of any provision of this Agreement.

*[Signatures appear on the following page]*

IN WITNESS WHEREOF, the parties hereto have executed and acknowledged this Agreement by their duly appointed representatives.

**BURTON HASTINGS ADVISORS, LLC**, not individually, but solely in its capacity as the Plan Administrator

_____

By:     Peter Hurwitz
Title:   Managing Member

-AND-

**BLINK HOLDINGS, INC.** on behalf of itself and its Post-Effective Date Debtor affiliates

_____

By:     Emanuel Pearlman
Title:   Authorized Representative

**EXHIBIT B**

**Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (this "Agreement") is made as of this [ ] day of [ ] by and among Blink Holdings, Inc. and its affiliated debtors and debtors in possession (as applicable, the "Debtors" or "Post-Effective Date Debtors") and Burton Hastings Advisors LLC (the "Plan Administrator") for the purpose of providing plan administrator services (collectively, the "Services") to the Post-Effective Date Debtors pursuant to and in accordance with the *Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* confirmed by an order [Docket No. [ ] of the Bankruptcy Court entered on [ ] (as amended, modified or supplemented, including, without limitation, pursuant to the Confirmation Order, the "Plan").[1]

1. **Appointment; Effectiveness.**

   a.   The Plan Administrator hereby accepts its retention and appointment as the Plan Administrator and agrees to provide the Services pursuant to and in accordance with the Plan, the Confirmation Order and this Agreement.

   b.   Notwithstanding the date of execution of this Agreement, this Agreement shall only become effective upon the occurrence of the Effective Date.  The Plan Administrator shall have no duties in the Plan Administrator's capacity as such until the occurrence of the Effective Date.

2. **Scope of Services.**

   a.   The Plan Administrator shall serve as a fiduciary and shall provide Mr. Peter Hurwitz, solely in his capacity as the Managing Member of Burton Hastings Advisors LLC and not in any individual capacity, as the sole officer and director of the Post-Effective Date Debtors.  In all circumstances, the Plan Administrator shall act in the Plan Administrator's reasonable discretion in the best interests of the Estates pursuant to the terms of the Plan and this Agreement.

   b.   The Plan Administrator shall devote such time to the performance of the Services as the Plan Administrator determines appropriate in the Plan Administrator's discretion.

   c.   The Plan Administrator shall have the power and responsibility to do all acts required under the Plan to be done by the Plan Administrator or by or on behalf of the Post-Effective Date Debtors and all other acts that may be necessary or appropriate in connection with the disposition of the Assets,  and the distribution of the proceeds thereof, as contemplated by the Plan and in accordance therewith and with this Agreement.  For the avoidance of doubt, the Plan Administrator shall not pursue or dispose of Avoidance Actions or other Causes of Action that were released under the Plan.

---

[1]   Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Plan.

d.  From and after the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, pursuant to and in accordance with the terms and provisions of the Plan and this Agreement, the Plan Administrator shall have all duties, powers and rights of the Plan Administrator, the Debtors or the Post-Effective Date Debtors set forth herein, in the Plan and in the Confirmation Order, including, but not limited to the right, power or obligation (as applicable) to:

i.  take all steps and execute all instruments and documents necessary to make Distributions to Holders of Allowed Claims and to perform the duties assigned to the Post-Effective Date Debtors and the Plan Administrator under the Plan or this Agreement;

ii.  comply with the Plan;

iii.  employ, retain or replace professionals to represent the Plan Administrator with respect to the Plan Administrator's responsibilities, which professionals may be counsel or advisors to the Committee or the Debtors;

iv.  object to Claims as provided in the Plan and prosecute such objections or decline to object to Claims or prosecute any objection to Claims;

v.  compromise, settle or abandon any issue or dispute regarding the amount, validity, priority, treatment or allowance of any Claims;

vi.  exercise such other powers as may be vested in the Plan Administrator pursuant to the Plan, this Agreement or any other Order of the Bankruptcy Court, including the Confirmation Order, or otherwise act on behalf of the Post-Effective Date Debtors from and after the Effective Date;

