## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. 767 |

### DECLARATION OF STEVEN SHENKER IN SUPPORT OF ENTRY OF AN ORDER CONFIRMING THE SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF BLINK HOLDINGS, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION

I, Steven Shenker, do hereby declare, under penalty of perjury, that the following is true to the best of my knowledge, information and belief:

1.  I am the Chief Restructuring Officer ("**CRO**") of each of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**").[2]  In that capacity, I am familiar with the business and financial affairs of the Debtors and have been actively involved in these Chapter 11 Cases.  I submit this declaration (this "**Declaration**") in support of confirmation of the *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession*

---

[1]  The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354.  The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

[2]  Additional information about my background and professional experience can be found in the *Declaration of Steven Shenker, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 2].

[Docket No. 767] (as may be amended, supplemented, or modified from time to time, the "**Combined Disclosure Statement and Plan**").[3]

2.      Except as otherwise noted, all matters set forth herein are based on (a) my personal knowledge and belief, (b) my review of the relevant documents, including the Combined Disclosure Statement and Plan, (c) information supplied to me by the Debtors' professional advisors, (d) my view, based on my personal and professional experience and knowledge of the Debtors' business affairs and financial condition, or (e) for matters involving the requirements for Confirmation of the Combined Disclosure Statement and Plan under the Bankruptcy Code, my reliance on the advice of the Debtors' restructuring counsel ("**Debtor's Counsel**").  In particular, with respect to matters involving chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") or the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), matters set forth in this Declaration are based on reasonable inquiries conducted by me and reliance by me upon the advice of Debtors' Counsel. If called to testify, I could and would testify to the facts set forth herein.

### THE COMBINED DISCLOSURE STATEMENT AND PLAN

3.      I have reviewed and am generally familiar with the terms and provisions of the Combined Disclosure Statement and Plan.  With the Debtors' Counsel, I was personally involved in the development of, and discussions regarding, the terms of the Combined Disclosure Statement and Plan.  The Combined Disclosure Statement and Plan is the result of extensive arm's-length and good-faith negotiations among the Debtors and other interested

---

[3]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Combined Disclosure Statement and Plan.

parties, including the Prepetition Agent.  Under the Combined Disclosure Statement and Plan, the Plan Administrator will make distributions to the Holders of Allowed Claims, dissolve the Post-Effective Date Debtors at the appropriate time, and subsequently close the Chapter 11 Cases.

4.      On December 18, 2024, the Court entered an order [Docket No. 697] (the "**Interim Approval and Procedures Order**") approving the Combined Disclosure Statement and Plan on an interim basis.  To the best of my knowledge, information, and belief, based upon advice of the Debtor's Counsel, the Debtors, with the assistance of the Notice and Claims Agent, complied with the solicitation and noticing procedures approved by the Interim Approval and Procedures Order, as well as the relevant provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, as evidenced by the affidavit of service filed by the Notice and Claims Agent on January 2, 2025 [Docket No. 707].  To that end, I understand that, on December 26, 2024, the Debtors published the *Notice of:  (I) Approval of Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; and (II) the Hearing to Consider (A) Final Approval of the Combined Disclosure Statement and Plan as Containing Adequate Information and (B) Confirmation of the Plan,* in the national edition of *USA Today*, as evidenced by the affidavit of publication filed by the Notice and Claims Agent on January 9, 2025 [Docket No. 723].

5.      I understand that a disclosure statement must provide "adequate information" sufficient to allow hypothetical investors to make informed decisions on whether to vote to accept or reject a Chapter 11 plan.  I further understand that the Combined Disclosure Statement and Plan includes, among other things, a description of:  (a) the events leading to the filing of the Chapter 11 Cases, (b) a summary of the Chapter 11 Cases; (c) the classification and

treatment of Claims and Interests under the Combined Disclosure Statement and Plan, (d) the Debtors' Assets; (e) the estimated Distributions to Holders of Allowed Claims; (f) certain risk factors that may be considered in connection with the Combined Disclosure Statement and Plan; (g) certain federal tax consequences of the Combined Disclosure Statement and Plan; (h) an overview of the requirements for Confirmation of the Combined Disclosure Statement and Plan; (i) the procedures for voting on the Combined Disclosure Statement and Plan; and (j) the means for implementation of the Combined Disclosure Statement and Plan.  I believe that, under the circumstances, the disclosures set forth in the Combined Disclosure Statement and Plan provide all parties with sufficient information to allow such parties an opportunity to reach a well-informed conclusion with respect to the Combined Disclosure Statement and Plan and proposed approval and confirmation thereof.

