**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.*,[1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |

**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF
THE SECOND AMENDED COMBINED DISCLOSURE STATEMENT
AND JOINT CHAPTER 11 PLAN OF BLINK HOLDINGS, INC. AND
ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

---

[1]    The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354.  The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the undersigned counsel for the Debtors.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................ 1

II.  OVERVIEW OF THE PLAN .......................................................... 2

III.  SOLICITATION AND VOTING ON THE PLAN ................................ 3

IV.  THE PLAN SHOULD BE APPROVED AS CONTAINING ADEQUATE
INFORMATION ON A FINAL BASIS. ............................................ 5

V.  THE PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH
THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE. ........... 7

    A.  The Plan Complies with All Applicable Provisions of the Bankruptcy
Code—11 U.S.C. § 1129(a)(1). ................................................ 8

        1.  The Classification of Claims and Interests in the Plan Satisfies the
Requirements of Section 1122 of the Bankruptcy Code ............. 8

        2.  The Plan Satisfies the Requirements of Bankruptcy Code Section
1123(a). .......................................................................... 9

        3.  The Plan Complies With the Requirements of Bankruptcy Code
Section 1123(b). ............................................................... 10

            a.  The Plan's Discretionary Provisions are Consistent
withBankruptcy Code Section 1123(b) .............................. 10

            b.  The Releases, Exculpation, and Injunction Should Be
Approved ....................................................................... 12

                (i)  Debtor Release (Plan § 14.1(b)) .......................... 12

                (ii)  Third-Party Releases (Plan § 14.1(c)) .................. 16

                (iii)  Exculpation (Plan § 14.1(a)). .............................. 18

                (iv)  Injunction (Plan § 14.1(d)) ................................. 19

    B.  The Debtors Have Complied with the Applicable Provisions of the
Bankruptcy Code—11 U.S.C. § 1129(a)(2) ................................ 19

    C.  The Plan Has Been Proposed in Good Faith and Not by Any Means
Forbidden by Law—11 U.S.C. § 1129(a)(3). ............................. 20

    D.  The Plan Provides that Payments Made by the Debtors for Services or
Costs and Expenses are Subject to Approval—11 U.S.C. § 1129(a)(4) .......... 21

    E.  The Debtors Have Disclosed the Identity of the Plan Administrator—11
U.S.C. § 1129(a)(5). ............................................................. 22

    F.  The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction
of Any Governmental Regulatory Commission—11 U.S.C. § 1129(a)(6) ........... 22

    G.  The Plan is in the Best Interests of Creditors —11 U.S.C. § 1129(a)(7). ........... 23

    H.  The Plan Has Been Accepted by an Impaired Voting Class—11 U.S.C. §

|  |  | 1129(a)(8). | 25 |
| I. | | The Plan Provides for Payment in Full of All Allowed Priority Claims— 11 U.S.C. § 1129(a)(9) | 25 |
| J. | | At Least One Impaired, Non-Insider Class Has Accepted the Plan—11 U.S.C. § 1129(a)(10) | 27 |
| K. | | The Plan is Feasible—11 U.S.C. § 1129(a)(11). | 27 |
| L. | | All Statutory Fees Have Been or Will Be Paid—11 U.S.C. § 1129(a)(12). | 28 |
| M. | | Retiree Benefits are Not Implicated—11 U.S.C. § 1129(a)(13). | 28 |
| N. | | Sections 1129(a)(14)–(16) of the Bankruptcy Code are Inapplicable. | 29 |
| O. | | The Plan Satisfies the "Cramdown" Requirements under Section 1129(b) of the Bankruptcy Code for Non-Accepting Classes. | 29 |
|  | 1. | The Plan is Fair and Equitable. | 30 |
|  | 2. | The Plan Does Not Unfairly Discriminate With Respect to Any Class. | 30 |
| P. | | The Plan Is Not an Attempt to Avoid Tax Obligations—11 U.S.C. § 1129(d). | 31 |
| VI. | | THE UNRESOLVED OBJECTIONS SHOULD BE OVERRULED | 32 |
| A. | | The Objection of the U.S. Trustee. | 32 |
|  | 1. | The Plan Supplement Reflects Appropriate Exculpation of the Plan Administrator Under Applicable Law. | 32 |
|  | 2. | The Injunction Provisions are Permissible and Integral to the Plan. | 34 |
| B. | | The Objection of 16302 Jamaica Avenue LLC and Lodi Value Add II, LLC. | 37 |
| VII. | | GOOD CAUSE EXISTS TO WAIVE THE STAY OF THE CONFIRMATION ORDER. | 39 |
| VIII. | | CONCLUSION | 40 |

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Alta+Cast, LLC,*
  No. 02-12982 (MFW), 2004 Bankr. LEXIS 219 (Bankr. D. Del. Mar. 2, 2004) .....................7

*In re Armstrong World Indus., Inc.,*
  432 F.3d 507 (3d Cir. 2005)...................................................................29

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,*
  526 U.S. 434 (1999)..............................................................................23

*In re BowFlex Inc.,*
  No. 24-12364 (ABA) (Bankr. D.N.J. August 19, 2024) [Docket No. 614]............................32

*In re Buttonwood Partners, Ltd.,*
  111 B.R. 57 (Bankr. S.D.N.Y. 1990)......................................................31

*Century Glove, Inc. v. First Am. Bank of N.Y.,*
  860 F.2d 94 (3d Cir. 1988)......................................................5, 15, 20

*Cohen v. TIC Fin. Sys. (In re Ampace Corp.),*
  279 B.R. 145 (Bankr. D. Del. 2002) ....................................................11

*In re Coram Healthcare Corp.,*
  271 B.R. 228 (Bankr. D. Del. 2001) ...................................................20

*In re Coram Healthcare Corp.,*
  315 B.R. 321 (Bankr. D. Del. 2004) .................................................8, 33

*In re Drexel Burnham Lambert Grp., Inc.,*
  138 B.R. 723 (Bankr. S.D.N.Y. 1992) ................................................23

*In re Elsinore Shore Assocs.,*
  91 B.R. 238 (Bankr. D.N.J. 1988) .......................................................20

*In re Exide Tech.,*
  303 B.R. 48 (Bankr. D. Del. 2003) ................................................11, 17

*In re Fisker Inc.,*
  No. 24-11390 (TMH) (Bankr. D. Del. Oct. 16, 2024) [Docket No. 722]..............................32

*Gruen Mktg. Corp. v. Asia Com. Co., Ltd.* (*In re Jewelcor Inc.*),
  150 B.R. 580 (Bankr. M.D. Pa. 1992) .................................................11

32576892.6

*Harrington v. Purdue Pharma L.P.*,
    603 U.S. 204 (2024)...........................................................................................17

*Heartland Fed'n Sav. & Loan Ass'n v. Briscoe Enters. Ltd., II (In re Briscoe
    Enters., Ltd., II)*,
    994 F.2d 1160 (5th Cir. 1993) ..............................................................................7

*In re Indianapolis Downs, LLC, LLC*,
    486 B.R. 286 (Bankr. D. Del. 2013) .............................................................15, 17

*In re Jersey City Med. Ctr.*,
    817 F.2d 1055 (3d Cir. 1987)..............................................................................8, 9

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
    987 F.2d 154 (3d Cir. 1993)..................................................................................29

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other
    grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd, Kane v. Johns-Manville Corp.
    (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988) ....................................31

*In re Kabbage, Inc.*,
    Case No. 22-10951(CTG) (Bankr. D. Del. March 15, 2023) (Docket No. 681) ....................36

*Kurak v. Dura Auto. Sys., Inc. (In re Dura Auto. Sys., Inc.)*,
    379 B.R. 257 (Bankr. D. Del. 2007) ......................................................................29

*In re Lernout & Hauspie Speech Prods., N.V.*,
    301 B.R. 651 (Bankr. D. Del. 2003) ................................................................29, 30

*Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*,
    329 B.R. 491 (D.N.J. 2005), *aff'd*, 241 F. App'x 1 (3d Cir. 2007) ....................................6, 21

*In re Mallinckrodt PLC*,
    639 B.R. 837 (Bankr. D. Del. 2022) ......................................................................33

*In re Metrocraft Pub. Serv., Inc.*,
    39 B.R. 567 (Bankr. N.D. Ga. 1984) ......................................................................6

*In re Monnier Bros.*,
    755 F.2d 1336 (8th Cir. 1985) ..............................................................................5

*In re NII Holdings, Inc.*,
    288 B.R. 356 (Bankr. D. Del. 2002) ......................................................................20

*In re Number Holdings, Inc.*,
    No. 24-10719 (JKS) (Bankr. D. Del. January 24, 2025) [Docket No. 1733] ........................33

*In re Nutritional Sourcing Corp.*,
   398 B.R. 816 (Bankr. D. Del. 2008) ...................................................................8

*In re PC Liquidation Corp.*,
   383 B.R. 856 (E.D.N.Y. 2008) ...........................................................................5

*In re Phoenix Petroleum Co.*,
   278 B.R. 385 (Bankr. E.D. Pa. 2001) .............................................................5, 6

*In re Prime Core Technologies Inc., et al.*,
   No. 23-11161 (JKS) (Bankr. D. Del. Dec. 12, 2023) [Docket No. 644] ..........33, 34

*In re PTL Holdings LLC*,
   No. 11-12676 (BLS), 2011 WL 5509031 (Bankr. D. Del. 2011) (BLS) .................33

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000)............................................................................20, 33

*In re Quanergy Systems, Inc.*,
   No. 22-11305 (CTG) (Bankr. D. Del. Nov. 8, 2023) [Docket No. 479]...................32

*In re Resorts Int'l Inc.*,
   145 B.R. 412 (Bankr. D.N.J. 1990) .................................................................20, 21

*In re River Village Assoc.*,
   181 B.R. 795 (E.D. Pa. 1995) .............................................................................5

*In re Rubicon U.S. REIT, Inc.*,
   434 B.R. 168 (Bankr. D. Del. 2010) ...................................................................30

*In re Scioto Valley Mortg. Co.*,
   88 B.R. 168 (Bankr. S.D. Ohio 1988)...................................................................6

*In re Sea Launch Co., L.L.C.*,
   No. 09-12153 (BLS), 2010 Bankr. LEXIS 5283 (Bankr. D. Del. July 30,
   2010) ...............................................................................................................29

