# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BLINK HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11686-BLS<br><br>Jointly Administered |

## REQUEST BY HARTFORD FIRE INSURANCE COMPANY TO ALLOW AND REQUIRE PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM

Hartford Fire Insurance Company (individually, and with its affiliated surety and/or sureties, the "Surety"), by and through its undersigned counsel, hereby files this Request to Allow and Require Payment of an Administrative Expense Claim (the "Administrative Expense Claim"), and states as follows:

## GENERAL BACKGROUND

**A.    Background and Basis for Administrative Expense Claim**

1.    On August 12, 2024 (the "Petition Date"), Blink Holdings, Inc. and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors continue to operate their businesses as debtors in possession and their chapter 11 cases are being jointly administered.

---

[1] The last four digits of Blink Holdings, Inc.'s federal tax identification number are 6354. The mailing address for Blink Holdings, Inc. is 45 West 45th Street, 10th Floor, New York, New York 10036. Due to the large number of debtors in these chapter 11 cases, which the Debtors have requested be jointly administered, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting counsel for the Debtors.

2. Prior to the Petition date, the Surety, as a surety company, issued and/or executed surety bonds and/or related instruments, including certain health club/spa surety bonds in which various Debtors are listed as principal on the bonds, and, which were issued, generally, in favor of state jurisdictions and/or members of such health clubs/spas who suffer a financial loss as a result of the closure of a facility. The bonds identified in the chart below were in effect/active until the Effective Date (February 28, 2025).

3. Upon information and belief, the following chart generally describes the surety bonds, which were effective through the Effect Date:[2]

| Bond Number | Principal Name | Obligee | Bond Type Description | Limit |
| --- | --- | --- | --- | --- |
| XXXXXXX2336 | Blink 2192 Texas Parkway Inc. | State of New Jersey | Commercial | $20,000 |
| XXXXXXX2526 | Blink Nutley Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX3534 | Blink Parsippany, Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX3580 | Blink Passaic, Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX3589 | Blink Perth Amboy, Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX3610 | Blink 1060 W Alameda, Inc. | State of California | Commercial | $75,000 |
| XXXXXXX3615 | Blink Clifton, Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX3616 | Blink East Orange, Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX3617 | Blink Irvington Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX3618 | Blink Journal Square, Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX3619 | Blink Linden, Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX3620 | Blink Lodi, Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX3621 | Blink Newark Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX1689 | Blink Plainfield Inc. | State of New Jersey | Commercial | $50,000 |

---

[2] There also could be liability to the Surety for inactive bonds.

| Bond Number | Principal Name | Obligee | Bond Type Description | Limit |
|---|---|---|---|---|
| XXXXXXX1690 | Blink South Orange Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX1691 | Blink Union, Inc. | State of New Jersey | Commercial | $50,000 |
| XXXXXXX1694 | Blink Whitman, Inc. d/b/a Blink Fitness | Commonwealth of Pennsylvania | Commercial | $50,000 |
| XXXXXXX1695 | Blink Wissinoming, Inc. d/b/a Blink Fitness | State of New Jersey | Commercial | $50,000 |
| XXXXXXX1696 | Blink Airline Drive, Inc. / Blink Fitness | State of New Jersey | Commercial | $20,000 |
| XXXXXXX1697 | Blink Beach Street, Inc. | State of New Jersey | Commercial | $20,000 |
| XXXXXXX1699 | Blink Keller, Inc. | State of New Jersey | Commercial | $20,000 |
| XXXXXXX1700 | Blink Long Point Inc. dba Blink Fitness | State of New Jersey | Commercial | $20,000 |
| XXXXXXX1701 | Blink NRH, Inc. | State of New Jersey | Commercial | $20,000 |
| XXXXXXX1702 | Blink Westchase Inc. dba Blink Fitness | State of New Jersey | Commercial | $20,000 |
| XXXXXXX5476 | Blink Holdings, Inc., on behalf of all its subsidiaries operating health clubs in the New York State | New York Dept. of State | Commercial | $250,000 |
| XXXXXXX4926 | Blink 8201 Broadway Inc. dba Blink Fitness | State of New Jersey | Commercial | $20,000 |
| | | | **TOTAL =** | **$1,285,000** |

4.     The bonds generally described above, and their related documents (such as, without limitation, rider(s) and/or amendment(s) thereto), as well as any and all other bond(s), related documents, issued and/or executed on behalf of any of the Debtors, or their non-debtor affiliates, shall hereafter be referred to as the "Bonds."

