**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., *et al.,* [1] | Case No. 24-11686 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: December 2, 2025 at 4:00 p.m. (ET)**<br>**Hearing Date: January 6, 2026 at 10:00 a.m. (ET)** |

**PLAN ADMINISTRATOR'S SECOND MOTION FOR A FINAL DECREE**
**AND ORDER CLOSING CERTAIN OF THE DEBTORS' CHAPTER 11 CASES**

Burton Hastings Advisors LLC, not individually, but solely in its capacity as the Plan Administrator (the "Plan Administrator") in the above-captioned cases (collectively, the "Debtors," and after the Effective Date of the Debtors' confirmed chapter 11 plan, the "Post-Effective Date Debtors"), [2] hereby files this motion (the "Motion"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Final Decree"), (a) closing the chapter 11 cases of the Debtors identified on **Exhibit 1** attached to the Proposed Final Decree (as applicable, the "Closing Debtors" and their respective cases, "Closing Cases") as of the date of entry of the Proposed Final Decree, and (b) granting related relief. Upon closing the Closing Cases, only the chapter 11 case of Blink Holdings, Inc. (the "Remaining Debtor" and its case, the "Remaining Case") will remain open to allow the Plan Administrator to reconcile and resolve any outstanding Secured Claims, Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims (collectively, the "SAP Claims"), [3] and to make distributions under the Plan. In support of

---

[1]    A complete list of the Debtors may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/BlinkFitness, or by contacting the Plan Administrator's undersigned counsel.

[2]    Docket No. 806 (the "Plan"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[3]    The Plan provides that Holders of General Unsecured Claims will not receive or retain any property or interest in property under the Plan on account of their General Unsecured Claims and, therefore, the Plan Administrator is not required to resolve and/or reconcile General Unsecured Claims against any Debtor.

this Motion, the Plan Administrator respectfully states:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and Article XVI of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The Plan Administrator consents to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that this Court, absent consent of the relevant parties, cannot enter final orders or judgments in connection with the Motion consistent with Article III of the United States Constitution.

3.      The statutory and legal predicates for the relief requested herein are sections 105(a) and 350(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

4.      On August 12, 2024, (the "Petition Date"), Blink Holdings, Inc. and its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

5.      On February 28, 2025, the Court entered an order (the "Confirmation Order")[4] confirming the Debtors' Plan.  On February 28, 2025, the Debtors' Plan became effective (the "Effective Date").[5]

---

[4]      Docket No. 831.

[5]      *See* Notice of Effective Date [Docket No. 833].

6.      Pursuant to the Confirmation Order and Plan, among other things, the Plan Administrator was appointed and became the sole director, member, officer or manager of each of the Post-Effective Date Debtors. [6]  The Plan Administrator is responsible for reconciling SAP Claims and making Distributions to such Allowed Claims in accordance with the Plan. [7]

7.      The Plan further provides the Plan Administrator with the power and authority to (i) distribute funds to Holders of Allowed Claims and perform assigned duties; (ii) object to Claims and Interests and prosecute such objections; (iii) compromise and settle disputes regarding Claims or Interests; (iv) file tax returns for the Debtors; and (v) monetize Wind Down Assets in the best interests of the Post-Effective Date Debtors. [8]

8.      On May 9, 2025, the Plan Administrator filed an initial *Motion for a Final Decree and Order Closing Certain of the Debtors' Chapter 11 Cases* (the "Initial Final Decree Motion"). [9] On May 27, 2025, the Court entered an order granting the Initial Final Decree Motion (the "Initial Final Decree"). [10] The Initial Final Decree closed 127 of the Chapter 11 Cases and left open the Chapter 11 Cases of 11 Debtors.

9.      On September 8, 2025, the Plan Administrator filed the *Notice of Claims Previously Satisfied* (the "First Satisfied Claims Notice"). [11]  Pursuant to the Satisfied Claims Notices, the Debtors disallowed twenty-six SAP Claims asserted against the Debtors that had been previously paid.  Contemporaneously with the filing of this Motion, the Plan Administrator filed the *Second*

---

[6]      Confirmation Order, ¶ 11; Plan, § 9.4.

[7]      *See* Plan, § 10.3, 11.1.

[8]      *Id.*, § 9.6.

[9]      Docket No. 884.

[10]     Docket No. 893.

[11]     Docket No. 925.

*Notice of Claims Previously Satisfied* (the "Second Satisfied Claims Notice," and together with the First Satisfied Claims Notice, the "Satisfied Claims Notices") to disallow two additional SAP Claims.

10.    On November 7, 2025, the Court entered the Order Sustaining Plan Administrator's First Omnibus (Non-Substantive) Objection to Certain (I) Insufficient Documentation Claims; (II) Late Filed Claims; and (III) Amended and Superseded Claims (the "Omnibus Objection Order") sustaining the Debtors' objections to certain SAP Claims.[12]

## RELIEF REQUESTED

11.    By this Motion, the Plan Administrator seeks entry of the Proposed Final Decree (i) closing the Closing Cases; (ii) waiving the requirement that the Closing Debtors in the Closing Cases file any further post-confirmation reports in those cases; and (iii) and modifying the jointly-administered case caption to reflect only the Remaining Case as follows:

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BLINK HOLDINGS, INC., [FN] | Case No. 24-11686 (JKS) |
| Post-Effective Date Debtor. | |

[FN] The Post-Effective Date Debtor's service address is c/o Burton Hastings Advisors LLC, 40 Half Moon Lane, Irvington, NY 10533.

