**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Blink Holdings, Inc.,[1] | Case No. 24-11686 (JKS) |
| Post-Effective Date Debtor. | **Obj. Deadline: October 7, 2026 at 4:00 p.m. (ET)**<br>**Hearing Date: October 14, 2026 at 11:00 a.m. (ET)** |

**PLAN ADMINISTRATOR'S MOTION FOR A FINAL DECREE AND ORDER (I) CLOSING THE DEBTOR'S REMAINING CHAPTER 11 CASE; (II) TERMINATING SERVICES OF EPIQ CORPORATE RESTRUCTURING, LLC; (III) DISCHARGING THE PLAN ADMINISTRATOR; AND (IV) GRANTING RELATED RELIEF**

Burton Hastings Advisors LLC, not individually, and solely in its capacity as the Plan Administrator (the "Plan Administrator") in the above-captioned chapter 11 case of Blink Holdings, Inc. (the "Debtor," and after the Effective Date (defined below), the "Post-Effective Date Debtor"),[2] hereby moves (the "Motion"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Final Decree"): (i) closing the Post-Effective Date Debtor's chapter 11 case (the "Remaining Case"); (ii) terminating the services of Epiq Corporate Restructuring, LLC in its capacities as the Notice and Claims Agent and Administrative Advisor (each as defined below); (iii) discharging the Plan Administrator and its professionals from further duties in the Remaining Case; and (iv) granting related relief. In support of the Motion, the Plan Administrator respectfully states:

---

1 The Post-Effective Date Debtor's service address is c/o Burton Hastings Advisors LLC, 40 Half Moon Lane, Irvington, NY 10533.

2 Docket No. 831, Ex. A (the "Plan"). Capitalized terms used but not defined in the Motion have the meanings ascribed to them in the Plan.

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334 and Article XVI of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The Plan Administrator consents to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the relevant parties, cannot enter final orders or judgments in connection with the Motion consistent with Article III of the United States Constitution.

3. The statutory and legal predicates for the relief requested in the Motion are sections 105(a) and 350(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

### A. The Chapter 11 Cases

4. On August 12, 2024 (the "Petition Date"), the Debtor and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") with the Court.

5. By order entered August 13, 2024, the Court authorized the Debtors to retain Epiq Corporate Restructuring, LLC ("Epiq") as their claims and noticing agent (the "Notice

and Claims Agent").[3] On September 5, 2024, the Court authorized the Debtors to retain Epiq as administrative advisor in the Chapter 11 Cases (the "Administrative Advisor").[4] Epiq continues to serve in each of these roles.

6. On November 7 and November 13, 2024, the Court entered orders pursuant to section 363 of the Bankruptcy Code approving the sales of substantially all of the Debtors' assets to certain third-party purchasers.[5]

7. On February 28, 2025, the Court entered an order (the "Confirmation Order")[6] confirming the Plan. On the same day, the Plan became effective (the "Effective Date").[7]

8. Under the Plan, holders of Allowed Secured Claims, Allowed Administrative Claims, and Allowed Priority Claims (collectively, the "Allowed SAP Claims," and prior to Allowance or Disallowance, the "SAP Claims") are entitled to receive a Distribution.[8] Holders of General Unsecured Claims are not entitled to receive any Distribution under the Plan.[9]

9. On May 27, 2025, the Court entered a final decree and order closing 127 of the Debtors' Chapter 11 Cases.[10] On December 5, 2025, the Court entered a second final decree

---

3 Docket No. 49.

4 Docket No. 159.

5 Docket Nos. 591, 611.

6 Docket No. 831.

7 Docket No. 833.

8 Plan, §§ 6.2, 6.4, 7.1–7.3.

9 *Id.*, § 7.4.