vii.  file applicable tax returns for the Post-Effective Date Debtors, pay applicable taxes, and challenge, dispute, negotiate and resolve the assessment of any taxes by any foreign, domestic, federal, state, local or other taxing authority;

viii.  seek to resolve any tax liability pursuant to sections 346, 505 and 1146 of the Bankruptcy Code;

ix.  take any and all actions necessary or appropriate to comply with all withholding, payment and reporting requirements imposed by any federal, state, local or foreign taxing authority;

x.  administer and wind down any of the Post-Effective Date Debtors' remaining employee benefit plans, including 401(k) benefit plans;

xi.  comply with any continuing obligations of the Post-Effective Date Debtors under the Sale Transactions and take all actions necessary or appropriate to enforce the Post-Effective Date Debtors' rights under the Sale Orders;

2

xii.   establish, maintain, fund and/or administer the Professional Fee Escrow Account;

xiii.   file quarterly operating or other periodic reports with the Bankruptcy Court and pay any statutory fees required under 28 U.S.C. § 1930;

xiv.   sell, liquidate, monetize or otherwise dispose of any Wind Down Assets;

xv.   take any actions necessary or appropriate to wind down and dissolve any of the Post-Effective Date Debtors;

xvi.   in consultation with the Prepetition Agent, abandon or donate to a charitable organization any remaining assets of the Post-Effective Date Debtors that the Plan Administrator determines to be of inconsequential value or too impractical to distribute to holders of Allowed Claims under the Plan;

xvii.   seek entry of a final decree closing the Chapter 11 Cases; and

xviii.  subject to the provisions of the Wind Down Organizational Documents, pursue, settle, or abandon any Preserved Causes of Action.

e.   In no event shall the Plan Administrator be obligated to take any action, or refrain from taking any action, that the Plan Administrator believes in good faith to be unlawful or inconsistent with the Plan Administrator's fiduciary duties as the Plan Administrator.

f.   The Plan Administrator shall maintain books and records relating to the payment of expenses of, and liabilities of, Claims against or assumed by, the Debtors' Estates in such detail and for such period of time as may be necessary to enable the Plan Administrator to make full and proper accounting in respect thereof and to comply with applicable provisions of law.  Except as provided herein, nothing in this Agreement requires the Plan Administrator to file any accounting or seek approval of any court with respect to the administration of the Plan, or as a condition for making any payment or distribution out of the Estates' property.

## 3.  Limitation of Plan Administrator's Authority.

a.   The Plan Administrator shall not, and shall not be authorized to, engage in any trade or business with respect to the Estates' property or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the Plan and this Agreement and shall take such actions consistent with the prompt orderly distribution of the Estates' remaining property as are required by applicable law and the Plan.

b.   For the avoidance of doubt, the Plan Administrator shall not have any authority to pursue any Claims or Causes of Action, including Avoidance Actions, waived, exculpated or released in accordance with the provisions of the Plan or the Confirmation Order.

3

c.   Notwithstanding anything to the contrary in this Agreement, any and all payments and other disbursements made, or to be made, by the Plan Administrator shall be subject to, and made in accordance with, the Wind-Down Budget as provided in the Plan.

4.  **Compensation of Plan Administrator.**

a.   The Plan Administrator will be paid by the Estates and the Post-Effective Date Debtors for the Services at [~~_____~~]$20,000 per month for the first six (6) months following the Effective Date and at $15,000 per month beginning in the seventh (7) month following the Effective Date, subject to periodic adjustments to reflect economic and other conditions.   The Plan Administrator will periodically bill the Post-Effective Date Debtors for fees and out-of-pocket expenses.

b.   The payment of the fees, costs and expenses of the Plan Administrator shall be made in the ordinary course of business upon presentment of an invoice in customary form and shall not be subject to the approval of the Bankruptcy Court, but, for the avoidance of doubt shall be subject to the Wind-Down Budget as set forth in the Plan.