6.     On January 8, 2025, the Debtors filed the Plan Supplement.  The Plan Supplement identified Burton Hastings Advisors LLC as the Plan Administrator.  The Plan Administrator will receive compensation in connection with the services that are to be provided.

**SATISFACTION OF PLAN CONFIRMATION REQUIREMENTS**

7.     I have been advised by the Debtors' Counsel and believe, based on my review of the Combined Disclosure Statement and Plan and my discussions with those advisors, and for the reasons set forth below, that the Combined Disclosure Statement and Plan satisfies all applicable provisions of the Bankruptcy Code, as required by Section 1129(a)(1) of the Bankruptcy Code, and should be confirmed.

8.     I have further been advised by counsel and believe, for the reasons set forth herein, including the Debtors' compliance with the Interim Approval and Procedures Order, that the Debtors, as the sole proponents of the Combined Disclosure Statement and Plan, have

complied with the applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code.

### A. *Classes of Claims and Interests – Section 1122; 1123(a)(1)-(3).*

9.    I understand that section 1122 of the Bankruptcy Code permits a plan to classify various claims and equity interests into different classes, so long as all the claims and interests in a particular class are substantially similar. I believe each Class identified in the Combined Disclosure Statement and Plan only contains Claims or Interests that are substantially similar to other Claims or Interests within such Class, and it is my understanding that the Classes identified in the Combined Disclosure Statement and Plan were not prepared for purposes of affecting the votes on the Combined Disclosure Statement and Plan or for any other inappropriate purposes. Further, the Combined Disclosure Statement and Plan provides for the same treatment of each Claim or Interest within a Class.

### B. *Means of Implementation – Section 1123(a)(5).*

10.    I understand that Section 1123(a)(5) of the Bankruptcy Code requires that that a plan must provide adequate means for the plan's implementation. I believe that the Combined Disclosure Statement and Plan provides for adequate means for its implementation, including by providing for (i) the appointment of the Plan Administrator, (ii) the distribution of the Debtors' remaining Assets by the Plan Administrator as provided for therein, and (iii) the ultimate dissolution of the Debtors.

### C. *Release, Exculpation, and Injunction Provisions.*

11.    The Combined Disclosure Statement and Plan includes certain narrow release, exculpation, and injunction provisions. With respect to the Debtor Releases (as defined below), I believe that the Debtor Released Parties have provided valuable contributions to the

32664424.4

progress of the Chapter 11 Cases, including by assisting the Debtors' prosecution of the Chapter 11 Cases, providing the funding necessary to prosecute the Chapter 11 Cases, and assisting in (i) the pursuit, negotiation, and consummation of the going-concern Sale Transactions, (ii) the formulation and pursuit of Confirmation of the Combined Disclosure Statement and Plan, and (iii) the preservation of the Debtors' Assets for the benefit of all stakeholders.

12.     Each party exculpated under the Combined Disclosure Statement and Plan is a fiduciary of the Debtors' estates, and I am advised that  that the protection from liability that the exculpation clause provides, on a postpetition basis, to these parties is appropriate under the Bankruptcy Code, given their efforts in the Chapter 11 Cases, including with respect to the process of formulating and confirming the Combined Disclosure Statement and Plan and their fiduciary relationship with the Debtors and their Estates.

13.     Among other things, these provisions are the product of extensive arm's-length negotiations, have been critical to obtaining the support of the various constituencies, and are an integral part of the Combined Disclosure Statement and Plan.  I, and to the best of my knowledge, the Debtors, are unaware of any viable claims against any party that are being released or otherwise barred through Section 14.1(a) of the Combined Disclosure Statement and Plan.  Nonetheless, the release, exculpation and injunction provisions are important in that they remove the threat of collateral attacks against the Debtor Released Parties and Exculpated Parties related to their good faith acts or omissions on behalf of the Estates, in consideration for the critical role they played in, and the significant contributions made to, the Chapter 11 Cases, constituting good and valuable consideration to the Debtors, their Estates, and creditors. In light of these various contributions, and as further discussed below, and my understanding that the protections provided to the exculpated parties are permissible under the Bankruptcy Code, I

believe that the releases and exculpations set forth in the Combined Disclosure Statement and Plan are fair, equitable, and reasonable, and that they are necessary and integral components thereof.