*In re Seaplane Debtor 1, Inc., et al*,
   No. 24-10703 (CTG) (Bankr. D. Del. Dec. 11, 2024) [Docket No. 680] ...............32

*In re Smallhold, Inc.*,
   No. 24-10267, 2024 Bankr. LEXIS 2332 (Bankr. D. Del. September 25, 2024) ......17

*In re Suntech Am., Inc.*,
   No. 15-10054 (CSS) (Bankr. D. Del. April 27, 2016) [Docket No. 587].............35, 36

*Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*,
   844 F.2d 1142 (5th Cir. 1988) .............................................................................5

*In re Tribune Co.*,
    464 B.R. 126 (Bankr. D. Del. 2011) ...............................................................7, 15

*U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co., Spansion, Inc. (In re Spansion, Inc.)*,
    426 B.R. 114 (Bankr. D. Del. 2010) .............................................................14, 16

*In re U.S. Brass Corp.*,
    194 B.R. 420 (Bankr. E.D. Tex. 1996) ..................................................................6

*United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*,
    262 A.3d 1034 (Del. 2021) ...................................................................................33

*In re W.R. Grace*,
    446 B.R. 96 (Bankr. D. Del. 2011) ......................................................................15

*In re Wash. Mut., Inc.*,
    442 B.R. 314 (Bankr. D. Del. 2011) ........................................................15, 17, 33

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999) ................................................................15, 17

**STATUTES**

8 Del. C. § 102(b)(7)......................................................................................33, 34

11 U.S.C. § 365(d)(4) ...................................................................................37, 38

11 U.S.C. § 365(f) ...............................................................................................39

11 U.S.C. § 507(a) ..............................................................................................25

11 U.S.C. § 1102 ...................................................................................................1

11 U.S.C. § 1122 ..............................................................................................8, 9

11 U.S.C. § 1123(a) .......................................................................................9, 10

11 U.S.C. § 1123(b) ...............................................................10, 11, 12, 13, 14, 16

11 U.S.C. § 1125 ....................................................................................5, 6, 7, 20

11 U.S.C. § 1126 ............................................................................................4, 25

11 U.S.C. § 1129(a)(1) .........................................................................................8

11 U.S.C. § 1129(a)(2) ..................................................................................19, 20

11 U.S.C. § 1129(a)(3) ..................................................................................20, 21

11 U.S.C. § 1129(a)(4)................................................................................................21

11 U.S.C. § 1129(a)(5)................................................................................................22

11 U.S.C. § 1129(a)(6)............................................................................................22, 23

11 U.S.C. § 1129(a)(7)..........................................................................................23, 24, 25

11 U.S.C. § 1129(a)(8)..........................................................................................7, 8, 25, 29

11 U.S.C. § 1129(a)(9)..........................................................................................25, 26, 27

11 U.S.C. § 1129(a)(10)............................................................................................2, 27

11 U.S.C. § 1129(a)(11)................................................................................................27

11 U.S.C. § 1129(a)(12)................................................................................................28

11 U.S.C. § 1129(a)(13)................................................................................................28

11 U.S.C. § 1129(b)..........................................................................................7, 25, 29, 30

11 U.S.C. § 1129(d)................................................................................................31

28 U.S.C. § 1930................................................................................................26, 28

## RULES

Bankruptcy Rule 2002 ................................................................................................4

Bankruptcy Rule 3020 ................................................................................................39

Bankruptcy Rule 6004 ................................................................................................39

Bankruptcy Rule 9019 ............................................................................................14, 16

## OTHER AUTHORITIES

6 *Collier on Bankruptcy* ¶ 727.01[3] (16th ed. 2022)................................................................36

8 *Collier on Bankruptcy* ¶ 1141.05[4] (16th ed. 2022)................................................................36

## I.    INTRODUCTION

1.    On August 12, 2024 (the "**Petition Date**"), each of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") commenced a voluntary case (collectively, the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

2.    On August 23, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed, pursuant to section 1102 of the Bankruptcy Code, an official committee of unsecured creditors [Docket No. 109] (the "**Committee**").  No request has been made for the appointment of a trustee or an examiner.

3.    The Debtors have proposed the *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 767] (as the same may be amended, supplemented, or modified, the "**Plan**").[2]  The hearing on the Plan (the "**Confirmation Hearing**") is scheduled for February 4, 2025, at 10:00 a.m. (Eastern Time).  *See* Docket No. 699.

4.    In connection with the Confirmation Hearing, the Debtors submit this memorandum of law in support of entry of the Confirmation Order, which addresses the requirements set forth in the Bankruptcy Code for Plan confirmation.  Further, the Debtors filed the *Declaration of Steven Shenker in Support of Entry of an Order Confirming the Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 770] (the "**Shenker Declaration**").

5.    The Plan is a joint plan for each of the Debtors, and presents together Classes of Claims against, and Interests in, the Debtors.  The Plan does not provide for the

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings assigned to such terms in the Plan or the Interim Approval and Procedures Order (defined below).

Debtors' substantive consolidation.  Rather, the Plan constitutes a separate plan proposed by each Debtor, and the classifications set forth in each Class apply to each Debtor.  Each Class constitutes a separate Sub-Class of Claims against, and Interests in, each of the Debtors, as applicable, and each such Sub-Class of Claims entitled to vote on the Plan voted as a single separate Class for, and the confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied separately with respect to, each of the Debtors.

6.      As set forth in the *Declaration of Emily Young of Epiq Corporate Restructuring, LLC Regarding the Solicitation and Tabulation of Ballots Cast on the Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 740] (the "**Voting Declaration**"), Holders of Claims in Class 3 (Prepetition Loan Secured Claims) voted to accept the Plan at each Debtor.  Given that Class 3 was the only Class entitled to vote on the Plan, section 1129(a)(10) is satisfied by Class 3's Plan acceptance.

## II.    OVERVIEW OF THE PLAN[3]

7.      Through the Plan, upon the Effective Date, the Post-Effective Date Debtors will be vested with the Wind Down Assets, out of which the Plan Administrator will satisfy all remaining Allowed Administrative Claims, Professional Fees, Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims.  After the liquidation and distribution of Wind Down Assets[4] is complete and distributions to Allowed Claims have been made in accordance with the Plan, the Plan Administrator will complete the wind down of the Debtors'

---

[3]    The following brief overview of the Plan is qualified in its entirety by reference to the full text thereof.

[4]    As part of the negotiation among the Debtors, the Committee, and the Prepetition Agent regarding the terms of the Plan, the Committee requested, and the Debtors and Prepetition Agent agreed, that any Avoidance Actions not previously transferred pursuant to the Sale Documents shall be considered Excluded Actions to be waived, relinquished, and abandoned as of the Effective Date and shall not be considered Wind Down Assets.

estates by (i) filing, at the appropriate time, a motion to close the Chapter 11 Cases, (ii) filing final tax returns, and (iii) taking all actions necessary to dissolve the Post-Effective Date Debtors, and distribute any remaining unused portion of the Wind-Down Budget to the Holders of the Prepetition Loan Secured Claims, at the appropriate time.

8.      The Plan sets forth the treatment to be provided to each Class.   The Classes account for the differing nature and Bankruptcy Code priority of the various Claims and Interests.   In particular, the Plan segregates various Claims against, and Interests in, the Debtors into the following groups: Class 1 (Priority Non-Tax Claims); Class 2 (Other Secured Claims); Class 3 (Prepetition Loan Secured Claims); Class 4 (General Unsecured Claims); Class 5 (Intercompany Claims); and Class 6 (Interests).

### III.     SOLICITATION AND VOTING ON THE PLAN

9.      On December 18, 2024, the Court entered an order [Docket No. 697] (the "**Interim Approval and Procedures Order**"), pursuant to which the Court, among other things, (i) established procedures for the solicitation and tabulation of votes to accept or reject the Plan, (ii) approved the forms of Ballots and solicitation materials, (iii) approved, on an interim basis, the Plan as containing adequate information for solicitation purposes only, and (iv) scheduled the Confirmation Hearing and established related deadlines.   In accordance with the Interim Approval and Procedures Order, on December 19, 2024 (the "**Service Date**"), the Debtors commenced the solicitation of votes to accept or reject the Plan by causing Epiq Corporate Restructuring, LLC ("**Epiq**"), the Court-appointed Notice and Claims Agent in the Chapter 11 Cases, to serve the following materials (collectively, the "**Solicitation Package**") on the Holders of Claims in Classes 3:  (i) the Plan; (ii) Confirmation Notice; (iii) the Ballot; and (iv) a copy of the Interim Approval and Procedures Order without exhibits.

32576892.6

10.     The Debtors did not solicit votes on the Plan from Holders of unclassified Claims or from Holders of Claims in Class 1 (Priority Non-Tax Claims) or Class 2 (Other Secured Claims), which are Unimpaired and conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).  Further, the Debtors did not solicit votes on the Plan from Holders of Claims or Interests in Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), and Class 6 (Interests), which Classes are deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g).  Instead, the foregoing parties received the Notice of Non-Voting Status in accordance with the Interim Approval and Procedures Order.

11.     On the Service Date and in accordance with the Interim Approval and Procedures Order, Epiq served the Confirmation Notice on the following parties, to the extent such parties were not otherwise entitled to receive a Solicitation Package or the Notice of Non-Voting Status: (a) all persons or entities that have filed, or are deemed to have filed, a proof of Claim or request for allowance of Claim as of the Voting Record Date; (b) all persons or entities listed on the Schedules as holding a Claim or potential Claim; (c) the Securities and Exchange Commission and any regulatory agencies with oversight authority of the Debtors; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) other known Holders of Claims (or potential Claims) and Interests; (g) any and all counterparties to executory contracts and leases; (h) all entities known to the Debtors to hold or assert a lien or other interest in the Debtors' property; (i) all state and local taxing authorities in the states in which the Debtors do business; (j) all federal, state and local authorities that regulate any portion of the Debtors' business; (k) all parties listed on the Debtors' creditor matrix; and (l) any other parties that have requested notice pursuant to Bankruptcy Rule 2002.

12.     On January 2, 2025, Epiq filed a certificate of service [Docket No. 707] regarding the mailing of the Confirmation Notice, the Notice of Non-Voting Status, and the Solicitation Package, evidencing service in accordance with the terms of the Interim Approval and Procedures Order.