5.     In connection with the Surety's execution and/or issuance of the Bonds, the Debtors and/or their non-debtor affiliates agreed to indemnify, exonerate and hold harmless the Surety.

6.     More specifically, certain of the Debtors and/or their non-debtor affiliates executed a general indemnity agreement dated September 30, 2020, and signed by Blink Holdings

Inc. on or about November 2, 2020, (the "Indemnity Agreement") in favor of the Surety. A redacted copy of the Indemnity Agreement is annexed hereto.

    7.    The Indemnity Agreement, among other provisions, provides, in pertinent part:

> "Indemnitor" means all person or entities signing this Agreement and their respective heirs, successors, assigns, executors, personal representatives, administrators, marital communities, co-venturers, affiliates, divisions and direct or indirect subsidiaries, whether now existing or hereafter acquired or created. Indemnitor also means any Principal and any person or entity acquiring through merger, acquisition or similar transaction a controlling interest in any Principal.
>
> "Loss" means all payments made or obligations incurred by Hartford: (i) as a result of or arising out of any Default; and/or (ii) in the belief that it was or might be liable as a result of having Underwritten any Bond; and/or (iii) in investigating and responding to any Claim; and/or (iv) in enforcing this Agreement or any Other Surety Documents; and/or (v) in the belief that it would mitigate its exposure. Loss shall include, but not be limited to, Claim payments, attorney fees, consultant fees, court costs, mediation fees, arbitration fees, expert witness fees, travel expenses, unpaid premiums, advances and guarantees on behalf of an Indemnitor and interest on all amounts paid at the maximum statutory rate.
>
> \*\*\*
>
> <u>Indemnification, Hold Harmless and Exoneration.</u> The Indemnitors shall indemnify, hold harmless and exonerate Hartford from and against any and all Default, Loss, Claims and exposure or liabilities relating to Underwriting….

*See* Exhibit "A," redacted Indemnity Agreement.

    8.    The Indemnity Agreement provides that Blink Holdings, Inc, and any of its affiliated debtor and/or non-debtors affiliates, are contractual indemnitors and, as such, they are, among other things, jointly and severally liable to the Surety for, without limitation, any and all losses, costs, and/or expenses incurred and/or to be incurred in relation to the Bonds and/or the surety program described herein.

4

9. As noted above, certain of the Debtors, among other(s), are contractually and/or under the common law, obligated to, among other things, indemnify and hold the Surety harmless in connection with losses, costs and expenses, including attorneys' fees, in connection with, among other things, the Surety's furnishing of any bond or related instrument, including the Bonds, as more fully set forth in either or both of the Indemnity Agreements and applicable law.

10. On October 9, 2024, the Surety filed claim no. 10198 in bankruptcy case no. 24-11686 (Blink Holdings, Inc.). On March 24, 2025, the Surety filed a Rejection Damages claim no. 10320 in bankruptcy case no. 24-11686 (Blink Holdings, Inc.), which was amended to included footnote 2 which amended addendum was filed on March 25, 2025. This claim is in addition to any other claim filed on behalf of the Surety.

11. On February 28, 2025, the Bankruptcy Court issued *Findings of Fact, Conclusions of Law, and Order Approving and Confirming the Third Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Blink Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* ("Confirmation Order") [Docket No. 831).

12. The Confirmation Order provides in pertinent part that "[t]he rights of Hartford Fire Insurance Company, individually, and with its affiliated surety or sureties ("**Surety**") with respect to subrogation to the extent any Claim is paid by a Surety, setoff and recoupment rights, lien rights and trust claims, if any, are not primed, subordinated, affected or impaired by the Plan Documents … or any order of the Court, and neither are the rights of any party to whom a Surety may be subrogated…." and "on the Effective Date, any bonds of any kind issued by the Surety, and any agreements related thereto, shall be deemed rejected (to the extent executory) and cancelled….." (Confirmation Order at ¶ 35).

13. The Effective Date occurred on February 28, 2025. (*See*, Docket No. 833, *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Bar Dates*)("Notice of Effective Date")

14. The Notice of Effective Date provided that the Administrative Expense Deadline is March 31, 2025. (*Id.*).

15. The deadline, here, to file a proof of claim on account of the rejection of executory contracts and unexpired leases of the Debtors is "the date that is 30 days after the entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors…." ("Rejection Damages Bar Date") (Docket No. 347, *Order (I) Establishing Bar Dates for Filing Proofs of Claim Including Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, and (IV) Approving Form and Manner of Notice Thereof* at ¶ 3(d)).