## BASIS FOR RELIEF

12.    Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."[13]  Similarly,

---

[12]    Docket No. 941.

[13]    11 U.S.C. § 350(a).

Bankruptcy Rule 3022, which implements section 350 of the Bankruptcy Code, provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."[14]  Finally, Local Rule 3022-1(a) provides that "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid."[15]  Furthermore, section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[16]

13.    The term "fully administered" is not defined in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules.  However, the Advisory Committee Notes to Bankruptcy Rule 3022 (the "Advisory Committee Notes") set forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

(a)    whether the order confirming the plan of reorganization has become final;

(b)    whether deposits required by the plan of reorganization have been distributed;

(c)    whether property proposed by the plan of reorganization to be transferred has in fact been transferred;

(d)    whether the debtor has assumed the business addressed by the plan of reorganization;

(e)    whether payments under the plan of reorganization have commenced; and

(f)    whether all motions, contested matters and adversary proceedings have been finally resolved.[17]

---

[14]    Fed. R. Bankr. P. 3022.

[15]    Del. Bankr. L.R. 3022-1(a).

[16]    11 U.S.C. § 105(a).

[17]    *See* Fed. R. Bank. P. 3022, Advisory Committee Note (1991).

Bankruptcy courts, including this Court, have adopted the view that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before the case is closed."[18]

14.    Entry of the Proposed Final Decree is appropriate here because the estates of the Closing Debtors in the Closing Cases have been "fully administered" within the meaning of section 350(a) of the Bankruptcy Code.  Keeping the Closing Cases open serves no further purpose.  There is no need to administer General Unsecured Claims against the Closing Debtors, because holders of General Unsecured Claims are not entitled to any distribution under the Plan.

15.    Furthermore, there are no outstanding SAP Claims against the Closing Debtors. Since the Court entered the Initial Final Decree, the Plan Administrator and its advisors have addressed the outstanding SAP Claims asserted against the Closing Debtors either (i) by disallowing certain SAP Claims pursuant to the Satisfied Claims Notices or Omnibus Objection Order, or (ii) by allowing certain SAP Claims and paying (or requesting a completed Form W-9 in order to pay) such Allowed SAP Claims.  The reconciliation of, and distributions on account of, SAP Claims against the Remaining Debtor will occur under the Remaining Case pursuant to the Plan and Confirmation Order.  Closing the Closing Cases will have no impact on the resolution of any remaining Claims that may be entitled to a distribution or other legal entitlement under the Plan, nor will closing the Closing Cases affect the substantive rights of any party in interest.

16.    In addition, all of the factors noted above weigh in favor of closing the Closing Cases or do not apply:

---

[18]    *In re SLI, Inc.*, No. 02-12608 (WS), 2005 WL 1668396, at *2 (Bankr. D. Del. June 24, 2005) (*citing In re Mold Makers, Inc.*, 124 B.R. 766, 768–69 (Bankr. N.D. Ill. 1990)); *see also In re Omega Optical, Inc.*, 476 B.R. 157, 167 (Bankr. E.D. Pa. 2012) (noting that bankruptcy courts have flexibility in deciding whether an estate is fully administered and may consider the factors set forth in Rule 3022 as well as other relevant factors).

- The Confirmation Order has become a Final Order, and the Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code;

- The remaining property of the Closing Debtors constitute Wind Down Assets that will be administered by the Plan Administrator through the Remaining Case;

- The Debtors are liquidating pursuant to the Plan and have not assumed any business;

- The Plan Administrator is actively reviewing the SAP Claims that have been filed in the Remaining Case and expects to complete distributions as soon as possible; and

- None of the individual Closing Debtors in the Closing Cases have any unresolved motions, contested matters, or adversary proceedings and all pending motions can and will be addressed in the Remaining Debtor's case.

These factors demonstrates that nothing remains to be done in the Closing Debtors' cases, and there is no reason to keep them open.

17. Under the circumstances, closing the Closing Cases is also an appropriate use of the Court's equitable powers under section 105 of the Bankruptcy Code. Closing those cases will relieve the Court, the U.S. Trustee, and the Plan Administrator from the burden of continuing to monitor and separately administer cases that are inactive. The closing of the Closing Cases will also alleviate the burden of having to pay the relevant quarterly fees under 28 U.S.C. § 1930 in cases that no longer serve any purpose.[19] Courts in this District have routinely approved the relief requested herein in similar circumstances.[20]

---

[19] *See In re A.H. Robins Co., Inc.*, 219 B.R. 145, 149 (Bankr. E.D. Va. 1998) (finding that "the obligation to pay UST fees terminates upon closure, dismissal, or conversion of a Chapter 11 case, and will not be paid ad infinitum").