10 Docket No. 893.

and order closing 10 more of the Debtors' Chapter 11 Cases, leaving open only the Remaining Case.[11]

**B. The Plan Administrator, the Wind Down Assets, and the Wind-Down Reserve**

10. On the Effective Date, the Debtors and the Plan Administrator executed the *Plan Administrator Agreement* (the "PA Agreement")[12] which appointed the Plan Administrator as the sole director, member, officer and manager of the Post-Effective Date Debtor.[13]

11. Pursuant to the Confirmation Order and Plan, the Plan Administrator is responsible for making Distributions to Holders of Allowed SAP Claims in accordance with the Plan.[14] The Plan further provides the Plan Administrator with the power and authority to (i) object to Claims and Interests and prosecute such objections; (ii) compromise and settle disputes regarding Claims or Interests; (iii) file tax returns for the Debtors; and (iv) dissolve the Post-Effective Date Debtors.[15]

12. On the Effective Date, the Wind Down Assets vested in the estates of the Post-Effective Date Debtors.[16] The Wind-Down Assets are defined broadly under the Plan as all of the remaining property of the Debtors remaining on the Effective Date, which included the Wind-Down Reserve and Preserved Causes of Action.[17]

---

11 Docket No. 952.

12 Docket No. 769, Ex. B.

13 Confirmation Order, ¶ 11; Plan, § 9.4; Docket No. 769.

14 *See* Plan, § 9.1.

15 *Id.*, § 9.6.

16 *Id.*, § 9.3.

17 *Id.*, § 1.179.

13. The Preserved Causes of Action are defined in the Plan as any Causes of Actions that are not Excluded Actions.[18] Given the broad scope of Excluded Actions, the Post-Effective Date Debtors do not possess any colorable Preserved Causes of Action.[19] Accordingly, the Wind Down Reserve is the only source available to fund Distributions to holders of Allowed SAP Claims under the Plan.

**C. <u>Claims Administration</u>**

14. Pursuant to the Plan, the Plan Administrator is responsible for (i) reconciling, objecting to, and resolving all SAP Claims, and (ii) making Distributions on account of all Allowed SAP Claims.[20]

15. As of the Effective Date, excluding Prepetition Loan Secured Claims, the Claims Register evidenced approximately 135 filed SAP Claims asserting approximately $430,000. With the authority granted under the Plan and the PA Agreement, the Plan Administrator has (i) filed an omnibus objection and two notices identifying SAP Claims that were fully satisfied post-petition; (ii) negotiated stipulated orders resolving certain Administrative Claims;[21] and (iii) engaged in informal negotiations with creditors to resolve additional disputed

---

[18] *Id.*, § 1.130.

[19] The Plan defines "Excluded Actions" to mean:

> any Causes of Action that: (a) were sold to the Buyer(s) under the Asset Purchase Agreements; (b) are or have been released pursuant to a Final Order entered by the Bankruptcy Court (to the extent that any such Final Order is in a form acceptable to the DIP Agent and the Prepetition Agent); (c) is an Avoidance Action; or (d) are or have been released by the Debtors or the Post-Effective Date Debtors pursuant to the Final DIP Order or this Plan, including as set forth in Article XIV.

*Id.*, § 1.72.

[20] *Id.*, §§ 9.8, 11.1.

[21] Docket Nos. 850, 851, 967.

SAP Claims. Through these efforts, the Plan Administrator has reduced the amount of Allowed SAP Claims by approximately 48%, from approximately $430,000 to approximately $224,000.

**D. Distributions and Remittance of Remaining Wind-Down Reserve**

16. As of the hearing on this Motion, the Plan Administrator will have made Distributions on account of all Allowed SAP Claims under the Plan. On a rolling basis from and after the Effective Date, the Plan Administrator has caused the Post-Effective Date Debtor to pay certain Allowed Administrative Claims in full. With the conclusion of the SAP Claims reconciliation process, the Plan Administrator is positioned to make a final Distribution to holders of Allowed SAP Claims in full and will make such final Distribution before the hearing on this Motion.

17. Pursuant to section 9.7 of the Plan, following the final Distribution to holders of Allowed SAP Claims, entry of the Proposed Final Decree, and satisfaction of (or provision for) all of the Plan Administrator's fees and expenses, all of the Plan Administrator's professionals' fees and expenses, and any remaining expenses of the Post-Effective Date Debtor, the Plan Administrator will cause the Post-Effective Debtor to remit all remaining amounts in the Wind Down Reserve to the Prepetition Agent on account of the Class 3 Prepetition Loan Secured Claims.