5.  **Retention of Plan Administrator Professionals.**

a.   The Plan Administrator may, without the need for further Bankruptcy Court approval, employ or retain agents, financial advisors, attorneys, consultants, independent contractors, representatives and other professionals to advise or assist the Plan Administrator in the performance of the Plan Administrator's duties (collectively, the "Plan Administrator Professionals"), which Plan Administrator Professionals may include Persons and Entities that have provided professional services to the Debtors or Committee.

b.   The Plan Administrator shall pay the undisputed reasonable fees and expenses of the Plan Administrator Professionals upon presentment of an invoice in customary form.  If the Plan Administrator disputes any fees or expenses of any Plan Administrator Professional and the parties are unable to resolve the dispute consensually, the Bankruptcy Court shall determine the dispute.

6.  **Resignation; Termination.**

a.   The Plan Administrator may resign at any time before the Debtors' affairs are fully administered; provided, however, that such resignation shall not be effective until (i) the Plan Administrator appoints a successor Plan Administrator and such successor accepts such appointment in writing, or (ii) thirty (30) days following the date on which the Plan Administrator provides notice to the Bankruptcy Court that the Plan Administrator intends to resign without appointing a successor Plan Administrator. Upon the appointment of any successor Plan Administrator, the successor Plan Administrator, without the need for any further action by or notice to the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor Plan Administrator under the Plan, and all duties and responsibilities of the predecessor Plan Administrator relating to the Post-Effective Date Debtors shall

4

cease.  To the extent a successor Plan Administrator is appointed, such successor shall not be a Holder of a Claim or Interest.  No successor Plan Administrator shall bear any liability for any prior Plan Administrator, and no prior Plan Administrator shall bear any liability for any successor Plan Administrator.

b.  The Plan Administrator role shall terminate upon the earlier of (i) the Debtors' affairs being fully administered, as determined in the Plan Administrator's sole discretion, and (ii) the Bankruptcy Court entering an order terminating the Plan Administrator role. Upon such termination, all duties and responsibilities of the Plan Administrator shall cease.

**7.  Exculpation; Indemnification.**

a.  ~~Neither~~To the fullest extent permitted under applicable law, neither the Plan Administrator nor any Plan Administrator Professional shall be liable for losses, claims, damages, liabilities, or expenses in connection with the affairs or property of the Post-Effective Date Debtors to any Holder of an Allowed Claim or any other Person or Entity for the acts or omissions of the Plan Administrator under this Agreement or the Plan; provided, however, that the foregoing limitation shall not apply as to any losses, claims, damages, liabilities, or expenses suffered or incurred by any Holder of an Allowed Claim or any other Person or Entity that are found by a Final Order of a court of competent jurisdiction to have resulted primarily and directly from the actual fraud, gross negligence, or willful misconduct of the Plan Administrator or the Plan Administrator Professional, as applicable. Every act done or omitted, power exercised, or obligation assumed by any Plan Administrator Professional pursuant to the provisions of this Agreement shall be held to be done, omitted, exercised, or assumed, as the case may be, by such Plan Administrator Professional for and on behalf of the Plan Administrator and not otherwise; provided, however, that neither the Plan Administrator nor the Plan Administrator Professionals shall be deemed to be responsible for any other's actions or inactions outside of the scope of the authority provided by the Plan Administrator.  Except as provided in the proviso of the first sentence of this Section 7.a, every Holder of an Allowed Claim or other Person or Entity contracting or otherwise dealing with or having any relationship with the Plan Administrator or any Plan Administrator Professional shall have recourse only to the Post-Effective Date Debtors for payment of any liabilities arising in connection with such contracts, dealings, or relationships, and the Plan Administrator and the Plan Administrator Professionals shall not be individually liable therefor.  For the avoidance of doubt, except as provided in the proviso of the first sentence of this Section 7.a, the Plan Administrator, in the Plan Administrator's capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors or the Post-Effective Date Debtors.

b.  The Debtors and the Post-Effective Date Debtors shall indemnify and hold harmless: (i) the Plan Administrator (solely in the Plan Administrator's capacity as such) and (ii) the Plan Administrator Professionals (solely in their capacities as such) (each, an