14.     ***Debtor Releases.***  Section 14.1(b) of the Combined Disclosure Statement and Plan provides for certain releases of claims and Causes of Action held by the Debtors against the Debtor Released Parties, which I understand are customary in Chapter 11 cases (the "**Debtor Releases**").

15.     It is my belief that the Debtor Releases were instrumental in formulating and obtaining support for the Combined Disclosure Statement and Plan, which is the result of, among other things, extensive arm's-length and good-faith negotiations among the Debtors and various stakeholders.  Moreover, the Debtor Releases are limited in scope and preserve the status quo with respect to any claims that the Debtors may have against the parties expressly carved out from the Debtor Releases.

16.     Based on my participation in the negotiations regarding the Combined Disclosure Statement and Plan, I am not aware of any valid Causes of Action that might be asserted against any of the Debtor Released Parties by the Debtors and it is my understanding that the proceeds of any such Causes of Action would primarily inure to the benefit of the Holders of the Prepetition Loan Secured Claims, who do not object to the Debtor Releases and voted to accept the Combined Disclosure Statement and Plan.

17.     Many of the Debtor Released Parties, including the directors, officers, and Professionals, have served the Debtors during the Chapter 11 Cases, and I believe, based on my firsthand experience, that they have worked tirelessly to maximize value for the benefit of all stakeholders.  The directors and officers oversaw and managed the Debtors' business and

financial affairs throughout the Chapter 11 Cases, including implementing the going-concern Sale Transactions and thereby preserving a significant number of jobs and many go-forward vendor relationships.  Additionally, the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders made various significant contributions during the Chapter 11 Cases, including providing the funding therefor, supplementing that funding to support the Sale Transactions, consenting to the use of cash collateral, which support allowed for the successful continued operation of the Debtors' business during the Chapter 11 Cases, and participating in the negotiation and development of the Combined Disclosure Statement and Plan.

18.     Based on my active participation in the negotiations regarding the Combined Disclosure Statement and Plan, and based on my consideration of the information provided to me by the Debtors' Counsel and other advisors, I believe that the Debtor Releases are narrowly and appropriately tailored, and that they constitute essential components of the Combined Disclosure Statement and Plan, which have been included in the sound exercise of the Debtors' business judgment.  I believe, based on my discussions with the Debtors' other advisors and other case constituents, that without the Debtor Releases, the Debtors would neither have been able to secure the significant benefits provided by the Combined Disclosure Statement and Plan nor build consensus therefor.

19.     ***Third-Party Releases***.  Section 14.1(c) of the Plan provides for releases by the Releasing Parties (the "**Third-Party Releases**") of any and all claims, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights, remedies, and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against any of the Third-Party Released Parties, that are or may be

based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, their respective Assets, the Estates, the Chapter 11 Cases, the Prepetition Credit Agreement, the DIP Facility, any of the Debtors' in- or out-of-court restructuring efforts, the Sale Transactions, the Sale Documents, or the Combined Disclosure Statement and Plan.

20.    I understand that each of the Releasing Parties has demonstrated or manifested their affirmative consent to the Third-Party Releases.  With respect to the Debtors, the DIP Agent and DIP Lenders, and the Committee, the Debtors are the proponents of the Combined Disclosure Statement and Plan, and counsel to each of the DIP Agent and DIP Lenders and the Committee commented on the Combined Disclosure Statement and Plan and, I understand, do not object to the Releasing Parties definition.

21.    The DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders each executed the RSA, which explicitly contemplated the inclusion of the Third-Party Releases as part of the Combined Plan and Disclosure Statement.  I believe that the Solicitation Materials and other noticing documents filed and served in connection with the Combined Plan and Disclosure Statement provided recipients with timely, sufficient, appropriate, and adequate notice of the Third-Party Releases, including that the Prepetition Agent and Prepetition Lenders would grant the Third-Party Releases, consistent with their entry into the RSA.  Accordingly, based upon that applicable standard for a consensual release as I understand it from discussions with Debtors' Counsel, I believe that each Releasing Party has demonstrated their respective affirmative consent to the Third-Party Releases.  Therefore, I believe that the Third-Party Releases should be approved on the basis that they are consensual in nature.