## IV.    THE PLAN SHOULD BE APPROVED AS CONTAINING ADEQUATE INFORMATION ON A FINAL BASIS.

13.     Pursuant to Bankruptcy Code section 1125, a chapter 11 plan proponent must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan.[5]  The primary purpose of a disclosure statement is to provide all material information that affected creditors and interest holders need to make an informed decision regarding how to vote on the plan.[6]  Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, chapter 11 plans.[7]

14.     "Adequate information" is a flexible standard, based on the facts and circumstances of each case.  Courts in the Third Circuit and elsewhere acknowledge that determining what constitutes "adequate information" for the purpose of satisfying Bankruptcy Code section 1125 resides within the court's broad discretion.[8]  In making a determination as to

---

[5]    11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . ");

[6]    *See, e.g., Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan.")

[7]    *Century Glove,* 860 F.2d at 100.

[8]    *See, e.g., In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *Tex. Extrusion Corp. v. Lockheed Corp.* (*In re Tex. Extrusion Corp.*), 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); *Phoenix Petroleum Co.*, 278 B.R. at 393 (same); *In re PC Liquidation*

5

whether a disclosure statement contains adequate information as required by section 1125, courts typically look for disclosures related to topics such as: (i) events that led to the filing of a bankruptcy petition; (ii) the debtor's relationship with affiliates; (iii) a description of available assets and their value; (iv) the company's anticipated future; (v) the source of information stated in the disclosure statement; (vi) the debtor's condition while in chapter 11; (vii) claims asserted against the debtor; (viii) the estimated return to creditors under a chapter 7 liquidation; (ix) future management of the debtor; (x) the chapter 11 plan or a summary thereof; (xi) relevant financial information, valuations, and projections; (xii) information relevant to the risks posed to creditors under the plan; (xiii) the actual or projected realizable value from recovery of avoidable transfers; (xiv) litigation likely to arise in a non-bankruptcy context; and (xv) tax attributes of the debtor.[9]  Disclosure regarding all topics is not necessary in every case.[10]

15.     The Plan provides "adequate information" to allow Holders of Claims in the Voting Class to make an informed decision about whether to vote to accept or reject the Plan. Specifically, the Plan contains a number of categories of information that courts consider "adequate information," including, among other things: (i) the background and overview of the Plan; (ii) an overview of the Debtors' operations; (iii) the events leading to commencement of the Chapter 11 Cases; (iv) an overview of the Chapter 11 Cases; (v) a summary of the Plan,

---

*Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate information' in any particular situation is determined on a case-by-case basis . . ., with the determination being largely within the discretion of the bankruptcy court."); *Lisanti v. Lubetkin* (*In re Lisanti Foods, Inc.*), 329 B.R. 491, 507 (D.N.J. 2005), *aff'd*, 241 F. App'x 1 (3d Cir. 2007). ("The information required will necessarily be governed by the circumstances of the case.").

[9]     *See, e.g.*, *In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996) (listing factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (same); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).

[10]    *See U.S. Brass Corp.*, 194 B.R. at 424; *see also Phoenix Petroleum Co.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

6

including the proposed treatment of Claims and Interests and likely distributions to be received under the Plan; (vi) a discussion of the post-Effective Date wind-down process; (vii) an overview of the confirmation process; (viii) alternatives to Plan confirmation and consummation; (ix) an analysis as to the distributions creditors would receive from the Debtors' estates if they liquidated under chapter 7; (x) information regarding the risks being taken by the Holders of Claims prior to voting; (xi) tax consequences of the Plan; (xii) conspicuous language containing releases of the Debtors, releases of third parties, exculpation and limitation of liabilities, and the injunction to be imposed upon the Effective Date; and (xiii) such other and further information that informs holders of Claims and Interests of their rights arising from and relating to the Plan.

16.    As such, the Debtors submit that the Plan contains "adequate information" consistent with Bankruptcy Code section 1125 and should be approved on a final basis.

## V.    THE PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE.

17.    Bankruptcy Code Section 1129 governs confirmation of a chapter 11 plan and sets forth the requirements that must be satisfied for a plan to be confirmed. The Debtors bear the burden of establishing that all elements necessary for confirmation of the Plan under section 1129(a) of the Bankruptcy Code have been met by a preponderance of the evidence.[11] This memorandum and the Shenker Declaration demonstrate that, by a preponderance of the evidence, the Plan complies with the requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8), with respect to all Classes of Claims and Interests. As discussed more fully below, the Debtors satisfy the cram down requirements set forth in section 1129(b) of

---

[11]    *See In re Tribune Co.*, 464 B.R. 126, 151–52 (Bankr. D. Del. 2011) (explaining that the plan proponent bears the burden of establishing the plan's compliance with section 1129(a) of the Bankruptcy Code (*citing In re Exide Tech.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003))); *Heartland Fed'n Sav. & Loan Ass'n v. Briscoe Enters. Ltd., II (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) (stating that the bankruptcy court must find that the debtor has satisfied the provisions of section 1129 by a preponderance of the evidence); *In re Alta+Cast, LLC*, No. 02-12982 (MFW), 2004 Bankr. LEXIS 219, at *5 (Bankr. D. Del. Mar. 2, 2004) (same).

the Bankruptcy Code and are therefore not required to satisfy section 1129(a)(8) of the Bankruptcy Code.  Accordingly, the Debtors submit that the Plan should be confirmed.

A.    **The Plan Complies with All Applicable Provisions of the Bankruptcy Code— 11 U.S.C. § 1129(a)(1).**

18.    Section 1129(a)(1) of the Bankruptcy Code provides that a court may confirm a chapter 11 plan only if such plan complies with all applicable Bankruptcy Code provisions.[12]  A principal objective of section 1129(a)(1) is to ensure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan.  Accordingly, the determination of whether the Plan complies with section 1129(a)(1) requires an analysis of its compliance with sections 1122 and 1123.  As set forth below, the Plan complies with these sections of the Bankruptcy Code.

1.    **The Classification of Claims and Interests in the Plan Satisfies the Requirements of Section 1122 of the Bankruptcy Code.**

19.    Section 1122(a) of the Bankruptcy Code provides that the claims or interests within a given class must be "substantially similar."[13]  Section 1122(a), however, does not mandate that "substantially similar" claims be classified together.[14]  Section 1122 provides plan proponents with a great degree of flexibility in classifying claims and interests, and courts

---

[12]    11 U.S.C. § 1129(a)(1).  The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123, which govern the classification of claims under the plan and the contents of the plan, respectively.  *See* H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; *see also In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008).

[13]    *See* 11 U.S.C. § 1122(a).

[14]    *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (agreeing that section 1122 permits the grouping of similar claims in different classes); *In re Coram Healthcare Corp.*, 315 B.R. 321, 348 (Bankr. D. Del. 2004) (noting that "[s]ection 1122 . . . provides that claims that are not 'substantially similar' may not be placed in the same class; it does not expressly prohibit placing 'substantially similar' claims in separate classes").

are offered broad discretion in approving a proponent's classification scheme and to consider the specific facts of each case before rendering a decision.[15]

20.     The Plan is a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors.  Article II of the Plan classifies five Classes of Claims against the Debtors and one Class of Interests in the Debtors, as summarized above and described more fully in the Plan.  In accordance with Bankruptcy Code section 1122(a), each Class of Claims against and Interests in the Debtors contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Moreover, the Plan's classification of Claims and Interests satisfies the requirements of section 1122 because the Claims and Interests in each Class differ from the Claims and Interests in each other Class in a legal or factual nature or are otherwise based upon other relevant criteria.  In addition, valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims against and Interests in the Debtors under the Plan.

21.     Based upon the foregoing, the Debtors submit that the Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

**2.      The Plan Satisfies the Requirements of Bankruptcy Code Section 1123(a).**

22.     The Plan also complies with section 1123(a) of the Bankruptcy Code, which sets forth seven requirements for every chapter 11 plan.[16]  As demonstrated below, the Plan complies with each such requirement:

i.     <u>Section 1123(a)(1)</u>.  Article II properly designates all Claims and Interests that require classification, as required by section 1123(a)(1) of the Bankruptcy Code.

---

[15]    *See In re Jersey City Med. Ctr.*, 817 F.2d at 1060–61 ("Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety of plans in light of the facts of each case").

[16]    *See* 11 U.S.C. § 1123(a).

32576892.6

ii. <u>Section 1123(a)(2)–(3)</u>. Articles II and VII specify whether each Class of Claims or Interests is Impaired under the Plan and the treatment of each Impaired Class, as required by section 1123(a)(2)–(3) of the Bankruptcy Code.

iii. <u>Section 1123(a)(4)</u>. In accordance with Bankruptcy Code section 1123(a)(4) of the, Article VII provides the same treatment for each Claim or Interest in a given Class unless the Holder of such Claim or Interest agrees to less favorable treatment.

iv. <u>Section 1123(a)(5)</u>. In accordance with Bankruptcy Code section 1123(a)(5), Article IX provides adequate means for the Plan's implementation. For example, the Plan will be implemented by, among other things, the appointment of the Plan Administrator as the sole officer or manager of the Post-Effective Date Debtors as of the Effective Date, who may, in an exercise of business judgment, liquidate any Wind Down Assets, and make Distributions to Holders of Allowed Claims in accordance with the Plan. After such Distributions are made, the Plan Administrator will wind down the Post-Effective Date Debtors and file a motion to close the Chapter 11 Cases at the appropriate time.

v. <u>Section 1123(a)(6)</u>. No equity securities are being issued, and no charters are being modified or approved as part of the Plan. Therefore, Bankruptcy Code section 1123(a)(6) is inapplicable to the Plan.

vi. <u>Section 1123(a)(7)</u>. Section 9.1 provides that the Plan Administrator shall act as the sole officer or manager of the Post-Effective Date Debtors as of the Effective Date, in accordance with Bankruptcy Code section 1123(a)(7).

**3.    The Plan Complies With the Requirements of Bankruptcy Code Section 1123(b).**

a.    The Plan's Discretionary Provisions are Consistent With <u>Bankruptcy Code Section 1123(b)</u>.