16. The Surety incurred legal fees and expenses totaling $57,821.56 from the Petition Date through the Effective Date, relative to enforcement of the Indemnity Agreement or Other Surety Document, among other elements of "Loss," as provided for in the Indemnity Agreement.

**B.      Summary of Administrative Expense Claim**

17. Pursuant to Section 503(b) of the Code, as well as its right of subrogation to the claims, rights and interest of state jurisdictions and/or members of such health clubs/spas who suffer a financial loss as a result of the closure of a facility (collectively, the "Obligees" or singularly, an "Obligee"), the Surety asserts an Administrative Expense Claim for not less than

$57,821.56, which constitutes the unreimbursed fees and costs incurred by the Surety during the administrative expense claim period (August 12, 2024 through February 28, 2025).

18. In addition, the Surety asserts an Administrative Expense Claim for any bond claim arising during and/or pertaining to the administrative expense claim period (August 12, 2024 through February 28, 2025), along with any fees and costs incurred in addressing such claims.

19. In so doing, the Surety reserves all rights, remedies and interest in connection with any liens, setoff and recoupment rights, all of which have been expressly preserved at confirmation.

## ARGUMENT

**A.   The Surety Is Entitled To An Administrative Expense Claim Based on Section 503**

20. Pursuant to §§ 503(a) and (b) of the Bankruptcy Code, the Surety is entitled to receive payment for the actual, necessary costs and expenses of preserving the estate. Section 503(a) and (b) provide as follows:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
>
> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
>> (1) (A) the actual, necessary costs and expenses of preserving the estate . . .

11 U.S.C. §§ 503(a) and (b). *See In re M Group, Inc.*, 268 B.R. 896, 898-899 (Bankr. D. Del. 2001) (provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate….") (citation omitted).

21. The principal purpose of § 503(b)(1)(A) is to give creditors the incentive to continue dealing with the debtor-in-possession and supply it goods and services. *See e.g., Camelot*

7

*Music, Inc. v. MHW Advertising & Public Relations Inc., (In re CM Holdings, Inc.)*, 264 B.R. 141, 151 (Bankr. D. Del. 2000) (recognizes that a creditor benefits the estate by providing postpetition services); *In re Southern Soya Corp.*, 251 B.R. 302 (Bankr. D. S.C. 2000) (citing *Merry-Go- Round Enter. v. Simon DeBartolo Group (In re Merry-Go-Round Enter.*, 180 F.3d 149, 158 (4th Cir. 1999)). Normally, to be granted an administrative expense claim, a creditor must establish: (1) that the claim arose out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and (2) that the claim directly benefited the estate. *See Merry-Go-Round Enter.*, 180 F.3d at 157; *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995).

22.  However, Courts have also awarded administrative expense claims under the *Reading* exception which applies to variety of circumstances and under which notions of "fundamental fairness" demand that an injured party be compensated by the estate. *See Reading Co. v. Brown*, 391 U.S. 471, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968); *Sanchez v. Northwest Airlines, Inc.*, 659 F.3d 671, 677 (8th Cir. 2011) (finding that *Reading* reached its conclusion "after balancing the objective of the debtor's rehabilitation against the desirability of allowing those injured by the operation of the business during the bankruptcy process to recover ahead of those for whose benefit the business was carried out"); *see also*, *In re ATP Oil & Gas Corp.*, 2014 Bankr. LEXIS 1050, at * 26 – 28 (Bankr. S.D. Tex. Mar. 18, 2014) (allowing an administrative expense even if contractually provided services did not "actually benefit the estate"); *In re Shreyas Hospitality, LLC*, 2010 Bankr. LEXIS 2074 (Bankr. C.D. Ill. 2010) (allowing administrative expense claim to compensate for debtor's use of a trade name during the case). Such exception interprets "actual and necessary" costs under Section 503(b) to include amounts incurred ordinarily

incident to the continued operation of a debtor's business or its orderly liquidation. *Reading*, 391 U.S. at 475; 4 Collier on Bankruptcy P 503.06 (16th 2023) (citing *Reading)*.

23. During the post-petition period, the Debtors maintained the Bonds and Indemnity Agreement, which together form an integrated contract. These Bonds benefited the Debtors' estate by preserving it during the bankruptcy. Costs associated with these Bonds would thus be actual and necessary, and would be required to paid to the Surety under the Indemnity Agreement. In addition, notions of "fundamental fairness" require that the Surety receive an administrative expense claim for these amounts as they would be expected as part of the Debtors' operation and indeed reorganization during these pendency of these bankruptcy cases.