[20] *See, e.g., In re Quorum Health Corp., et al.*, No. 20-10766 (KBO) (Bankr. D. Del. Oct. 21, 2020) [Docket No. 667] (granting motion for final decree closing some, but not all, of the debtors' chapter 11 cases to allow the debtors to prosecute professional fee applications and administratively winddown the cases, provided that "all motions, notices, and other pleadings relating to any of the [d]ebtors shall be filed, administered, and adjudicated in the [remaining case], without the need to reopen the [closed cases]"); *In re APC Automotive*

18.    No beneficial purpose would be served by further reporting in the Closing Cases. The Debtors historically prepared consolidated quarterly and financial statements, and during the Chapter 11 Cases, they filed consolidated monthly operating reports.  Since the Effective Date, following discussion with the Office of the United States Trustee, the Post-Effective Date Debtors have filed a single consolidated UST Form 11-PCR report.[21]  Consequently, only consolidated UST Form 11-PCR reports are needed and no further activity to report has or will occur in the Closing Cases that would require separate reporting in those cases.

19.    In addition, a final report in each of the Closing Cases is not necessary.  The administration of the Wind Down Assets will occur in the Remaining Case and be fully accounted for in the final report the Plan Administrator will file in that case.  Consequently, requiring the Plan Administrator to file a final report in each of the Closing Cases would not be helpful to the U.S. Trustee, creditors, or other parties-in-interest.

20.    Accordingly, the requirement of further post-confirmation reporting by the Closing Debtors in the Closing Cases should be waived, and all further reporting concerning the administration of the assets and liabilities of those Closing Debtors should occur on a consolidated basis in the case of the Remaining Debtor.

---

*Techs. Intermediate Holdings, LLC*, et al., No. 20-11466 (CSS) (Bankr. D. Del. Aug. 20, 2020) [Docket No. 211] (granting motion for final decree closing some, but not all, Reorganized Debtors' chapter 11 cases and leaving one chapter 11 case open to allow the Reorganized Debtors to review, object to, and resolve claims and administratively wind-down cases); *In re Anna Holdings, Inc.*, et al., No. 19-12551 (CSS) (Bankr. D. Del. Jan. 2, 2020) [Docket No. 179] (granting motion for final decree closing some, but not all, of the Reorganized Debtors' cases as of the plan effective date); *In re Claire's Stores, Inc.*, et al., No. 18-10584 (MFW) (Bankr. D. Del. Dec. 18, 2018) [Docket No. 1165] (granting motion for final decree closing some, but not all, Reorganized Debtors' chapter 11 cases and leaving one chapter 11 case open to allow the Reorganized Debtors to review, object to, and resolve claims); *In re ExGen Texas Power, LLC, et al.*, No. 17- 12377 (BLS) (Bankr. D. Del. Aug. 21, 2018) [Docket No. 405] (same); *In re Swift Energy Co., et al.*, No. 15-12670 (MFW) (Bankr. D. Del. June 26, 2018) [Docket No. 1089] (same); *In re Chaparral Energy, Inc., et al.*, No. 16-11144 (LSS) (Bankr. D. Del. Mar. 19, 2018) [Docket No. 1288] (same); *In re Samson Res. Corp., et al.*, No. 15-11934 (BLS) (Bankr. D. Del. Feb. 22, 2018) [Docket No. 3031] (same); *In re Paragon Offshore PLC, et al.*, No. 16-10386 (CSS) (Bankr. D. Del. Jan. 10, 2018) [Docket No. 2041] (same).

[21]    Docket No. 880.

**<u>NOTICE</u>**

21.     Notice of this Motion will be given to: (i) the Office of the U.S. Trustee; and (ii) all parties who have requested notice in the Chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Plan Administrator submits that no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Plan Administrator respectfully requests that this Court enter an order and final decree, substantially in the form attached hereto as **Exhibit A**: (i) closing the Closing Cases; (ii) waiving the requirement that the Closing Debtors in the Closing Cases submit any further post-confirmation reports; and (iii) granting such other and further relief as may be just and proper.

Dated: November 18, 2025

**MORRIS JAMES LLP**

*/s/ Siena B. Cerra*
Carl N. Kunz, III (DE Bar No. 3201)
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
Siena B. Cerra (DE Bar 7290)
3205 Avenue North Blvd., Suite 100
Wilmington, DE 19803
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail:  ckunz@morrisjames.com
         emonzo@morrisjames.com
         bkeilson@morrisjames.com
         scerra@morrisjames.com

-and-

**KELLEY DRYE & WARREN LLP**
Eric R. Wilson, Esq. (admitted *pro hac vice*)
Kristin S. Elliott, Esq. (admitted *pro hac vice*)
Andres Barajas, Esq. (admitted *pro hac vice*)
3 World Trade Center
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
E-mail:  ewilson@kelleydrye.com
         kelliott@kelleydrye.com
         abarajas@kelleydrye.com

*Counsel to the Plan Administrator*