**E. Tax Returns, Reporting Requirements, and Statutory Fees**

18. Following the Effective Date, the Plan Administrator caused the Post-Effective Date Debtors to file 2024 and 2025 tax returns in the relevant jurisdictions. In 2027, the

Plan Administrator will cause the Post-Effective Date Debtor to prepare and file its final 2026 tax return (the "2026 Tax Return").

19. Since the Effective Date of the Plan, the Plan Administrator has filed all required post-confirmation quarterly reports and has attached the *Final Report in Chapter 11 Cases* required by Local Rule 3022-1(c) as Exhibit B to this Motion (the "Final Report").

20. In accordance with Section 16.6 of the Plan, the Post-Effective Date Debtor's estate is current on applicable statutory U.S. Trustee Fees through the second calendar quarter of 2026. The Plan Administrator will reserve for and pay the U.S. Trustee Fees for the third calendar quarter of 2026 when these become due.

**RELIEF REQUESTED**

21. The Plan Administrator respectfully requests that the Court enter the Proposed Final Decree: (i) closing the Remaining Case; (ii) terminating the services of Epiq, in its capacities as the Notice and Claims Agent and the Administrative Advisor; (iii) discharging the Plan Administrator and its professionals; and (iv) granting certain additional relief requested herein that is incident to closing the Remaining Case.

**BASIS FOR RELIEF**

22. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."[22] Bankruptcy Rule 3022 implements section 350 of the Bankruptcy Code and provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."[23] Local Rule 3022-

[22] 11 U.S.C. § 350(a).

[23] Fed. R. Bankr. P. 3022.

1(a) further provides that "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid,"[24] and section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[25]

23. The phrase "fully administered" is not defined in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules. However, the Advisory Committee Notes to Bankruptcy Rule 3022 (the "Advisory Committee Notes") set forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

> (a) whether the order confirming the plan of reorganization has become final;
>
> (b) whether deposits required by the plan of reorganization have been distributed;
>
> (c) whether property proposed by the plan of reorganization to be transferred has in fact been transferred;
>
> (d) whether the debtors have assumed the business addressed by the plan of reorganization;
>
> (e) whether payments under the plan of reorganization have commenced; and
>
> (f) whether all motions, contested matters and adversary proceedings have been finally resolved.[26]

---

[24] Local Rule 3022-1(a).

[25] 11 U.S.C. § 105(a).

[26] *See* Fed. R. Bank. P. 3022, Advisory Committee Note (1991).

Bankruptcy courts, including this Court, have held that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before [a] case is closed."[27]

## A. <u>The Debtors' Estates Have Been Fully Administered</u>

24. Entry of the Proposed Final Decree is appropriate because the Post-Effective Date Debtor's estate in the Remaining Case has been "fully administered" within the meaning of section 350(a) of the Bankruptcy Code. Keeping the Remaining Case open serves no further purpose. There is no need to administer General Unsecured Claims against the Post-Effective Date Debtor, because holders of General Unsecured Claims are not entitled to any Distribution under the Plan. Furthermore, as of the hearing on this Motion, the Plan Administrator will have made all required Distributions on account of SAP Claims under the Plan.

25. In addition, all of the factors noted above weigh in favor of closing the Remaining Case or do not apply:

- The Confirmation Order was entered and became effective in February 2025, and the Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code;
- The Post-Effective Date Debtor is liquidating pursuant to the Plan and has not assumed any business;
- All SAP Claims against the Post-Effective Date Debtor's estate were reviewed and reconciled, and all objections to SAP Claims have been fully and finally resolved; and

---

27 *In re SLI, Inc.*, No. 02-12608 (WS), 2005 WL 1668396, at *2 (Bankr. D. Del. June 24, 2005) (*citing In re Mold Makers, Inc*., 124 B.R. 766, 768–69 (Bankr. N.D. Ill. 1990)); *see also In re Omega Optical, Inc*., 476 B.R. 157, 167 (Bankr. E.D. Pa. 2012) (noting that bankruptcy courts have flexibility in deciding whether an estate is fully administered and may consider the factors set forth in Rule 3022 as well as other relevant factors).