"<u>Indemnified Party</u>"), with respect to any and all expenses arising out of or due to their post-Effective Date actions or omissions, or consequences of such actions or omissions, taken in connection with the Plan, this Agreement and the Confirmation Order, other than any such acts or omissions, or consequences of any such actions or omissions, resulting from such Indemnified Party's willful misconduct, actual fraud or gross negligence.  To the extent that an Indemnified Party asserts a claim for indemnification as provided above, (i) any payment on account of such claim shall be paid out of the Estates, any available insurance, or from any remaining retainer amounts held by such Indemnified Party in connection with its employment and retention in the Chapter 11 Cases and (ii) the expenses incurred by counsel to the Plan Administrator in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Indemnified Party is not entitled to be indemnified therefore) out of the Estates, any available insurance, or from any remaining retainer amounts held by such Indemnified Party or by counsel to the Plan Administrator in connection with their employment and retention in the Chapter 11 Cases.  For the avoidance of doubt, subject to the Wind-Down Budget, the Post-Effective Date Debtors' indemnification obligations hereunder are expenses of the Post-Effective Date Debtors and their Estates within the meaning of Section 8 of this Agreement. The indemnification provisions of this Agreement shall remain available to and be binding upon any former Plan Administrator or the estate of any decedent of the Plan Administrator and shall survive the termination of this Agreement.

c.    The Plan Administrator shall be authorized to obtain and pay for, out of the funds of the Estates, all reasonably necessary insurance coverage for the Plan Administrator and the Plan Administrator Professionals, and the Post-Effective Date Debtors' sole officer and director, including, but not limited to, coverage with respect to: (i) any property that is or may in the future become the property of the Estates; and (ii) the expenses, duties and obligations of the Plan Administrator and the Plan Administrator Professionals under this Agreement, the latter of which insurance coverage may remain in effect for a reasonable period of time after the termination of this Agreement, as determined by the Plan Administrator.

d.    The Plan Administrator may rely upon, and shall be fully protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper parties.

e.    The Plan Administrator may consult with any and all of its Plan Administrator Professionals ~~and it shall not be liable for any action taken or omitted to be taken by the Plan Administrator in accordance with the advice of such Plan Administrator Professionals, except to the extent such action taken or omitted to be taken is determined by a Final Order from a court of competent jurisdiction to constitute actual fraud, willful misconduct or gross negligence by the Plan Administrator.~~<u>.</u>

6

f.    The Plan Administrator may, but shall not be required (unless required by the Plan or Confirmation Order), to seek Bankruptcy Court approval in connection with any matter under this Agreement, including with respect to any action taken or not taken hereunder.   Any action or inaction approved by the Bankruptcy Court shall not constitute actual fraud, willful misconduct or gross negligence.

g.    The provisions of this Section 7 shall survive the termination of this Agreement and the termination or resignation of the Plan Administrator.

## 8.  Distributions.

The Plan Administrator shall make Distributions in accordance with the Plan and the Confirmation Order.  For the avoidance of doubt, the Plan Administrator shall reserve for or pay all of its expenses and the expenses of the Post-Effective Date Debtors and their Estates to the extent set forth in the Wind-Down Budget and consistent with the Wind Down Reserve before making any Distributions.

## 9.  Final Decree.

The Plan Administrator shall seek and obtain a final decree from the Bankruptcy Court upon the full administration of the Estates and the Chapter 11 Cases. For the avoidance of doubt, the Plan Administrator may, in its sole discretion, seek to close any Chapter 11 Case as and when such Chapter 11 Case is fully administered; provided, that, at least one Chapter 11 Case shall remain open until the Plan is fully administered and a final decree is obtained.

## 10.  Privilege.

In connection with any Preserved Causes of Action, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether oral or written) in respect of those Assets (collectively, the "Privileges") shall vest in the Post-Effective Date Debtors on the Effective Date, and thereafter, such Privileges shall belong to the Post-Effective Date Debtors and shall be waivable only by the Plan Administrator.  The Plan Administrator's receipt of any information subject to the Privileges shall not waive any such Privileges, and all such Privileges are expressly preserved.