22.    Based on my participation in the negotiations regarding the Combined Disclosure Statement and Plan and discussions with the Debtors' Counsel, I believe that the Third-Party Releases are an essential component of the Combined Disclosure Statement Plan and were a material inducement to achieving consensus with respect thereto and should be approved.

23.    ***Exculpation.***    Section 14.1(a) of the Combined Disclosure Statement and Plan provides for exculpation of the Exculpated Parties, which parties, I understand, have fiduciary obligations to the Estates, except in cases constituting a criminal act or involving fraud, gross negligence or willful misconduct by such parties, each as determined by a Final Order of the Court.    Sections 14.1(a) and 14.1(d) of the Combined Disclosure Statement and Plan, together, provide that all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, from commencing or continuing in any manner any actions or other proceeding of any kind in respect of any Claim, Interest, or Cause of Action released or exculpated under Article XIV of the Combined Disclosure Statement and Plan.

24.    ***Injunction.***    Based upon my review of the Combined Disclosure Statement and Plan, my personal knowledge of the circumstances leading up to its development, and my discussions with the Debtors' legal advisors, I understand that the release, exculpation and injunction provisions set forth in Article XIV of the Combined Disclosure Statement and Plan are proper.    Additionally, I believe that the injunction provisions of Section 14.1(d) are critical to the releases and exculpation provided for in Article XIV of the Combined Disclosure Statement and Plan.    It is also my understanding and belief that the injunction provisions provided for in Article XIV confer material benefits on, and are in the best interests of, the Debtors, their Estates, and creditors, and are necessary to implementation of the Combined Disclosure Statement and Plan.

25.    After the Effective Date, the Combined Disclosure Statement and Plan calls for the Post-Effective Date Debtors to be vested with the Wind Down Assets, which include a finite amount of cash (the Wind Down Reserve) consisting of (i) any amounts authorized under the Approved Budget (as defined in the Final DIP Order) that remain unused as of the Effective Date but will remain available to pay specific budgeted expenses incurred during the Chapter 11 Cases that for whatever reason may remain due and payable on the Effective Date; (ii) $1 million from the "Winddown Expenses" line item of the Approved Budget (as defined in the Final DIP Order), which will be available to pay any additional Allowed Secured, Administrative, or Priority Claims and to reimburse the Plan Administrator and the Plan Administrator's reasonable expenses, and (iii) the DIP Budget Increased Amount, which consistent with Exhibit B of the Combined Disclosure Statement and Plan is available to pay certain professional fees and expenses incurred through the Effective Date.

26.    While I believe that the Wind Down Assets provide the Plan Administrator with sufficient resources to accomplish its tasks, the pool of funds is limited and was carefully negotiated by the Prepetition Agent to reflect no more than would be necessary for the Plan Administrator to accomplish its tasks, given that the funds at issue would otherwise flow to the Prepetition Secured Parties.

27.    Absent the Injunction, the Plan Administrator could find itself forced to dedicate time and resources to defending the Post-Effective Date Debtors in connection with actions that the Combined Disclosure Statement and Plan disposed of, which would deplete the Wind Down Assets in an unintended manner and imperil the Plan Administrator's ability to complete the tasks called for in the Combined Disclosure Statement and Plan and Plan Administrator Agreement. This would reduce the recoveries of all creditors without any

warranted benefit to the creditor pursuing such resolved claims or causes of action. I believe, therefore, that the Injunction serves the goals set forth in the Combined Disclosure Statement and Plan of timely completing the full administration of these Chapter 11 Cases and winddown and dissolution of the Debtors and should be approved.

### D. *The Plan Is Proposed in Good Faith - Section 1129(a)(3)*

28.     I believe that the Combined Disclosure Statement and Plan has been proposed by the Debtors in good faith, with the legitimate and honest purpose of liquidating the Debtors' remaining Assets, if any, and winding down the Debtors' business affairs in an orderly fashion. I further believe that, under the circumstances of the Chapter 11 Cases, the Combined Disclosure Statement and Plan will maximize the value of the Debtors' estates and recoveries for all creditors. The Combined Disclosure Statement and Plan is the product of extensive, arm's-length negotiations among, and is supported by, the Debtors' key stakeholders.