23.    Section 1123(b) of the Bankruptcy Code contains various discretionary provisions that may be included in a chapter 11 plan.[17] For example, a plan may impair or leave unimpaired any class of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases. A plan also may include the settlement or adjustment of any claim or interest held by the debtor or the debtor's estate or provide for the debtor's

---

[17]    *See* 11 U.S.C. § 1123(b).

retention and enforcement of any such claim or interest.[18]  Likewise, a plan may modify the rights of secured creditors or unsecured creditors or leave unaffected the rights of creditors in any class of claims.[19]  Finally, a plan may contain "any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[20]

24.    In accordance with Bankruptcy Code section 1123(b), the Plan employs various discretionary provisions, including the following:

i.    Article VII provides that certain Classes are Unimpaired and others are Impaired;

ii.    Article XII provides for rejection of all remaining Executory Contracts and Unexpired Leases that are not, or have not been, assumed or assumed and assigned as of the Effective Date;

iii.    Articles IX through XI, along with the Plan Administrator Agreement, establish procedures for the settlement of Claims and mechanics for Distributions with respect to Allowed Claims;

iv.    Article XV provides that the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan, except as otherwise specifically stated therein;[21] and

v.    Article XIV, as further discussed below, provides for:  (a) a release by the Debtors in favor of certain parties (the "**Debtor Release**"); (b) a consensual third-party release (the "**Third-Party Release**," and together with the Debtor Release, the "**Releases**"); (c) an exculpation (the "**Exculpation**"); and (d) certain injunction provisions prohibiting parties from pursuing claims or Causes of Action exculpated or released under the Plan (the "**Injunction**").

---

[18]    *See* 11 U.S.C. § 1123(b)(3)(A), (B); *see, e.g., In re Exide Tech.*, 303 B.R. at 67 (Bankr. D. Del. 2003) (noting that 11 U.S.C. § 1123(b)(3)(A) permits settlements to be incorporated into a plan of reorganization); *Cohen v. TIC Fin. Sys. (In re Ampace Corp.),* 279 B.R. 145, 158–59 (Bankr. D. Del. 2002) (noting that 11 U.S.C. § 1123(b)(3)(B) permits a plan to retain causes of action by the debtor or representatives).

[19]    11 U.S.C. § 1123(b)(5).

[20]    11 U.S.C. § 1123(b)(6).

[21]    *See Gruen Mktg. Corp. v. Asia Com. Co., Ltd. (In re Jewelcor Inc.*), 150 B.R. 580, 582 (Bankr. M.D. Pa. 1992) ("There is no doubt that the bankruptcy court's jurisdiction continues post-confirmation to 'protect its confirmation decree, to prevent interference with the execution of the plan and to aid otherwise in its operation.'" (citations omitted)).

32576892.6

25.     The Debtors submit that the Plan's discretionary provisions are reasonable and appropriate in light of the circumstances of the Chapter 11 Cases and permissible under Bankruptcy Code section 1123(b).

b.      The Releases, Exculpation, and Injunction Should Be Approved.

26.     The Releases, the Exculpation, and the Injunction are proper because, among other things, they are the product of arm's-length negotiations and an integral component of the Plan.  The Releases are narrow in scope and preserve the status quo with respect to any claims that the Debtors and the Releasing Parties may have against the parties expressly carved out from the Releases.  In this context, the Debtors submit that the Release, Exculpation, and Injunction provisions are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their creditors.  Neither the Releases, the Exculpation, nor the Injunction are inconsistent with the Bankruptcy Code and, as a result, the requirements of Bankruptcy Code section 1123(b) have been satisfied.

27.     The principal terms of the Releases, Exculpation, and Injunction, as well as the basis for approval of these provisions, are described below.

*(i)      Debtor Release (Plan § 14.1(b))*

28.     Pursuant to the Plan and the Confirmation Order, the Debtors (on their own behalf and as a representative of their respective Estates) will release certain entities from claims, Causes of Action, and other liabilities as and to the extent set forth in the Plan. Specifically, the Debtor Release provides:

> Except as otherwise expressly provided in this Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, each of the Debtors, on their own behalf and as a representative of their respective Estates, shall, and shall be deemed to, completely and forever release each and all of the Debtor Released Parties of and from any and all claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or

unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, their respective Assets, the Estates, the Chapter 11 Cases, the Prepetition Credit Agreement, the DIP Facility, any of the Debtors' in- or out-of-court restructuring efforts, the Sale Transaction, the Sale Documents, or this Combined Disclosure Statement and Plan, that may be asserted by or on behalf of any of the Debtors or their respective Estates, against any of the Debtor Released Parties.   Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined by a Final Order to have constituted fraud, willful misconduct, or gross negligence; (ii) criminal acts or omissions of any such Debtor Released Party as determined by a Final Order; or (iii) any Preserved Causes of Action.[22]

29.     Each of the parties to be released by the Debtors are stakeholders or critical participants in the Chapter 11 Cases and the Plan process that commonly are released in chapter 11 plans.  Specifically, the Debtor Released Parties are:

collectively, in each case in its capacity as such, (a) the Debtors' directors and officers as of the Petition Date; (b) the DIP Agent and DIP Lenders; (c) the Prepetition Agent and the Prepetition Lenders; and (d) with respect to each of the Entities described in subsections (b) through (c), such Entity's Related Parties[23]; *provided*, *however*, that in each case a person or entity shall not be a Debtor Released Party if such person or entity objects to the Plan's release provisions; *provided*, *further*, that (i) no Former Directors and Officers and (ii) no direct or indirect members, equityholders or shareholders of the Debtors shall be deemed to constitute "Debtor Released Parties" hereunder.[24]

30.     Section 14.1(b) of the Plan represents a valid settlement (as and to the extent provided for in the Plan) pursuant to Bankruptcy Code section 1123(b)(3)(A) and

---

[22]   Plan § 14.1(b).

[23]   "Related Parties" shall mean, with respect to an Entity, collectively, its direct and indirect affiliates, and its and its respective affiliates' current and former equity holders, members, partners, subsidiaries, affiliates, managers, managing members, officers, directors, employees, advisors, financial advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives, each in their capacity as such; provided, however, in no event shall any Former Directors and Officers be deemed to constitute "Related Parties" hereunder; and provided, further, that no direct or indirect members, equityholders or shareholders of the Debtors shall be deemed "Related Parties" hereunder. Plan § 1.139.

[24]   Plan § 1.46.

13

Bankruptcy Rule 9019 of whatever claims any Debtor may have against the Debtor Released Parties.  The Debtors have proposed these releases based on their sound business judgment.[25] Indeed, the Debtors believe that, under the circumstances, pursuing claims against the Debtor Released Parties would not be in the best interest of the Debtors' various stakeholders because the Debtors are not aware that any such claims exist and, regardless, the costs involved in pursuing such claims would outweigh any potential benefit to the Estates.  Moreover, any recovery on such claims would primarily inure to the benefit of the Holders of the Prepetition Loan Secured Claims, who do not object to the Debtor Releases and voted to accept the Plan.

31.    The efforts of the Debtor Released Parties were integral to the development of the Plan and the timely and efficient resolution of these Chapter 11 Cases. Through the Debtor Released Parties' efforts, the Debtors successfully consummated the going-concern Sale Transactions, and the proceeds thereof resulted in the full repayment of all DIP Claims and repayment of a significant portion of the Prepetition Loan Secured Claims. Additionally, the DIP Agent and the DIP Lenders made various significant contributions during the Chapter 11 Cases, including providing the funding therefor, supplementing that funding to support the Sale Transactions, and participating in the negotiation of the Plan.

32.    Bankruptcy courts typically consider the *Master Mortgage* factors to determine whether a release by a debtor should be approved:  (a) whether there is an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (b) whether the non-debtor has made a substantial contribution; (c) the essential nature of the release to the extent that,

---

[25]    *See U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co., Spansion, Inc. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) ("[A] debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate.").

without the release, there is little likelihood of success; (d) an agreement by a substantial majority of creditors to support the release, specifically if the impacted class or classes "overwhelmingly" vote to accept the plan; and (e) whether there is a provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the release.[26] A court need not find that all of these factors apply to approve a proposed release.[27] Rather, such factors are "helpful in weighing the equities of the particular case after a fact-specific review."[28]

33.     *First*, there is an identity of interest between the Debtors and the Debtor Released Parties because such parties all "share the common goal" of confirming the Plan.[29]  The Plan is the result of efforts by the Debtors and the Debtor Released Parties, and each of the Debtor Released Parties shares a common goal of ensuring that the Chapter 11 Cases can be wound down in a timely and efficient manner as provided in the Plan.[30]

34.     *Second*, the Debtor Released Parties provided necessary contributions in exchange for the Debtor Releases, including by providing material support to the Debtors' overall chapter 11 efforts.  As discussed above, the Debtor Released Parties successfully implemented the going-concern Sale Transactions and worked with the Debtors to formulate and confirm the Plan, thereby providing a full recovery to Holders of Other Secured Claims and a substantial recovery to Holders of Prepetition Loan Secured Claims.[31]

---

[26]    *See In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)).

[27]    *See, e.g.*, *In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011).

[28]    *In re Indianapolis Downs, LLC, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013).

[29]    *See Tribune Co.*, 464 B.R. at 187 (finding an identity of interest existed between debtors and released parties because they "share[d] the common goal of confirming" the plan and implementing the global settlement).

[30]    *See Zenith Elecs.*, 241 B.R. at 110 (concluding that certain releases who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed").

[31]    *See In re W.R. Grace*, 446 B.R. 96, 138 (Bankr. D. Del. 2011).

35. *Third*, as evidenced by the Voting Declaration and noted above, the Debtors' largest stakeholders—the Holders of Prepetition Loan Secured Claims in Class 3—voted in support of the Plan, and no parties objected to the Debtor Release.

36. The Debtor Release represents a valid settlement (as and to the extent provided for in the Plan) of any claims the Debtors and their Estates may have against the Debtor Released Parties, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019. The Debtors have proposed the Debtor Release based on their sound business judgment.[32] For these reasons, the Debtor Release is justified, in the best interests of the Debtors and their Estates, and an integral part of the Plan and, therefore, should be approved.