24. By way of Section 503(b) and/or the holding in *Reading* and its progeny, the Surety asserts an administrative expense claim for the unreimbursed fees and costs it has incurred during the administrative expense claim period which total not less than $57,821.56. Surety also asserts administrative expense claim for any bond claim arising during and/or pertaining to the administrative expense claim period, along with the associated fees and costs incurred in addressing this claim.

B.     **The Surety Is Entitled To An Administrative Expense Claim Based on Its Right of Subrogation**

25. In the alternative, the Surety asserts an administrative claim for any losses based on its right of subrogation to the claims, rights and interest of the Obligees.

26. The Surety has equitable subrogation rights that arise by common law to the extent that the Surety pays any claim under any bond that it has issued. "The doctrine of equitable subrogation applies 'whenever any person, other than a mere volunteer, pays a debt or demand which in equity and good conscience should have been paid by another…" *See e.g., Pearlman v.*

9

*Reliance Ins. Co,* 371 U.S. 132, 135 – 36 (1962) ("there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed*"); Prairie State Nat'l Bank v. United States*, 164 U.S. 227, 232 – 33 (1896) (holding surety had subrogation rights to contract funds after satisfying bonded obligations); *In re B.C. Rogers Poultry, Inc.*, 455 B.R. 524, 566 (Bankr. S.D. Miss. 2011). Subrogation rights sometimes arise even before a surety actually makes payment to an oblige. *See In Re Jones Constr. & Renovation, Inc.*, 337 B.R. 579 (Bankr. E.D.Va. 2006) (holding when a debtor-contractor breaches its contract with a project owner, it precludes debtor's entitlement to retained funds, and thus those funds are not property of the estate, with the doctrine of equitable subrogation applicable to entitle the surety to any funds that may be due on the bonded contracts to satisfy any bond claims).

27. Hence, to the extent an Obligee asserts a claim under the Bonds based on an amount due from the Debtors under the administrative expense claim period and certainly by the time the Surety satisfied the amount due to any Obligee, the Surety is entitled to assert such a claim against the Debtor under the doctrine of equitable subrogation.

28. To the extent that the Surety satisfies any amounts due and owing to an Obligee during this period, the Surety, who steps in the shoes of the Obligee, will inherit that same administrative expense claim.

## **RESERVATION OF RIGHTS**

29. Nothing contained in this request for allowance of administrative expense shall constitute a waiver of: (a) the right to have final orders in non-core matters entered only after *de novo* review by a District Court Judge; (b) the right to trial by jury in any proceeding triable in this case or any case, controversy, or proceeding related to this case; (c) the right to have the District

Court withdraw the reference in any matter subject to mandatory or discretionary abstention; (d) any objection to the jurisdiction or venue of this Court; (e) an election of remedy; (f) the right to amend this request for allowance of administrative expense claim; (g) the right to assert claims for attorneys' fees and costs which may accrue or have accrued; and/or (h) any other right, claim, defense, action, setoff, or recoupment, in law or in equity, under any agreement, all of which are expressly reserved.

30. The Surety reserves the right to amend and/or supplement this request for allowance of an administrative expense at any time and in any manner including, without limitation, as necessary or appropriate to amend, quantify or correct amounts, to provide additional detail of the claims set forth herein, and/or file additional proofs of claim and/or requests for allowance of administrative expense claims for any additional amounts owing to Hartford. Hartford's request for allowance of administrative expense claims are made without prejudice to Hartford's rights under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise.

31. The Surety reserves all of its rights, claims, defenses and/or exclusions with respect to all non-debtors and nothing herein shall be construed as a waiver of such rights, claims, defenses and/or exclusions, or as an admission against the Surety's interests.

WHEREFORE, based on the foregoing, the Surety respectfully requests the entry of an Order (1) allowing the administrative expense claim of the Surety against the estate of the Debtors in the amount of not less than $57,821.56, as well as for any bond claim arising during and/or pertaining to the administrative expense claim period along with any associated fees and costs and (2) for such further and other relief as the Court may deem just and proper.

                                      **MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Dated: March 25, 2025                */s/ Gary D. Bressler*


Case 24-11686-JKS    Doc 861    Filed 03/25/25    Page 12 of 12

Gary D. Bressler, Esq.
300 Delaware Avenue, Suite 1014
Wilmington, DE 19801
Telephone: 302-300-4510
Facsimile: 302-654-1031
E-mail: gbressler@mdmc-law.com

*Attorneys to Hartford Fire Insurance Company*

12