- The Plan Administrator has made, or prior to the hearing on this Motion will have made, Distributions to all holders of Allowed SAP Claims entitled to receive Distributions under the Plan.

Review of the above factors shows there is nothing left to do in the Remaining Case and no reason to keep it open. Further, pursuant to 28 U.S.C. § 1930(a), the Plan Administrator has paid all U.S. Trustee Fees owing through June 30, 2026, and will pay U.S. Trustee Fees that will become due following the close of the third quarter of 2026. Finally, as noted above, the Final Report required by Local Rule 3022-1(c) is attached hereto as Exhibit B.

**B. Termination of Notice and Claims Agent and Administrative Advisor**

26. The Plan Administrator respectfully requests that the Proposed Final Decree include a provision relieving Epiq, in its capacities as the Notice and Claims Agent and the Administrative Advisor, of any further obligations with respect to the Debtors or their estates, including claims and noticing services, except as set forth immediately below.

27. In accordance with Local Rule 2002-1(e)(ix), the Proposed Final Decree will contain a provision requiring the Notice and Claims Agent, within 28 days after the entry of the Proposed Final Decree, to: (i) forward to the Clerk of the Court an electronic version of all imaged claims, (ii) upload the creditor mailing list into CM/ECF, and (iii) docket a final combined Claims Register containing claims from all cases originally administered with the Post-Effective Date Debtor.

**C. Discharge of the Plan Administrator and Its Professionals and Abandonment of Remaining Wind-Down Assets**

28. By this Motion, the Plan Administrator respectfully requests that the Proposed Final Decree expressly discharge and relieve the Plan Administrator and its professionals of any further duties with respect to the Plan, the Post-Effective Date Debtors' estates, the

PA Agreement, and the Remaining Case, to be immediately effective on filing of the 2026 Tax Return.

29. Additionally, section 2.d(xvi) of the PA Agreement gives the Plan Administrator the right to abandon, in consultation with the Prepetition Agent, any of the Post-Effective Date Debtor's remaining assets, to the extent that the Plan Administrator concludes such assets are of no benefit to creditors of the Debtors or are not practicable to distribute. Similarly, section 2.d(xviii) of the PA Agreement provides the Plan Administrator with the right to abandon any Preserved Causes of Action.

30. As noted above, the only valuable assets of the Post-Effective Debtor are the funds in the Wind-Down Reserve. Following Distributions to holders of Allowed SAP Claims and the remittance of the remaining funds in the Wind-Down Reserve to the Prepetition Agent, the Plan Administrator has determined that any remaining Post-Effective Date Debtor assets – consisting of books and records that are no longer needed, and *de minimis* cash that may remain after satisfaction of trailing Plan Administrator expenses – are of inconsequential value to Holders of Allowed SAP Claims. Further, the Plan Administrator has determined in its good faith business judgment that there are no Preserved Causes of Action of any value. Accordingly, the Plan Administrator's abandonment of the remaining assets should be approved.

**NOTICE**

31. Notice of this Motion will be given to: (i) the Office of the U.S. Trustee; and (ii) all parties who have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Plan Administrator submits that no other or further notice is required.

## CONCLUSION

WHEREFORE, Plan Administrator respectfully requests that the Court enter a Final Decree, substantially in the form attached hereto as Exhibit A: (i) closing the Remaining Case; (ii) terminating the services of Epiq, in its capacities as the Notice and Claims Agent and the Administrative Advisor; (iii) discharging the Plan Administrator and its professionals; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: September 23, 2026
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Jason S. Levin*
Eric J. Monzo (DE Bar No. 5214)
Jason S. Levin (DE Bar No. 6434)
3505 Avenue North Blvd., Suite 100
Wilmington, DE 19803
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
jlevin@morrisjames.com

-and-

**KELLEY DRYE & WARREN LLP**
Eric R. Wilson, Esq. (admitted *pro hac vice*)
Kristin S. Elliott, Esq. (admitted *pro hac vice*)
Andres Barajas, Esq. (admitted *pro hac vice*)
3 World Trade Center
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
E-mail: ewilson@kelleydrye.com
kelliott@kelleydrye.com
abarajas@kelleydrye.com

*Counsel to the Plan Administrator*