## 11.  Ratification of Prior Acts.

To facilitate implementing the Plan and fully administering the Debtors' affairs in an orderly and efficient manner, the Plan Administrator may perform and be compensated in accordance with the Plan for certain Services in connection with the Plan Administrator's duties and obligations under this Agreement prior to the Effective Date, and the authorization for such performance and ratification of acts taken by the Plan Administrator prior to the Effective Date is evidenced by the execution hereof to the extent not already authorized by the Plan or the Confirmation Order.

## 12.  Other Matters.

a.    The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

b.    This Agreement shall be irrevocable, except as otherwise expressly provided in this Agreement.

c.    This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Delaware without reference to any conflict of laws provision thereunder, and the Bankruptcy Court shall retain jurisdiction over the Estates to the fullest extent permitted by law, including, but not limited to, for the purpose of interpreting, implementing or enforcing the provisions of this Agreement.  If, and only if, the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising from or related to this Agreement, the state and federal courts located in the State of Delaware shall have exclusive jurisdiction in relation to all such matters.  THE PLAN ADMINISTRATOR AND THE POST-EFFECTIVE DEBTORS HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT, OR OTHERWISE) RELATING TO THIS AGREEMENT.

d.    The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and the Confirmation Order.  If the provisions of this Agreement are found to be materially inconsistent with the provisions of the Plan or the Confirmation Order, the provisions of the Plan or Confirmation Order, as applicable, shall control.

e.    If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof.  In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect.

f.    No party hereto shall have the right to assign its rights hereunder, in whole or in part, without the prior written consent of the other party (other than to such party's affiliates or subsidiaries, which shall not require such consent).  This Agreement shall be binding upon and inure to the benefit of the parties' respective successors and permitted assigns.  For the avoidance of doubt, the Plan Administrator shall not be required to obtain the consent of any party to appoint a different individual to serve as the sole

officer and director of the Post-Effective Date Debtors under Section 1.b of this Agreement.

g.  Prior to the Effective Date, no change, modification, extension, renewal, ratification, waiver or rescission of this Agreement or of any of the provisions hereof shall be binding unless it is in writing and signed by both parties hereto.  From and after the Effective Date, the Plan Administrator may modify, supplement or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order with the prior written consent of the Prepetition Agent, which shall not be unreasonably withheld.

h.  No failure by the Post-Effective Date Debtors or the Plan Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any right, power or privilege.

i.  This Agreement (together with the Plan and the Confirmation Order) constitutes the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any prior agreements (whether written or oral) between the parties regarding the subject matter hereof.

j.  This Agreement may be executed in any number of counterparts each of which shall be an original, but all of which together shall constitute one and the same instrument. Signatures may be exchanged electronically by email or facsimile.

k.  The headings of sections of this Agreement are inserted for convenience only, and shall not affect the interpretation of any provision of this Agreement.

*[Signatures appear on the following page]*

*[Different first page link-to-previous setting changed from on in original to off in modified.].*

IN WITNESS WHEREOF, the parties hereto have executed and acknowledged this Agreement by their duly appointed representatives.

**BURTON HASTINGS ADVISORS, LLC**, not individually, but solely in its capacity as the Plan Administrator

_____

By:   Peter Hurwitz
Title:  Managing Member

-AND-

**BLINK HOLDINGS, INC.** on behalf of itself and its Post-Effective Date Debtor affiliates

_____

By:   Emanuel Pearlman
Title:  Authorized Representative

*[Different first page link-to-previous setting changed from on in original to off in modified.].*

| Summary report:<br>**Litera Compare for Word 11.5.0.74 Document comparison done on<br>1/30/2025 8:49:32 PM** | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://ycstwork.ycst.com/YCST01/32504026/2 | |
| **Modified DMS:** iw://ycstwork.ycst.com/YCST01/32504026/3 | |
| **Changes:** | |
| Add | 3 |
| Delete | 3 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 6 |