29.     The Debtors filed the Combined Disclosure Statement and Plan with the expectation that it will allow for a timely and efficient liquidation and distribution of the Assets to Holders of Allowed Claims in accordance with the Combined Disclosure Statement and Plan. Further, I believe that the Combined Disclosure Statement and Plan maximizes the value of the Estates for their creditors.

### E. *Payment of Professional Fees and Expenses - Section 1129(a)(4)*

30.     It is my understanding that section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, by a debtor or by a person receiving distributions of property under a plan be approved by the Bankruptcy Court as reasonable. Under the Combined Disclosure Statement and Plan, any payments made or to be made for services, or for costs and expenses incurred, in connection with the Chapter 11 Cases

are subject to the Court's approval.   I believe that all payments to be made under the Combined Disclosure Statement and Plan are reasonable and appropriate in the Chapter 11 Cases, and the compensation structure for the costs and expenses of the Plan Administrator are reasonable to secure the services necessary to implement the Combined Disclosure Statement and Plan and the Wind Down of the Debtors' Estates.

### F.  *Disclosure Regarding Directors, Managers and Officers and Appointment of Plan Administrator  - Section 1129(a)(5)*

31.    I understand that Section 1123(a)(5) requires that a plan disclose the identity of directors, officers or other individuals serving after confirmation of the plan. In accordance with section 1123(a)(5) of the Bankruptcy Code, Article IX of the Combined Disclosure Statement and Plan provides for the appointment of the Plan Administrator as of the Effective Date.  Under section 9.4 of the Combined Disclosure Statement and Plan, each of the Debtors' directors, officers, and managers, as applicable, shall be terminated automatically and replaced by the Plan Administrator. The Plan Supplement identified that Burton Hastings Advisors LLC would serve as the Plan Administrator.  Burton Hastings Advisors LLC was selected as the Plan Administrator by the Committee, with the consent of the Debtors and in consultation with the Prepetition Agent and the Prepetition Required Lenders.  I believe that the Plan Administrator's restructuring experience, as well as its principal's prior engagement in these Chapter 11 Cases, will prove helpful in the wind-down of the Debtors' Estates.  I further believe that, the terms of the Plan Administrator Agreement, including those provisions providing that, to the fullest extent permitted under applicable law, the Post-Effective Date Debtors will not hold the Plan Administrator or its professionals liable for claims related to acts and omissions unless such claims or omissions are the result of fraud, gross negligence, or

willful misconduct, are appropriate and consistent with the sort of protections that the Debtors'

corporate charter documents provide to the Debtors' officers and directors at present.

32.     Based upon my review of the Combined Disclosure Statement and Plan

and the Plan Administrator Agreement, I understand the responsibilities of the Plan

Administrator will include, among other things: (1) taking all steps and executing all instruments

and documents necessary to make Distributions to Holders of Allowed Claims; (2) objecting to

Claims and prosecuting such objections, compromising, settling, or abandoning any issue or

dispute regarding the amount, validity, priority, treatment or allowance of any Claims, or

declining to object to Claims or prosecute any objection to Claims; (3) filing applicable tax

returns for the Post-Effective Date Debtors, paying applicable taxes, challenging, disputing,

negotiating and resolving the assessment of any taxes by any foreign, domestic, federal, state,

local or other taxing authority, seeking to resolve any tax liability pursuant to sections 346, 505

and 1146 of the Bankruptcy Code, and taking any and all actions necessary or appropriate to

comply with all withholding, payment and reporting requirements imposed by any federal, state,

local or foreign taxing authority; (4) complying with any continuing obligations of the Post-

Effective Date Debtors under the Sale Transactions and taking all actions necessary or

appropriate to enforce the Post-Effective Date Debtors' rights under the Sale Orders;

(5) establishing, maintaining, funding and/or administering the Professional Fee Escrow

Account; (6) filing quarterly operating or other periodic reports with the Bankruptcy Court and

paying any statutory fees required under 28 U.S.C. § 1930; (7) selling, liquidating, monetizing or

otherwise disposing of any Wind Down Assets; (8) taking any actions necessary or appropriate

to wind down and dissolve any of the Post-Effective Date Debtors; (9) seeking entry of a final

32664424.4

decree closing the Chapter 11 Cases; and (10) subject to the provisions of the Wind Down Organizational Documents, pursuing, settling, or abandoning any Preserved Causes of Action.