(ii)    *Third-Party Releases (Plan § 14.1(c))*

37. Section 14.1(c) of the Plan also provides for consensual third-party releases by the Releasing Parties. Specifically, the Third Party Release provides:

> As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall, and shall be deemed to, completely and forever release each and all of the Third-Party Released Parties of and from any and all claims, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights, remedies, and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, their respective Assets, the Estates, the Chapter 11 Cases, the Prepetition Credit Agreement, the DIP Facility, any of the Debtors' in- or out-of-court restructuring efforts, the Sale Transaction, the Sale Documents, or this Combined Disclosure Statement and Plan, that may be asserted by or on behalf of any of the Releasing Parties against any of the Third-Party Released Parties (other than the rights of Holders of Allowed Claims to enforce the obligations under the Confirmation Order and this Plan); *provided however*, that nothing in this section shall operate as a release of (i) any causes of action or liabilities arising out of gross negligence, willful misconduct, or fraud,

---

[32]  *See Spansion, Inc.*, 426 B.R. at 143 ("[A] debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate").

(ii) any obligations of the Debtors, Estates, or the Plan Administrator under this Plan or the Sale Documents arising from and after the Effective Date, or (iii) criminal acts of any such Third-Party Released Party as determined by a Final Order.  For the avoidance of doubt, the release set forth above does not release any Preserved Causes of Action, including those that may be asserted against parties that are not Third Party Released Parties.[33]

38.    Each of the Releasing Parties has taken an affirmative action in respect of Confirmation and therefore manifested consent.  Specifically, the Releasing Parties include:

collectively, in each case solely in their respective capacities as such: (a) the DIP Agent and DIP Lenders; (b) the Prepetition Agent and Prepetition Lenders; (c) the Committee; and (d) with respect to each of the Entities described in subsections (a) through (c), such Entity's Related Parties, solely with respect to claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities that such Related Parties could have properly asserted on behalf of such Releasing Parties.[34]

39.    As the Court has recognized, "Courts in this jurisdiction have consistently held that a plan may provide for a release of third party claims against a non-debtor upon consent of the party affected."[35]  Indeed, "[t]he Court is not aware…of any court that has found that a creditor cannot consensually release a claim against a third-party under a debtor's plan of reorganization."[36]  Such consensual releases are consistent with governing law.[37]  Here, the Releasing Parties have consented to the Third-Party Release because each Releasing Party, other than the Debtors and the Committee, affirmatively and voluntarily agreed to accept it through their entry into the RSA.  The Ballots provided clear notice of the Third-Party Release and state

---

[33]    Plan§ 14.1(c).

[34]    Plan§ 1.140.

[35]    *Indianapolis Downs, LLC*, 486 B.R. at 306; *see also Exide Tech.*, 303 B.R. at 74 ("The 'Releases by Holders of Claims' provision applies to release both prepetition and postpetition claims against the Releases, but it binds only those creditors and equity holders who accept the terms of the Plan.  Because it is consensual, there is no need to consider the *Zenith* factors."); *Wash. Mut., Inc.*, 442 B.R. at 350.

[36]    *In re Smallhold, Inc.*, No. 24-10267 (CTG), 2024 Bankr. LEXIS 2332, at *25 (Bankr. D. Del. September 25, 2024).

[37]    *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 266 (2024) ("Nothing in what we have said [in rejecting a chapter 11 plan's grant of *nonconsensual* third-party releases] should be construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan[.]")

that as provided by, and consistent with, the RSA, the parties consented to the Court's approval of the Third-Party Release and the related injunction.

40.     With respect to the Debtors, the DIP Agent and DIP Lenders, and the Committee, the Debtors are the proponents of the Plan, and counsel to each of the DIP Agent and DIP Lenders and the Committee commented on the Plan and do not object to the Releasing Parties definition.   The Third-Party Release, therefore, has been consented to by each of the Releasing Parties and, therefore, is appropriate and should be approved.

*(iii)     Exculpation (Plan § 14.1(a)).*

41.     The Exculpation is narrowly tailored to protect Estate fiduciaries for actions taken in furtherance of, and during, the Chapter 11 Cases.  Specifically, Section 14.1(a) of the Plan provides:

> Notwithstanding any other provision of this Plan, the Exculpated Parties shall not have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or any of their Affiliates, or any of their successors or assigns, for any act or omission taken on or after the Petition Date and prior to or on the Effective Date relating to, in any way, or arising from (i) the Chapter 11 Cases; (ii) formulating, negotiating or implementing this Combined Disclosure Statement and Plan or any contract, instrument, release or other agreement or document created or entered into in connection with this Combined Disclosure Statement and Plan; (iii) the Sale Transaction; (iv) any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring, sale or liquidation of the Debtors; (v) the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the Confirmation of this Plan, or the Consummation of this Plan; or (vi) the administration of this Plan or the property to be distributed under this Plan, except for any act or omission of an Exculpated Party that is a criminal act or constitutes fraud, gross negligence or willful misconduct, each as determined by a Final Order or with respect to any obligations of the Debtors, Estates, or the Plan Administrator under this Plan or the Sale Documents arising from and after the Effective Date, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting the Exculpated Parties from liability.  The Confirmation Order shall serve as a permanent injunction against any Entity

seeking to enforce any claim or cause of action against the Exculpated Parties that has been exculpated pursuant to Section 14.1(a) of this Plan.[38]

42.     The Exculpated Parties participated in the Chapter 11 Cases in good faith, and the Exculpation is necessary to protect those Estate fiduciaries who have contributed to the Debtors' sale and plan efforts from collateral attacks related to their good-faith acts or omissions. Further, the scope of the Exculpation is targeted, and has no effect on liability that is determined to have constituted fraud, gross negligence, or willful misconduct.  Accordingly, the Debtors submit that the Court should approve the Exculpation.

*(iv)     Injunction (Plan § 14.1(d))*

43.     Section 14.1(d) of the Plan provides that all Entities holding Claims or Interests are permanently enjoined from commencing or continuing in any matter, action, or proceeding relating to any Claim, Interest, or Cause of Action that has been released or exculpated pursuant to the Plan or from in any way attempting to enforce, collect, or recover anything (including assertions of any right of setoff or subrogation) on account of such Claims, Interests, or Causes of Action.[39]   The Injunction is necessary to preserve and enforce the Releases and Exculpation and is appropriately tailored to achieve that purpose.[40]   Accordingly, the Debtors submit that the Court should approve the Injunction.

**B.     The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code—11 U.S.C. § 1129(a)(2).**

44.     Bankruptcy Code section 1129(a)(2) requires that the "proponent of the plan complies with the applicable provisions of this title."[41]   The legislative history to section

---

[38]   Plan§ 14.1(a).

[39]   *See* Plan § 14.1(d).

[40]   As discussed further herein, the U.S. Trustee objects to the scope of the Injunction.  The Debtors submit that the Injunction is appropriately limited to actions against the Assets being distributed in accordance with the Plan.

[41]   11 U.S.C. § 1129(a)(2).

1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126.[42]   In determining whether a plan proponent has complied with this section, courts focus on whether the proponent has adhered to the disclosure and solicitation requirements of sections 1125 and 1126.[43]

45.     The Debtors have complied with all requirements set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Interim Approval and Procedures Order governing notice, disclosure, and solicitation in connection with the Plan.   Accordingly, the requirements of Bankruptcy Code section 1129(a)(2) have been satisfied.

### C.     The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law—11 U.S.C. § 1129(a)(3).

46.     Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."[44]   "The good faith standard requires that the plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'"[45]   In determining whether a plan has been proposed in good faith, courts have recognized that they should avoid applying any hard and inflexible rules, but should instead evaluate each case on its own merits.[46]

---

[42]   *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure"); *see also In re Resorts Int'l Inc.*, 145 B.R. 412, 468–69 (Bankr. D.N.J. 1990); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 258 (Bankr. D.N.J. 1988).

[43]   *See In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

[44]   *See* 11 U.S.C. § 1129(a)(3).

[45]   *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001) (citations omitted).

[46]   *See, e.g., In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002); *Century Glove*, 1993 WL 239489, at *4 (stating good faith should be evaluated in light of the totality of the circumstances surrounding confirmation); *PWS Holdings Corp.*, 228 F.3d at 243 (finding plan was proposed in good faith).

20

47.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.   The Plan is the culmination of significant arm's-length and good-faith negotiations among the Debtors, the DIP Agent, the Committee, and other parties in interest and reflects the results of these negotiations.   The Debtors submit that the Plan is fundamentally fair to all stakeholders and has been proposed with the legitimate purpose of liquidating and winding down the Debtors' affairs in a timely and efficient manner.   Accordingly, the Plan has been filed in good faith and satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

**D.      The Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Approval—11 U.S.C. § 1129(a)(4).**

48.     Bankruptcy Code section 1129(a)(4) provides that a bankruptcy court shall confirm a plan only if "payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."[47] Section 1129(a)(4) has been construed to require that all payments of professional fees paid from estate assets be subject to review and approval by the court as to their reasonableness.[48]

49.     In accordance with Bankruptcy Code section 1129(a)(4), no payment for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incidental to the Chapter 11 Cases, including Professional Fees, has been or will be made by the Debtors other than payments that have been authorized by Court order. Further, Section 6.3 of the Plan provides that Professional Fees are subject to Court approval and the standards of the Bankruptcy Code.   These Plan provisions comply with section 1129(a)(4).

---

[47]     11 U.S.C. § 1129(a)(4).

[48]     *See, e.g.*, *Lisanti Foods, Inc.*, 329 B.R. at 503; *Resorts Int'l, Inc.*, 145 B.R. at 476.

**E.      The Debtors Have Disclosed the Identity of the Plan Administrator—11 U.S.C. § 1129(a)(5).**

50.      Bankruptcy Code section 1129(a)(5)(A) requires a plan proponent to disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy."[49] Additionally, section 1129(a)(5)(B) requires the proponent of a plan to disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider."[50]  The Debtors have provided the information required under section 1129(a)(5) by identifying the Plan Administrator and disclosing other relevant details of the Plan Administrator's appointment in the Plan Administrator Agreement, which the Debtors filed as part of the Plan Supplement.  Further, Section 9.4 of the Plan provides for the deemed resignation or termination of the Debtors' current directors, officers, and managers as of the Effective Date, and Section 9.1 of the Plan provides that the Plan Administrator shall be deemed to be the sole officer or manager of each Post-Effective Date Debtor.  Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.      The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission—11 U.S.C. § 1129(a)(6).**

51.      Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation

---

[49]      *See* 11 U.S.C. § 1129(a)(5)(A)(i)–(ii).