### G. *Governmental Regulatory Rate Approval - Section 1129(a)(6)*

33.     I understand that section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided in the plan.  The Debtors' business does not involve the establishment of rates subject to approval of any governmental regulatory commission, and, as a result, I understand that the Combined Disclosure Statement and Plan does not propose the change of any such rates.

### H. *Best Interest of Creditors - Section 1129(a)(7)*

34.     I understand that section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired claim or interest either accept the plan or receive or retain under the plan property of a value that is not less than the value such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  This requirement is known as the "best interests" test. Under the Combined Disclosure Statement and Plan, Classes 3, 4, 5, and 6 are Impaired.  I understand that the "best interests" test, therefore, requires that each Holder of a Claim or Interest in Classes 3, 4, 5, and 6 either accept the Combined Disclosure Statement and Plan or receive or retain under the Combined Disclosure Statement and Plan property having a present value, as of the Effective Date of the Combined Disclosure Statement and Plan, not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  I understand that the best interests test is inapplicable to Class 3 because Class 3 voted to accept the Combined Disclosure Statement and Plan.

35.    As described in Section 4.8 of the Combined Disclosure Statement and Plan, entitled "Best Interests Test and Liquidation Analysis," because the Combined Disclosure Statement and Plan is a liquidating plan, I understand that the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Combined Disclosure Statement and Plan.  However, I believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur, and Holders of Claims would not receive the recoveries set forth in the Combined Disclosure Statement and Plan that were consented to by the Prepetition Lenders, who hold a Lien on all of the Debtors' remaining Assets.

36.    During the course of these Chapter 11 Cases, the Debtors sold substantially all of their Assets, and, following the consummation of the Sale Transactions, the Debtors began the process of liquidating their remaining Assets and winding down the Estates in a timely and efficient manner.  All of the Debtors' remaining Assets are subject to the Liens and Claims of the Prepetition Lenders under the Prepetition Credit Agreement.  I understand that, as of the closing of the Sale Transactions, the amount still outstanding under the Prepetition Loan Secured Claims was approximately $108,906,895.87, and after application of the proceeds of the Sale Transactions in full satisfaction of the DIP Claims and partial satisfaction of the Prepetition Secured Claims, the remaining amount outstanding under the Prepetition Secured Claims is approximately $74,824,089.44.  Despite this, pursuant to the terms of the Combined Disclosure Statement and Plan, I understand the Prepetition Lenders have consented to confirmation of the Combined Disclosure Statement and Plan, which utilizes the proceeds of the remaining Assets for purposes of satisfying all Allowed Administrative Claims, Other Secured Claims, Priority

Tax Claims, and Priority Non-Tax Claims, before excess Cash, if any, can be distributed to the Prepetition Lenders.

37.     Further, I understand from discussions with the Debtors' advisors that the costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee.  I believe that such amount would exceed the amount of expenses that would be incurred in implementing the Combined Disclosure Statement and Plan and winding up the affairs of the Debtors. Conversion of the Chapter 11 Cases to cases under chapter 7 also would likely delay the liquidation and distribution process.  The Estates would be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for professionals) that are allowed in the chapter 7 cases.

38.     Accordingly, and as demonstrated by the Liquidation Analysis attached as Exhibit A to the Combined Disclosure Statement and Plan, it is my belief that Holders of Allowed Claims would not receive more than anticipated under the Combined Disclosure Statement and Plan if the Chapter 11 Cases were converted to chapter 7 cases and, therefore, the classification and treatment of Claims and Interests in the Combined Disclosure Statement and Plan complies with section 1129(a)(7) of the Bankruptcy Code.  Based on the foregoing, and upon my discussion with Debtors' Counsel and other professionals, I believe that the Combined Disclosure Statement and Plan satisfies the "best interests test" because no creditor or equity holder in Classes 4, 5, and 6 would receive or retain property on account of its Claim or Interest under a liquidation scenario of a value that is more than such party will receive under the Combined Disclosure Statement and Plan.