[50]      *See* 11 U.S.C. § 1129(a)(5)(B).

of its business approve any rate change under the plan.[51]  The Plan does not provide for any rate changes subject to the jurisdiction of any governmental regulatory commission.  Accordingly, the Debtors submit that section 1129(a)(6) is inapplicable to the Plan.

G.    **The Plan is in the Best Interests of Creditors —11 U.S.C. § 1129(a)(7).**

52.    Bankruptcy Code section 1129(a)(7) of the requires that a plan be in the best interests of creditors and equity holders.[52]  This "best interests" test focuses on individual dissenting creditors rather than classes of claims.[53]  The best interests test requires that each holder of a claim or equity interest either accept the plan or receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code.[54]  If a class of claims or equity interests approves the plan, the best interests test is deemed satisfied for all members of that class.[55]

53.    Under the Plan, Classes 1 and 2 are Unimpaired and presumed to accept the Plan.  The test, therefore, requires that each Holder of a Claim or Interest in Classes 3, 4, 5, and 6 either accept the Plan or receive or retain under the Plan property having a present value, as of the effective date of the Plan, not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

54.    As demonstrated by the Liquidation Analysis attached as Exhibit A to the Plan, the Debtors believe that the Plan provides a recovery greater than the recovery in a chapter

---

[51]    *See* 11 U.S.C. § 1129(a)(6).

[52]    *See* 11 U.S.C. § 1129(a)(7).

[53]    *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999).

[54]    *See* 11 U.S.C. § 1129(a)(7).

[55]    *See In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992).

7 for Holders of Allowed Claims and Interests, and, therefore, the Plan complies with section 1129(a)(7) of the Bankruptcy Code and meets the requirements of the "best interests" test.

55.     The Debtors sold substantially all of their assets during these Chapter 11 Cases.  As set forth in the Plan, the Assets of value remaining in the Debtors' Estates, which primarily consist of certain reserved Sale Proceeds, are subject to the Liens and Claims of the Prepetition Lenders under the Prepetition Credit Agreement.  As of the closing of the Sale Transactions, the amount still outstanding under the Prepetition Loan Secured Claims was approximately $108,906,895.87, and after application of the proceeds of the Sale Transactions in full satisfaction of the DIP Claims and partial satisfaction of the Prepetition Secured Claims, the remaining amount outstanding under the Prepetition Secured Claims is approximately $74,824,089.44.  Despite this, the Prepetition Lenders consented to confirmation of the Plan, which provides for the satisfaction of all Allowed Administrative Claims, Other Secured Claims, Priority Tax Claims, and Priority Non-Tax Claims, before excess Cash, if any, can be distributed to the Prepetition Lenders.

56.     If the Debtors' Chapter 11 Cases converted to chapter 7, in addition to eliminating the above recoveries, Administrative Claims would increase due to the fees incurred by the chapter 7 trustee and his or her professionals, which would be entitled to be paid ahead of Allowed Claims against, or Allowed Interests in, the Debtors.  The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases, which would continue to be allowed in the chapter 7 cases, as well, and ultimately, the Prepetition Agent would need to consent to the use of its cash collateral to fund such a chapter 7 process.  If such consent was not forthcoming, a conversion of the Chapter 11 Cases to cases under chapter 7 would serve only to increase the amount of claims against the Debtors that would not be paid—

32576892.6

both in terms of currently incurred and unpaid administrative and priority claims, as well as any costs incurred in administering the chapter 7 cases.

57.    Accordingly, the Debtors submit that the Plan complies with section 1129(a)(7) of the Bankruptcy Code and meets the requirements of the "best interests" test.

**H.    The Plan Has Been Accepted by an Impaired Voting Class—11 U.S.C. § 1129(a)(8).**

58.    Bankruptcy Code section 1129(a)(8) requires that each class of claims and interests either has accepted or is not impaired under a chapter 11 plan.[56]  The Plan is a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, as described in Articles II and VII of the Plan.  As set forth in Article II of the Plan, Classes 1 (Priority Non-Tax Claims) and 2 (Other Secured Claims) are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f).  As discussed above, Holders of Class 3 (Prepetition Loan Secured Claims) at each Debtor voted to accept the Plan.  Classes 4 (General Unsecured Claims), 5 (Intercompany Claims), and 6 (Interests) were deemed to reject the Plan and, therefore, were not entitled to vote on the Plan. Despite the fact that those Classes rejected or are deemed to reject the Plan, and as discussed more fully below, the Debtors submit that the Plan nevertheless may be confirmed under the cramdown provisions of section 1129(b).

**I.    The Plan Provides for Payment in Full of All Allowed Priority Claims—11 U.S.C. § 1129(a)(9).**

59.    Section 1129(a)(9) of the Bankruptcy Code requires that all claims entitled to priority pursuant to section 507(a) of the Bankruptcy Code be paid in full in cash unless the holders thereof agree to a different treatment.[57]  As required by section 1129(a)(9), Articles VI

---

[56]    *See* 11 U.S.C. § 1129(a)(8).

[57]    *See* 11 U.S.C. § 1129(a)(9).

32576892.6

and VII of the Plan provide for full payment to all Holders of Administrative Claims, Priority

Tax Claims, Other Secured Claims, and Priority Non-Tax Claims.

60.    Section 6.1 of the Plan provides that each Holder of an Allowed DIP

Claim shall receive indefeasible Payment in Full of its Pro Rata share of the Sale Proceeds

(subject to the Carve Out), to be applied in accordance with the terms of the Final DIP Order and

the other DIP Documents (as defined in the Final DIP Order).

61.    Section 6.2 of the Plan provides that each Holder of an Allowed

Administrative Claims, to the extent such Allowed Administrative Claim has not already been

paid during the Chapter 11 Cases, shall receive, unless otherwise agreed, Cash equal to the

Allowed amount of such Administrative Claim on the Effective Date.

62.    Section 6.3 of the Plan provides that Allowed Professional Fees shall be

paid in Cash from the Professional Fee Escrow Account as soon as reasonably practicable after

such Professional Fees are Allowed.  The Debtors shall pay all fees payable pursuant to 28

U.S.C. § 1930 on or before the Effective Date.

63.    Section 6.4 of the Plan provides that each Allowed Priority Tax Claim

receive treatment in a manner consistent with Bankruptcy Code section 1129(a)(9)(C).

64.    Section 7.1 of the Plan provides that each Holder of an Allowed Priority

Non-Tax Claim shall receive treatment in a manner consistent with Bankruptcy Code

section 1129(a)(9).

65.    Section 7.2 of the Plan provides that each Holder of an Allowed Other

Secured Claim shall receive, on, or as soon as reasonably practicable following the Effective

Date, at the Debtors' or the Post-Effective Date Debtors' option:  (a) Cash equal to the unpaid

portion of the amount of such Allowed Other Secured Claim; (b) the return of the Holder's collateral securing such Claim; or (c) such other treatment permitted by the Bankruptcy Code.

66.     Accordingly, the Plan complies with Bankruptcy Code section 1129(a)(9).

**J.      At Least One Impaired, Non-Insider Class Has Accepted the Plan— 11 U.S.C. § 1129(a)(10).**

67.     Bankruptcy Code section 1129(a)(10) requires that at least one impaired class of claims must accept the plan, excluding the votes of insiders.[58]  As set forth above, the Holders of Class 3 Prepetition Loan Secured Claims at each Debtor, none of which are insiders, voted to accept the Plan.  Accordingly, the Plan satisfies the requirements of section 1129(a)(10).

**K.      The Plan is Feasible—11 U.S.C. § 1129(a)(11).**

68.     Pursuant to Bankruptcy Code section 1129(a)(11), a chapter 11 plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[59]  Pursuant to section 1129(a)(11), the Court must determine, among other things, that Plan confirmation is not likely to be followed by the liquidation or need for further financial reorganization of the Debtors or any successors to the Debtors under the Plan (unless such liquidation or reorganization is proposed in the Plan).  These conditions are referred to as the "feasibility" of the Plan.

69.     The Plan is a liquidating plan and, accordingly, all of the Debtors' remaining assets will be liquidated and distributed to Holders of Allowed Claims pursuant to the terms of the Plan, and, provided that the Plan is confirmed and goes effective, the Estates will no longer exist to be subject to future reorganization or liquidation.  Further, the Plan adequately

---

[58]    11 U.S.C. § 1129(a)(10).

[59]    11 U.S.C. § 1129(a)(11).

32576892.6

provides the means for the Debtors' liquidation.  The Plan provides for the Plan Administrator to make the necessary Distributions under the Plan.  The Plan also provides a mechanism for the time and method of Distributions.  Finally, the Plan is feasible because it: (i) provides the financial wherewithal necessary to implement the Plan; (ii) offers reasonable assurance that the Plan is workable and has a reasonable likelihood of success; and (iii) will be initially funded by the vesting of all property of the Estates in the Post-Effective Date Debtors.

**L.**      **All Statutory Fees Have Been or Will Be Paid—11 U.S.C. § 1129(a)(12).**

70.      Bankruptcy Code section 1129(a)(12) provides that a court may confirm a chapter 11 plan only if "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan."[60]  Section 6.2(d) of the Plan provides for the payment, on or before the Effective Date, of any fees due pursuant to 28 U.S.C. § 1930 or other statutory requirement.  Therefore, the Plan meets the requirements of section 1129(a)(12).

**M.**      **Retiree Benefits are Not Implicated—11 U.S.C. § 1129(a)(13).**

71.      Bankruptcy Code section 1129(a)(13) requires that a chapter 11 plan provide for continued payment of certain retiree benefits "for the duration of the period that the debtor has obligated itself to provide such benefits."[61]   The Debtors have no obligations to provide any such retiree benefits; accordingly, section 1129(a)(13) is inapplicable to the Plan.

---

[60]     11 U.S.C. § 1129(a)(12).

[61]     11 U.S.C. § 1129(a)(13).