**I.    _Acceptance by Impaired Class and Satisfaction of "Cramdown"_**
**_Requirements - Sections 1129(a)(8) and 1129(b)_**

39.    I understand that the Bankruptcy Code generally requires that each class of claims or interests must either accept the plan or be unimpaired under the plan.  If any class of claims or interests rejects the plan, I understand the plan must satisfy the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code with respect to the claims or interests in that class. I understand that Classes 1 and 2 are conclusively presumed to accept the Combined Disclosure Statement and Plan.  I further understand that the Prepetition Lenders, as the Holders of the Prepetition Loan Secured Claims in Class 3, voted to accept the Combined Disclosure Statement and Plan at each Debtor.  I also understand that Classes 4, 5, and 6 (the "**Deemed Rejecting Classes**") are deemed to reject the Combined Disclosure Statement and Plan.  As such, I am advised that the Combined Disclosure Statement and Plan does not meet the requirements of section 1129(a)(8) of the Bankruptcy Code but that the Combined Disclosure Statement and Plan can still be confirmed because the Combined Disclosure Statement and Plan satisfies the "cram down" provisions of 1129(b) of the Bankruptcy Code.

40.    I understand that no Claims or Interests junior to the Deemed Rejecting Classes are receiving or retaining any property under the Combined Disclosure Statement and Plan.  Furthermore, as evidenced by the estimated recoveries set forth in the Combined Disclosure Statement and Plan, no Class of Claims or Interests is receiving more than full payment on account of their Claims.  Additionally, the Combined Disclosure Statement and Plan provides for similarly situated creditors to receive the same treatment.  Accordingly, I believe that the cram down test of section 1129(b) of the Bankruptcy Code is satisfied.

### J. *Payment of Allowed Priority Claims - Section 1129(a)(9)*

41.     It is my understanding that the Bankruptcy Code generally requires that claims entitled to administrative priority must be repaid in full in cash or receive certain other specified treatment as agreed to by the claim holder in satisfaction of the claim. I have been advised and believe that the Combined Disclosure Statement and Plan's treatment of Administrative Claims, Other Secured Claims, Professional Fee Claims, Priority Non-Tax Claims, and Priority Tax Claims satisfies section 1129(a)(9) of the Bankruptcy Code because Articles VI and VII of the Combined Disclosure Statement and Plan provide for full payment to all Holders of such Claims.

### K. *Acceptance by Non-Insider Class - Section 1129(a)(10)*

42.     It is my understanding that section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan "without including any acceptance of the plan by any insider." I have been advised that the Holders of the Prepetition Loan Secured Claims in Class 3, none of which are insiders, voted to accept the Combined Disclosure Statement and Plan.

### L. *Feasibility - Section 1129(a)(11)*

43.      It is my understanding that section 1129(a)(11) of the Bankruptcy Code provides that a plan may only be confirmed if confirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.  The Combined Disclosure Statement and Plan is a plan of liquidation designed to maximize the value of the Debtors' Assets and to distribute the proceeds thereof in an orderly and efficient manner to the holders of Allowed Claims in accordance with the Combined

Disclosure Statement and Plan.  The Wind Down Assets remaining as of the Effective Date will largely consist of Cash.  The Plan proposes that the Plan Administrator will satisfy all remaining Allowed Administrative Claims, Other Secured Claims, Professional Fees, Priority Tax Claims, and Priority-Non Tax Claims.  I understand that after the liquidation and distribution of Wind Down Assets[4] is complete and distributions to Allowed Claims have been made in accordance with the Combined Disclosure Statement and Plan, the Plan Administrator will complete the wind down of the Debtors' estates by (i) filing, at the appropriate time, a motion to close the Chapter 11 Cases, (ii) filing final tax returns, and (iii) taking all actions necessary to dissolve the Post-Effective Date Debtors, and distribute any remaining unused portion of the Wind-Down Budget to the Holders of the Prepetition Loan Secured Claims, at the appropriate time.

44.    Based on a review of actual Claims asserted against the Debtors, and in consultation with the Debtors' advisors, it is my understanding that the Debtors expect to have sufficient Cash to ensure that the Holders of Allowed Administrative Claims, Professional Fees, Priority Tax Claims, Other Secured Claims, and Priority Non-Tax Claims will be Paid in Full.  I believe that the Combined Disclosure Statement and Plan provides the financial wherewithal necessary for its implementation.  Because the Debtors are liquidating their remaining Assets, I do not believe that the Debtors will require further financial reorganization following the Effective Date.  Accordingly, based on the foregoing, I believe the Combined Disclosure Statement and Plan satisfies the requirements of feasibility under section 1129(a)(11) of the Bankruptcy Code.