**N.**     **Sections 1129(a)(14)–(16) of the Bankruptcy Code are Inapplicable.**

72.     None of the Debtors are (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts.  Accordingly, sections 1129(a)(14) through (16) of the Bankruptcy Code are not applicable.[62]

**O.**     **The Plan Satisfies the "Cramdown" Requirements under Section 1129(b) of the Bankruptcy Code for Non-Accepting Classes.**

73.     Bankruptcy Code section 1129(a)(8) requires that each class of claims and interests either accept a plan or be unimpaired thereunder.[63]  Section 1129(b) provides that if all applicable requirements of section 1129(a) are met—notwithstanding a failure to comply with section 1129(a)(8)—a plan may be confirmed so long as it does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims and interests that has not accepted the plan.  Therefore, to confirm a plan that has not been accepted by all impaired classes, the plan proponent must show that the plan does not "discriminate unfairly" against, and is "fair and equitable" with respect to, the non-accepting impaired classes.[64]

74.     As Holders of Claims in Classes 1 and 2 are Unimpaired and presumed to accept the Plan, and Holders of Claims in Class 3 voted to accept the Plan, the only Classes to which cram down is relevant are Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), and Class 6 (Interests).  As discussed below, the Plan may be confirmed as to each of these Classes pursuant to the "cramdown" provisions of Bankruptcy Code section 1129(b).

---

[62]     *See In re Sea Launch Co., L.L.C.*, No. 09-12153 (BLS), 2010 Bankr. LEXIS 5283, at *41 (Bankr. D. Del. July 30, 2010) ("Section 1129(a)(16) by its terms applies only to corporations and trusts that are *not* moneyed, business, or commercial.").

[63]     *See* 11 U.S.C. § 1129(a)(8).

[64]     *See, e.g., John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir. 1993); *see also In re Armstrong World Indus., Inc.*, 432 F.3d 507, 512 (3d Cir. 2005); *Kurak v. Dura Auto. Sys., Inc. (In re Dura Auto. Sys., Inc.)*, 379 B.R. 257, 271–72 (Bankr. D. Del. 2007); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 660 (Bankr. D. Del. 2003).

1.      **The Plan is Fair and Equitable.**

75.      Section 1129(b)(2) of the Bankruptcy Code provides that the plan is fair and equitable with respect to a class of impaired unsecured claims or interests if, under the plan, no holder of any junior claim or interest will receive or retain property under the plan on account of such junior claim or interest.[65]

76.      Plan distributions are made in the order of priority prescribed by the Bankruptcy Code and in accordance with the absolute priority rule.  With respect to the Classes deemed to reject the Plan, no Claim or Interest junior to such Classes will receive a recovery under the Plan on account of such Claim or Interest.  Accordingly, the Plan is "fair and equitable" and, therefore, consistent with the requirements of Bankruptcy Code section 1129(b).

2.      **The Plan Does Not Unfairly Discriminate With Respect to Any Class.**

77.      Bankruptcy Code section 1129(b)(1) of the prohibits unfair discrimination with respect to any impaired class of claims or interests that has not accepted the plan.[66]  A plan unfairly discriminates in violation of section 1129(b)(1) only if similar classes are treated differently without a reasonable basis for the disparate treatment.[67]  As between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are

---

[65]  *See* 11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii).

[66]  *See* 11 U.S.C. 1129(b)(1).

[67]  *See, e.g., In re Rubicon U.S. REIT, Inc.*, 434 B.R. 168, 175 (Bankr. D. Del. 2010) (noting courts look to whether "[v]alid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan"); *Lernout & Hauspie Speech Prods.*, 301 B.R. at 660 ("The hallmarks of the various [unfair discrimination] tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination").

comprised of dissimilar claims or interests,[68] or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment.[69]

78.     The Plan does not "discriminate unfairly" with respect to Classes 4-6, as the Plan does not provide any distributions to similarly-situated Claim or Interest Holders. The Claims and Interests in these three Classes are legally and factually distinct from Claims and Interests in other Classes and are properly classified in separate Classes. Class 4 is the only Class that contains General Unsecured Claims, and the Classes receiving payment ahead of Class 4 include priority and secured claims. Class 5 is the only Class that contains Claims of a Debtor against another Debtor, which are routinely placed in separate classes from other Claims, and Class 6 is the only Class that contains Interests.

**P.**    **The Plan Is Not an Attempt to Avoid Tax Obligations—11 U.S.C. § 1129(d).**

79.     Bankruptcy Code section 1129(d) of the provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of Section 5 of the Securities Act of 1933 (the "**Securities Act**").[70] The Plan meets these requirements because the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of the Securities Act, and no party in interest has filed an objection alleging otherwise. The principal purpose of the Plan is to effectuate the Debtors' orderly liquidation, in a timely and efficient manner, through a Distribution mechanism that will maximize creditor recoveries. Accordingly, the Plan satisfies the requirements of section 1129(d).

---

[68]     *See, e.g.*, *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part*, *rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988).

[69]     *See, e.g.*, *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990).

[70]     *See* 11 U.S.C. § 1129(d).

## VI.    THE UNRESOLVED OBJECTIONS SHOULD BE OVERRULED

80.    The Debtors received two limited objections in connection with confirmation of the Plan.  In the event that the objections cannot be resolved prior to the Confirmation Hearing, the Court should overrule the objections.

### A.    <u>The Objection of the U.S. Trustee.</u>[71]

81.    The U.S. Trustee asserts that the Plan: (a) provides the Plan Administrator and Plan Administrator Professionals with impermissible exculpation; and (b) contains unauthorized and overbroad injunction provisions.  Neither assertion is correct.

#### 1.    The Plan Supplement Reflects Appropriate Exculpation of the Plan Administrator Under Applicable Law.

82.    The Plan Administrator Agreement attached as Exhibit B to the Plan Supplement provides that the neither the Plan Administrator nor any of its professionals shall be personally liable for claims arising from post-effective date actions taken consistent with their obligations under the Plan Administrator Agreement or Plan, except where such claims are the result of actual fraud, gross negligence, or willful misconduct.[72]  Similar provisions are routinely approved within the District of Delaware and the Third Circuit generally.[73] In fact, this Court just

---

[71]    *See Limited Objection of the United States Trustee to Confirmation of Combined Chapter 11 Plan* [Docket No. 760] (the "**UST Objection**").

[72]    *See* Plan Supplement, Ex. B at 5.

[73]    *See In re Quanergy Systems, Inc.,* No. 22-11305 (CTG) (Bankr. D. Del. Nov. 8, 2023) [Docket No. 479] (confirming plan under which post-effective date debtor indemnified plan administrator for "any and all liabilities, losses, damages, claims, costs and expenses arising out of or due to their post-Effective Date actions . . . taken in connection with the Plan, the Plan Administrator Agreement and the Confirmation Order"); *In re Fisker Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. Oct. 16, 2024) [Docket No. 722] (confirming plan and liquidating trust agreement wherein the "Liquidating Trustee, in the performance of his or her duties hereunder, shall be defended, held harmless and indemnified from time to time by the Liquidating Trust"); *In re Seaplane Debtor 1, Inc., et al*, No. 24-10703 (CTG) (Bankr. D. Del. Dec. 11, 2024) [Docket No. 680] (approving plan supplement and plan administration agreement containing post-effective date plan administrator exculpation); *In re BowFlex Inc.*, No. 24-12364 (ABA) (Bankr. D.N.J. August 19, 2024) [Docket No. 614] (confirming a plan supplement and liquidating trust agreement containing post-effective date exculpation).

32576892.6

approved precisely this sort of injunction one week ago, over a similar objection from the U.S. Trustee, in the *Number Holdings* case.[74]

83.    The U.S. Trustee's objection notes that the Third Circuit's decision in *In re PWS Holding Corp.* addresses how courts evaluate the validity of plan exculpation provisions.[75] In *PWS,* the Third Circuit held that plan exculpation should generally be limited to only the conduct of estate fiduciaries between the petition date and the effective date, because a clause adhering to those limits "does not affect the liability of [those] parties, but rather states the standard of liability under the Code."[76] The cases cited in the UST Objection reflect the framework established in *PWS*, but each deal with either estate fiduciaries receiving exculpation for prepetition or post-effective date conduct, or non-estate fiduciaries receiving exculpation for conduct during the pendency of the bankruptcy.[77] The exculpation provision contained in section 7(a) of the Plan Administrator Agreement is distinguishable in that it concerns **exclusively** the Post-Effective Date Debtors' post-Effective Date exculpation of their fiduciary.

84.    Contrary to the UST Objection, the exculpation provided for in section 7(a) is not inconsistent with *PWS* because it merely restates the standard of liability that is already applicable to the Plan Administrator under the Post-Effective Date Debtors' organizational documents.[78] Consistent with this Court's ruling in *Prime Core Technologies,*

---

[74]    *See In re Number Holdings, Inc.*, No. 24-10719 (JKS) (Bankr. D. Del. January 24, 2025) [Docket No. 1733], at ¶40 (approving permanent injunction against actions taken in violation of release and exculpation provisions).

[75]    UST Obj.¶ 14.

[76]    *See In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000).

[77]    *See In re Coram Healthcare Corp.*, 315 B.R. 321, 337 (Bankr. D. Del. 2004) (limiting estate fiduciary exculpation to postpetition, pre-effective date activity); *In re Mallinckrodt PLC*, 639 B.R. 837, 882-83 (Bankr. D. Del. 2022) (same); *In re Wash. Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (holding that generally only estate fiduciaries may be exculpated for postpetition, pre-effective date conduct); *In re PTL Holdings LLC*, No. 11-12676 (BLS) 2011 WL 5509031 at *11-12 (Bankr. D. Del. 2011) (same).

[78]    *See* 8 Del. C. § 102(b)(7) (allowing a Delaware corporation's organizational documents to contain "a provision eliminating or limiting the personal liability of a director or officer to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director or officer"); *see also United Food & Com. Workers*

section 7(a) reflects standard limitation of liability provisions allowed in Delaware corporate charters which will be extended to the Plan Administrator as the sole director and officer of the Post-Effective Date Debtors.[79]  The Plan Administrator Agreement does not call for the Court to grant additional indemnity to the Plan Administrator and the Plan Administrator Professionals or any indemnity for pre-Effective Date conduct; it simply clarifies the applicable standard of liability to which the Plan Administrator and Plan Administrator Professionals will be held, a standard which is entirely appropriate and consistent with applicable law.