---

[4]    I understand that, as part of the negotiation among the Debtors, the Committee, and the Prepetition Agent regarding the terms of the Combined Disclosure Statement and Plan, the Committee requested, and the Debtors and Prepetition Agent agreed, that any Causes of Action arising under chapter 5 of the Bankruptcy Code or any state law equivalent thereof are to be waived, relinquished, and abandoned as of the Effective Date and shall not be considered Wind Down Assets.

32664424.4

20

### M.  *Payment of Statutory Fees – Section 1129(a)(12)*

45.      I understand that section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.  The Combined Disclosure Statement and Plan provides that all fees required under 28 U.S.C. § 1930 will be paid on or before the Effective Date, or when such fees come due in the ordinary course, and I believe that the Debtors or the Post-Effective Date Debtors, as applicable, have adequate means to make such payments.

### N.  *Retiree Benefits, Domestic Support Obligations, Individual and Non-Profit Plans - Section 1129(a)(13), (14),(15) and (16)*

46.      It is my understanding that the Debtors do not have any retiree benefit programs within the meaning of section 1114 of the Bankruptcy Code.   Thus, Section 1129(a)(13) is not applicable.   Moreover, I understand that sections 1129(a)(14)-(16) are inapplicable to these cases as the Debtors are not subject to domestic support obligations, are not individuals, and are not non-profit corporations.

### O.  *Only One Plan May Be Confirmed - Section 1129(c)*

47.      It is my understanding that section 1129(c) of the Bankruptcy Code prohibits the confirmation of multiple plans. The Combined Disclosure Statement and Plan is the only chapter 11 plan that has been proposed for confirmation in the Chapter 11 Cases.

### P.  *Avoidance of Taxes or Application of Section 6 of the Securities Act  - Section 1129(d)*

48.      It is my understanding that section 1129(d) prohibits confirmation of a plan if the Bankruptcy Court finds the principal purpose of the plan is avoidance of taxes or the application of Section 5 of the Securities Act of 1933.  The Combined Disclosure Statement and Plan does not have as one of its principal purposes the avoidance of taxes or avoidance of the

32664424.4

21

requirements of Section 5 of the Securities Act of 1933, and I am unaware of any filing by any governmental agency asserting such avoidance.

### Q. *Executory Contracts - Section 1123(b)(2)*

49.     Article XII of the Combined Disclosure Statement and Plan provides for the rejection of Executory Contracts and Unexpired Leases that have not been previously assumed or rejected under section 365 of the Bankruptcy Code unless (i) identified for assumption in the Plan Supplement, (ii) subject to a pending motion to assume such Executory Contracts or Unexpired Leases as of the Effective Date, or (iii) previously assumed, assumed and assigned, or rejected by the Debtors in the Chapter 11 Cases, including in connection with the Sale Transactions.  For the avoidance of doubt, certain Executory Contracts and Unexpired Leases have been designated as Reserved Agreements in accordance with the Stalking Horse Agreement.  Such agreements shall be assumed or rejected in accordance with the terms of the Stalking Horse Agreement upon or before the expiration of the Designation Rights Period.

50.     The Debtors have reviewed their Executory Contracts and Unexpired Leases and determined to reject all remaining Executory Contracts and Unexpired Leases in connection with the Combined Disclosure Statement and Plan, and I believe that they have exercised sound business judgment in making that determination.

### CONCLUSION

51.     I believe, in my business judgment, that the Combined Disclosure Statement and Plan will enable the Holders of Allowed Claims to realize the highest possible recoveries under the circumstances of the Chapter 11 Cases.  I therefore conclude, in my business judgment, that the Combined Disclosure Statement and Plan is in the best interests of all creditors, and respectfully request it be confirmed by the Court.

32664424.4

52.     Additionally, absent a waiver of the 14 day stay prescribed by Rule 6004, I believe the Debtors will incur significant administrative and professional costs that would diminish recoveries and estate value, to the detriment and disadvantage of the creditors and the Plan Administrator.  Accordingly, to preserve as many resources for the Plan Administrator as possible, I believe it is in the best interest of the Debtors and their estates to go effective on the Combined Disclosure Statement and Plan as soon as possible.

I certify under penalty of perjury that, based upon my knowledge, information, and belief as set forth in this Declaration, the foregoing is true and correct.

Dated: January 31, 2025                         */s/ Steven Shenker*_____
                                                Steven Shenker
                                                Chief Restructuring Officer
                                                Blink Holdings, Inc., *et al.*

32664424.4