### 2.    The Injunction Provisions are Permissible and Integral to the Plan.

85.    While the U.S. Trustee does not object to the Releases and Exculpation provided for in the Plan, the U.S. Trustee argues that "[t]he Court should deny confirmation unless the injunction in Plan §§ 14.1(a) & (d) is narrowed so that it protects only the property being distributed under the Plan and the entity distributing it (i.e., the plan administrator)."[80] The Debtors disagree with the premise and conclusion of this argument.

86.    The Injunction implements the Releases and Exculpation, in part, by enjoining parties from commencing or continuing only those claims that were released or exculpated pursuant to such provisions. As it pertains to the Injunction related to the Releases, section 14.1(d) provides that "no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other

---

*Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1050 (Del. 2021) (holding "section 102(b)(7) of the DGCL authorizes corporations to adopt a charter provision insulating directors from liability for breaching their duty of care").

[79]    *See In re Prime Core Technologies Inc., et al.*, No. 23-11161 (JKS) (Bankr. D. Del. Dec. 12, 2023) [Docket No. 644] (holding that the confirmation order would not be deemed as the Court's prospective indemnification of the Plan Administrator, but that it also would not be "construed as abrogating or eliminating the rights and authority of the Wind-Down Debtor" to do so under state law or its organizational documents).

[80]    UST Obj. ¶21.

than assets required to be distributed to that Entity under this Plan." Without the Injunction, the carefully crafted and negotiated structure and purposes of the Plan could be contravened.

87.    The scope of the Injunction as it relates to both sections is appropriate, particularly in connection with a plan structured in the manner that the Plan is structured.  This is not a case where the Debtors will become shell corporations after transferring all assets to a liquidating trust; here, the Post-Effective Date Debtors will continue to hold estate assets, for the benefit of creditors, after the Effective Date and until the Post-Effective Date Debtors are wound down and dissolved. The Plan Administrator will not be the entity distributing the Wind Down Assets, as suggested by the UST Objection; rather, the Plan Administrator will replace the Debtors' current directors, officers, and managers and will oversee the Post-Effective Date Debtors' distribution of the Wind Down Assets.  Accordingly, the Injunction is critical to ensure that parties do not interfere with the consummation and implementation of the Plan.

88.    Defending against lawsuits not enjoined by the Plan, the substance of which will be disposed of pursuant to the other terms of the Plan, would be costly and would deplete the Post-Effective Date Debtors of scarce resources, ultimately reducing the recoveries of all creditors without any warranted benefit to the creditor pursuing such resolved claims or causes of action. Such actions would, clearly, disrupt the Plan's proposed distribution structure.

89.    A court in this district previously overruled a similar objection by the U.S. Trustee under similar circumstances.[81] In *Suntech*, the debtors explained the critical nature of the plan's injunction: the estate assets would remain with the debtors after the effective date, such that any depletion of those assets by parties pursuing litigation would ultimately harm creditors.[82]

---

[81]    *See In re Suntech Am., Inc.*, No. 15-10054 (CSS) (Bankr. D. Del. April 27, 2016) [Docket No. 587], Hr'g Tr. at 21:10–22:3.

[82]    *Id.* at 17:11–20:13.

The court agreed and approved the injunction provision, stating: "These aren't going to be shell corporations. As a result, to allow claims to be asserted . . . post-confirmation . . . would be to waste estate assets and dissipate those assets from otherwise being available for creditors."[83]

90.     As Judge Goldblatt noted in connection with confirmation of the plan in *In re Kabbage, Inc.*, "Because the legal entities that made up the prepetition debtors will not end up as corporate shells upon the effective date but will instead hold assets that are intended to be distributed to creditors under the plan, the parties had good reason to protect the debtors and the Wind Down Estates from the holders of prepetition claims who might seek to defeat the operation of the plan by taking action against the postbankruptcy entities on account of their prepetition claims."[84]   The same is true here.

91.     Judge Goldblatt's concerns about granting a "permanent" injunction to postbankruptcy entities in *Kabbage* are not at issue in these cases.  Judge Goldblatt noted that "the reason § 1141(d)(3) prohibits a liquidating debtor from receiving a discharge is that corporate debtors in chapter 7 do not receive a discharge, and §1141(d)(3) prevents "debtors from avoiding the operation of section 727(a)(1) through the use of a liquidating plan under chapter 11 instead of a chapter 7 liquidation," [85] and that the "policy behind [§ 727(a)(1)] is the prevention of trafficking in corporate shells…. A corporation may obtain relief from its debts through dissolution. But it does not need relief if it no longer has any assets."[86]

92.     Here, the Plan forecloses the possibility of the Post-Effective Date Debtors' use of the Exculpation as a means to "traffic[] in corporate shells."  The Plan provides

---

[83]   *Id.* at 21:23–22:3.

[84]   *In re Kabbage, Inc.*, Case No. 22-10951 (CTG) (Bankr. D. Del. March 15, 2023) (Docket No. 681).

[85]   *Id.*, citing 8 *Collier on Bankruptcy* ¶ 1141.05[4] (16th ed. 2022).

[86]   *Id.*, citing 6 *Collier on Bankruptcy* ¶ 727.01[3] (16th ed. 2022).

32576892.6

that "[u]pon the conclusion of the Wind Down, the Plan Administrator shall be authorized to dissolve the Post-Effective Date Debtors, subject to the provisions of the Wind Down Organizational Documents, or to allow for the administrative dissolution of any or all of the Debtors under applicable state law, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder or any payments to be made in connection therewith."[87] Thus, the Injunction would merely ensure that, from the Effective Date through the Post-Effective Debtors' dissolution, Plan administration can proceed as intended.

### B.    <u>The Objection of 16302 Jamaica Avenue LLC and Lodi Value Add II, LLC.</u>

93.    Two counterparties to Unexpired Leases that remain subject to potential assumption and assignment or rejection in accordance with the Designation Rights Period, 16302 Jamaica Avenue LLC and Lodi Value Add II, LLC (together, the "**Objecting Landlords**"), assert that the Court should not enter a Confirmation Order until after the conclusion of the Designation Rights Period, because entry of the Confirmation Order prior to that period would allegedly modify the Objecting Landlords' rights under their Unexpired Leases and would improperly extend the Debtors' time to assume or reject their Unexpired Leases under Bankruptcy Code §365(d)(4).  Presently, the Debtors' deadline to assume or reject Unexpired Leases is "the earlier of (i) March 10, 2025, and (ii) the date of the entry of an order confirming a plan, in accordance with section 365(d)(4) of the Bankruptcy Code."[88]

94.    The Debtors have no intention of limiting or prejudicing the ability of the Buyer to designate any of the Reserved Agreements to be assumed through the full Designation Rights Period, which expires on February 27, 2025.  Nor do the Debtors have any intention of

---

[87]    Plan, at §9.5.

[88]    *Order Extending the Deadline for the Debtors to Assume or Reject Unexpired Leases of Non-Residential Real Property Under Which Any of the Debtors Is a Lessee* [Docket No. 644], at ¶ 2.

prejudicing substantive rights of the counterparties to any Reserved Agreement throughout the full Designation Rights Period, during which period the Reserved Agreements remain executory contracts with the Debtors.  The Debtors intend to continue to operate as debtors in possession until the end of the Designation Rights Period, at which point the Buyer will have designated the Unexpired Leases that it intends to assume.  The Debtors will then be prepared for the Plan to go effective.  Consistent with section 12.1 of the Plan, any Unexpired Leases that remain executory and not previously assumed or rejected would be rejected on the Effective Date.

95.    In bringing this dispute to the Court, the Debtors' paramount concern is to ensure they are best positioned for the Effective Date to occur as soon as possible after the Designation Rights Period concludes.  Given the limited funds in the Wind Down Budget for the Plan Administrator to complete the administration and wind-down of the Post-Effective Date Debtors, it is in the Debtors' interests to proceed with this process as soon as possible.  The Debtors submit that the Court's approval of the proposed Confirmation Order, which includes a provision indicating that the Confirmation Order is not deemed entered for purposes of Bankruptcy Code section 365(d)(4) unless or until the conditions to effectiveness have been satisfied or waived,[89] is appropriate under the circumstances and does not prejudice any party's substantive rights or obligations.  Rather, it simply places the Confirmation Order "on record" at the earliest possible opportunity in advance of the anticipated Effective Date, and effectuates the relief requested under the Plan as of the Effective Date.

96.    If the Court is unwilling to approve Paragraph 6 of the Confirmation Order as proposed and instead would have the Debtors delay entry of the Confirmation Order until after

---

[89]    *See* Confirmation Order at ¶6.

the Designation Rights Period lapses, the Debtors' request for a waiver of any stay of the Confirmation Order, as discussed in further detail below, is of even greater importance.

## VII.   GOOD CAUSE EXISTS TO WAIVE THE STAY OF THE CONFIRMATION ORDER.

97.     Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Bankruptcy Court orders otherwise." Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under Bankruptcy Code section 365(f). Each rule also permits modification of the imposed stay upon court order.

98.     Good cause exists for waiving any stay of the proposed Confirmation Order so that the Effective Date can occur as soon as practicable.  As noted above, the Chapter 11 Cases and the related transactions have been negotiated and implemented in good faith and with a high degree of transparency and dissemination of information.  Additionally, the Debtors incur significant administrative and professional costs each day that they remain in Chapter 11; delaying the Effective Date will expose the Debtors to additional administrative expenses that will deplete the Wind Down Assets.  For these reasons, the Debtors, their advisors, and other key constituents are working to ensure that the Effective Date may occur as soon as possible. Accordingly, the Debtors request a waiver of any stay imposed by the Bankruptcy Rules.

## VIII.   CONCLUSION

99.     The Debtors request that the Court enter an order confirming the Plan, in substantially the form of the proposed Confirmation Order filed concurrently herewith.

Dated: Wilmington, Delaware
         January 31, 2025

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Sean T. Greecher*
Michael R. Nestor (No. 3526)
Sean T. Greecher (No. 4484)
Allison S. Mielke (No. 5934)
Rebecca L. Lamb (No. 7223)
Benjamin C. Carver (No. 7176)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
           sgreecher@ycst.com
           amielke@ycst.com
           rlamb@ycst.com
           bcarver@ycst.com

*Counsel to the Debtors and Debtors in Possession*

32576892.6